UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ABILITY INSURANCE COMPANY,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>ST PAPER, LLC,<br><br>　　　　　　Defendant. | Case No. 1:20-cv-03851-GBD |

## DECLARATION OF SHARAD TAK

I, Sharad Tak, declare under penalty of perjury and pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. I am the President of the Defendant in this matter, ST Paper, LLC ("ST Paper"). I am also the Manager of ST Paper Holdings, LLC ("ST Paper Holdings"). ST Paper Holdings is the Manager of ST Paper. I am also the President of Tak Investments, Inc.

2. In 2006, I had discussions with Ronald Van Den Heuvel concerning the possibility of ST Paper purchasing the assets of the paper mill in Oconto Falls, Wisconsin. I then understood that Mr. Van Den Heuvel was the President of Oconto Falls Tissue, Inc. ("OFTI").

3. On April 16, 2007, I signed various documents for and on behalf of ST Paper concerning a transaction in which OFTI and other companies affiliated with Mr. Van Den Heuvel sold the assets of the mill to ST Paper. Specifically, on April 16, 2007, ST Paper, OFTI, Tissue Products Technology Corp., Partners Concepts Development, Inc. and ST Paper Holdings, LLC, executed a Second Amended and Restated Asset Purchase Agreement ("APA"). A true and correct copy of this document, without schedules and exhibits, is attached as **Exhibit A**.

25743985.2

4. Most of the financing of the acquisition by ST Paper of the mill was provided by Goldman Sachs Credit Partners L.P. ("Goldman Sachs"). Goldman Sachs acted as Administrative Agent in organizing the funding ST Paper needed to fund the purchase of the assets of the Oconto Falls mill, and Goldman Sachs arranged for a $65,000,000 term loan facility and a $5,000,000 revolving credit facility for ST Paper. On April 16, 2007, ST Paper, Goldman Sachs and the various lenders participating in the loans entered into a Credit Agreement. A true and correct copy of the Credit Agreement is attached hereto as **Exhibit B**.

5. On behalf of ST Paper, on April 16, 2007, I signed a Subordination Agreement dated April 16, 2007, entered into among ST Paper, OFTI and Goldman Sachs. A true and correct copy of the Subordination Agreement is attached hereto as **Exhibit C**.

6. Also on April 16, 2007, I signed Subordinated Promissory Notes on behalf of ST Paper made in favor of OFTI as a result of seller financing made by OFTI in the amount of $30,589,000. These notes have been referred to by the parties in this litigation as the "Seller Notes." Attached as **Exhibit D** is a true and correct copy of Seller Note 1.

7. After the sale of the mill closed on April 16, 2007, ST Paper operated the mill. As a result of a declaration by Goldman Sachs that ST Paper had defaulted on a loan covenant, Goldman Sachs called the loan to be due. ST Paper and Goldman Sachs entered into a Forbearance Agreement and Amendment to the Credit Agreement and Security Agreement on May 22, 2009.

8. On March 25, 2010, affiliates of Goldman Sachs sold the debt owed by ST Paper under the Credit Agreement to Macquarie Bank Limited.

9. In April of 2010, ST Paper pursued the potential of refinancing of the debt associated with the purchase of the mill in 2007. As a result, a consortium of lenders agreed to finance the transaction and ST Paper made new promissory notes to eight different lenders:

WCDLF SUB CDE XXIV, LLC; WCDLF SUB CDE XXV, LLC; USBCDE SUB-CDE LX, LLC; STP/NCF SUB-CDE, LLC; STP2 SUB-CDE, LLC; NNMF SUB-CDE X, LLC; CAPFUND CDE ONE LLC; and CAPMARK CDF SUBFUND III LLC (collectively, the "CDE Lenders"). True and correct copies of the 16 promissory notes made by ST Paper to these lenders on April 30, 2010 are attached as **Exhibit E**.

10. On April 30, 2010, ST Paper Holdings entered into a Purchase and Sale Agreement for Distressed Trades with Macquarie Bank Limited. Through this transaction, ST Paper Holdings acquired the debt owed by ST Paper in the principal amounts of $64,350,000 on a term loan, $5,000,000 on a revolving commitment, and $2,000,000 for a protective loan. A true and correct copy of the Purchase and Sale Agreement for Distressed Trades is attached as **Exhibit F**. A true and correct copy of the Assignment Agreement between Macquarie Bank Limited, as assignor, and ST Paper Holdings, as assignee, is attached as **Exhibit G**.

11. Also on April 30, 2010, Macquarie Capital (USA) Inc., Tak Investments, Inc. and ST Paper Holdings entered into Amendment No. 2 to the Purchase Agreement as of March 8, 2010 by and between Macquarie Capital (USA) Inc. and Tak Investments, Inc. This amendment recognized that Tak Investment, Inc. was assigning its right to purchase the indebtedness held by Macquarie Bank Limited to ST Paper Holdings.

12. On April 30, 2010, Goldman Sach's successor as administrative agent, Wilmington Trust FSB, ST Paper, ST Paper Holdings and Macquarie Bank Limited entered into a Second Amendment to Credit Agreement. A true and correct copy of the Second Amendment to Credit Agreement is attached as **Exhibit H**. Section 5.1 of the Second Amendment to Credit Agreement states that the April 16, 2007 Credit Agreement remained "in full force and effect and is hereby ratified and confirmed." Section 7 of the same document states the following with respect to ST

Paper's continuing obligation as Borrower: "Except as otherwise provided in this Agreement, the Credit Agreement, the other Loan Documents and the Borrower's Obligations thereunder shall remain in full force and effect, and shall not be waived, modified, superseded or otherwise affected by this Agreement." Section 9 of the Second Amendment to Credit Agreement states: "This Agreement is a Credit Document for all purposes."

13.  ST Paper used the funding provided by the CDE Lenders to replace the original debt from 2007 administered by Goldman Sachs. Specifically, ST Paper used the proceeds from the loans made by the CDE Lenders to pay $83,013,871 to ST Paper Holdings to repay the debt originally administered by Goldman Sachs.

14.  In 2017, the CDE Lenders in the 2010 refinancing transaction assigned or transferred their interest in the loans made to ST Paper to two different entities: ST Paper Holdings, LLC and WCDLF Investment Fund XXIV, LLC. A true and correct copy of the May 2, 2017 Assignment of Loan and Loan Documents is attached as **Exhibit I**. A true and correct copy of the May 2, 2017 Assignment and Assumption Agreement is attached as **Exhibit J**. A true and correct copy of the May 2, 2017 Membership Interest Assignment is attached as **Exhibit K**.

15.  As a result of the assignments referenced above, ST Paper remains indebted to ST Paper Holdings, LLC and WCDLF Investment Fund XXIV, LLC for the replacement debt ST Paper incurred in 2010 to refinance the debt it incurred in connection with the acquisition of the mill in 2007.

16.  On March 19, 2019, ST Paper executed an Amended and Consolidated Promissory Note in the face amount of $63,962,000 in favor of WCDLF Investment Fund XXIV, LLC. A true and correct copy of this document is attached as **Exhibit L**.

17.     On March 19, 2019, ST Paper executed a Second Amended and Restated Promissory Note in the face amount of $21,970,150 in favor of ST Paper Holdings, LLC. A true and correct copy of this document is attached as **Exhibit M**.

18.     ST Paper remains indebted to both WCDLF Investment Fund XXIV, LLC and ST Paper Holdings, LLC for debt resulting from the 2010 refinancing of the 2007 debt taken out by ST Paper in the loans administered by Goldman Sachs.

Dated this __16th__ day of August, 2021.

_____
Sharad Tak

25743985.2