# EXHIBIT C

EXECUTION VERSION

## SUBORDINATION AGREEMENT

**THIS SUBORDINATION AGREEMENT** (this "Agreement"), dated as of April 16, 2007, is among ST PAPER, LLC, a Delaware limited liability company ("Borrower"), OCONTO FALL TISSUE, INC., a Wisconsin corporation ("OFTI"), in its capacity as holder of Subordinated Indebtedness (as hereinafter defined) (OFTI, together with any other party from time to time becoming a holder of Subordinated Indebtedness, and their respective successors and assigns, being hereinafter collectively referred to as the "Subordinated Creditors"), and GOLDMAN SACHS CREDIT PARTNERS L.P. ("GSCP"), in its capacity as administrative agent (in such capacity, "Administrative Agent") for the Lenders and as collateral agent (in such capacity, "Collateral Agent") for the Secured Parties under the Credit Agreement referred to below.

## RECITALS

A. Borrower has entered into a Credit Agreement, dated as of the date hereof (as the same may be amended, restated, supplemented or otherwise modified from time to time as permitted hereunder, the "Credit Agreement" and, collectively with the financing and security documents related thereto, the "Loan Documents"), with Administrative Agent, Collateral Agent, GSCP, as Sole Lead Arranger, Sole Bookrunner and Syndication Agent, and the Lenders from time to time party thereto, pursuant to which, among other things, Lenders have agreed, subject to the terms and conditions set forth in the Credit Agreement, to make certain loans and other financial accommodations to Borrower.

B. Borrower, OFTI, Tissue Products Technology Corp. and Partners Concepts Development, Inc., a Wisconsin corporation ("PCDI"), have entered into a Second Amended and Restated Asset Purchase Agreement, dated as of the date hereof (as the same may be amended, supplemented, restated or otherwise modified from time to time as permitted hereunder, the "Asset Purchase Agreement"), pursuant to which, among other things, OFTI has extended credit to Borrower as evidenced by four (4) Subordinated Promissory Notes of even date herewith issued by Borrower to OFTI in the original aggregate principal amounts of $8,000,000, $8,000,000, $8,000,000 and $6,589,000, respectively (as the same may be amended, supplemented, restated or otherwise modified from time to time as permitted hereunder and all notes issued in exchange or substitution of any thereof, the "Subordinated Notes"), and pursuant to which Borrower has incurred and may hereafter incur other obligations and liabilities to OFTI.

C. As an inducement to and as one of the conditions precedent to the agreement of Administrative Agent, Collateral Agent and Lenders to consummate the transactions contemplated by the Credit Agreement, Administrative Agent, Collateral Agent and Lenders required the execution and delivery of this Agreement by OFTI and Borrower.

NOW, THEREFORE, in order to induce Administrative Agent, Collateral Agent and Lenders to consummate the transactions contemplated by the Credit Agreement, and for other good and valuable consideration, the receipt and sufficiency of which hereby are acknowledged, the parties hereto hereby agree as follows:

1.  **Definitions**. All capitalized terms used herein but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Credit Agreement. The following terms shall have the following meanings in this Agreement:

"Administrative Agent" shall have the meaning ascribed to such term in the preamble of this Agreement; provided, however that after the consummation of any Permitted Refinancing, the term "Administrative Agent" shall refer to any party appointed by the holders of the Senior Indebtedness as agent for themselves for the purposes of this Agreement.

"Business Day" means any day excluding Saturday, Sunday and any day which is a legal holiday under the laws of the State of New York or is a day on which banking institutions located in such state are authorized or required by law or other governmental action to close.

"Collateral" means all of the collateral securing the obligations of Borrower under the Loan Documents.

"Enforcement Action" is defined in subsection 2.7.

"Lender or Lenders" shall mean any "Lender" or the "Lenders," respectively, as such terms are defined in the Credit Agreement; provided, however that after the consummation of any Permitted Refinancing, such terms shall refer to any holder or all of the holders, respectively, of the Senior Indebtedness.

