# EXHIBIT F



## PURCHASE AND SALE AGREEMENT FOR DISTRESSED TRADES

### TRANSACTION SPECIFIC TERMS

THIS PURCHASE AND SALE AGREEMENT FOR DISTRESSED TRADES is dated as of the Agreement Date and entered into by and between Seller and Buyer to govern the purchase and sale of the Loans, the Commitments (if any) and the other Transferred Rights, in accordance with the terms, conditions and agreements set forth in the LSTA Standard Terms and Conditions for Purchase and Sale Agreement for Distressed Trades published by the LSTA as of January 12, 2010 (the "Standard Terms"). The Standard Terms are incorporated herein by reference without any modification whatsoever except as otherwise agreed herein by the Parties and as specifically supplemented and modified by the terms and elections set forth in the Transaction Summary and Sections A through I below. The Standard Terms and the Transaction Specific Terms together constitute a single integrated Purchase and Sale Agreement for Distressed Trades governing the Transaction. With respect to the Transaction, the Parties agree to be bound by the Standard Terms and the Transaction Specific Terms set forth herein.

| TRANSACTION SUMMARY | |
|---|---|
| Trade Date: | April 30, 2010 |
| Agreement Date: | April 30, 2010 |
| Seller: | **MACQUARIE BANK LIMITED** |
| Buyer: | **ST PAPER HOLDINGS, LLC** |
| Credit Agreement: | **Credit Agreement, dated as of April 16, 2007, among ST Paper, LLC, as Borrower, the Lenders party thereto from time to time, and Wilmington Trust FSB (as successor to Goldman Sachs Credit Partners L.P.), as Administrative Agent and Collateral Agent** |
| Borrower: | **ST Paper, LLC** |
| Principal Purchase Amount(s): | (a) **$64,350,000.00** |
| | (b) **$5,000,000.00** |
| | (c) **$2,000,000.00** |
| Tranche(s): | (a) **Term Loan** |
| | (b) **Revolving Commitment** |
| | (c) **Protective Loan** |
| CUSIP Number(s), if available: | **N/A** |
| Pre-Settlement Date Accruals Treatment: | ☐ **Settled Without Accrued Interest** <br> ☒ **Trades Flat** |
| Type of Assignment: | ☐ **Original Assignment** |

LSTA EFFECTIVE JANUARY 12, 2010    Copyright © LSTA 2010. All rights reserved.

586047.3/2730-00111

ST PAPER9530

| | ☒ **Secondary Assignment** | |
|---|---|---|
| **Immediate Prior Seller (if any):** | **GSO Special Situations Fund LP**<br>**GSO Special Situations Overseas Master Fund, Ltd.**<br>**GSO Targeted Opportunity Master Partners L.P.**<br>**Canpartners Investments IV, LLC**<br>**Goldman Sachs Lending Partners LLC** | |
| **Borrower in Bankruptcy:** | Yes ☐ | No ☒ |
| **Delivery of Credit Documents:** | Yes ☐ | No ☒ |
| **Netting Arrangements:** | Yes ☐ | No ☒ |
| **Flip Representations:** | Yes ☐[1] | No ☒ |
| **Step-Up Provisions:** | Yes ☐[1] | No ☒ |
| | **Shift Date[2]:   N/A** | |
| **Transfer Notice** | Yes ☐[3] | No ☒ |

## A.   DEFINITIONS

Capitalized terms used in this Agreement shall have the respective meanings ascribed thereto in Section 1 of the Standard Terms, as supplemented by Section A of the Transaction Specific Terms and as otherwise may be provided in other provisions of this Agreement.  Terms defined in the Credit Agreement and not otherwise defined in this Agreement shall have the same meanings in this Agreement as in the Credit Agreement.   Except as otherwise expressly set forth herein, each reference herein to "the Agreement," "this Agreement," "herein," "hereunder" or "hereof" shall be deemed a reference to this Agreement.   If there is any inconsistency between the Transaction Specific Terms and the Standard Terms, the Transaction Specific Terms shall govern and control.

In this Agreement:

"Agent" means Wilmington Trust FSB (as successor to Goldman Sachs Credit Partners L.P.), as Administrative Agent under the Credit Agreement.

---

[1] The Parties cannot specify "Yes" to both "Flip Representations" and "Step-Up Provisions" unless they set forth appropriate modifications in Section I.  Neither "Flip Representations" nor "Step-Up Provisions" applies to original assignments.