"Loan Documents" is defined in Recital A.

"Paid in Full" or "Payment in Full" shall mean the indefeasible payment in full in cash of all Senior Indebtedness.

"Permitted Refinancing" shall mean any refinancing of the Senior Indebtedness under the Loan Documents provided that the financing documentation entered into by Borrower in connection with such Permitted Refinancing constitutes Permitted Refinancing Loan Documents.

"Permitted Refinancing Loan Documents" shall mean any financing documentation which replaces the Loan Documents and pursuant to which the Senior Indebtedness under the Loan Documents is refinanced, as such financing documentation may be amended, restated, supplemented or otherwise modified from time to time.

"Proceeding" is defined in subsection 2.3.

"Required Lenders" shall have the meaning ascribed to such term in the Credit Agreement; provided, however that after the consummation of any Permitted Refinancing, the term "Required Lenders" shall mean the holders of Senior Indebtedness having the right and/or ability under the Permitted Refinancing Loan Documents to effectuate the waiver, amendment, granting of consent or other matter in question.

"Senior Indebtedness" shall mean the "Obligations," as such term is defined in the Credit Agreement, including all interest, fees, expenses, indemnities, in each instance, whether before or after the commencement of a Proceeding and without regard to whether or not an allowed claim, and all obligations and liabilities incurred with respect to Permitted Refinancings, together with any amendments, restatements, modifications, renewals or extensions of any thereof permitted hereunder.

NY\1211310.8

ST PAPER 0626

"Subordinated Creditors" shall mean the Subordinated Creditors who are signatories to this Agreement and any other holders of the Subordinated Notes or any other Subordinated Indebtedness from time to time.

"Subordinated Indebtedness" shall mean all of the obligations of Borrower to Subordinated Creditors evidenced by the Subordinated Notes and all other amounts and other obligations now or hereafter owed by Borrower to Subordinated Creditors pursuant to the Subordinated Note Documents.

"Subordinated Note Documents" shall mean the Subordinated Notes, the Asset Purchase Agreement, any guaranty with respect to the Subordinated Indebtedness and all other documents and instruments evidencing, securing or pertaining to any portion of the Subordinated Indebtedness, as amended, supplemented, restated or otherwise modified from time to time as permitted hereunder.

2. **Subordination of Subordinated Indebtedness to Senior Indebtedness**.

2.1 **Subordination**. The payment of any and all of the Subordinated Indebtedness hereby expressly is subordinated, to the extent and in the manner set forth herein, to the Payment in Full of the Senior Indebtedness. Each holder of Senior Indebtedness, whether now outstanding or hereafter arising, shall be deemed to have acquired Senior Indebtedness in reliance upon the provisions contained herein.

2.2 **Restriction on Payments**. No payment (whether made in cash, securities or other property or by set-off) of principal, interest or any other amount due with respect to the Subordinated Indebtedness shall be made or received, and no Subordinated Creditor shall exercise any right of set-off or recoupment with respect to any Subordinated Indebtedness, until all of the Senior Indebtedness is Paid in Full.

2.3 **Proceedings**. In the event of any insolvency, bankruptcy, receivership, custodianship, liquidation, reorganization, assignment for the benefit of creditors or other proceeding for the liquidation, dissolution or other winding up of Borrower or any of its Subsidiaries or any of their respective properties (a "Proceeding"):

A. all Senior Indebtedness first shall be Paid in Full before any payment (whether made in cash, securities or other property) of or with respect to the Subordinated Indebtedness shall be made;

B. any payment which, but for the terms hereof, otherwise would be payable or deliverable in respect of the Subordinated Indebtedness, shall be paid or delivered directly to Administrative Agent (to be held and/or applied by Administrative Agent in accordance with the terms of the Credit Agreement or the Permitted Refinancing Loan Documents) until all Senior Indebtedness is Paid in Full, and each Subordinated Creditor irrevocably authorizes, empowers and directs all receivers, trustees, liquidators, custodians, conservators and others having authority in the premises to effect all such payments and deliveries, and each Subordinated Creditor also irrevocably authorizes, empowers and directs Administrative Agent to demand, sue for, collect and receive every such payment or distribution; and