[2] Specify the Shift Date only if "Yes" is specified opposite "Step-Up Provisions" and if the second box is selected in the definition of Covered Prior Seller.  The Shift Date is the date published by the LSTA and is that date determined by the LSTA to be the date on which market convention for transferring the Debt shifted from par documentation to distressed documentation (the "Shift Date").  The Parties shall include the Shift Date published by the LSTA, or, if the Shift Date has not been published by the LSTA, either party may request in writing that the LSTA determine whether market convention for transferring the Debt has shifted from par documentation to distressed documentation and, if it so determines, to select and publish the Shift Date.  To submit a Shift Date Request, send a request that includes the name of the Borrower, the title and date of the Credit Agreement, the deal CUSIP (or facility CUSIP, if appropriate), and name of the administrative agent under the Credit Agreement to the LSTA at lstashiftdates@lsta.org.  The Shift Date published by the LSTA shall be binding on the parties.

[3] "Yes" can be elected only if "Yes" is specified opposite "Borrower in Bankruptcy" in the Transaction Summary.

586047.3/2730-00111

ST PAPER9531

"Assignment" means the Assignment Agreement that is in the form specified in the Credit Agreement for an assignment of the Loans and Commitments (if any) and any Required Consents to such assignment.

"Bankruptcy Case" select one:
☒ none.
☐ means [the case under the Bankruptcy Code pending before the Bankruptcy Court in which Borrower is a debtor, In re _____, No. _____].

"Bankruptcy Court" select one:
☒ none.
☐ means [the United States Bankruptcy Court for the _____District of _____ (and, if appropriate, the United States District Court for that District)].

"Bar Date" select one:
☒ not applicable.
☐ none has been set.
☐ means [specify applicable date, if any].

"Buyer Purchase Price" select one:
☒ not applicable.
☐ means the purchase price payable by Buyer to Original Buyer pursuant to the Netting Letter (this applies if there are three (3) parties involved in the netting arrangement).
☐ means the purchase price payable by Buyer to Penultimate Buyer pursuant to the Netting Letter (this applies if there are four (4) or more parties involved in the netting arrangement).

"Commitments" select one:
☐ none.
☒ means Revolving Commitment  in the principal amount of $5,000,000.00, of which $4,960,000.00 are funded Revolving Loans and $40,000.00 are frozen due to the occurrence and continuation of one or more Events of Default.

"Covered Prior Seller" select one:
☒ not applicable.
☐ means each Prior Seller that transferred the Term Loans on or after the Shift Date.

"Filing Date" select one:
☒ none.
☐ means [identify date on which Borrower filed Bankruptcy Case].

"Loans" means Term Loans in the outstanding principal amount of $64,350,000.00, Revolving Loans in the outstanding principal amount of $4,960,000.00 and Protective Loans in the outstanding principal amount of $2,000,000.00.

"Netting Letter" select one:
☒ not applicable.
☐ means that certain Multilateral Netting Agreement in the form currently published by the LSTA dated on or as of the Agreement Date among Seller, Buyer [and] [,] Original Buyer [, Penultimate Buyer] and [describe any other parties to the Netting Letter]].

"Original Buyer" select one:
☒ not applicable.
☐ means [specify original buyer in the netting arrangement].

3

ST PAPER9532

"Penultimate Buyer" select one:
- ☒ not applicable.
- ☐ none ("none" is applicable if there are only three (3) parties involved in the netting arrangement).
- ☐ means [_____].

"Required Consents" means the giving of notice to the Agent and the Borrower and the consent of the Agent.

"Seller Purchase Price" select one:
- ☒ not applicable.
- ☐ means the purchase price payable by Original Buyer to Seller pursuant to the Netting Letter.

"Transfer Fee" means None.

"Unfunded Commitments" means that part of the Commitments that has not been funded in the form of loans, advances, letter of credit disbursements or otherwise under the Credit Agreement, which is in the principal amount of $40,000.00.