ST PAPER 0627

C.  each Subordinated Creditor agrees to execute, verify, deliver and file any proofs of claim in respect of the Subordinated Indebtedness requested by Administrative Agent in connection with any such Proceeding and hereby irrevocably authorizes, empowers and appoints Administrative Agent its agent and attorney-in-fact to execute, verify, deliver and file such proofs of claim upon the failure of such Subordinated Creditor promptly to do so (and in any event prior to 15 days before the expiration of the time to file any such proof); provided Administrative Agent shall have no obligation to execute, verify, deliver, and/or file any such proof of claim.

The Senior Indebtedness shall continue to be treated as Senior Indebtedness and the provisions of this Agreement shall continue to govern the relative rights and priorities of Administrative Agent, Collateral Agent, Lenders and Subordinated Creditors even if all or part of the Senior Indebtedness or the liens securing the Senior Indebtedness are subordinated, set aside, avoided or disallowed in connection with any such Proceeding. This Agreement shall be reinstated if at any time any payment of any of the Senior Indebtedness is rescinded or must otherwise be returned by any holder of the Senior Indebtedness or any representative of such holder and the Senior Indebtedness, or portion thereof, intended to have been satisfied shall be deemed to be reinstated and outstanding as if such payment had not occurred.

2.4  **Incorrect Payments**. If any payment (whether made in cash, securities or other property) not permitted under this Agreement is received by any Subordinated Creditor on account of the Subordinated Indebtedness before all Senior Indebtedness is Paid in Full, such payment shall not be commingled with any asset of such Subordinated Creditor, shall be held in trust by such Subordinated Creditor for the benefit of Lenders and shall be paid over to Administrative Agent, or its designated representative, for application (in accordance with the Credit Agreement or the Permitted Refinancing Loan Documents) to the payment of the Senior Indebtedness then remaining unpaid, until all of the Senior Indebtedness is Paid in Full.

2.5  **Sale, Transfer**. (a) No Subordinated Creditor shall sell, assign, dispose of or otherwise transfer all or any portion of the Subordinated Indebtedness (1) unless prior to the consummation of any such action, the transferor and transferee thereof shall execute and deliver to Administrative Agent a joinder to this Agreement, or an agreement substantially identical to this Agreement, in either case providing for the continued subordination and forbearance of the Subordinated Indebtedness to the Senior Indebtedness as provided herein and for the continued effectiveness of all of the rights of Administrative Agent, Collateral Agent and Lenders arising under this Agreement and (2) unless following such sale, assignment, disposition or other transfer, there shall be no more than five (5) holders who shall have rights in and to the Subordinated Indebtedness.

(b)  Notwithstanding the failure to execute or deliver any such agreement or appoint any such agent, the subordination effected hereby shall survive any sale, assignment, disposition or other transfer of all or any portion of the Subordinated Indebtedness, and the terms of this Agreement shall be binding upon the successors and assigns of each Subordinated Creditor, as provided in Section 9 below.

4

ST PAPER 0628

2.6    **Legends**. Until the Senior Indebtedness is Paid in Full and all commitments to lend under the Loan Documents or Permitting Refinancing Loan Documents have terminated, each of the Subordinated Note Documents at all times shall contain in a conspicuous manner the following legend:

> "This Note and the indebtedness evidenced hereby is subordinate in the manner and to the extent set forth herein and in the Subordination Agreement, dated as of April 16, 2007 (the "Subordination Agreement"), by and among ST Paper, LLC, Oconto Falls Tissue, Inc. and Goldman Sachs Credit Partners L.P., as Administrative Agent and Collateral Agent, to the Senior Indebtedness (as defined in the Subordination Agreement). The holder of this Note, by its acceptance hereof, shall be bound by the provisions of the Subordination Agreement."