4

586047.3/2730-00111

ST PAPER9533

## B.   SECTION 4 (SELLER'S REPRESENTATIONS AND WARRANTIES)

The following specified terms shall apply to the sections referenced in this Section B:

| | Flat Representation | Flip Representation | Step-Up Representation |
|---|---|---|---|
| | If "No" is specified opposite both "Flip Representations" and "Step-Up Provisions" in the Transaction Summary, the following subsections of Section 4 shall apply: | If "Yes" is specified opposite "Flip Representations" in the Transaction Summary, the following subsections of Section 4 shall apply: | If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, the following subsections of Section 4 shall apply: |
| Section 4.1(d) (Title) | Section 4.1(d)(i) | Section 4.1(d)(ii) | Section 4.1(d)(i) |
| Section 4.1(e) (Proceedings) | Section 4.1(e)(i) | Section 4.1(e)(i) | Section 4.1(e)(ii) |
| Section 4.1(f) (Principal Amount) | Section 4.1(f)(i) | Section 4.1(f)(ii) | Section 4.1(f)(i) |
| Section 4.1(g) (Future Funding) | Section 4.1(g)(i) | Section 4.1(g)(ii) | Section 4.1(g)(iii) |
| Section 4.1(h) (Acts and Omissions) | Section 4.1(h)(i) | Section 4.1(h)(i) | Section 4.1(h)(ii) |
| Section 4.1(i) (Performance of Obligations) | Section 4.1(i)(i) | Section 4.1(i)(i) | Section 4.1(i)(ii) |
| Section 4.1(l) (Setoff) | Section 4.1(l)(i) | Section 4.1(l)(i) | Section 4.1(l)(ii) |
| Section 4.1(t) (Consents and Waivers) | Section 4.1(t)(i) | Section 4.1(t)(i) | Section 4.1(t)(ii) |
| Section 4.1(u) (Other Documents) | Section 4.1(u)(i) | Section 4.1(u)(i) | Section 4.1(u)(ii) |
| Section 4.1(v) (Proof of Claim) | Section 4.1(v)(i) | Section 4.1(v)(ii) | Section 4.1(v)(i) |

Section 4.1(k) (Purchase Price); Netting Arrangements.
    If "Yes" is specified opposite Netting Arrangements in the Transaction Summary, Section 4.1(k) shall be amended in its entirety as follows:

        "(k) [intentionally omitted]."[4]

_____

    [4]Seller should add, and Buyer should cause Original Buyer or Penultimate Buyer, as applicable, to add, a comparable representation to the Netting Letter in lieu of this representation.

5

586047.3/2730-00111

ST PAPER9534

Section 4.1(r) (Predecessor Transfer Agreements).

☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to par/near par loans.

☒ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to distressed loans.

☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to both par/near par loans and distressed loans.

☐ not applicable.

Section 4.1(u) (Other Documents).

☒ None.

☐ The following: _____.

Section 4.1(v) (Proof of Claim).

☐ The Proof of Claim was duly and timely filed, on or prior to the Bar Date, by

    ☐ the Agent on behalf of the Lenders.

    ☐ Seller or a Prior Seller.

☐ The Bar Date specified in the Transaction Specific Terms has been set in the Bankruptcy Case and no Proof of Claim has been filed.

☐ No Bar Date has been set in the Bankruptcy Case and no Proof of Claim has been filed.

☒ not applicable.

## C.   SECTION 5 (BUYER'S REPRESENTATIONS AND WARRANTIES)

**C.1**   Section 5.1(n) (Buyer Status).   [Specify Buyer's status for purposes of determining Required Consents, minimum assignment amount requirements or Transfer Fee requirements.]

☒ Buyer is not a Lender.

☐ Buyer is a Lender.

☐ Buyer is an Affiliate [substitute Credit Agreement defined term if different] (as defined in the Credit Agreement) of a Lender.

☐ Buyer is an Approved Fund [substitute Credit Agreement defined term if different] of a Lender.

**C.2**   If "Yes" is specified opposite "Delivery of Credit Documents" in the Transaction Summary, Buyer represents and warrants that it (i) was not a Lender on the Trade Date and (ii) requested copies of the Credit Documents from Seller on or prior to the Trade Date.

## D.   SECTION 6 (INDEMNIFICATION)

Section 6.1 (Seller's Indemnities); Step-Up Indemnities.

(i)   If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's indemnities contained in Section 6.1(b) shall apply (and the alternate indemnities contained in Section 6.1(a) shall not apply).

(ii)   If "No" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's indemnities contained in Section 6.1(a) shall apply (and the alternate indemnities contained in Section 6.1(b) shall not apply).