2.7    **Restriction on Action by Subordinated Creditors.**

(a)    Subordinated Creditors may at any time and from time to time without the consent of or notice to the Administrative Agent, Collateral Agent or any Lender, without incurring liability to the Administrative Agent, Collateral Agent or any Lender, change the manner or place of payment or extend the time of payment of or renew or alter the Subordinated Notes, or amend, restate, supplement or otherwise modify in any manner the Asset Purchase Agreement; provided, that until the Senior Indebtedness is Paid in Full and all commitments to lend under the Loan Documents or Permitted Refinancing Loan Documents have terminated, the Subordinated Creditor shall not, without the prior written consent of Administrative Agent, agree to any amendment, modification or supplement to the Subordinated Note Documents, the effect of which is to (i) increase the maximum principal amount of the Subordinated Indebtedness or increase the rate of interest on any of the Subordinated Indebtedness or make any such interest payable in cash, (ii) shorten the dates upon which payments of principal or interest on the Subordinated Indebtedness are due, (iii) change in a manner adverse to Borrower or add any event of default or add or make more restrictive any covenant with respect to the Subordinated Indebtedness (or Permitted Refinancing Loan Documents), (iv) change the redemption, prepayment or put provisions of the Subordinated Indebtedness, (v) subordinate the Subordinated Indebtedness to any other debt, (vi) alter the repayment terms of the Subordinated Indebtedness in a manner adverse to Borrower, (vii) take any liens in any assets of Borrower or any of its Subsidiaries or any other assets securing the Senior Indebtedness, or (viii) obtain any guaranties or credit support from any party other than Borrower.

(b)    Until the Senior Indebtedness is Paid in Full, no Subordinated Creditor shall, without the prior written consent of Administrative Agent, take any action to collect, enforce payment or accelerate any of the Subordinated Indebtedness, exercise any of the remedies with respect to the Subordinated Indebtedness set forth in any of the Subordinated Note Documents or that otherwise may be available to any Subordinated Creditor, either at law or in equity, by judicial proceedings (including by filing a Proceeding) or otherwise (an "Enforcement Action"), except as provided in the following sentence.

ST PAPER 0629

(c) Until the Senior Indebtedness is Paid in Full and all commitments to lend under the Loan Documents or Permitted Refinancing Loan Documents have terminated, any liens of Subordinated Creditors in the Collateral which may exist in breach of each Subordinated Creditor's agreement pursuant to subsection 2.7(a)(vii) or Section 16 of this Agreement shall be and hereby are subordinated for all purposes and in all respects to the liens of Collateral Agent in the Collateral, regardless of the time, manner or order of perfection of any such liens. In the event that any Subordinated Creditor obtains any liens in the Collateral in violation of subsection 2.7(a)(vii) or Section 16 of this Agreement, Subordinated Creditors (i) shall (or shall cause their agent) to promptly execute and/or deliver to Administrative Agent such termination statements and releases as Administrative Agent shall request to effect the release of the liens of such Subordinated Creditor in such Collateral and (ii) shall be deemed to have authorized Administrative Agent to file any and all termination statements required by Administrative Agent in respect of such liens. In furtherance of the foregoing, each Subordinated Creditor hereby irrevocably appoints Administrative Agent its attorney-in-fact, with full authority in the place and stead of such Subordinated Creditor and in the name of such Subordinated Creditor or otherwise, to execute and deliver any document or instrument which such Subordinated Creditor may be required to deliver pursuant to this subsection 2.7(c).