## E.   SECTION 7 (COSTS AND EXPENSES)

☐ The Transfer Fee shall be paid by Seller to the Agent and the Purchase Price shall be increased by an amount equal to

586047.3/2730-00111

ST PAPER9535

☐ one-half thereof.
☐ other relevant fraction or percentage, _____, thereof.
☐ The Transfer Fee shall be paid by Buyer to the Agent and Buyer shall receive a credit to the Purchase Price equal to
    ☐ one-half thereof.
    ☐ other relevant fraction or percentage, _____, thereof.
☐ The Transfer Fee shall be paid and allocated in the manner specified in the Netting Letter.
☐ The Transfer Fee has been waived by the Agent and, accordingly, no adjustment to the Purchase Price shall be made in respect thereof.
☒ There is no Transfer Fee and, accordingly, no adjustment to the Purchase Price shall be made in respect thereof.

## F.   SECTION 8 (DISTRIBUTIONS; INTEREST AND FEES; PAYMENTS)

**F.1**    Section 8.2 (Distributions); Step-Up Distributions Covenant.

(i)    If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's covenants contained in Section 8.2(b) shall apply (and the alternate covenants contained in Section 8.2(a) shall not apply).

(ii)    If "No" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's covenants contained in Section 8.2(a) shall apply (and the alternate covenants contained in Section 8.2(b) shall not apply).

**F.2**    Section 8.4 (Wire Instructions).

Buyer's Wire Instructions:

[INTENTIONALLY OMITTED]


Seller's Wire Instructions:

Bank of New York Mellon
New York
SWIFT Code IRVTUS3N
ABA Routing Code █████████
Account: █████████
Beneficiary: Macquarie Bank Limited
      SWIFT Code: MACQAU2S
Chips UID: ████████

## G.   SECTION 9 (NOTICES)

Buyer's Address for Notices and Delivery:

ST Paper Holdings, LLC
401 Professional Drive, #110
Gaithersburg, MD 20879

586047.3/2730-00111

ST PAPER9536

<u>Seller's Address for Notices and Delivery:</u>

Macquarie Bank Limited
c/o Macquarie Capital (USA) Inc.
125 West 55th Street
New York, New York  10019
Attention: FICC Credit Sales & Trading, Robert Perdock
Telephone: (212) 231-2338
Facsimile: (212) 231-2399
Electronic mail address:  <u>cagsettsctny@macquarie.com</u>

## H.    SECTION 25 (<u>JUDGMENT CURRENCY</u>)

The exchange rate used for the conversion of amounts in any currency other than the Contractual Currency into amounts in the Contractual Currency shall be determined by reference to quotations from (if no election is made, Seller shall provide the quotations):

☒   Seller, or if Seller does not quote a rate of exchange on such currency, by a known dealer in such currency designated by Seller.
☐   Buyer, or if Buyer does not quote a rate of exchange on such currency, by a known dealer in such currency designated by Buyer.
☐   [name of dealer], or if [name of same dealer as in first blank in this sentence] does not quote a rate of exchange on such currency, by a known dealer in such currency designated by the mutual agreement of the Parties.

## I.    <u>SECTION 27 (ADDITIONAL PROVISIONS)</u>

1.      Buyer acknowledges and agrees that, notwithstanding anything to the contrary herein or in the Assignment, the Transferred Rights do not include the Immediate Prior Sellers' $355,000.00 reimbursement claim against the Borrower.

8

586047.3/2730-00111

ST PAPER9537

IN WITNESS WHEREOF, Seller and Buyer have executed this Agreement by their duly authorized officers or representatives as of the Agreement Date.

SELLER

**MACQUARIE BANK LIMITED**

By:_____

    Name:    Robert Gallivan
    Title:    Division Director

By:_____

    Name:
    Title:    Vincent Basulto
    Associate Director

BUYER

**ST PAPER HOLDINGS, LLC**

By:_____

    Name:  Sharad K. Tak
    Title:   Manager

9

Signature Page Purchase Agreement LSTA

ST PAPER9538

IN WITNESS WHEREOF, Seller and Buyer have executed this Agreement by their duly authorized officers or representatives as of the Agreement Date.