3. **Continued Effectiveness of this Agreement; Modifications to Senior Indebtedness**. (a) The terms of this Agreement, the subordination effected hereby, and the rights and the obligations of Subordinated Creditors, Administrative Agent, Collateral Agent and Lenders arising hereunder, shall not be affected, modified or impaired in any manner or to any extent by: (i) any amendment or modification of or supplement to the Credit Agreement, any other Loan Document or any Permitted Refinancing Loan Document (to the extent such amendment, modification or supplement is not prohibited under the terms of this Agreement) or any Subordinated Note Documents; (ii) the validity or enforceability of any of such documents; or (iii) any exercise or non-exercise of any right, power or remedy under or in respect of the Senior Indebtedness or the Subordinated Indebtedness or any of the instruments or documents referred to in clause (i) above.

(b) Administrative Agent, Collateral Agent and Lenders may at any time and from time to time without the consent of or notice to any Subordinated Creditor, without incurring liability to any Subordinated Creditor and without impairing or releasing the obligations of any Subordinated Creditor under this Agreement, change the manner or place of payment or extend the time of payment of or renew or alter any Senior Indebtedness, or amend, restated, supplement or otherwise modify in any manner any Loan Document or Permitted Refinancing Loan Document.

4. **Cumulative Rights, No Waivers**. Each and every right, remedy and power granted to Administrative Agent, Collateral Agent or Lenders hereunder shall be cumulative and in addition to any other right, remedy or power specifically granted herein, in the Credit Agreement, the other Loan Documents or Permitted Refinancing Loan Documents or now or hereafter existing in equity, at law, by virtue of statute or otherwise, and may be exercised by Administrative Agent, Collateral Agent or Lenders, from time to time, concurrently or independently and as often and in such order as Administrative Agent, Collateral Agent or Lenders may deem expedient. Any failure or delay on the part of Administrative Agent,

ST PAPER 0630

Collateral Agent or Lenders in exercising any such right, remedy or power, or abandonment or discontinuance of steps to enforce the same, shall not operate as a waiver thereof or affect Administrative Agent's, Collateral Agent's or Lenders' right thereafter to exercise the same, and any single or partial exercise of any such right, remedy or power shall not preclude any other or further exercise thereof or the exercise of any other right, remedy or power, and no such failure, delay, abandonment or single or partial exercise of Administrative Agent's, Collateral Agent's or Lenders' rights hereunder shall be deemed to establish a custom or course of dealing or performance among the parties hereto.

5. **Modification**. Any modification or waiver of any provision of this Agreement, or any consent to any departure by Administrative Agent, Collateral Agent or any Subordinated Creditor therefrom, shall not be effective in any event unless the same is in writing and signed by Administrative Agent, Collateral Agent and the holders of greater than 50% of the then outstanding principal balance of the Subordinated Indebtedness, and then such modification, waiver or consent shall be effective only in the specific instance and for the specific instance and for the specific purpose given. Any notice to or demand on any Subordinated Creditor in any event not specifically required of Administrative Agent or Collateral Agent hereunder shall not entitle any Subordinated Creditor to any other or further notice or demand in the same, similar or other circumstances unless specifically required hereunder.

6. **Additional Documents and Actions**. Each Subordinated Creditor at any time, and from time to time, after the execution and delivery of this Agreement, upon the request of Administrative Agent or Collateral Agent and at the expense of Borrower, promptly will execute and deliver such further documents and do such further acts and things as Administrative Agent or Collateral Agent may request in order to effect fully the purposes of this Agreement.

7. **Notices**. All notices and other communications provided for hereunder shall be in writing and shall be mailed, facsimiled or delivered to the following addresses:

| | |
|---|---|
| If to OFTI: | Oconto Falls Tissue, Inc.<br>c/o Tissue Products Technology Corp.<br>1555 Glory Road<br>Green Bay, Wisconsin  54304<br>Attention: Ron van den Heuvel |
| If to any other Subordinated Creditor: | To the address specified in a joinder delivered to Administrative Agent |
| If to Borrower: | ST Paper, LLC<br>1555 Glory Road<br>Green Bay, Wisconsin  54304<br>Attention:  Sharad Tak |