SELLER

**MACQUARIE BANK LIMITED**

By:_____
      Name:
      Title:

By:_____
      Name:
      Title:

BUYER

**ST PAPER HOLDINGS, LLC**

By:_____
      Name:  Sharad K. Tak
      Title:   Manager

9

Signature Page Purchase Agreement LSTA

ST PAPER9539

## ANNEX TO PURCHASE AND SALE AGREEMENT FOR DISTRESSED TRADES

1.    If "Secondary Assignment" is specified opposite "Type of Assignment" in the Transaction Summary, list of Predecessor Transfer Agreements[1] and principal amount, as of the settlement date with respect thereto, of the portion of the Loans and Commitments (if any) thereunder assigned hereby for purposes of Section 4.1(r) and Section 5.1(k)(i) hereof, and designation as to whether such Predecessor Transfer Agreements relate to par/near par loans or distressed loans.

I.    <u>With respect to $8,973,254.07 principal amount of Term Loans, $2,000,000.000 principal amount of Revolving Commitment and $855,000.00 principal amount of Protective Loans assigned hereby</u>:

Purchase and Sale Agreement, dated as of March 25, 2010, between GSO Special Situations Fund LP, as seller, and Macquarie Bank Limited, as buyer, and the related Assignment Agreement of even date therewith [distressed].

<u>With respect to $8,973,254.07 principal amount of Term Loans assigned hereby</u>:

Assignment Agreement, dated as of May 22, 2009, between GSO Domestic Capital Funding LLC, as assignor, and GSO Special Situations Fund LP, as assignee [par/near par]

II.   <u>With respect to $12,499,762.12 principal amount of Term Loans assigned hereby</u>:

Purchase and Sale Agreement, dated as of March 25, 2010, between GSO Special Situations Overseas Master Fund, Ltd., as seller, and Macquarie Bank Limited, as buyer, and the related Assignment Agreement of even date therewith [distressed].

Assignment Agreement, dated as of May 22, 2009, between GSO Offshore Multicurrency Facility (USD), as assignor, and GSO Special Situations Overseas Master Fund, Ltd., as assignee [par/near par]

III.  <u>With respect to $6,246,983.81 principal amount of Term Loans assigned hereby</u>:

Purchase and Sale Agreement, dated as of March 25, 2010, between GSO Targeted Opportunity Master Partners L.P., as seller, and Macquarie Bank Limited, as buyer, and the related Assignment Agreement of even date therewith [distressed].

Assignment Agreement, dated as of December 22, 2009, between GSO Credit Opportunities Fund (Helios) L.P., as assignor, and GSO Targeted Opportunity Master Partners L.P., as assignee [par/near par]

IV.   <u>With respect to $19,800,000.00 principal amount of Term Loans, $1,500,000.000 principal amount of Revolving Commitment and $615,000.00 principal amount of Protective Loans assigned hereby</u>:

---

[1] List (i) any Predecessor Transfer Agreement to which Seller is a party, (ii) any Predecessor Transfer Agreement of Prior Sellers relating to distressed loans delivered to Seller by Immediate Prior Seller and (iii) any Predecessor Transfer Agreement of Prior Sellers relating to par loans listed in any Predecessor Transfer Agreement described in the preceding clause (ii).

Annex-1

586047.3/2730-00111

ST PAPER9540

Purchase and Sale Agreement, dated as of March 25, 2010, between Canpartners Investments IV, LLC, as seller, and Macquarie Bank Limited, as buyer, and the related Assignment Agreement of even date therewith [distressed].

V. <u>With respect to $16,830,000.00 principal amount of Term Loans, $1,500,000.000 principal amount of Revolving Commitment and $530,000.00 principal amount of Protective Loans assigned hereby</u>:

Purchase and Sale Agreement, dated as of March 25, 2010, between Goldman Sachs Lending Partners LLC, as seller, and Macquarie Bank Limited, as buyer, and the related Assignment Agreement of even date therewith [distressed].

Assignment Agreement, dated as of April 3, 2009, between Goldman Sachs Credit Partners L.P., as assignor, and Goldman Sachs Lending Partners LLC, as assignee [par/near par]

2. List of Credit Agreement and any other Credit Documents delivered pursuant to Section 4.1(s) hereof.

N/A.

3. Description of Proof of Claim (if any).[2]

Not applicable.

4. Description of Adequate Protection Order (if any).[2]

Not applicable.

5. List any exceptions to Section 4.1(w) (<u>Notice of Impairment</u>).

None.

6. The amount of any PIK Interest that accreted to the principal amount of the Loans on or after the Trade Date but on or prior to the Settlement Date is $0.00.

---

[2] May apply only if "Yes" is specified opposite "Borrower in Bankruptcy" in the Transaction Summary.

Annex-1

586047.3/2730-00111

ST PAPER9541