ST PAPER 0631

|  |  |
|---|---|
| with a copy to: | Simpson Thacher & Bartlett LLP<br>425 Lexington Avenue<br>New York, New York  10017<br>Attention:  Ken S. Wyman |
| If to Collateral Agent or<br>Administrative Agent: | Goldman, Sachs & Co.<br>30 Hudson Street, 17th Floor<br>Jersey City, NJ 07302<br>Attention: Pedro Ramirez<br>Telecopier: (212) 428-1622 |
| with a copy to: | Latham & Watkins LLP<br>885 Third Avenue<br>New York, New York  10022<br>Attention: Kirk A. Davenport, Esq. |

or to any other address, as to any of the parties hereto, as such party shall designate in a written notice to the other parties hereto.  All notices sent pursuant to the terms of this Section 7 shall be effective, (i) if mailed, when received or three days after deposited in the mails, whichever occurs first, (ii) if transmitted by facsimile, on the date of transmission if transmitted before 4:00 p.m. (New York time) otherwise on the next Business Day, (iii) if delivered by personal delivery, upon delivery, or (iv) if delivered by overnight courier one (1) Business Day after delivery to the courier, in each case, properly addressed.

8. **Severability**.  Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining portions hereof or affecting the validity or enforceability of such provision in any other jurisdiction.

9. **Successors and Assigns**.  This Agreement shall inure to the benefit of the successors and assigns of Administrative Agent, Collateral Agent and Lenders and shall be binding upon the successors and assigns of Subordinated Creditors and Borrower.

10. **Counterparts**.  This Agreement may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which shall be deemed to be an original, but all of which taken together shall constitute one and the same agreement.  Delivery of an executed counterpart of this Agreement by facsimile shall be equally as effective as delivery of an original executed counterpart of this Agreement.  Any party delivering an executed counterpart of this Agreement by facsimile also shall deliver an original executed counterpart of this Agreement but the failure to deliver an original executed counterpart shall not affect the validity, enforceability, and binding effect of this Agreement.

11. **Defines Rights of Creditors; Subrogation.**

   A.   The provisions of this Agreement are solely for the purpose of defining the relative rights of Subordinated Creditors, Administrative Agent, Collateral Agent and Lenders

ST PAPER 0632

and shall not be deemed to create any rights or priorities in favor of any other party, including, without limitation, Borrower. As between Borrower and Subordinated Creditors, nothing contained herein shall impair the unconditional and absolute obligation of Borrower to Subordinated Creditors to pay the Subordinated Indebtedness as such Subordinated Indebtedness shall become due and payable in accordance with the Subordinated Note Documents.

B.  Subject to the Payment in Full of the Senior Indebtedness and termination of all commitments to lend under the Loan Documents or Permitted Refinancing Loan Documents, in the event and to the extent cash, property or securities otherwise payable or deliverable to the holders of the Subordinated Indebtedness shall have been applied pursuant to this Agreement to the payment of Senior Indebtedness, then and in each such event, the holders of the Subordinated Indebtedness shall be subrogated to the rights of each holder of Senior Indebtedness to receive any further payment or distribution in respect of or applicable to the Senior Indebtedness; and, for the purposes of such subrogation, no payment or distribution to the holders of Senior Indebtedness of any cash, property or securities to which any holder of Subordinated Indebtedness would be entitled except for the provisions of this Agreement shall, and no payment over pursuant to the provisions of this Agreement to the holders of Senior Indebtedness by the holders of the Subordinated Indebtedness shall, as between Borrower, its creditors other than the holders of Senior Indebtedness and the holders of Subordinated Indebtedness, be deemed to be a payment by Borrower to or on account of Senior Indebtedness.

12.  **Conflict**.  In the event of any conflict between any term, covenant or condition of this Agreement and any term, covenant or condition of any of the Subordinated Note Documents, the provisions of this Agreement shall control and govern.

13.  **Statement of Indebtedness to Subordinated Creditors**.  Borrower will furnish to Administrative Agent upon demand, a statement of the indebtedness owing from Borrower to Subordinated Creditors, and will give Administrative Agent access to the books of Borrower in accordance with the Credit Agreement so that Administrative Agent can make a full examination of the status of such indebtedness.

14.  **Headings**.  Section headings herein are included for convenience of reference only and shall not constitute a part of this Agreement for any other purpose.

15.  **Termination**.  This Agreement shall terminate upon the Payment in Full of the Senior Indebtedness and termination of all commitments to lend under the Loan Documents and Permitted Refinancing Loan Documents.

16.  **No Contest of Senior Indebtedness or Liens; No Security for Subordinated Indebtedness**.  Each Subordinated Creditor agrees that it will not, and will not encourage any other party to, at any time, contest the validity, perfection, priority or enforceability of the Senior Indebtedness or liens in the Collateral granted to Collateral Agent pursuant to the Credit Agreement, the other Loan Documents or the Permitted Refinancing Loan Documents or accept or take any collateral security for the Subordinated Indebtedness.

NY\1211310.8

ST PAPER 0633

17. **APPLICABLE LAW.** THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAW OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND TO BE PERFORMED IN THE STATE OF NEW YORK.

18. **CONSENT TO JURISDICTION; SERVICE OF PROCESS AND VENUE.** ANY LEGAL ACTION OR PROCEEDING WITH RESPECT TO THIS AGREEMENT MAY BE BROUGHT IN THE COURTS OF THE STATE OF NEW YORK IN THE COUNTY OF NEW YORK OR OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK, AND, BY EXECUTION AND DELIVERY OF THIS AGREEMENT, EACH SUBORDINATED CREDITOR, ADMINISTRATIVE AGENT, COLLATERAL AGENT AND BORROWER HEREBY IRREVOCABLY ACCEPTS IN RESPECT OF ITS PROPERTY, GENERALLY AND UNCONDITIONALLY, THE JURISDICTION OF THE AFORESAID COURTS. EACH SUBORDINATED CREDITOR AND BORROWER HEREBY IRREVOCABLY APPOINTS THE SECRETARY OF STATE OF THE STATE OF NEW YORK AS ITS AGENT FOR SERVICE OF PROCESS IN RESPECT OF ANY SUCH ACTION OR PROCEEDING AND FURTHER IRREVOCABLY CONSENTS TO THE SERVICE OF PROCESS OUT OF ANY OF THE AFOREMENTIONED COURTS AND IN ANY SUCH ACTION OR PROCEEDING BY THE MAILING OF COPIES THEREOF BY REGISTERED OR CERTIFIED MAIL, POSTAGE PREPAID, TO THE SUCH PARTY AT ITS ADDRESS FOR NOTICES AS SET FORTH IN SECTION 7 AND TO THE SECRETARY OF STATE OF THE STATE OF NEW YORK, SUCH SERVICE TO BECOME EFFECTIVE TEN (10) DAYS AFTER SUCH MAILING. NOTHING HEREIN SHALL AFFECT THE RIGHT OF SUBORDINATED CREDITORS, THE ADMINISTRATIVE AGENT, COLLATERAL AGENT AND THE LENDERS TO SERVICE OF PROCESS IN ANY OTHER MANNER PERMITTED BY LAW. EACH OF ADMINISTRATIVE AGENT, COLLATERAL AGENT, SUBORDINATED CREDITOR AND BORROWER HEREBY EXPRESSLY AND IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY OBJECTION WHICH IT MAY NOW OR HEREAFTER HAVE TO THE JURISDICTION OR LAYING OF VENUE OF ANY SUCH LITIGATION BROUGHT IN ANY SUCH COURT REFERRED TO IN THE FIRST SENTENCE OF THIS SECTION AND ANY CLAIM THAT ANY SUCH LITIGATION HAS BEEN BROUGHT IN AN INCONVENIENT FORUM. TO THE EXTENT THAT SUBORDINATED CREDITOR OR BORROWER HAS OR HEREAFTER MAY ACQUIRE ANY IMMUNITY FROM JURISDICTION OF ANY COURT OR FROM ANY LEGAL PROCESS (WHETHER THROUGH SERVICE OR NOTICE, ATTACHMENT PRIOR TO JUDGMENT, ATTACHMENT IN AID OF EXECUTION OR OTHERWISE) WITH RESPECT TO ITSELF OR ITS PROPERTY, EACH SUCH PARTY HEREBY IRREVOCABLY WAIVES SUCH IMMUNITY IN RESPECT OF ITS OBLIGATIONS UNDER THIS AGREEMENT.

19. **WAIVER OF RIGHT TO JURY TRIAL.** EACH SUBORDINATED CREDITOR, BORROWER, ADMINISTRATIVE AGENT AND COLLATERAL AGENT HEREBY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM CONCERNING ANY RIGHTS UNDER THIS

ST PAPER 0634

AGREEMENT, OR UNDER ANY AMENDMENT, WAIVER, CONSENT, INSTRUMENT, DOCUMENT OR OTHER AGREEMENT DELIVERED OR WHICH IN THE FUTURE MAY BE DELIVERED IN CONNECTION HEREWITH, OR ARISING FROM THIS AGREEMENT, AND AGREES THAT ANY SUCH ACTION, PROCEEDINGS OR COUNTERCLAIM SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY. EACH SUBORDINATED CREDITOR AND BORROWER HEREBY CERTIFIES THAT NO OFFICER, REPRESENTATIVE, AGENT OR ATTORNEY OF ADMINISTRATIVE AGENT, COLLATERAL AGENT OR ANY LENDER HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT ADMINISTRATIVE AGENT, COLLATERAL AGENT OR ANY LENDER WOULD NOT, IN THE EVENT OF ANY ACTION, PROCEEDING OR COUNTERCLAIM, SEEK TO ENFORCE THE FOREGOING WAIVERS. EACH SUBORDINATED CREDITOR AND BORROWER HEREBY ACKNOWLEDGES THAT THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE ADMINISTRATIVE AGENT AND COLLATERAL AGENT ENTERING INTO THIS AGREEMENT.

[*The remainder of this page is intentionally left blank.*]

ST PAPER 0635

IN WITNESS WHEREOF, the parties hereto have caused this Subordination Agreement to be executed as of the date first above written.

           **OCONTO FALLS TISSUE, INC.**

By: *[signature]*
Name: Ronald H. Van Den Heuvel
Title: President

**ST PAPER, LLC**

By: _____
    Name:
    Title:

**GOLDMAN SACHS CREDIT PARTNERS L.P.**,
as Administrative Agent and Collateral Agent

By: _____
    Authorized Signatory

IN WITNESS WHEREOF, the parties hereto have caused this Subordination Agreement to be executed as of the date first above written.

**OCONTO FALLS TISSUE, INC.**

By:_____
    Name:
    Title:

**ST PAPER, LLC**

By: _/s/ Sharad Tak_____
    Name: Sharad Tak
    Title: President

**GOLDMAN SACHS CREDIT PARTNERS L.P.**, as Administrative Agent and Collateral Agent

By:_____
    Authorized Signatory

IN WITNESS WHEREOF, the parties hereto have caused this Subordination Agreement to be executed as of the date first above written.

**OCONTO FALLS TISSUE, INC.**

By:_____
    Name:
    Title:

**ST PAPER, LLC**

By:_____
    Name:
    Title:

**GOLDMAN SACHS CREDIT PARTNERS L.P.,**
as Administrative Agent and Collateral Agent

By:_____
    Authorized Signatory

BRUCE H. MENDELSOHN
AUTHORIZED SIGNATORY

OFTI Subordination Agreement

ST PAPER 0638