# EXHIBIT I

<u>BORROWER ID FORM</u>

**First Name:** Ronald          **Last Name:** Van Den Heuvel

**SS#:** ▮▮▮▮▮▮▮▮          **DOB:** ▮▮▮▮▮▮▮▮

**Home Address:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮

**Cell Phone** 920-217-7234  **Work Phone** 920-347-3838

**Email** rvdh@greenboxna.com

<u>Proof of ID:</u>  Must be current and remain active for the term of the agreement and legible

(a copy of ID must be attached)

- ☒ Drivers License  #: ▮▮▮▮▮▮▮▮
- ☐ Passport  #:
- ☐ Government Issued ID  #:
- ☐ Other: _____  #:

**Borrower Signature:** X _____  **Date:** 12-10-13

STATE OF Wisconsin                )
                                                      ) SS:
COUNTY OF Brown                 )

On this 10th day of December, 2013, before me personally appeared Ronald H. Van Den Heuvel,

he/she provided appropriate proof of identity and with full power and authority executed the foregoing instrument.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal the day and year first written above.

Debra S. Stary
Notary Public

My Commission Expires: 2/16/14

AIC000001

Photo Copy of ID
(must be legible)

Borrower Name: Ronald Van Den Heuvel





(SPACE ABOVE THIS LINE FOR RECORDER'S USE)

This instrument prepared by
and after recording return to:
Michael L. Helt
Michael L. Helt, P.C.
1609 NW Rust Road
Grain Valley, Missouri 64029

Tax Parcel Number: WD-1042

## MORTGAGE AND SECURITY AGREEMENT

THIS MORTGAGE AND SECURITY AGREEMENT (the "Mortgage"), is made as of the *10th* day of December, 2013 between GREEN BOX NA GREEN BAY, LLC, a Wisconsin limited liability company, 2077B Lawrence Drive, De Pere, Wisconsin 54115 ("Mortgagor") in favor of MAPLE BRIDGE FUNDING, LLC, a Wyoming limited liability company, 55 N Water Street, Ste. 3, South Norwalk, Connecticut 06854 ("Mortgagee").

WITNESSETH, That Mortgagor, in consideration of the indebtedness herein mentioned, does hereby grant, convey, mortgage and warrant unto Mortgagee forever, with power of sale and right of entry and possession, the following property (herein referred to as the "Property"):

A.    The land in the County of Brown, State of Wisconsin described in Exhibit "A" attached hereto and incorporated herein (the "Land");

B.    All easements, appurtenances, tenements and hereditaments belonging to or benefiting the Land, including, but not limited to, all waters, water rights, water courses, all ways, trees, rights, liberties and privileges;

1

AIC000003

C.     All improvements to the Land, including, but not limited to, all buildings, structures and improvements now existing or hereafter erected on the Land; all fixtures and equipment of every description belonging to Mortgagor which are or may be placed or used upon the Land or attached to the buildings, structures or improvements, including, but not limited to, all engines, boilers, elevators and machinery, all heating apparatus, electrical equipment, air conditioning and ventilating equipment, water and gas fixtures, and all furniture and easily removable equipment, all of which, to the extent permitted by applicable law, shall be deemed an accession to the freehold and part of the realty as between the parties hereto; and

D.     Mortgagor's interest in all articles of personal property of every kind and nature whatsoever, including, but not limited to, all carpeting, draperies, ranges, microwave ovens, refrigerators, dishwashers, dehumidification equipment, now or hereafter located upon the Land or in or on the buildings and improvements and now owned or leased or hereafter acquired or leased by Mortgagor.

Mortgagor agrees not to sell, transfer, assign or remove anything described in paragraphs B, C and D above now or hereafter located on the Land without prior written consent from Mortgagee unless (i) such action does not constitute a sale or removal of any buildings or structures or the sale or transfer of water or water rights and (ii) such action results in the substitution or replacement with similar items of equal value.

Without limiting the foregoing grants, Mortgagor hereby pledges to Mortgagee, and grants to Mortgagee, a security interest in, all of Mortgagor's present and hereafter acquired right, title and interest in and to the Property and any and all

E.     cash and other funds now or at any time hereafter deposited by or for Mortgagor on account of tax, special assessment, replacement or other reserves required to be maintained pursuant to the Loan Documents (as hereinafter defined) with Mortgagee or a third party, or otherwise deposited with, or in the possession of, Mortgagee pursuant to the Loan Documents;

F.     surveys, soils reports, environmental reports, guaranties, warranties, architect's contracts, construction contracts, drawings and specifications, applications, permits, surety bonds and other contracts relating to the acquisition, design, development, construction and operation of the Property;

G.     accounts, chattel paper, deposit accounts, instruments, equipment, inventory, documents, general intangibles, letter-of-credit rights, investment property and all other personal property of Mortgagor, in each case, to the extent associated with or arising from the ownership, development, operation, use or disposition of any portion of the Property; and

AIC000004

H.      present and future rights to condemnation awards, insurance proceeds or other proceeds at any time payable to or received by Mortgagor on account of the Property or any of the foregoing personal property.

All personal property hereinabove described is hereinafter referred to as the "Personal Property".

If any of the Property is of a nature that a security interest therein can be perfected under the Uniform Commercial Code, this Mortgage shall constitute a security agreement and financing statement if permitted by applicable law and Mortgagor authorizes Mortgagee to file a financing statement describing such Property and, at Mortgagee's request, agrees to join with Mortgagee in the execution of any financing statements and to execute any other instruments that may be necessary or desirable, in Mortgagee's determination, for the perfection or renewal of such security interest under the Uniform Commercial Code.

TO HAVE AND TO HOLD the same unto Mortgagee for the purpose of securing

A.      Payment to the order of Mortgagee of the indebtedness evidenced by that certain promissory note of even date herewith (and any restatement, extension or renewal thereof and any amendment thereto) executed by Mortgagor to Mortgagee in the principal sum of Seven Million One Hundred Fifty Thousand and 00/100 Dollars ($7,150,000.00), with full maturity no later than June 1, 2015 and with interest as therein expressed (which promissory note, as such instrument may be amended, restated, renewed and extended, is hereafter referred to as the "Note"), it being recognized the funds may not have been fully advanced as of the date hereof, but may be advanced in the future in accordance with the terms of a written contract;

B.      Payment of all sums that may become due Mortgagee under the provisions of, and the performance of each agreement of Mortgagor contained in, the Loan Documents

"Loan Documents" means this Mortgage, the Note, that certain Absolute Assignment of Leases and Rents of even date herewith from Mortgagor to Mortgagee, the Conditional Commitment Letter dated November 10, 2013 from Mortgagee to Mortgagor and accepted by Mortgagor on November 12, 2013, that certain Certification of even date herewith from Mortgagor to Mortgagee and any other supplements and authorizations required by Mortgagee and any other agreement entered into or document executed by Mortgagor and delivered to Mortgagee in conjunction with the transaction contemplated hereby, except for that certain Environmental Indemnity Agreement of even date herewith given by Mortgagor and Ronald H. Van Den Heuvel to Mortgagee, as the same now exist or may hereafter be amended, modified, supplemented, extended, renewed, restated or replaced.

3

AIC000005

PROVIDED, HOWEVER, that if and when Mortgagor has paid all of the indebtedness evidenced by the Note and performed and observed all of the agreements, terms, conditions, provisions, and warranties relating to the Loan Documents, this Mortgage and the estate, right, and interest of Mortgagee in and to the Property shall cease and be released at the cost of Mortgagor, but otherwise, shall remain in full force and effect. Mortgagee shall be entitled to charge a reasonable release fee.

TO PROTECT THE SECURITY OF THIS MORTGAGE, MORTGAGOR COVENANTS AND AGREES:

**Payment of Debt**.  Mortgagor agrees to pay the indebtedness hereby secured (the "Indebtedness") promptly and in full compliance with the terms of the Loan Documents.

**Ownership**.  Mortgagor represents that it owns the Property and has good and lawful right to convey the same and that the Property is free and clear from any and all encumbrances whatsoever, except as appears in the title evidence accepted by Mortgagee.  Mortgagor does hereby forever warrant and shall forever defend the title and possession thereof against the lawful claims of any and all persons whomsoever.

**Use of Chlorinated Solvents**.  Mortgagor agrees not to allow the use or storage of chlorinated solvents on the Property.  Notwithstanding the foregoing, over-the-counter products in household quantities are excepted from this prohibition.

**Business Restriction Representation and Warranty**.  Mortgagor represents and warrants Mortgagor, all persons and entities owning (directly or indirectly) an ownership interest in Mortgagor, all guarantors of all or any portion of the Indebtedness, and all persons and entities executing any separate indemnity agreement in favor of Mortgagee in connection with the Indebtedness: (i) is not, and shall not become, a person or entity with whom Mortgagee is restricted from doing business under regulations of the Office of Foreign Assets Control ("OFAC") of the Department of the Treasury (including, but not limited to, those named on OFAC's Specially Designated Nationals and Blocked Persons list) or under any statute, executive order (including, but not limited to, the September 24, 2001 Executive Order Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism), or other governmental action; (ii) is not, and shall not become, a person or entity with whom Mortgagee is restricted from doing business under the International Money Laundering Abatement and Financial Anti-Terrorism Act of 2001 or the regulations or orders thereunder; and (iii) is not knowingly engaged in, and shall not knowingly engage in, any dealings or transaction or be otherwise associated with such person or entities described in (i) or (ii) above.

**Maintenance of Property and Compliance with Laws**.  Mortgagor agrees to keep the buildings and other improvements now or hereafter erected on the Land in good condition and repair; not to commit or suffer any waste; to comply with all laws, rules and regulations affecting the Property; and to permit Mortgagee to enter at all reasonable times for the purpose of inspecting and of conducting, in a reasonable and proper manner, such tests as

AIC000006

Mortgagee determines to be necessary in order to monitor Mortgagor's compliance with applicable laws and regulations regarding hazardous materials affecting the Property.

**Insurance**. Mortgagor agrees to keep the Property insured for the protection of Mortgagee in such manner, in such amounts and in such companies as Mortgagee may from time to time approve, and to keep the policies therefor, properly endorsed, on deposit with Mortgagee, or at Mortgagee's option, to keep evidence of insurance acceptable to Mortgagee evidencing all insurance coverages required hereunder on deposit with Mortgagee, which evidence shall reflect at least thirty (30) days' notice of cancellation to Mortgagee and shall list Mortgagee as the certificate holder or as a similar additional interest with Mortgagee's correct mailing address; if Mortgagor requests Mortgagee to accept a different form of evidence of insurance, Mortgagee shall not unreasonably withhold its consent, provided, a copy of a standard mortgagee endorsement in favor of Mortgagee stating the insurer shall provide at least thirty (30) days' notice of cancellation to Mortgagee accompanies such evidence. Mortgagor shall furnish Mortgagee with renewals of all applicable insurance evidence no later than the actual expiration date.

If the Property shall be damaged or destroyed, in whole or in part, by fire or other casualty, Mortgagor shall give prompt written notice thereof to Mortgagee. Following the occurrence of a casualty, Mortgagor, regardless of whether sufficient insurance proceeds are available, shall promptly proceed to restore, repair, replace or rebuild the improvements on the Property to be of at least equal value and of substantially the same character as prior to such damage or destruction, all to be effected in accordance with applicable law; provided, however, that Mortgagee shall permit Mortgagor to apply all such available insurance loss proceeds (less expenses of collection) to the restoration of the Property unless there is an Event of Default (as hereinafter defined) under the Loan Documents in which case Mortgagee shall not be obligated to permit Mortgagor to apply all such available insurance loss proceeds to the restoration of the Property. All insurance loss proceeds (less expenses of collection) shall, at Mortgagee's option, be applied on the Indebtedness, whether due or not, or to the restoration of the Property, or be released to Mortgagor, but such application or release shall not cure or waive any default under any of the Loan Documents. If Mortgagee elects to apply the insurance loss proceeds on the Indebtedness, no prepayment fee, if any, shall be due thereon.

Notwithstanding the foregoing provision, Mortgagee agrees if the amount necessary to restore the Property to its condition prior to the casualty is less than Four Million Dollars ($4,000,000.00), then the insurance loss proceeds shall be applied to the restoration of the Property, subject to satisfaction of the following conditions:

    (i)      There is no existing Event of Default at the time of casualty;

    (ii)     The casualty insurer has not denied liability for payment of insurance loss proceeds to Mortgagor as a result of any act, neglect, use or occupancy of the Property by Mortgagor or any tenant of the Property;

    (iii)    Mortgagee shall be satisfied all insurance loss proceeds so held, together with supplemental funds to be made available by Mortgagor, shall be

AIC000007

sufficient to complete the restoration of the Property (any remaining insurance loss proceeds may, at the option of Mortgagee, be applied on the Indebtedness, whether or not due, or be released to Mortgagor);

(iv)   If required by Mortgagee, Mortgagee shall be furnished a satisfactory report addressed to Mortgagee from an environmental engineer or other qualified professional satisfactory to Mortgagee to the effect no adverse environmental impact to the Property resulted from the casualty;

(v)   Mortgagee shall release insurance loss proceeds as restoration of the Property progresses provided Mortgagee is furnished satisfactory evidence of the costs of restoration and if, at the time of such release, no Event of Default shall then exist with respect to which Mortgagee shall have given Mortgagor notice pursuant to the "**Notice of Default**" provision herein. If an Event of Default shall then exist, Mortgagee shall have no further obligation to release insurance loss proceeds hereunder unless such default is cured within the cure period set forth in the "**Notice of Default**" provision contained herein. If the estimated cost of restoration exceeds Two Hundred Fifty Thousand Dollars ($250,000.00), then (a) the drawings and specifications for the restoration shall be approved by Mortgagee in writing prior to commencement of the restoration, and (b) Mortgagee shall receive an administration fee equal to one-half of one percent (1/2%) of the cost of restoration;

(vi)   Prior to each release of funds, Mortgagor shall obtain for the benefit of Mortgagee an endorsement to Mortgagee's title insurance policy insuring Mortgagee's lien as a first and valid lien on the Property subject only to liens and encumbrances theretofore approved by Mortgagee;

(vii)   Mortgagor shall pay all costs and expenses incurred by Mortgagee, including, but not limited to, outside legal fees, title insurance costs, third-party disbursement fees, third-party engineering reports and inspections deemed necessary by Mortgagee;

(viii)   All reciprocal easement and operating agreements benefiting the Property, if any, shall remain in full force and effect between the parties thereto on and after restoration of the Property; and

(ix)   Mortgagee shall be satisfied, in its sole discretion, the Property can be repaired to its condition immediately prior to the casualty.

**Condemnation.** Mortgagor hereby assigns to Mortgagee (i) any award and any other proceeds resulting from damage to, or the taking of, all or any portion of the Property in connection with condemnation proceedings or the exercise of a power of eminent domain and (ii) the proceeds from any sale or transfer in lieu thereof. Any award or any other proceeds (less expenses of collection) received by Mortgagee as a result of such taking shall, at Mortgagee's option, be applied on the Indebtedness, whether due or not, or to the

AIC000008

restoration and rebuilding of the Property, or be released to Mortgagor, but such application or release shall not cure or waive any default under any of the Loan Documents. If Mortgagee elects to apply the award or other proceeds on the Indebtedness, no prepayment privilege fee, if any, shall be due thereon.

**Taxes and Special Assessments**. Mortgagor agrees to pay before delinquency all taxes and special assessments of any kind that have been or may be levied or assessed against the Property, this Mortgage, the Note or the Indebtedness, or upon the interest of Mortgagee in the Property, this Mortgage, the Note or the Indebtedness, and to procure and deliver to Mortgagee, within thirty (30) days after Mortgagee shall have given a written request therefor to Mortgagor, the official receipt of the proper officer showing timely payment of all such taxes and assessments; provided, however, that Mortgagor shall not be required to pay any such taxes or special assessments if the amount, applicability or validity thereof shall currently be contested in good faith by appropriate proceedings and funds sufficient to satisfy the contested amount have been deposited in an escrow satisfactory to Mortgagee.

**Personal Property**.

With respect to the Personal Property, Mortgagor hereby represents, warrants and covenants as follows:

A.  Except for the security interest granted hereby, Mortgagor is, and as to portions of the Personal Property to be acquired after the date hereof will be, the sole owner of the Personal Property, free from any lien, security interest, encumbrance or adverse claim thereon of any kind whatsoever. Mortgagor shall notify Mortgagee of, and shall indemnify and defend Mortgagee and the Personal Property against, all claims and demands of all persons at any time claiming the Personal Property or any part thereof or any interest therein.

B.  Except as otherwise provided above, Mortgagor shall not lease, sell, convey or in any manner transfer the Personal Property without the prior consent of Mortgagee.

C.  Mortgagor is a limited liability company organized under the laws of the State of Wisconsin. Until the Indebtedness is paid in full, Mortgagor (i) shall not change its legal name without providing Mortgagee with thirty (30) days' prior written notice; (ii) shall not change its state of organization; and (iii) shall preserve its existence and shall not, in one transaction or a series of transactions, merge into or consolidate with any other entity.

D.  At the request of Mortgagee, Mortgagor shall join Mortgagee in executing one or more financing statements and continuations and amendments thereof pursuant to the Uniform Commercial Code of the jurisdiction in which the Property is located in form satisfactory to Mortgagee, and Mortgagor shall pay the cost of filing the same in all public offices wherever

7

AIC000009

filing is deemed by Mortgagee to be necessary or desirable. Mortgagor shall also, at Mortgagor's expense, take any and all other action requested by Mortgagee to perfect Mortgagee's security interest under the Uniform Commercial Code with respect to the Personal Property, including, without limitation, exercising Mortgagor's best efforts to obtain any consents, agreements or acknowledgments required of third parties to perfect Mortgagee's security interest in Personal Property consisting of deposit accounts, letter-of-credit rights, investment property and electronic chattel paper.

**Other Liens**. Mortgagor agrees to keep the Property and any Personal Property free from all other liens either prior or subsequent to the lien created by this Mortgage. The (i) creation of any other lien on any portion of the Property or on any Personal Property, whether or not prior to the lien created hereby, (ii) assignment or pledge by Mortgagor of its revocable license to collect, use and enjoy rents and profits from the Property, or (iii) granting or permitting of a security interest in or other encumbrance on the direct or indirect ownership interests in Mortgagor, shall constitute a default under the terms of this Mortgage.

**Indemnification, Duty to Defend and Costs, Fees and Expenses**. In addition to any other indemnities contained in the Loan Documents, Mortgagor shall indemnify, defend and hold Mortgagee harmless from and against any and all losses, liabilities, claims, demands, damages, costs and expenses (including, but not limited to, costs of title evidence and endorsements to Mortgagee's title insurance policy with respect to the Property and reasonable attorneys' fees and other costs of defense) which may be imposed upon, incurred by or asserted against Mortgagee, whether or not any legal proceeding is commenced with regard thereto, in connection with: (i) the enforcement of any of Mortgagee's rights or powers under the Loan Documents; (ii) the interpretation of any of the terms and conditions of the Loan Documents; (iii) the protection of Mortgagee's interest in the Property; or (iv) any accident, injury to or death of persons or loss of or damage to property occurring in, on or about the Property or on any sidewalk, curb, parking area, space or street located adjacent thereto. If any claim or demand is made or asserted against Mortgagee by reason of any event as to which Mortgagor is obligated to indemnify or defend Mortgagee, then, upon demand by Mortgagee, Mortgagor, at Mortgagor's sole cost and expense, shall defend such claim, action or proceeding in Mortgagee's name, if necessary, by such attorneys as Mortgagee shall approve. Notwithstanding the foregoing, Mortgagee may, in Mortgagee's sole discretion, engage its own attorneys to defend it or assist in its defense and Mortgagor shall pay the reasonable fees and disbursements of such attorneys.

**Failure of Mortgagor to Act**. If Mortgagor fails to make any payment or do any act as herein provided, Mortgagee may, without obligation to do so, without notice to or demand upon Mortgagor and without releasing Mortgagor from any obligation hereof: (i) make or do the same in such manner and to such extent as Mortgagee may deem necessary to protect the security hereof, Mortgagee being authorized to enter upon the Property for such purpose; (ii) to appear in and defend any action or proceeding purporting to affect the

8

AIC000010

security hereof, or the rights or powers of Mortgagee; (iii) pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of Mortgagee appears to be prior or superior hereto; and (iv) in exercising any such powers, pay necessary expenses, employ counsel and pay its reasonable fees. Sums so expended and all losses, liabilities, claims, damages, costs and expenses required to be reimbursed by Mortgagor to Mortgagee hereunder shall be payable by Mortgagor immediately upon demand with interest from the date of expenditure or demand, as the case may be, at the Default Rate (as defined in the Note). All sums so expended by Mortgagee and the interest thereon shall be included in the Indebtedness and secured by the lien of this Mortgage.

**Event of Default**. Any default by Mortgagor in making any required payment of the Indebtedness or any default in any provision, covenant, agreement, warranty or certification contained in any of the Loan Documents shall, except as provided in the two (2) immediately succeeding paragraphs, constitute an "Event of Default".

**Notice of Default**. A default in any payment required in the Note or any other Loan Document, whether or not payable to Mortgagee (a "Monetary Default") shall not constitute an Event of Default unless Mortgagee shall have given a written notice of such Monetary Default to Mortgagor and Mortgagor shall not have cured such Monetary Default by payment of all amounts in default (including payment of interest at the Default Rate, as defined in the Note, from the date of default to the date of cure on amounts owed to Mortgagee) within five (5) business days after the date on which Mortgagee shall have given such notice to Mortgagor.

Any other default under the Note or under any other Loan Document (a "Non-Monetary Default") shall not constitute an Event of Default unless Mortgagee shall have given a written notice of such Non-Monetary Default to Mortgagor and Mortgagor shall not have cured such Non-Monetary Default within thirty (30) days after the date on which Mortgagee shall have given such notice of default to Mortgagor (or if the Non-Monetary Default is not curable within such 30-day period, Mortgagor shall not have diligently undertaken and continued to pursue the curing of such Non-Monetary Default and deposited an amount sufficient to cure such Non-Monetary Default in an escrow account satisfactory to Mortgagee).

In no event shall the notice and cure period provisions recited above constitute a grace period for the purpose of commencing interest at the Default Rate (as defined in the Note).

**Appointment of Receiver**. Upon commencement of any proceeding to enforce any right under this Mortgage, including foreclosure thereof, Mortgagee (without limitation or restriction by any present or future law, without regard to the solvency or insolvency at that time of any party liable for the payment of the Indebtedness, without regard to the then value of the Property, whether or not there exists a threat of imminent harm, waste or loss to the Property and whether the same shall then be occupied by the owner of the equity of redemption as a homestead) shall have the absolute right to the appointment of a receiver of the Property and of the revenues, rents, profits and other income therefrom, and said

9

receiver shall have (in addition to such other powers as the court making such appointment may confer) full power to collect all such income and, after paying all necessary expenses of such receivership and of the operation, maintenance and repair of said Property, to apply the balance to the payment of any of the Indebtedness then due.

**Foreclosure.** Upon the occurrence of an Event of Default, the entire unpaid Indebtedness shall, at the option of Mortgagee, become immediately due and payable for all purposes without any notice or demand, except as required by law, (ALL OTHER NOTICE OF THE EXERCISE OF SUCH OPTION, OR THE INTENT TO EXERCISE SUCH OPTION, BEING HEREBY EXPRESSLY WAIVED), and Mortgagee may, in addition to exercising any rights it may have with respect to the Personal Property under the Uniform Commercial Code of the jurisdiction in which the Property is located, institute proceedings in any court of competent jurisdiction to foreclose this Mortgage as a mortgage, or to enforce any of the covenants hereof, or Mortgagee may, to the extent permitted by applicable law, either personally or by agent or attorney in fact, enter upon and take possession of the Property and may manage, rent or lease the Property or any portion thereof upon such terms as Mortgagee may deem expedient, and collect, receive and receipt for all rentals or other income therefrom and apply the sums so received as hereinafter provided in case of sale. Mortgagee is hereby further authorized and empowered to the extent permitted by applicable law, as agent or attorney in fact, either after or without such entry, to sell and dispose of the Property en masse or in separate parcels (as Mortgagee may think best), and all the right, title and interest of Mortgagor therein, by advertisement or in any manner provided by applicable law, (MORTGAGOR HEREBY EXPRESSLY WAIVES ANY RIGHT TO A HEARING PRIOR TO SUCH SALE TO THE EXTENT PERMITTED BY APPLICABLE LAW), and to issue, execute and deliver a deed of conveyance, all as then may be provided by applicable law; and Mortgagee, to the extent permitted by applicable law, shall, out of the proceeds or avails of such sale, after first paying and retaining all fees, charges, costs of advertising the Property and of making said sale, and attorneys' fees as herein provided, apply such proceeds to the Indebtedness, including all sums advanced or expended by Mortgagee or the legal holder of the Indebtedness, with interest from the date of advance or expenditure at the Default Rate (as defined in the Note), rendering the excess, if any, as provided by law; such sale or sales and said deed or deeds so made shall be a perpetual bar, both in law and equity, against Mortgagor, the heirs, successors and assigns of Mortgagor, and all persons claiming the Property aforesaid, or any part thereof, by, from, through or under Mortgagor. The legal holder of the Indebtedness may purchase the Property or any part thereof, and it shall not be obligatory upon any purchaser at any such sale to see to the application of the purchase money. Mortgagor agrees in the event of the foreclosure of this Mortgage, Mortgagor will be bound by the applicable provisions of Sections 846.101, 846.102 and 846.103 of the Wisconsin Statutes or any similar successor statute.

**Prohibition on Transfer.** The present ownership and management of the Property is a material consideration to Mortgagee in making the loan secured by this Mortgage, and Mortgagor shall not (i) convey title to all or part of the Property; (ii) enter into any contract to convey (land contract/installment sales contract/contract for deed) title to all or any part of the Property which gives a purchaser possession of, or income from, the Property prior

10

AIC000012

to a transfer of title to all or any part of the Property ("Contract to Convey"); or (iii) cause or permit a Change in the Proportionate Ownership (as hereinafter defined) of Mortgagor. Any such conveyance, entering into a Contract to Convey or Change in Proportionate Ownership of Mortgagor shall constitute a default under the terms of this Mortgage.

"Change in Proportionate Ownership" means in the case of a limited liability company, a change in, or the existence of a lien on, the direct or indirect ownership of the limited liability company interests of Mortgagor; any transfer of direct or indirect ownership interest of Mortgagor; or any change in the manager of Mortgagor which has not been pre-approved by Mortgagee.

Notwithstanding the foregoing provision, a Change in Proportionate Ownership shall not be deemed to have occurred provided Environmental Advanced Reclamation Technology HQ, LLC, RVDH Development, LLC, Glen Arbor, LLC and/or AKS Green, LLC continue to own a controlling interest in Mortgagor which, for purposes hereof, shall constitute ownership of more than eighty percent (80%) of the membership interests of Mortgagor in the aggregate.

**Financial Statements**.  Mortgagor shall furnish to Mortgagee:

(i)     an unaudited income statement and balance sheet for Mortgagor as of the last day of Mortgagor's most recently closed fiscal year within forty-five (45) days following the close of such fiscal year;

(ii)    an unaudited income statement and balance sheet for Mortgagor as of the last day of Mortgagor's most recently closed fiscal quarter within thirty (30) days following the close of such quarter;

(iii)   a copy of Mortgagor's federal income tax return filed with the Internal Revenue Service within ten (10) days following the filing of such return;

(iv)    a copy of any extension filed with the Internal Revenue Service for Mortgagor's federal income tax return within ten (10) days following the filing of such extension;

(v)     Mortgagor shall further cause to be provided to Mortgagee a financial statement for any guarantor of the Indebtedness within thirty (30) days following request by Mortgagee; and

(vi)    such other reasonable financial and management information in the possession of, or accessible to, Mortgagor which Mortgagee determines to be useful in Mortgagee's monitoring the value and condition of the Property, Mortgagor or any guarantor.

**Property Management**.  Any management company for the Property shall be satisfactory to Mortgagee.  Any change in the management company without the prior written consent

11

AIC000013

of Mortgagee, which shall not be unreasonably withheld, shall constitute a default under this Mortgage.

**Compliance With Water Regulations**.  Mortgagor agrees to abide by all the statutes of the jurisdiction in which the Property is located and the rules and regulations of any and all federal, state and local authority having jurisdiction over the use and distribution of water or water resources, and shall not transfer, sell, assign or relinquish the water rights now held or hereafter acquired covering the Property without the written consent of Mortgagee.

**Deposits by Mortgagor**. To assure the timely payment of real estate taxes and special assessments (including personal property taxes, if appropriate), upon the occurrence of an Event of Default, Mortgagee shall thence forth have the option to require Mortgagor to deposit funds with Mortgagee, in monthly or other periodic installments in amounts estimated by Mortgagee from time to time sufficient to pay real estate taxes and special assessments as they become due.  If at any time the funds so held by Mortgagee shall be insufficient to pay any of said expenses, Mortgagor shall, upon receipt of notice thereof, immediately deposit such additional funds as may be necessary to remove the deficiency. All funds so deposited shall be irrevocably appropriated to Mortgagee to be applied to the payment of such real estate taxes and special assessments and, at the option of Mortgagee after an Event of Default, the Indebtedness.

**Modification of Terms**.  Without affecting the liability of Mortgagor or any other person (except any person expressly released in writing) for payment of the Indebtedness or the performance of any obligation contained herein and without affecting the rights of Mortgagee with respect to any security not expressly released in writing, Mortgagee may, at any time and from time to time, either before or after the maturity of the Note, without notice or consent: (i) release any person liable for payment of all or any part of the Indebtedness or for performance of any obligation; (ii) make any agreement extending the time or otherwise altering the terms of payment of all or any part of the Indebtedness, or modifying or waiving any obligation, or subordinating, modifying or otherwise dealing with the lien or charge hereof; (iii) exercise or refrain from exercising or waive any right Mortgagee may have; (iv) accept additional security of any kind; (v) release or otherwise deal with any property, real or personal, securing the Indebtedness, including all or any part of the Property.

**Exercise of Option**.  Whenever, by the terms of this Mortgage, of the Note or any of the other Loan Documents, Mortgagee is given any option, such option may be exercised when the right accrues or at any time thereafter, and no acceptance by Mortgagee of payment of Indebtedness in default shall constitute a waiver of any default then existing and continuing or thereafter occurring.

**Nature and Succession of Agreement**. Each of the provisions, covenants and agreements contained herein shall inure to the benefit of, and be binding on, the heirs, executors, administrators, successors, grantees, and assigns of the parties hereto, respectively, and the term "Mortgagee" shall include the owner and holder of the Note.

12

AIC000014

**Legal Enforceability**.  No provision of this Mortgage, the Note or any other Loan Document shall require the payment of interest or other obligation in excess of the maximum permitted by law.  If any applicable state law or applicable United States federal law (to the extent that it permits Mortgagee to contract for, charge, take, reserve or receive a greater amount of interest than under state law) is ever judicially interpreted so as to render usurious any amount called for under this Mortgage, the Note or under any other Loan Document, or contracted for, charged, taken, reserved or received with respect to the Indebtedness secured by this Mortgage and evidenced by the Note or any other Loan Document, or if Mortgagee's exercise of the option to accelerate the maturity of the Note, or if any prepayment by Mortgagor results in Mortgagor having paid any interest in excess of that permitted by applicable law, then all excess amounts theretofore collected by Mortgagee shall be credited on the principal balance of the Note (or, if the Note has been or would thereby be paid in full, refunded to Mortgagor), and the provisions of this Mortgage, the Note and the other Loan Documents shall  immediately be deemed reformed and the amounts thereafter collectible reduced, without the necessity of the execution of any new document, so as to comply with applicable law, but so as to permit the recovery of the fullest amount otherwise called for hereunder and thereunder.  All sums paid or agreed to be paid to Mortgagee for the use, forbearance and detention of the Indebtedness secured by this Mortgage and evidenced by the Note and the Loan Documents shall, to the extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full term of such Indebtedness until payment in full so that the rate or amount of interest on account of such Indebtedness does not exceed the maximum rate permitted under applicable law from time to time in effect and applicable to the Indebtedness secured by this Mortgage and evidenced by the Note for so long as such Indebtedness remains outstanding.  Notwithstanding anything to the contrary contained in this Mortgage, the Note or the Loan Documents, it is not the intention of Mortgagee to accelerate the maturity of any interest that has not accrued at the time of such acceleration or to collect unearned interest at the time of such acceleration.

**Limitation of Liability**.  Notwithstanding any provision contained herein to the contrary, the personal liability of Mortgagor shall be limited as prescribed in the Note.

**Further Assurances**.  Mortgagor will keep the lien of this Mortgage valid and unimpaired.  Mortgagor will promptly (and in no event later than thirty (30) days after written notice from Mortgagee is received) cure any defects in the creation, execution and delivery of this Mortgage and the other Loan Documents.  Mortgagor at its expense will promptly execute and deliver to Mortgagee upon request all such other and further documents, agreements and instruments in compliance with or accomplishment of the covenants and agreements of Mortgagor in this Mortgage and the other Loan Documents or to further evidence and more fully describe the Property or more fully state the security obligations set out herein, or to perfect, protect or preserve any liens created pursuant to this Mortgage, or to make any recordings, to file any notices, or obtain any consents as may be necessary or appropriate in connection with the transactions contemplated by this Mortgage.

AIC000015

**Miscellaneous**.  Time is of the essence in each of the Loan Documents.  The remedies of Mortgagee as provided herein or in any other Loan Document or at law or in equity shall be cumulative and concurrent, and may be pursued singly, successively, or together at the sole discretion of Mortgagee, and may be exercised as often as occasion therefor shall occur; and neither the failure to exercise any such right or remedy nor any acceptance by Mortgagee of payment of Indebtedness in default shall in any event be construed as a waiver or release of any right or remedy.  Neither this Mortgage nor any other Loan Document may be modified or terminated orally but only by agreement or discharge in writing and signed by Mortgagor and Mortgagee.  If any of the provisions of any Loan Document or the application thereof to any persons or circumstances shall to any extent be invalid or unenforceable, the remainder of such Loan Document and each of the other Loan Documents and the application of such provision or provisions to persons or circumstances other than those as to whom or which it is held invalid or unenforceable, shall not be affected thereby, and every provision of each of the Loan Documents shall be valid and enforceable to the fullest extent permitted by law.

**Notice**.  Any notice required or provided for herein shall be in writing and shall be delivered personally or sent by certified mail or reputable courier service with charges prepaid, to the address for Mortgagor and Mortgagee set forth on the first page of this Mortgage or at such other address as either Mortgagor or Mortgagee shall designate by written notice as provided in this paragraph.  Notice shall be deemed given on the date received.  Any notice which is rejected, the acceptance of which is refused or which is incapable of being delivered during normal business hours at the address provided herein or such other address designated pursuant hereto shall be deemed received as of the date of the attempted delivery.

**Waiver of Jury Trial**.  Mortgagor hereby waives any right to trial by jury with respect to any action or proceeding (i) brought by Mortgagor, Mortgagee or any other person relating (a) the obligations secured hereby and/or any understandings or prior dealings between the parties hereto or (b) the Loan Documents or the Environmental Indemnity Agreement, or (ii) to which Mortgagee is a party.

**Captions**.  The captions contained herein are for convenience and reference only and in no way define, limit or describe the scope or intent of, or in any way affect this Mortgage.

**Governing Law**.  This Mortgage, the interpretation hereof and the rights, obligations, duties and liabilities hereunder shall be governed and controlled by the laws of the State of Wisconsin.

[Remainder of this Page Left Intentionally Blank.]

14

AIC000016

IN WITNESS WHEREOF, this Mortgage has been executed by the Mortgagor as of the day and year first above written.

Signed in the presence of:

_Tami A. Kersten_
Typed or Printed Name

_Mark Smolinski_
Typed or Printed Name

MORTGAGOR:

GREEN BOX NA GREEN BAY, LLC,
a Wisconsin limited liability company
By: ENVIRONMENTAL ADVANCED
RECLAMATION TECHNOLOGY HQ,
LLC, a Wisconsin limited liability company,
its Manager

By: _____
Name: Ronald Van DenHeuvel
Title: Chairman

STATE OF WISCONSIN )
)ss.
COUNTY OF )

Be it known, that on this 10th day of December, 2013, before me, a Notary Public, in and for said County and State, personally came Ronald VanDenHeuvel who acknowledged himself/herself to be the Chairman of Environmental Advanced Reclamation Technology HQ, LLC, a Wisconsin limited liability company, as Manager of GREEN BOX NA GREEN BAY, LLC, a Wisconsin limited liability company, to me personally known to be the person who executed the foregoing instrument, and acknowledged that he/she executed the same freely and voluntarily for the uses and purposes mentioned in it and as the free act and deed of the said limited liability company.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

[Notary Seal: NOTARY PUBLIC / DEBRA S STARY / STATE OF WISCONSIN]

_Debra S. Stary_, Notary Public
Debra S Stary

Brown County
My Commission Expires: 2/16/14

15

AIC000017

## EXHIBIT "A"
## LEGAL DESCRIPTION OF PROPERTY

Lot Two (2), Vol. 41 Certified Survey Maps, Page 100, Map No. 6194; said lot being part of Lots One (1), Two (2) and Three (3), according to the recorded Plat of De Pere Business Park South Addition and part of Lot One (1), Vol. 24 Certified Survey Maps, Page 84, Map No. 4035, all being in the Southwest Quarter (SW 1/4), Section Thirty-two (32), Township Twenty-three (23) North, Range Twenty (20) East, in the City of De Pere, West side of Fox River, Brown County, Wisconsin.

ALSO KNOWN AS

Lot Two (2), Vol. 41 Certified Survey Maps, Page 100, Map No. 6194; said lot being part of Lots One (1), Two (2) and Three (3), according to the recorded Plat of De Pere Business Park South Addition and part of the Northeast Quarter (NE 1/4) of the Southwest Quarter (SW 1/4); the Northwest Quarter (NW 1/4) of the Southwest Quarter (SW 1/4) and Southeast Quarter (SE 1/4) of the Southwest Quarter (SW 1/4), Section Thirty-two (32), Township Twenty-three (23) North, Range Twenty (20) East, in the City of De Pere, West side of Fox River, Brown County, Wisconsin.

Property Address: 2107 American Boulevard, De Pere, WI 54115
Tax Parcel Number: WD-1042

AIC000018

**MEMBER'S CERTIFICATE OF**
**GREEN BOX NA GREEN BAY, LLC**

We, being all of the Non-Delegate Members of Green Box NA Green Bay, LLC, a Wisconsin limited liability company ("Borrower"), do hereby certify:

1.  This Certificate is being delivered pursuant to the terms and conditions of that certain loan transaction between Borrower and Maple Bridge Funding, LLC, a Wyoming limited liability company ("Lender") whereby Lender has agreed to loan to Borrower and Borrower has agreed to borrow from Lender the sum of Seven Million One Hundred Fifty Thousand and 00/100 Dollars ($7,150,000.00), such loan transaction being evidenced by various documents including, but not limited to, a promissory note of even date herewith executed by Borrower in favor of Lender in the amount of Seven Million One Hundred Fifty Thousand and 00/100 Dollars ($7,150,000.00), a Mortgage and Security Agreement executed by Borrower in favor of Lender of even date herewith, an Absolute Assignment of Leases and Rents of even date herewith executed by Borrower in favor of Lender, a Conditional Commitment Letter dated November 10, 2013 from Lender to Borrower and accepted by Borrower on November 12, 2013, this Certification and various other supplements and authorizations required by Lender and such other agreements given by or documents executed by Borrower to Lender in connection with the aforementioned loan transaction (the "Loan Documents").

2.  Borrower is a limited liability company duly organized, validly existing, and in good standing under the laws of the State of Wisconsin.

3.  The resolutions attached hereto as Exhibit "A" are true and correct resolutions of the Non-Delegate Members of Borrower duly adopted on December _10_, 2013; that said resolutions have been ratified by the Manager of Borrower to the extent necessary; that said resolutions are in conformity and in compliance with the Articles of Organization and the Operating Agreement of Borrower; and there is no provision of the Articles of Organization or Operating Agreement of Borrower or any instrument or agreement to which Borrower is a party, limiting the power of the Non-Delegate Members and the Manager of Borrower to adopt said resolutions.

4.  Attached hereto as Exhibit "B" is the genuine signature of the Manager of Borrower.

5.  Attached hereto as Exhibit "C" and "D", respectively, are the Articles of Organization, as amended, and the Operating Agreement of Borrower currently in effect.

AIC000019

IN WITNESS WHEREOF, the undersigned do hereunto set their signatures this ___10___ day of December, 2013.

ENVIRONMENTAL ADVANCED
RECLAMATION TECHNOLOGY HQ, LLC,
a Wisconsin limited liability company,

By: _____
Name: Ronald H Van Der Heuvel
Title: Chairman

KYHK, LLC,
a Wisconsin limited liability company

By: _____
Name: Kelly Yeongman VanDenHeuvel
Title: Managing Member

LS EQUITIES, LP,
a CALIFORNIA limited partnership
By: _____ V.P. of SDR CAPITAL, INC.
Its General Partner

By: _____  Green Island Spirits LLC.
Name: Pedro Fernandez
Title: Manager

_____
Pedro Fernandez

2

AIC000020

AKS GREEN, LLC,
an Illinois limited liability company

By: _____
Name: _Stephen A Smith_
Title: _Managing Member_

RVDH DEVELOPMENT, LLC,
a Wisconsin limited liability company

By: _____
Name: _Ronald H Vansteenburgh_
Title: _Chairman_

GLENARBOR, LLC,
an Ilinois limited liability company

By: _____
Name: _Stephen H Smith_
Title: _Member_

3

**EXHIBIT "A"**

1.  RESOLVED, that Borrower is authorized to request advance(s) from, incur indebtedness, including overdrafts, to and pledge and grant a security interest in Borrower's property, whether now owned or hereafter acquired, to Maple Bridge Funding, LLC, a Wyoming limited liability company ("Lender").

2.  RESOLVED, that Environmental Advanced Reclamation Technology HQ, LLC, a Wisconsin limited liability company, Manager of Borrower (the "Manager"), is authorized to take or perform the following actions in behalf of Borrower:

   (a)   To borrow from Lender up to Seven Million One Hundred Fifty Thousand and 00/100 Dollars ($7,150,000.00) upon such terms and conditions as the Manager, in its sole discretion, deems in the interest of the Company;

   (b)   To mortgage the following property (the "Property") to Lender to secure the repayment of the indebtedness resulting from the borrowing authorized above:

   Lot Two (2), Vol. 41 Certified Survey Maps, Page 100, Map No. 6194; said lot being part of Lots One (1), Two (2) and Three (3), according to the recorded Plat of De Pere Business Park South Addition and part of Lot One (1), Vol. 24 Certified Survey Maps, Page 84, Map No. 4035, all being in the Southwest Quarter (SW 1/4), Section Thirty-two (32), Township Twenty-three (23) North, Range Twenty (20) East, in the City of De Pere, West side of Fox River, Brown County, Wisconsin.

   ALSO KNOWN AS

   Lot Two (2), Vol. 41 Certified Survey Maps, Page 100, Map No. 6194; said lot being part of Lots One (1), Two (2) and Three (3), according to the recorded Plat of De Pere Business Park South Addition and part of the Northeast Quarter (NE 1/4) of the Southwest Quarter (SW 1/4); the Northwest Quarter (NW 1/4) of the Southwest Quarter (SW 1/4) and Southeast Quarter (SE 1/4) of the Southwest Quarter (SW 1/4), Section Thirty-two (32), Township Twenty-three (23) North, Range Twenty (20) East, in the City of De Pere, West side of Fox River, Brown County, Wisconsin.

   Property Address: 2107 American Boulevard, De Pere, WI 54115

   Tax Parcel Number: WD-1042

   (c)   To execute any document or agreement the Manager, in its sole discretion, deems necessary or appropriate to carry out the foregoing actions, including, but not

4

AIC000022

limited to, the execution of (i) a Promissory Note in the principal amount of Seven Million One Hundred Fifty Thousand and 00/100 Dollars ($7,150,000.00), containing such terms and conditions as the Manager, in its sole discretion, deems in the interest of Borrower; (ii) an Act of Mortgage in the amount of Seven Million One Hundred Fifty Thousand and 00/100 Dollars ($7,150,000.00) encumbering the Property, and (iii) any other document of whatever nature or kind requested by Lender in connection with the borrowing authorized above, any such document, which for purposes hereof may consist of mortgages, notes, agreements, obligations, notices of assignment, notices of security interest, pledges, assignments, security agreements, financing statements, assignment of leases and rents and other instruments and writings of a similar nature, executed in respect of the foregoing, to contain such clauses that are usual and customary for that document, including, without limitation, waiver of appraisal and waiver of jury trial, which instruments shall contain terms and conditions deemed appropriate in the sole discretion of the Manager; and

(d)     Generally to do and perform any and all acts and sign any and all agreements, obligations, instruments and other writings of any kind whatsoever required or requested by Lender in connection with the authorization granted herein.

3.     FURTHER RESOLVED, all actions taken by the Manager or any agent of Borrower in Borrower's name and for its account with Lender prior to the date hereof are hereby approved, confirmed and ratified as if each such act had been taken with the express authorization and consent of Borrower.

5

AIC000023

## EXHIBIT "B"

| Name & Signature | Title |
|---|---|
| Environmental Advanced Reclamation Technology HQ, LLC | Manager |

By: _____

Name: Ronald H. Van Den Heuvel

Title: Chairman

6

AIC000024

## MANAGER'S CERTIFICATE OF
## GREEN BOX NA GREEN BAY, LLC

I, being the duly elected Chairman of the Board of Environmental Advanced Reclamation Technology HQ, LLC, a Wisconsin limited liability company, the sole Manager of Green Box NA Green Bay, LLC, a Wisconsin limited liability company ("Borrower"), do hereby certify that:

1. This Certificate is being delivered pursuant to the terms and conditions of that certain loan transaction whereby Maple Bridge Funding, LLC, a Wyoming limited liability company ("Lender"), has agreed to loan to Borrower the sum of Seven Million One Hundred Fifty Thousand and 00/100 Dollars ($7,150,000.00), such loan being evidenced by various documents including, but not limited to, that certain Promissory Note executed and delivered by Borrower to Lender of even date herewith in the amount of Seven Million One Hundred Fifty Thousand and 00/100 Dollars ($7,150,000.00); that certain Mortgage and Security Agreement of even date herewith executed by Borrower and granting Lender a lien upon certain real property of Borrower in Brown County, Wisconsin; and that certain Absolute Assignment of Leases and Rents of even date herewith from Borrower in favor of Lender (the "Loan Documents").

2. To the best of my knowledge, Borrower's representations and warranties contained in the Loan Documents are true and correct in all material respects on and as of the date hereof as though made on and as of the date hereof.

3. Borrower has fully performed and complied with the covenants, conditions, and other obligations under the Loan Documents which are to be performed or complied with by it on or prior to the date hereof.

IN WITNESS WHEREOF, the undersigned has executed this Certificate this _12_ day of December, 2013.

ENVIRONMENTAL ADVANCED
RECLAMATION TECHNOLOGY HQ,
LLC, a Wisconsin limited liability company,

By: _____
Name: Ronald H. Van Den Heuvel
Title: Chairman of the Board

AIC000025

## ENVIRONMENTAL INDEMNITY AGREEMENT

THIS ENVIRONMENTAL INDEMNITY AGREEMENT (this "Agreement") is made on December *10th*, 2013, by Green Box NA Green Bay, LLC, a Wisconsin limited liability company, 2077B Lawrence Drive, De Pere, Wisconsin 54115 ("Borrower"), and Ronald H. Van Den Heuvel, 2077B Lawrence Drive, De Pere, Wisconsin 54115 ("Heuvel" and together with Borrower the "Indemnitors" and individually the "Indemnitor"), in favor of Maple Bridge Funding, LLC, a Wyoming liability company, whose address is 55 N Water Street, Suite 3, South Norwalk, Connecticut 06854 ("Lender").

### Recitals:

Lender has been requested to make a loan (the "Loan") to Borrower in the amount of Seven Million One Hundred Fifty Thousand and 00/100 Dollars ($7,150,000.00). The loan to Borrower is secured by, among other things, all of Borrower's right, title and interest in and to the real estate and improvements thereon located in Brown County, Wisconsin more particularly described in Exhibit A attached hereto (the "Property").

A condition to the Loan is the execution and delivery of this Agreement by each Indemnitor in favor of Lender.

NOW, THEREFORE, in consideration of Ten Dollars ($10.00) in hand paid, the premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, each Indemnitor hereby covenants, warrants, represents and agrees as follows:

1. **Definitions; Matters of Construction.**

    1.1. **Definitions.** Capitalized terms used herein, unless otherwise defined in this Section 1 or elsewhere in this Agreement, shall have the meanings ascribed to them in the Loan Documents. In addition, for purposes of this Agreement, the following terms shall have the following meanings (terms defined in the singular to have the meaning when used in the plural, and vice versa):

    "Assignment" shall mean that certain Absolute Assignment of Leases and Rents of even date herewith executed by Borrower in favor of Lender.

    "CERCLA" means the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (42 U.S.C. §§ 9601, *et seq.*), and all rules and regulations promulgated pursuant thereto.

    "Commitment Letter" means that certain Conditional Commitment Letter from Lender to Borrower dated November 10, 2013 and accepted by Borrower on November 12, 2013.

1

"Contamination" means the presence of Regulated Substances at, under or upon the environment relating to the Property or migrating to or from the Property, which requires investigation, response or removal action or remediation under any applicable Environmental Laws.

"Corrective Work" shall have the meaning ascribed thereto in Section 9 of this Agreement.

"CWA" means the Clean Water Act (33 U.S.C. §§ 1251, *et seq.*) and all rules and regulations promulgated pursuant thereto.

"Environmental Damages" means, with respect to any Person, all liabilities, costs, damages or expenses that are at any time suffered or incurred by such Person and that arise out of or result from any Indemnitor's noncompliance with any Environmental Law or its breach of a covenant, representation or warranty in this Agreement, including liabilities, costs, damages or expenses consisting of:

(i)     damages actually suffered by such Person for personal injury, or injury to property or natural resources, including the cost of demolition and rebuilding of any improvements on real property;

(ii)     reasonable fees and expenses incurred by such Person for the services of attorneys, consultants, contractors, experts, laboratories and all other costs and expenses incurred in connection with preparation of any feasibility studies or reports, investigation, monitoring, cleanup, remediation, removal, response, abatement, containment, closure, restoration, treatment, or post-remediation monitoring, operation and maintenance, relating to any Regulated Substances or Contamination, in each case to the extent required by any applicable Environmental Laws, or reasonably necessary to make full economic use of any of the Property (for comparable commercial or industrial purposes);

(iii)     all reasonable amounts expended by such Person in the defense (or settlement) of any action, suit or other proceeding, whether brought by any Governmental Authority or any other Person, including amounts paid for the services of attorneys, consultants, contractors, experts and other professional persons;

(iv)     any reasonable costs incurred to comply, in connection with all or any portion of the Property or any area surrounding or adjoining the Property, with applicable Environmental Laws; but in all circumstances excluding any claim on any theory of liability for special, indirect, consequential, exemplary or punitive damages (as opposed to direct or actual damages); and

(v)     any diminution in the value of the Property, and damages for the loss of business and restriction on the use or adverse impact on the marketing

2

of rentable or usable space or of any amenity of the Property in each case with respect to the use of the Property for comparable commercial or industrial purposes.

"Environmental Laws" means all federal, state or local laws, regulations, statutes, codes, rules, resolutions, directives, orders, executive orders, consent orders, enforceable guidance from regulatory agencies, judicial decrees, standards, permits, licenses and ordinances, or any judicial or administrative interpretation of any of the foregoing, pertaining to the protection of land, water, air, health, safety or the environment, whether now or in the future enacted, promulgated or issued, including CERCLA, RCRA, CWA, and all Environmental Property Transfer Acts.

"Environmental Lien" means a Lien in favor of any Governmental Authority for any (i) liabilities arising under any Environmental Laws or (ii) Environmental Damages arising from, or costs incurred by such Governmental Authority in response to, a Contamination or threatened Contamination.

"Environmental Notice" means a notice (whether written or oral) from any Governmental Authority or any other Person of possible or alleged noncompliance with or liability under any Environmental Laws, including any complaints, citations, demands or requests from any Governmental Authority or any other Person for correction or remediation of any asserted violation of any Environmental Laws or any investigations concerning any asserted violation of any Environmental Laws.

"Environmental Permit" means any permit, license, approval, certificate of approval, authorization, consent or waiver of or from any Governmental Authority that is applicable to any property owned, leased, operated or otherwise used by Borrower or the operations of Borrower and that is required to be obtained under any Environmental Law.

"Environmental Property Transfer Acts" means any applicable laws that condition, restrict, prohibit or require any notification or disclosure triggered by the transfer, sale, lease or closure of any property, deed or title for any property for environmental reasons, including any so-called "Environmental Cleanup Responsibility Acts," "Industrial Site Recovery Act" or "Responsible Transfer Acts".

"Indemnified Parties" means (i) Lender (including Lender as mortgagee-in-possession or successor-in-interest to Borrower as owner of the Property by virtue of a foreclosure or acceptance of a deed-in-lieu of foreclosure) and (ii) all of Lender's subsidiaries, affiliates, controlling persons, officers, managers, members, insurers, partners, directors, agents, servants, employees, and each participant in the Loan together with all of the respective heirs, successors and assigns of the foregoing Persons.

"Lien" means a lien, charge, security interest, encumbrance, right of first refusal, preemptive right or other restriction.

"Loan Documents" means collectively the Commitment Letter, the Note, the Mortgage, the Assignment, that certain Certification of even date herewith from

3

AIC000028

Borrower to Lender, all the documents described therein and any other supplements and authorizations required by Lender and any other agreement entered into or document executed and delivered by Borrower to Lender in connection with the indebtedness evidenced by the Note, except this Agreement, as any of the foregoing may be amended from time to time.

"Mortgage" means that certain Mortgage and Security Agreement of even date herewith executed by Borrower granting Lender a security interest in all of Borrower's right, title and interest in and to the Property.

"Note" shall mean the promissory note of Borrower in the amount of Seven Million One Hundred Fifty Thousand and 00/100 Dollars ($7,150,000.00) with interest on the principal amount at the rate of twelve percent (12%) per annum, secured by the Property and evidencing Borrower's obligation to repay the Loan.

"Person" means an individual or corporation, partnership, trust, incorporated or unincorporated association, joint venture, limited liability company, joint stock company, government (or an agency or subdivision thereof) or other entity of any kind.

"RCRA" means the Resource Conservation and Recovery Act (42 U.S.C. §§ 6991, *et seq.*) and all rules and regulations promulgated pursuant thereto.

"Regulated Substances" means any substances, chemicals, materials or elements that are prohibited, limited or regulated by the Environmental Laws, or any other substances, chemicals, materials or elements that are defined as "hazardous" or "toxic" under the Environmental Laws, or that are known or considered to be harmful to the health or safety of occupants or users of the Property. Without limiting the generality of the foregoing, the term "Regulated Substances" shall also include any substance, chemical, material or element (i) defined as a "regulated substance" within the meaning of Subtitle I of the RCRA; (ii) designated as a "hazardous substance" pursuant to Section 311 of the CWA, or listed pursuant to Section 307 of the CWA; (iii) defined as "hazardous", "toxic", or otherwise regulated, under any applicable Environmental Laws adopted by the state in which the Property is located, or its agencies or political subdivisions; (iv) which is petroleum, petroleum products or derivatives or constituents thereof; (v)  which is asbestos or asbestos-containing materials; (vi) the presence of which requires notification, investigation or remediation under any applicable Environmental Laws; (vii) which is urea formaldehyde foam insulation or urea formaldehyde foam insulation-containing materials, lead based paint or lead based paint-containing materials, polychlorinated biphenyls or polychlorinated biphenyl-containing materials, radon or radon-containing or producing materials, radioactive substances, methane or volatile hydrocarbons; or (viii) which by any laws of any Governmental Authority requires special handling in its collection, storage, treatment, or disposal due to a "hazardous" or "toxic" characteristic.

1.2.   Matters of Construction.   The terms "herein," "hereof" and "hereunder" and other words of similar import refer to this Agreement as a whole and not

4

AIC000029

to any particular section, paragraph or subdivision. Any pronoun used shall be deemed to cover all genders. The section titles appear as a matter of convenience only and shall not affect the interpretation of the Agreement. All references to statutes and related regulations shall include any amendments of same and any successor statutes and regulations; to any documents, agreements or instruments shall include any and all modifications thereto and any and all restatements, extensions or renewals thereof; to any Person shall mean and include the successors and permitted assigns of such Person; or to "including" and "include" shall be understood to mean "including, without limitation."

2.　　**Cumulative Rights and Remedies**.　Lender's rights and remedies under this Agreement shall be in addition to all rights and remedies of Lender under any other Loan Document. Payments, if any, by any Indemnitor as required under this Agreement shall not reduce the Indebtedness or any liabilities under any other Loan Document or any other separate guaranty provided by any Indemnitor to Lender. Any default by any Indemnitor under this Agreement (including any breach of any representation or warranty made by such Indemnitor) shall constitute an "Event of Default" under the Loan Documents.

3.　　**Representations and Warranties.** Each Indemnitor hereby represents and warrants that:

(a)　　To the best of its/his actual knowledge, no Contamination is present at, on or under the Property and no Contamination is being discharged, released or emitted from the Property into the air or onto any surrounding areas;

(b)　　All activities and operations at the Property (including any activities or operations involving the generation, manufacture, refinement, transportation, handling, transfer, production, treatment, storage, disposal or processing of any Regulated Substances) have been (to the best of its/his actual knowledge) and are being conducted in compliance with all applicable Environmental Laws;

(c)　　Borrower has obtained all material Environmental Permits for the conduct of operations and activities at the Property, and all such Environmental Permits are in full force and effect;

(d)　　To the best actual knowledge of Indemnitors, no measurable levels of radon or radon containing or producing products that require investigation or remediation pursuant to applicable Environmental Laws are present in the existing structures on the Property;

(e)　　No civil, administrative or criminal proceeding is pending, or to the best actual knowledge of Indemnitors threatened, against Borrower or the Property relating to any asserted violation of any Environmental Law with respect to the Property; such Indemnitor has not received (nor does such Indemnitor have reason to believe that it will receive) any Environmental Notice with respect to the Property; nor has such Indemnitor entered into any consent, decree or judicial order or settlement under any Environmental Law affecting the Property;

5

AIC000030

(f)     The Property is not listed or (to the actual knowledge of such Indemnitor) proposed for listing on the National Priorities List pursuant to Section 9605 of CERCLA, on the Comprehensive Environmental Response, Compensation and Liability Information System or on any similar state or local list of environmentally problematic/regulated sites;

(g)     No Environmental Lien has been filed with respect to the Property;

(h)     To the best of such Indemnitor's actual knowledge, after due inquiry and investigation, no report, analysis, study or other document prepared by or from any Person exists stating that any Contamination has been or currently is, located at, under or about any of the Property; and

(i)     The transaction contemplated by the Loan Documents is not subject to any Environmental Property Transfer Act or, to the extent any such Environmental Property Transfer Act is applicable, Borrower has complied with the requirements thereof in all material respects.

4.     **Environmental Covenants.** Each Indemnitor hereby covenants and agrees as follows:

(a)     To cause all activities at the Property prior to full payment of the Indebtedness (including any activities involving the generation, manufacture, refinement, transportation, handling, transfer, production, treatment, storage, disposal or processing of any Regulated Substances) to be conducted in compliance with all applicable Environmental Laws;

(b)     To provide Lender upon its reasonable request with copies of all: (i) Environmental Notices relating to alleged noncompliance or liability and all other correspondence, notices of violation, summons, orders, complaints or other documents received by such Indemnitor pertaining to compliance with any Environmental Laws; (ii) material reports of previous environmental investigations undertaken at the Property that such Indemnitor knows of, or has or can obtain possession; (iii) Environmental Permits; (iv) a description of the operations and processes of Borrower; and (v) other material information that Lender may reasonably request from time to time pertaining to Borrower's compliance with applicable Environmental Laws;

(c)     Not to permit Borrower to generate, manufacture, refine, transport, produce, store, use, process, treat, dispose of, handle or in any manner deal with, any Regulated Substances on any part of the Property, nor permit others to do so, except for (i) those Regulated Substances that are used or present in the ordinary course of Borrower's business in compliance with all applicable Environmental Laws in all material respects and have not been released into the environment in such a manner as to constitute a material Contamination, and (ii) those Regulated Substances which are naturally occurring on the Property, but only in such naturally occurring form and concentration(s);

AIC000031

(d)     Not to cause or permit, the presence of Regulated Substances or Contamination on the Property, whether as a result of any intentional or unintentional act or omission on the part of Borrower or any other Person, except for (i) those Regulated Substances which are used or present in the ordinary course of Borrower's business in compliance in all material respects with all applicable Environmental Laws and have not been released into the environment in such a manner as to constitute a material Contamination, and (ii) those Regulated Substances which are naturally occurring on the Property, but only in such naturally occurring form and concentration(s);

(e)     To give notice and a full description to Lender, promptly upon such Indemnitor's acquiring knowledge thereof, of (i) any enforcement, clean-up, removal or other regulatory actions threatened, instituted or completed by any Governmental Authority under any Environmental Law with respect to the Property; (ii) material claims made or threatened by any third party with respect to the Property relating to damage, contribution, compensation, loss or injury resulting from any Regulated Substances or Contamination; and (iii) the presence of material Contamination on, under, from or affecting the Property;

(f)     To conduct and complete all investigations, studies, sampling and testing of as well as all remedial, removal and other actions necessary to clean up and remove all Contamination on, under, from or affecting the Property, to the extent required by applicable Environmental Laws and in accordance therewith;

(g)     To obtain and maintain Environmental Permits relating to Borrower, the Property, or the operation of Borrower's business.

(h)     If, at any time prior to the full payment of the Indebtedness, measurable amounts of radon are detected in any structures on any of the Property, to, at Indemnitor's expense, take all actions necessary to reduce such radon gas to acceptable levels under applicable Environmental Laws.

5.     **Right to Conduct an Investigation**.

(a)     Lender may, at any time and at its sole discretion, conduct an investigation into the presence of Regulated Substances or Contamination on, from or affecting the Property, or Borrower's compliance with applicable Environmental Laws at, or relating to, the Property.  Such an investigation performed by Lender shall be at Borrower's expense if the performance of the investigation is commenced (i) upon the occurrence and during the continuation of a default hereunder or an Event of Default under the Loan Documents; or (ii) because Lender has a reasonable belief Borrower has materially violated any provision of this Agreement (including any representation, warranty or covenant herein).  In connection with any such investigation, each Indemnitor shall (and shall require Borrower and any occupants of the Property to) comply with all reasonable requests for information made by Lender and each Indemnitor represents and warrants that all responses to any such requests for information will be correct and complete.  Each Indemnitor shall provide Lender with rights of access to all areas of the

AIC000032

Property, subject to (except when an Event of Default exists) reasonable notice and normal business hours, and permit Lender to perform testing (including any invasive testing) necessary or appropriate, in Lender's reasonable judgment, to perform such investigation.

(b)     Lender is under no duty to conduct such investigations of the Property or Borrower's compliance with applicable Environmental Laws, and any such investigations by Lender shall be solely for the purpose of protecting Lender's security interest in the Property and preserving its rights under the Loan Documents. No site visit, observation, or testing by Lender shall constitute a waiver of any default hereunder or an Event of Default under the Loan Documents or be characterized as a representation regarding the presence or absence of Regulated Substances or Contamination at the Property. Lender owes no duty of care to protect any Indemnitor or any third party from the presence of Regulated Substances, Contamination or any other adverse condition affecting the Property. Lender agrees to indemnify and hold harmless from and against any personal injury or property damage arising directly from Lender's investigation of the Property that are the result of Lender's gross negligence or willful misconduct and return such Property to the same physical condition as before the investigation. Lender shall provide copies to Indemnitors, upon the request of any Indemnitor, of any report or findings made in connection with any investigation done on behalf of Lender. To the extent any investigation report, findings or other information is shared by Lender with any Indemnitor, such Indemnitor acknowledges it was prepared by Lender for its purposes and Indemnitors shall not be entitled to rely upon it.

6.     Indemnification.

(a)     Each Indemnitor agrees to indemnify and defend each of the Indemnified Parties and to hold each of the Indemnified Parties harmless from and against any and all Environmental Damages that may at any time be imposed upon, threatened against, incurred by or asserted or awarded against any of the Indemnified Parties (whether before or after the release, satisfaction or extinguishment of the Mortgage) and arising from or out of:

(i)     such Indemnitor's failure to comply with any of the provisions of this Agreement, including such Indemnitor's breach of any covenant, representation or warranty contained in this Agreement;

(ii)     any Contamination, or threatened release of any Regulated Substances or Contamination, on, in, under, affecting or migrating or threatening to migrate to or from all or any portion of the Property, to the extent occurring or existing prior to full payment of the Indebtedness and prior to the delivery of possession of the Property to a Person other than an Indemnitor following any foreclosure upon any Lien of Lender with respect to the Property or other taking of title to all or any portion of any of the Property by Lender or any affiliate of Lender;

AIC000033

(iii)    any violation of or noncompliance with, or alleged violation of or noncompliance with, any applicable Environmental Laws by Borrower, including costs to remove any Environmental Lien upon any of the Property;

(iv)    the willful misconduct, error or omission or negligent act or omission of Borrower that results in any Contamination or the issuance of an Environmental Notice to such Indemnitor or Lender;

(v)    any judgment, Lien, order, complaint, notice, citation, action, proceeding or investigation pending or threatened by or before any Governmental Authority or any private party litigant or before any court of law (including any private civil litigation) with respect to Borrower's business, assets, property or facilities, including the Property, in connection with any Regulated Substances, Contamination or any Environmental Laws (including the assertion by any Governmental Authority that any Environmental Lien takes priority over any Lien in favor of Lender with respect to the Property); or

(vi)    the enforcement of this Agreement or the assertion by such Indemnitor of any defense to its obligations hereunder.

Each Indemnitor's obligations set forth in this Section 6 shall survive pursuant to Section 16 hereof and shall be in effect and enforceable regardless of whether any such obligation arose before or after foreclosure of the Mortgage or other taking of title to all or any portion of any of the Property by Lender, and whether the underlying basis of any claim arose from events prior to Borrower acquiring ownership of the Property; provided, however, that Indemnitors' indemnification shall not include any Environmental Damages arising and resulting directly from the gross negligence or willful misconduct or Lender.

(b)    Promptly after the receipt by Lender of written notice of any demand or claim or the commencement of any action, suit or proceeding concerning any Indemnitor or Lender in connection with any of the Property, Lender shall endeavor to notify such Indemnitor thereof in writing. The failure by Lender promptly to give such notice shall not relieve any Indemnitor of any liability to Lender hereunder.

7.    **Lender's Right to Select Professionals.**    Without limiting any other provision hereof, if any claim (whether or not a judicial or administrative action is involved) is asserted against Lender with respect to Regulated Substances, Environmental Laws or Contamination, Lender shall have the right to select the engineers, consultants, attorneys and other professional persons for Lender's defense or guidance, determine the appropriate legal strategy for such defense, and compromise or settle such claim, all in Lender's sole discretion, and Indemnitors shall be liable to pay or reimburse Lender for all Environmental Damages and other reasonable expenses incurred by Lender in connection therewith to the extent of Indemnitors' obligations pursuant to this Agreement.

8.    **Indemnitors' Obligation to Deliver Property.**    Each Indemnitor agrees that, if the Mortgage is foreclosed (whether judicially or by power of sale) or a deed in lieu of foreclosure with respect to the Property is tendered, such Indemnitor shall cause

9

AIC000034

Borrower to deliver the Property to Lender free of any and all Regulated Substances (except for (a) those Regulated Substances which are used or present in the ordinary course of business of Borrower in compliance in all material respects with all applicable Environmental Laws and have not been emitted, discharged or released into the environment in such a manner as to constitute material Contamination hereunder, and (b) those Regulated Substances that are naturally occurring on the Property, but only in such naturally occurring form and concentration(s)) or Contamination in a condition such that the Property conforms in all material respects with all applicable Environmental Laws and such that no material remedial or removal action will be required under applicable Environmental Laws with respect to the Property. Each Indemnitor's obligations as set forth in this Section are strictly for the benefit of Lender and any successors or assigns of Lender and shall not in any way impair or affect Lender's right to foreclose the Mortgage.

9.     **Lender's Right to Cure.**  In addition to the other remedies provided to Lender in the other Loan Documents, should any Indemnitor fail to abide by any provision of this Agreement and fail to cure the same within thirty (30) days after written notice thereof from Lender, Lender may, should it elect to do so, perform any corrective work required to achieve compliance with the environmental covenants required under Section 4 ("Corrective Work").  All funds reasonably expended by Lender in connection with the performance of any Corrective Work, including all attorneys' fees, engineering fees, consultant fees and similar charges, shall become a part of the Indebtedness secured by the Loan Documents and shall be due and payable by Indemnitors on demand. Each disbursement made by Lender pursuant to this provision shall bear interest at the Default Rate (as defined in the Note) from the date any Indemnitor shall have received written notice that the funds have been advanced by Lender until paid in full.

10.     **Scope of Liability.**  The liability under this Agreement shall in no way be limited or impaired by (a) any extension of time for performance required by any of the Loan Documents; (b) any sale or assignment of all or any part of the Indebtedness, any foreclosure or acceptance of a deed in lieu of foreclosure or trustee's sale, or any sale or transfer of all or part of any of the Property; (c) the discharge of the Indebtedness or the reconveyance or release of the Mortgage; (d) any exculpatory provisions in any of the Loan Documents limiting Lender's recourse; (e) the accuracy or inaccuracy of the representations and warranties made by any Indemnitor, or any other obligor under any of the Loan Documents; (f) the release of any Indemnitor or any other Person from performance or observance of any of the agreements, covenants, terms or conditions contained in any of the Loan Documents by operation of law, Lender's voluntary act or otherwise; (g) the release or substitution, in whole or in part, of any security for the Indebtedness; or (h) Lender's failure to record the Mortgage or file any UCC financing statement (or Lender's improper recording or filing of any thereof) or to otherwise perfect, protect, secure or insure any security interest or lien given as security for the Indebtedness; and, in any such case, whether with or without notice to any Indemnitor or any guarantor or other person or entity and with or without consideration.

11.     **Notices.**  Any notice required or provided for herein shall be in writing and shall be delivered personally or sent by certified mail or reputable courier service with

10

AIC000035

charges prepaid, to the address for Indemnitors and Lender set forth on the first page of this Agreement or at such other address as either Indemnitors or Lender shall designate by written notice as provided in this paragraph. Notice shall be deemed given on the date received. Any notice which is rejected, the acceptance of which is refused or which is incapable of being delivered during normal business hours at the address provided herein or such other address designated pursuant hereto shall be deemed received as of the date of the attempted delivery.

12. **Preservation of Rights.** No delay or omission on Lender's part to exercise any right or power arising hereunder will impair any such right or power or be considered a waiver of any such right or power, nor will Lender's action or inaction impair any such right or power. Lender's rights and remedies hereunder are cumulative and not exclusive of any other rights or remedies which Lender may have under any of the other Loan Documents, at law or in equity. Any representations, warranties, covenants or indemnification liabilities for breach thereof contained in this Agreement shall not be affected by any knowledge of, or investigations performed by, Lender. Any one or more Persons comprising any Indemnitor, or any other Person liable upon or in respect of this Agreement or the Indebtedness, may be released without affecting the liability of any party not so released.

13. **Illegality.** In case any one or more of the provisions contained in this Agreement should be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby.

14. **Changes in Writing.** No modification, amendment or waiver of any provision of this Agreement nor consent to any departure by any Indemnitor therefrom will be effective unless made in a writing signed by Lender, and then such waiver or consent shall be effective only in the specific instance and for the purpose for which given. No notice to or demand on any Indemnitor in any case will entitle any Indemnitor to any other or further notice or demand in the same, similar or other circumstance.

15. **Successors and Assigns.** This Agreement shall be binding upon each Indemnitor and such Indemnitor's successors and assigns, and shall inure to the benefit of each Indemnified Party and its successors and assigns as well as any Person who acquires title to or ownership of the Property from, or through action by, Lender (including at a foreclosure, sheriff's or judicial sale); provided, however, that no Indemnitor may assign this Agreement or delegate performance hereunder in whole or in part without Lender's prior written consent and Lender at any time may assign this Agreement in whole or in part.

16. **Survival; Joint and Several Obligations.** Except as otherwise expressly provided herein, each Indemnitor's obligations under this Agreement shall be joint and several and shall survive any judicial foreclosure, foreclosure by power of sale, deed in lieu of foreclosure, transfer of any of the Property by any Indemnitor or Lender and full payment of the Indebtedness.

11

AIC000036

17.   **Governing Law and Jurisdiction.**  This Agreement has been delivered to and accepted by Lender and will be deemed to be made in the State of Wisconsin. **THIS AGREEMENT WELL BE INTERPRETED AND THE RIGHTS AND LIABILITIES OF THE PARTIES HERETO DETERMINED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF WISCONSIN.** Each Indemnitor hereby irrevocably consents to the non-exclusive jurisdiction of any state or federal court located in the State of Wisconsin; provided that nothing contained in this Agreement will prevent Lender from bringing any action, enforcing any award or judgment or exercising any rights against any Indemnitor, against any security or against any property of any Indemnitor within any other county, state, or other foreign or domestic jurisdiction. Each Indemnitor acknowledges and agrees that the venue provided above is the most convenient forum for both Lender and Indemnitor. Each Indemnitor waives any objection to venue and any objection based on a more convenient forum in any action instituted under this Agreement.

18.   **WAIVER OF JURY TRIAL.   TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, EACH INDEMNITOR AND LENDER (BY ITS ACCEPTANCE HEREOF) IRREVOCABLY WAIVES ANY AND ALL RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR CLAIM OF ANY NATURE RELATING TO THIS AGREEMENT, ANY DOCUMENTS EXECUTED IN CONNECTION WITH THIS AGREEMENT OR ANY TRANSACTION CONTEMPLATED IN ANY OF SUCH DOCUMENTS.   EACH INDEMNITOR ACKNOWLEDGES THAT THE FOREGOING WAIVER IS KNOWING AND VOLUNTARY.**

19.   **Final Agreement.** This Agreement represents the final, entire agreement between the parties with respect to the subject matter hereof. No course of dealing, course of performance, usage of trade or evidence of any prior, contemporaneous or subsequent oral agreements or discussions or other extrinsic evidence of any nature shall be used to contradict, vary, supplement or modify any term of this Agreement. There are no oral agreements between the parties. The provisions hereof may be amended or waived only by an instrument in writing signed by Indemnitors and Lender.

[Remainder of page intentionally left blank; signatures begin on following page.]

AIC000037

IN WITNESS WHEREOF, this Agreement has been executed by the Indemnitors as of the day and year first above written.

INDEMNITORS:

Signed in the presence of:

GREEN BOX NA GREEN BAY, LLC,
a Wisconsin limited liability company
By: ENVIRONMENTAL ADVANCED
RECLAMATION TECHNOLOGY HQ,
LLC, a Wisconsin limited liability company,
its Manager

Typed or Printed Name

By: _____
    Name: Ronald Van Den Heuvel
    Title: Chairman

Typed or Printed Name

STATE OF WISCONSIN )
                     )ss.
COUNTY OF           )

Be it known, that on this 10th day of December, 2013, before me, a Notary Public, in and for said County and State, personally came Ronald H Van Den Heuvel who acknowledged himself/herself to be the Chairman of Environmental Advanced Reclamation Technology HQ, LLC, a Wisconsin limited liability company, as Manager of GREEN BOX NA GREEN BAY, LLC, a Wisconsin limited liability company, to me personally known to be the person who executed the foregoing instrument, and acknowledged that he executed the same freely and voluntarily for the uses and purposes mentioned in it and as the free act and deed of the said limited liability company.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Debra S Stary , Notary Public

Brown County
My Commission Expires: 2/16/14

13

AIC000038

Signed in the presence of:

Typed or Printed Name

Typed or Printed Name

Name: Ronald H. Van Den Heuvel

STATE OF WISCONSIN )
)ss.
COUNTY OF )

Be it known, that on this _____ day of December, 2013, before me, a Notary Public, in and for said County and State, personally came Ronald H. Van Den Heuvel, to me personally known to be the person who executed the foregoing instrument, and acknowledged that he/she executed the same freely and voluntarily for the uses and purposes mentioned in it and as his/her free act and deed.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

Debra S. Stary , Notary Public

Brown County
My Commission Expires: 2/16/14

14

AIC000039

## EXHIBIT "A"
## LEGAL DESCRIPTION OF PROPERTY

Lot Two (2), Vol. 41 Certified Survey Maps, Page 100, Map No. 6194; said lot being part of Lots One (1), Two (2) and Three (3), according to the recorded Plat of De Pere Business Park South Addition and part of Lot One (1), Vol. 24 Certified Survey Maps, Page 84, Map No. 4035, all being in the Southwest Quarter (SW 1/4), Section Thirty-two (32), Township Twenty-three (23) North, Range Twenty (20) East, in the City of De Pere, West side of Fox River, Brown County, Wisconsin.

ALSO KNOWN AS

Lot Two (2), Vol. 41 Certified Survey Maps, Page 100, Map No. 6194; said lot being part of Lots One (1), Two (2) and Three (3), according to the recorded Plat of De Pere Business Park South Addition and part of the Northeast Quarter (NE 1/4) of the Southwest Quarter (SW 1/4); the Northwest Quarter (NW 1/4) of the Southwest Quarter (SW 1/4) and Southeast Quarter (SE 1/4) of the Southwest Quarter (SW 1/4), Section Thirty-two (32), Township Twenty-three (23) North, Range Twenty (20) East, in the City of De Pere, West side of Fox River, Brown County, Wisconsin.

Property Address: 2107 American Boulevard, De Pere, WI 54115
Tax Parcel Number: WD-1042

AIC000040

## CORPORATE RESOLUTION

Partners Concepts Development, Inc., a Wisconsin corporation, being the sole owner of 100% of the issued and outstanding shares of stock in Oconto Falls Tissue, Inc., a Wisconsin corporation (the "Company"), hereby adopts the following Resolution:

It is hereby resolved that the Company shall assign to Maple Bridge Funding, LLC, a Wyoming limited liability company, all of the Company's right, title and interest in and to all payments of principal and interest, all distributions, redemption proceeds, cash, warrants, rights, options, instruments, securities, receivables and other property or proceeds now due, owing or accruing or which may hereafter become due, owing or accruing due to the Company from ST Paper, LLC, a Delaware limited liability company, under and with respect to those certain promissory notes executed by ST Paper, LLC in favor of the Company dated April 16, 2007 identified as "Note 1" as security for the payment by Green Box NA Green Bay, LLC to Maple Bridge Funding, LLC, of all amounts becoming due and owing under and in connection with that certain loan being made by Maple Bridge Funding, LLC to Green Box NA Green Bay, LLC in the initial principal amount of $7,150,000.00 and all related "Loan Documents". Ronald H. Van Den Heuval is hereby authorized to execute all agreements, assignments, instruments, documents and other papers on behalf of Oconto Falls Tissue, Inc. in order to effectuate the foregoing.

IN WITNESS WHEREOF, the undersigned has executed this Corporate Resolution as of the _9th_ day of December, 2013.


By: **Partners Concepts Development, Inc.,**
**a Wisconsin corporation**

By: _Ronald H Van Den Heuval_
Its: _Chairman / President_

11364987.1

AIC000041

## CONTINUING UNCONDITIONAL GUARANTY

Dated as of December _10_, 2013

**Guaranty.** To induce MAPLE BRIDGE FUNDING, LLC, a Wyoming liability company, whose address is 55 N Water Street, Suite 3, South Norwalk, Connecticut 06854 (together with its successors and assigns, "Lender"), at its option, to make financial accommodations, make or acquire loans, extend or continue credit or some other benefit, present or future, direct or indirect, and whether several, joint or joint and several, to GREEN BOX NA GREEN BAY, LLC, a Wisconsin limited liability company ("Borrower"), and because the undersigned ("Guarantor") has determined executing this Guaranty is in its interest and to its financial benefit, Guarantor absolutely and unconditionally guarantees to Lender, as primary obligor and not merely as surety, the performance of and full and prompt payment of the Liabilities (as hereinafter defined) when due, whether at stated maturity, by acceleration or otherwise. Guarantor will not only pay the Liabilities, but will also reimburse Lender for any fees, charges, costs and expenses, including reasonable attorneys' fees (including fees and expenses of counsel for Lender that are employees of Lender) and court costs, Lender may pay in collecting from Borrower or Guarantor, and for liquidating any Collateral (collectively, "Collection Amounts"). Guarantor's obligations under this Guaranty shall be payable in lawful money of the United States of America.

**Liabilities.** The term "Liabilities" in this Guaranty means all debts, obligations, indebtedness and liabilities of every kind and character of Borrower, whether individual, joint and several, contingent or otherwise, now or hereafter existing in favor of Lender, including, without limitation, all liabilities, interest, costs and fees, arising under or from any note, open account, overdraft, lease, endorsement, surety agreement, guaranty, or acceptance whether payable to Lender or to a third party and subsequently acquired by Lender, any monetary obligations (including interest) incurred or accrued during the pendency of any bankruptcy, insolvency, receivership or other similar proceedings, regardless of whether allowed or allowable in such proceedings, and all renewals, extensions, modifications, consolidations, rearrangements, restatements, replacements or substitutions of any of the foregoing. Guarantor and Lender specifically contemplate Liabilities may include indebtedness hereafter incurred by Borrower to Lender.

**Limitation.** Guarantor's obligation under this Guaranty is UNLIMITED.

**Continued Reliance.** This Guaranty shall remain in effect until payment in full of the Remaining Liabilities, as defined below, following termination of this Guaranty by Guarantor in accordance with this paragraph. This Guaranty will continue to be in effect until final payment and performance in full of all Liabilities and the termination of any commitment of Lender to make loans or other financial accommodations to Borrower. Guarantor may terminate Guarantor's liability for Liabilities not in existence or for which Lender has no commitment to advance or acquire by delivering written notice to Lender as set forth in the paragraph below captioned "Notice." After Guarantor's termination of this Guaranty, Guarantor will continue to be liable for the following amounts (the "Remaining Liabilities"): (a) all Liabilities existing on the effective date of termination; (b) all Liabilities to which Lender has committed to advance or acquire prior to the effective termination date (whether or not Lender is contractually obligated to advance or acquire the loans or extensions of credit); (c) all subsequent renewals, extensions, modifications,

1

AIC000042

consolidations, rearrangements, restatements, replacements and amendments (but not increases) of those Liabilities; (d) all interest accruing on those Liabilities after the effective termination date; and (e) all Collection Amounts incurred with respect to those Liabilities, on or after the effective termination date. Lender may continue to permit Borrower to incur Liabilities and to issue commitments to Borrower to advance or acquire Liabilities in reliance on this Guaranty until the effective date of termination, regardless of whether at any time or from time to time there are no existing Liabilities nor commitment by Lender to advance or acquire Liabilities.

**Security.** The term "Collateral" in this Guaranty means all real or personal property described in all security agreements, pledge agreements, mortgages, deeds of trust, assignments, or other instruments now or hereafter executed in connection with any of the Liabilities. If applicable, the Collateral secures the payment of the Liabilities.

**Remedies/Acceleration.** If Guarantor fails to pay any amount owing under this Guaranty, Lender shall have all of the rights and remedies provided by law or under any other agreement. Lender is authorized to cause all or any part of the Collateral to be transferred to or registered in its name or in the name of any other person or business entity with or without designation of the capacity of that nominee. Guarantor is liable for any deficiency in payment of any Liabilities whether of principal, interest, fees, costs or expenses remaining after the disposition of any Collateral. Guarantor is liable to Lender for all reasonable costs and expenses of any kind incurred in the making and collection of this Guaranty, including without limitation reasonable attorneys' fees and court costs. These costs and expenses include, without limitation, any costs or expenses incurred by Lender in any bankruptcy, reorganization, insolvency or other similar proceeding. All obligations of Guarantor to Lender under this Guaranty, whether or not then due or absolute or contingent, shall, at the option of Lender, without notice or demand, become due and payable immediately upon the occurrence of any default or event of default under the terms of any of the Liabilities or otherwise with respect to any agreement related to the Liabilities (or any other event that results in acceleration of the maturity of any Liabilities, including without limitation, demand for payment of any Liabilities constituting demand obligations or automatic acceleration in a legal proceeding) or the occurrence of any default under this Guaranty.

**Permissible Actions.** If any monies become available from any source other than Guarantor that Lender can apply to the Liabilities, Lender may apply them in any manner it chooses, including, but not limited to, applying them against obligations, indebtedness or liabilities which are not covered by this Guaranty. Lender may take any action against Borrower, the Collateral, or any other person liable for any of the Liabilities. Lender may release Borrower or anyone else from the Liabilities, either in whole or in part, or release the Collateral, and need not perfect a security interest in the Collateral. Lender does not have to exercise any rights it has against Borrower or anyone else, or make any effort to realize on the Collateral or any other collateral for the Liabilities, or exercise any right of set-off. Guarantor authorizes Lender, without notice or demand and without affecting Guarantor's obligations hereunder, from time to time, to: (a) renew, modify, compromise, rearrange, restate, consolidate, extend, accelerate, postpone, grant any indulgence or otherwise change the time for payment of, or otherwise change the terms of the Liabilities or any part thereof, including increasing or decreasing the rate of interest thereon; (b) release, substitute or add any one or more endorsers, sureties, Guarantor or other guarantors; (c) take and hold Collateral for the payment of this Guaranty or the Liabilities, and enforce, exchange, impair,

2

AIC000043

substitute, subordinate, waive or release any Liabilities or any Collateral for the Liabilities; (d) proceed against such Collateral and direct the order or manner of sale of such Collateral as Lender in its discretion may determine; (e) apply any and all payments from Borrower, Guarantor or any other obligor on the Liabilities, or recoveries from such Collateral, in such order or manner as Lender in its discretion may determine; and (f) to accept any partial payment of Liabilities or collateral for the Liabilities. Guarantor's obligations under this Guaranty shall not be released, diminished or affected by (a) any act or omission of Lender; (b) the voluntary or involuntary liquidation, sale or other disposition of all or substantially all of the assets of Borrower, or any receivership, insolvency, bankruptcy, reorganization, or other similar proceedings affecting Borrower, any other obligor or any of their respective assets; (c) any change in the composition or structure of Borrower, Guarantor or any other obligor on the Liabilities, including a merger or consolidation with any other person or entity; or (d) any payments made upon the Liabilities. Guarantor hereby expressly consents to any impairment of Collateral, including, but not limited to, failure to perfect a security interest and release Collateral and any such impairment or release shall not affect Guarantor's obligations hereunder.

**Nature of Guaranty.** This Guaranty is an absolute guaranty of payment and performance and not of collection. Therefore, Lender may insist Guarantor pay immediately, and Lender is not required to attempt to collect first from Borrower, the Collateral, or any other person liable for the Liabilities. The obligation of Guarantor shall be unconditional and absolute even if all or any part of any agreement between Lender and Borrower is unenforceable, void, voidable or illegal or uncollectible due to incapacity, lack of power or authority, discharge or for any reason whatsoever, and regardless of the existence of any defense, setoff, discharge or counterclaim (in any case, whether based on contract, tort or any other theory) which Borrower may assert. If Borrower is a corporation, limited liability company, partnership or trust, it is not necessary for Lender to inquire into the powers of Borrower or the officers, directors, members, managers, partners, trustees or agents acting or purporting to act on its behalf, and any of the Liabilities made or created in reliance upon the professed exercise of such powers shall be guaranteed hereunder. Without limiting the foregoing, Guarantor's liability is absolute and unconditional irrespective of and shall not be released, diminished or affected by: (a) any present or future law, regulation or order of any jurisdiction (whether of right or in fact) or of any agency thereof purporting to reduce, amend, restructure, render unenforceable or otherwise affect any term of any Liabilities; or (b) any war, riot or revolution impacting multinational companies or any act of expropriation, nationalization or currency inconvertibility or nontransferability arising from governmental, legislative or executive measures affecting any obligor or the property of any obligor on the Liabilities.

**Other Guarantors.** If there is more than one Guarantor, the obligations under this Guaranty are joint and several. In addition, each Guarantor under this Guaranty shall be jointly and severally liable with any other guarantor of the Liabilities. If Lender elects to enforce its rights against fewer than all guarantors of the Liabilities, that election does not release Guarantor from its obligations under this Guaranty. The compromise or release of any of the obligations of any of the other guarantors or Borrower shall not serve to impair, waive, alter or release Guarantor's obligations.

**Rights of Subrogation.** Guarantor waives and agrees not to enforce any rights of subrogation, contribution or indemnification it may have against Borrower, any person liable on the Liabilities,

3

AIC000044

or the Collateral, until Borrower and Guarantor have fully performed all their obligations to Lender, even if those obligations are not covered by this Guaranty.

**Waivers.** Guarantor waives (a) to the extent not prohibited by applicable law, all rights and benefits under any laws or statutes regarding sureties, as may be amended; (b) any right Guarantor may have to receive notice of the following matters before Lender enforces any of its rights: (i) Lender's acceptance of this Guaranty, (ii) incurrence or acquisition of any Liabilities, any credit that Lender extends to Borrower, Collateral received or delivered, default by any party to any agreement related to the Liabilities or other action taken in reliance on this Guaranty, and all notices and other demands of any description, (iii) diligence and promptness in preserving liability against any obligor on the Liabilities, and in collecting or bringing suit to collect the Liabilities from any obligor on the Liabilities or to pursue any remedy in Lender's power to pursue, (iv) notice of extensions, renewals, modifications, rearrangements, restatements and substitutions of the Liabilities or any Collateral for the Liabilities, (v) notice of failure to pay any of the Liabilities as they mature, any other default, adverse change in the financial condition of any obligor on the Liabilities, release or substitution of any Collateral, subordination of Lender's rights in any Collateral, and every other notice of every kind that may lawfully be waived, (vi) Borrower's default, (vii) any demand, diligence, presentment, dishonor and protest, or (viii) any action that Lender takes regarding Borrower, anyone else, the Collateral, or any of the Liabilities, which it might be entitled to by law or under any other agreement; (c) any right it may have to require Lender to proceed against Borrower, any other obligor or guarantor of the Liabilities, or the Collateral for the Liabilities or Guarantor's obligations under this Guaranty, or pursue any remedy in Lender's power to pursue; (d) any defense based on any claim Guarantor's obligations exceed or are more burdensome than those of Borrower; (e) the benefit of any statute of limitations affecting Guarantor's obligations hereunder or the enforcement hereof; (f) any defense arising by reason of any disability or other defense of Borrower or by reason of the cessation from any cause whatsoever (other than payment in full) of the obligation of Borrower for the Liabilities; and (g) any defense based on or arising out of any defense Borrower may have to the payment or performance of the Liabilities or any portion thereof. Lender may waive or delay enforcing any of its rights without losing them. Any waiver affects only the specific terms and time period stated in the waiver. No modification or waiver of this Guaranty is effective unless it is in writing and signed by the party against whom it is being enforced.

**Cooperation.** Guarantor agrees to fully cooperate with Lender and not to delay, impede or otherwise interfere with the efforts of Lender to secure payment from the Collateral including actions, proceedings, motions, orders, agreements or other matters relating to relief from automatic stay, abandonment of property, use of cash collateral and sale of the Collateral free and clear of all liens.

**Reinstatement.** Guarantor agrees to the extent any payment or transfer is received by Lender in connection with the Liabilities, and all or any part of the payment or transfer is subsequently invalidated, declared to be fraudulent or preferential, set aside or required to be transferred or repaid by Lender or transferred or paid over to a trustee, receiver or any other entity, whether under any bankruptcy act or otherwise (any of those payments or transfers is hereinafter referred to as a "Preferential Payment"), then this Guaranty shall continue to be effective or shall be reinstated, as the case may be, and whether or not Lender is in possession of this Guaranty, or whether the

4

AIC000045

Guaranty has been marked paid, released or canceled, or returned to Guarantor and, to the extent of the payment, repayment or other transfer by Lender, the Liabilities or part intended to be satisfied by the Preferential Payment shall be revived and continued in full force and effect as if the Preferential Payment had not been made.

**Information.** Guarantor assumes all responsibility for being and keeping itself informed of Borrower's financial condition and assets, and of all other circumstances bearing upon the risk of nonpayment of the Liabilities and the nature, scope and extent of the risks Guarantor assumes and incurs under this Guaranty, and agrees Lender does not have any duty to advise Guarantor of information known to it regarding those circumstances or risks.

**Financial Information.** Guarantor further agrees Guarantor shall provide to Lender the financial statements and other information relating to the financial condition, properties and affairs of Guarantor as Lender requests from time to time.

**Severability.** The provisions of this Guaranty are severable, and in any action or proceeding involving any state corporate law, or any state, federal or foreign bankruptcy, insolvency, reorganization or other law affecting the rights of creditors generally, if the obligations of Guarantor under this Guaranty would otherwise be held or determined to be avoidable, invalid or unenforceable on account of the amount of Guarantor's liability under this Guaranty, then, notwithstanding any other provision of this Guaranty to the contrary, the amount of such liability shall, without any further action by Guarantor or Lender, be automatically limited and reduced to the highest amount that is valid and enforceable as determined in such action or proceeding.

**Representations and Warranties by Guarantor.** Guarantor represents and warrants the following statements are true and will remain true until termination of this Guaranty and payment in full of all Liabilities: (a) the execution and delivery of this Guaranty and the performance of the obligations it imposes do not violate any law, do not conflict with any agreement by which it is bound, or require the consent or approval of any governmental authority or any third party; (b) this Guaranty is a valid and binding agreement, enforceable according to its terms; (c) all balance sheets, profit and loss statements, and other financial statements furnished to Lender in connection with the Liabilities are accurate and fairly reflect the financial condition of the organizations and persons to which they apply on their effective dates, including contingent liabilities of every type, which financial condition has not changed materially and adversely since those dates; (d) Guarantor has filed all federal and state tax returns that are required to be filed, has paid all due and payable taxes and assessments against the property and income of Guarantor and all payroll, excise and other taxes required to be collected and held in trust by Guarantor for any governmental authority; (e) Guarantor has determined that this Guaranty will benefit Guarantor directly or indirectly; (f) Guarantor has (i) without reliance on Lender or any information received from Lender and based upon the records and information Guarantor deems appropriate, made an independent investigation of Borrower, Borrower's business, assets, operations, prospects and condition, financial or otherwise, and any circumstances that may bear upon those transactions, Borrower or the obligations, liabilities and risks undertaken in this Guaranty with respect to the Liabilities, (ii) adequate means to obtain from Borrower on a continuing basis information concerning Borrower and Lender has no duty to provide any information concerning Borrower or any other obligor to Guarantor, (iii) full and complete access to Borrower and any and all records

5

AIC000046

relating to any Liabilities now and in the future owing by Borrower, (iv) not relied and will not rely upon any representations or warranties of Lender not embodied in this Guaranty or any acts taken by Lender prior to and after execution or other authentication and delivery of this Guaranty (including but not limited to any review by Lender of the business, assets, operations, prospects and condition, financial or otherwise, of Borrower), and (v) determined Guarantor will receive benefit, directly or indirectly, and has or will receive fair and reasonably equivalent value for, the execution and delivery of this Guaranty; (g) by entering into this Guaranty, Guarantor does not intend to incur or believe Guarantor will incur debts that would be beyond Guarantor's ability to pay as those debts mature; (h) the execution and delivery of this Guaranty are not intended to hinder, delay or defraud any creditor of Guarantor; and (i) Guarantor is neither engaged in nor about to engage in any business or transaction for which the remaining assets of Guarantor are unreasonably small in relation to the business or transaction, and any property remaining with Guarantor after the execution or other authentication of this Guaranty is not unreasonably small capital. Each Guarantor, other than a natural person, further represents that: (a) it is duly organized, validly existing and in good standing under the laws of the state where it is organized and in good standing in each state where it is doing business; and (b) the execution and delivery of this Guaranty and the performance of the obligations it imposes (i) are within its powers and have been duly authorized by all necessary action of its governing body, and (ii) do not contravene the terms of its articles of incorporation or organization, its by-laws, or any agreement or document governing its affairs.

**Notice.** Except as otherwise provided in this Guaranty, any notices and demands under or related to this document shall be in writing and delivered to the intended party at its address stated herein by one of the following means: (a) by hand, (b) by a nationally recognized overnight courier service, or (c) by certified mail, postage prepaid, with return receipt requested. Notice shall be deemed given: (i) upon receipt if delivered by hand, (ii) on the Delivery Day after the day of deposit with a nationally recognized courier service, or (iii) on the third Delivery Day after the notice is deposited in the mail. "Delivery Day" means a day other than a Saturday, a Sunday, or any other day on which national banking associations are authorized to be closed. Any party may change its address for purposes of the receipt of notices and demands by giving notice of such change in the manner provided in this provision.

**Governing Law and Venue.** This Guaranty shall be governed by and construed in accordance with the laws of the State of Wisconsin (without giving effect to its laws of conflicts). Guarantor agrees any legal action or proceeding with respect to any of its obligations under this agreement may be brought by Lender in any state or federal court located in the State of Wisconsin, as Lender in its sole discretion may elect. By the execution and delivery of this Guaranty, Guarantor submits to and accepts, for itself and in respect of its property, generally and unconditionally, the non-exclusive jurisdiction of those courts. Guarantor waives any claim the State of Wisconsin is not a convenient forum or the proper venue for any such suit, action or proceeding.

**Miscellaneous.** Guarantor's liability under this Guaranty is independent of its liability under any other guaranty previously or subsequently executed by Guarantor or any one of them, singularly or together with others, as to all or any part of the Liabilities, and may be enforced for the full amount of this Guaranty regardless of Guarantor's liability under any other guaranty. This Guaranty binds Guarantor's heirs, successors and assigns, and benefits Lender and its successors

AIC000047

and assigns. Lender may assign this Guaranty in whole or in part without notice. Guarantor agrees Lender may provide any information or knowledge Lender may have about Guarantor or about any matter relating to this Guaranty to one or more purchasers or potential purchasers of this Guaranty or the Liabilities guaranteed hereby. The use of headings does not limit the provisions of this Guaranty. Time is of the essence under this Guaranty and in the performance of every term, covenant and obligation contained herein.

**WAIVER OF SPECIAL DAMAGES.** GUARANTOR WAIVES, TO THE MAXIMUM EXTENT NOT PROHIBITED BY LAW, ANY RIGHT THE UNDERSIGNED MAY HAVE TO CLAIM OR RECOVER FROM LENDER IN ANY LEGAL ACTION OR PROCEEDING ANY SPECIAL, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES.

**JURY WAIVER.** GUARANTOR AND LENDER (BY ITS ACCEPTANCE HEREOF) HEREBY VOLUNTARILY, KNOWINGLY, IRREVOCABLY AND UNCONDITIONALLY WAIVE ANY RIGHT TO HAVE A JURY PARTICIPATE IN RESOLVING ANY DISPUTE (WHETHER BASED ON CONTRACT, TORT, OR OTHERWISE) BETWEEN GUARANTOR AND LENDER ARISING OUT OF OR IN ANY WAY RELATED TO THIS DOCUMENT. THIS PROVISION IS A MATERIAL INDUCEMENT TO LENDER TO PROVIDE THE FINANCING DESCRIBED HEREIN.

[Remainder of page left intentionally blank.]

AIC000048

IN WITNESS WHEREOF Guarantor has executed this Guaranty as of the date first above written.

GUARANTOR:

Signed in the presence of:

_Tamile Kersten_

_Tami a. Kersten_
Typed or Printed Name

_Name: Ronald H. Van Den Heuvel_

_Mack Smulinski_
Typed or Printed Name

STATE OF WISCONSIN    )
                      )ss.
COUNTY OF             )

Be it known, that on this 10th day of December, 2013, before me, a Notary Public, in and for said County and State, personally came Ronald H. Van Den Heuvel, to me personally known to be the person who executed the foregoing instrument, and acknowledged that he/she executed the same freely and voluntarily for the uses and purposes mentioned in it and as his/her free act and deed.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_Debra S. Stary_
Debra S. Stary, Notary Public

_Brown_ County
My Commission Expires: 2/16/14

8

AIC000049

## CONTINUING UNCONDITIONAL GUARANTY

Dated as of December _10_ , 2013

**Guaranty.** To induce MAPLE BRIDGE FUNDING, LLC, a Wyoming liability company, whose address is 55 N Water Street, Suite 3, South Norwalk, Connecticut 06854 (together with its successors and assigns, "Lender"), at its option, to make financial accommodations, make or acquire loans, extend or continue credit or some other benefit, present or future, direct or indirect, and whether several, joint or joint and several, to GREEN BOX NA GREEN BAY, LLC, a Wisconsin limited liability company ("Borrower"), and because the undersigned ("Guarantor") has determined executing this Guaranty is in its interest and to its financial benefit, Guarantor absolutely and unconditionally guarantees to Lender, as primary obligor and not merely as surety, the performance of and full and prompt payment of the Liabilities (as hereinafter defined) when due, whether at stated maturity, by acceleration or otherwise. Guarantor will not only pay the Liabilities, but will also reimburse Lender for any fees, charges, costs and expenses, including reasonable attorneys' fees (including fees and expenses of counsel for Lender that are employees of Lender) and court costs, Lender may pay in collecting from Borrower or Guarantor, and for liquidating any Collateral (collectively, "Collection Amounts"). Guarantor's obligations under this Guaranty shall be payable in lawful money of the United States of America.

**Liabilities.** The term "Liabilities" in this Guaranty means all debts, obligations, indebtedness and liabilities of every kind and character of Borrower, whether individual, joint and several, contingent or otherwise, now or hereafter existing in favor of Lender, including, without limitation, all liabilities, interest, costs and fees, arising under or from any note, open account, overdraft, lease, endorsement, surety agreement, guaranty, or acceptance whether payable to Lender or to a third party and subsequently acquired by Lender, any monetary obligations (including interest) incurred or accrued during the pendency of any bankruptcy, insolvency, receivership or other similar proceedings, regardless of whether allowed or allowable in such proceedings, and all renewals, extensions, modifications, consolidations, rearrangements, restatements, replacements or substitutions of any of the foregoing. Guarantor and Lender specifically contemplate Liabilities may include indebtedness hereafter incurred by Borrower to Lender.

**Limitation.** Guarantor's obligation under this Guaranty is UNLIMITED.

**Continued Reliance.** This Guaranty shall remain in effect until payment in full of the Remaining Liabilities, as defined below, following termination of this Guaranty by Guarantor in accordance with this paragraph. This Guaranty will continue to be in effect until final payment and performance in full of all Liabilities and the termination of any commitment of Lender to make loans or other financial accommodations to Borrower. Guarantor may terminate Guarantor's liability for Liabilities not in existence or for which Lender has no commitment to advance or acquire by delivering written notice to Lender as set forth in the paragraph below captioned "Notice." After Guarantor's termination of this Guaranty, Guarantor will continue to be liable for the following amounts (the "Remaining Liabilities"): (a) all Liabilities existing on the effective date of termination; (b) all Liabilities to which Lender has committed to advance or acquire prior to the effective termination date (whether or not Lender is contractually obligated to advance or acquire the loans or extensions of credit); (c) all subsequent renewals, extensions, modifications,

1

AIG000050

consolidations, rearrangements, restatements, replacements and amendments (but not increases) of those Liabilities; (d) all interest accruing on those Liabilities after the effective termination date; and (e) all Collection Amounts incurred with respect to those Liabilities, on or after the effective termination date. Lender may continue to permit Borrower to incur Liabilities and to issue commitments to Borrower to advance or acquire Liabilities in reliance on this Guaranty until the effective date of termination, regardless of whether at any time or from time to time there are no existing Liabilities nor commitment by Lender to advance or acquire Liabilities.

**Security.** The term "Collateral" in this Guaranty means all real or personal property described in all security agreements, pledge agreements, mortgages, deeds of trust, assignments, or other instruments now or hereafter executed in connection with any of the Liabilities. If applicable, the Collateral secures the payment of the Liabilities.

**Remedies/Acceleration.** If Guarantor fails to pay any amount owing under this Guaranty, Lender shall have all of the rights and remedies provided by law or under any other agreement. Lender is authorized to cause all or any part of the Collateral to be transferred to or registered in its name or in the name of any other person or business entity with or without designation of the capacity of that nominee. Guarantor is liable for any deficiency in payment of any Liabilities whether of principal, interest, fees, costs or expenses remaining after the disposition of any Collateral. Guarantor is liable to Lender for all reasonable costs and expenses of any kind incurred in the making and collection of this Guaranty, including without limitation reasonable attorneys' fees and court costs. These costs and expenses include, without limitation, any costs or expenses incurred by Lender in any bankruptcy, reorganization, insolvency or other similar proceeding. All obligations of Guarantor to Lender under this Guaranty, whether or not then due or absolute or contingent, shall, at the option of Lender, without notice or demand, become due and payable immediately upon the occurrence of any default or event of default under the terms of any of the Liabilities or otherwise with respect to any agreement related to the Liabilities (or any other event that results in acceleration of the maturity of any Liabilities, including without limitation, demand for payment of any Liabilities constituting demand obligations or automatic acceleration in a legal proceeding) or the occurrence of any default under this Guaranty.

**Permissible Actions.** If any monies become available from any source other than Guarantor that Lender can apply to the Liabilities, Lender may apply them in any manner it chooses, including, but not limited to, applying them against obligations, indebtedness or liabilities which are not covered by this Guaranty. Lender may take any action against Borrower, the Collateral, or any other person liable for any of the Liabilities. Lender may release Borrower or anyone else from the Liabilities, either in whole or in part, or release the Collateral, and need not perfect a security interest in the Collateral. Lender does not have to exercise any rights it has against Borrower or anyone else, or make any effort to realize on the Collateral or any other collateral for the Liabilities, or exercise any right of set-off. Guarantor authorizes Lender, without notice or demand and without affecting Guarantor's obligations hereunder, from time to time, to: (a) renew, modify, compromise, rearrange, restate, consolidate, extend, accelerate, postpone, grant any indulgence or otherwise change the time for payment of, or otherwise change the terms of the Liabilities or any part thereof, including increasing or decreasing the rate of interest thereon; (b) release, substitute or add any one or more endorsers, sureties, Guarantor or other guarantors; (c) take and hold Collateral for the payment of this Guaranty or the Liabilities, and enforce, exchange, impair,

2

AIC000051

substitute, subordinate, waive or release any Liabilities or any Collateral for the Liabilities; (d) proceed against such Collateral and direct the order or manner of sale of such Collateral as Lender in its discretion may determine; (e) apply any and all payments from Borrower, Guarantor or any other obligor on the Liabilities, or recoveries from such Collateral, in such order or manner as Lender in its discretion may determine; and (f) to accept any partial payment of Liabilities or collateral for the Liabilities. Guarantor's obligations under this Guaranty shall not be released, diminished or affected by (a) any act or omission of Lender; (b) the voluntary or involuntary liquidation, sale or other disposition of all or substantially all of the assets of Borrower, or any receivership, insolvency, bankruptcy, reorganization, or other similar proceedings affecting Borrower, any other obligor or any of their respective assets; (c) any change in the composition or structure of Borrower, Guarantor or any other obligor on the Liabilities, including a merger or consolidation with any other person or entity; or (d) any payments made upon the Liabilities. Guarantor hereby expressly consents to any impairment of Collateral, including, but not limited to, failure to perfect a security interest and release Collateral and any such impairment or release shall not affect Guarantor's obligations hereunder.

**Nature of Guaranty.** This Guaranty is an absolute guaranty of payment and performance and not of collection. Therefore, Lender may insist Guarantor pay immediately, and Lender is not required to attempt to collect first from Borrower, the Collateral, or any other person liable for the Liabilities. The obligation of Guarantor shall be unconditional and absolute even if all or any part of any agreement between Lender and Borrower is unenforceable, void, voidable or illegal or uncollectible due to incapacity, lack of power or authority, discharge or for any reason whatsoever, and regardless of the existence of any defense, setoff, discharge or counterclaim (in any case, whether based on contract, tort or any other theory) which Borrower may assert. If Borrower is a corporation, limited liability company, partnership or trust, it is not necessary for Lender to inquire into the powers of Borrower or the officers, directors, members, managers, partners, trustees or agents acting or purporting to act on its behalf, and any of the Liabilities made or created in reliance upon the professed exercise of such powers shall be guaranteed hereunder. Without limiting the foregoing, Guarantor's liability is absolute and unconditional irrespective of and shall not be released, diminished or affected by: (a) any present or future law, regulation or order of any jurisdiction (whether of right or in fact) or of any agency thereof purporting to reduce, amend, restructure, render unenforceable or otherwise affect any term of any Liabilities; or (b) any war, riot or revolution impacting multinational companies or any act of expropriation, nationalization or currency inconvertibility or nontransferability arising from governmental, legislative or executive measures affecting any obligor or the property of any obligor on the Liabilities.

**Other Guarantors.** If there is more than one Guarantor, the obligations under this Guaranty are joint and several. In addition, each Guarantor under this Guaranty shall be jointly and severally liable with any other guarantor of the Liabilities. If Lender elects to enforce its rights against fewer than all guarantors of the Liabilities, that election does not release Guarantor from its obligations under this Guaranty. The compromise or release of any of the obligations of any of the other guarantors or Borrower shall not serve to impair, waive, alter or release Guarantor's obligations.

**Rights of Subrogation.** Guarantor waives and agrees not to enforce any rights of subrogation, contribution or indemnification it may have against Borrower, any person liable on the Liabilities,

3

AIC000052

or the Collateral, until Borrower and Guarantor have fully performed all their obligations to Lender, even if those obligations are not covered by this Guaranty.

**Waivers.** Guarantor waives (a) to the extent not prohibited by applicable law, all rights and benefits under any laws or statutes regarding sureties, as may be amended; (b) any right Guarantor may have to receive notice of the following matters before Lender enforces any of its rights: (i) Lender's acceptance of this Guaranty, (ii) incurrence or acquisition of any Liabilities, any credit that Lender extends to Borrower, Collateral received or delivered, default by any party to any agreement related to the Liabilities or other action taken in reliance on this Guaranty, and all notices and other demands of any description, (iii) diligence and promptness in preserving liability against any obligor on the Liabilities, and in collecting or bringing suit to collect the Liabilities from any obligor on the Liabilities or to pursue any remedy in Lender's power to pursue, (iv) notice of extensions, renewals, modifications, rearrangements, restatements and substitutions of the Liabilities or any Collateral for the Liabilities, (v) notice of failure to pay any of the Liabilities as they mature, any other default, adverse change in the financial condition of any obligor on the Liabilities, release or substitution of any Collateral, subordination of Lender's rights in any Collateral, and every other notice of every kind that may lawfully be waived, (vi) Borrower's default, (vii) any demand, diligence, presentment, dishonor and protest, or (viii) any action that Lender takes regarding Borrower, anyone else, the Collateral, or any of the Liabilities, which it might be entitled to by law or under any other agreement; (c) any right it may have to require Lender to proceed against Borrower, any other obligor or guarantor of the Liabilities, or the Collateral for the Liabilities or Guarantor's obligations under this Guaranty, or pursue any remedy in Lender's power to pursue; (d) any defense based on any claim Guarantor's obligations exceed or are more burdensome than those of Borrower; (e) the benefit of any statute of limitations affecting Guarantor's obligations hereunder or the enforcement hereof; (f) any defense arising by reason of any disability or other defense of Borrower or by reason of the cessation from any cause whatsoever (other than payment in full) of the obligation of Borrower for the Liabilities; and (g) any defense based on or arising out of any defense Borrower may have to the payment or performance of the Liabilities or any portion thereof. Lender may waive or delay enforcing any of its rights without losing them. Any waiver affects only the specific terms and time period stated in the waiver. No modification or waiver of this Guaranty is effective unless it is in writing and signed by the party against whom it is being enforced.

**Cooperation.** Guarantor agrees to fully cooperate with Lender and not to delay, impede or otherwise interfere with the efforts of Lender to secure payment from the Collateral including actions, proceedings, motions, orders, agreements or other matters relating to relief from automatic stay, abandonment of property, use of cash collateral and sale of the Collateral free and clear of all liens.

**Reinstatement.** Guarantor agrees to the extent any payment or transfer is received by Lender in connection with the Liabilities, and all or any part of the payment or transfer is subsequently invalidated, declared to be fraudulent or preferential, set aside or required to be transferred or repaid by Lender or transferred or paid over to a trustee, receiver or any other entity, whether under any bankruptcy act or otherwise (any of those payments or transfers is hereinafter referred to as a "Preferential Payment"), then this Guaranty shall continue to be effective or shall be reinstated, as the case may be, and whether or not Lender is in possession of this Guaranty, or whether the

4

AIC000053

Guaranty has been marked paid, released or canceled, or returned to Guarantor and, to the extent of the payment, repayment or other transfer by Lender, the Liabilities or part intended to be satisfied by the Preferential Payment shall be revived and continued in full force and effect as if the Preferential Payment had not been made.

**Information.** Guarantor assumes all responsibility for being and keeping itself informed of Borrower's financial condition and assets, and of all other circumstances bearing upon the risk of nonpayment of the Liabilities and the nature, scope and extent of the risks Guarantor assumes and incurs under this Guaranty, and agrees Lender does not have any duty to advise Guarantor of information known to it regarding those circumstances or risks.

**Financial Information.** Guarantor further agrees Guarantor shall provide to Lender the financial statements and other information relating to the financial condition, properties and affairs of Guarantor as Lender requests from time to time.

**Severability.** The provisions of this Guaranty are severable, and in any action or proceeding involving any state corporate law, or any state, federal or foreign bankruptcy, insolvency, reorganization or other law affecting the rights of creditors generally, if the obligations of Guarantor under this Guaranty would otherwise be held or determined to be avoidable, invalid or unenforceable on account of the amount of Guarantor's liability under this Guaranty, then, notwithstanding any other provision of this Guaranty to the contrary, the amount of such liability shall, without any further action by Guarantor or Lender, be automatically limited and reduced to the highest amount that is valid and enforceable as determined in such action or proceeding.

**Representations and Warranties by Guarantor.** Guarantor represents and warrants the following statements are true and will remain true until termination of this Guaranty and payment in full of all Liabilities: (a) the execution and delivery of this Guaranty and the performance of the obligations it imposes do not violate any law, do not conflict with any agreement by which it is bound, or require the consent or approval of any governmental authority or any third party; (b) this Guaranty is a valid and binding agreement, enforceable according to its terms; (c) all balance sheets, profit and loss statements, and other financial statements furnished to Lender in connection with the Liabilities are accurate and fairly reflect the financial condition of the organizations and persons to which they apply on their effective dates, including contingent liabilities of every type, which financial condition has not changed materially and adversely since those dates; (d) Guarantor has filed all federal and state tax returns that are required to be filed, has paid all due and payable taxes and assessments against the property and income of Guarantor and all payroll, excise and other taxes required to be collected and held in trust by Guarantor for any governmental authority; (e) Guarantor has determined that this Guaranty will benefit Guarantor directly or indirectly; (f) Guarantor has (i) without reliance on Lender or any information received from Lender and based upon the records and information Guarantor deems appropriate, made an independent investigation of Borrower, Borrower's business, assets, operations, prospects and condition, financial or otherwise, and any circumstances that may bear upon those transactions, Borrower or the obligations, liabilities and risks undertaken in this Guaranty with respect to the Liabilities, (ii) adequate means to obtain from Borrower on a continuing basis information concerning Borrower and Lender has no duty to provide any information concerning Borrower or any other obligor to Guarantor, (iii) full and complete access to Borrower and any and all records

5

AIC000054

relating to any Liabilities now and in the future owing by Borrower, (iv) not relied and will not rely upon any representations or warranties of Lender not embodied in this Guaranty or any acts taken by Lender prior to and after execution or other authentication and delivery of this Guaranty (including but not limited to any review by Lender of the business, assets, operations, prospects and condition, financial or otherwise, of Borrower), and (v) determined Guarantor will receive benefit, directly or indirectly, and has or will receive fair and reasonably equivalent value for, the execution and delivery of this Guaranty; (g) by entering into this Guaranty, Guarantor does not intend to incur or believe Guarantor will incur debts that would be beyond Guarantor's ability to pay as those debts mature; (h) the execution and delivery of this Guaranty are not intended to hinder, delay or defraud any creditor of Guarantor; and (i) Guarantor is neither engaged in nor about to engage in any business or transaction for which the remaining assets of Guarantor are unreasonably small in relation to the business or transaction, and any property remaining with Guarantor after the execution or other authentication of this Guaranty is not unreasonably small capital. Each Guarantor, other than a natural person, further represents that: (a) it is duly organized, validly existing and in good standing under the laws of the state where it is organized and in good standing in each state where it is doing business; and (b) the execution and delivery of this Guaranty and the performance of the obligations it imposes (i) are within its powers and have been duly authorized by all necessary action of its governing body, and (ii) do not contravene the terms of its articles of incorporation or organization, its by-laws, or any agreement or document governing its affairs.

**Notice.** Except as otherwise provided in this Guaranty, any notices and demands under or related to this document shall be in writing and delivered to the intended party at its address stated herein by one of the following means: (a) by hand, (b) by a nationally recognized overnight courier service, or (c) by certified mail, postage prepaid, with return receipt requested. Notice shall be deemed given: (i) upon receipt if delivered by hand, (ii) on the Delivery Day after the day of deposit with a nationally recognized courier service, or (iii) on the third Delivery Day after the notice is deposited in the mail. "Delivery Day" means a day other than a Saturday, a Sunday, or any other day on which national banking associations are authorized to be closed. Any party may change its address for purposes of the receipt of notices and demands by giving notice of such change in the manner provided in this provision.

**Governing Law and Venue.** This Guaranty shall be governed by and construed in accordance with the laws of the State of Wisconsin (without giving effect to its laws of conflicts). Guarantor agrees any legal action or proceeding with respect to any of its obligations under this agreement may be brought by Lender in any state or federal court located in the State of Wisconsin, as Lender in its sole discretion may elect. By the execution and delivery of this Guaranty, Guarantor submits to and accepts, for itself and in respect of its property, generally and unconditionally, the non-exclusive jurisdiction of those courts. Guarantor waives any claim the State of Wisconsin is not a convenient forum or the proper venue for any such suit, action or proceeding.

**Miscellaneous.** Guarantor's liability under this Guaranty is independent of its liability under any other guaranty previously or subsequently executed by Guarantor or any one of them, singularly or together with others, as to all or any part of the Liabilities, and may be enforced for the full amount of this Guaranty regardless of Guarantor's liability under any other guaranty. This Guaranty binds Guarantor's heirs, successors and assigns, and benefits Lender and its successors

6

AIC000055

and assigns. Lender may assign this Guaranty in whole or in part without notice. Guarantor agrees Lender may provide any information or knowledge Lender may have about Guarantor or about any matter relating to this Guaranty to one or more purchasers or potential purchasers of this Guaranty or the Liabilities guaranteed hereby. The use of headings does not limit the provisions of this Guaranty. Time is of the essence under this Guaranty and in the performance of every term, covenant and obligation contained herein.

**WAIVER OF SPECIAL DAMAGES.** GUARANTOR WAIVES, TO THE MAXIMUM EXTENT NOT PROHIBITED BY LAW, ANY RIGHT THE UNDERSIGNED MAY HAVE TO CLAIM OR RECOVER FROM LENDER IN ANY LEGAL ACTION OR PROCEEDING ANY SPECIAL, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES.

**JURY WAIVER.** GUARANTOR AND LENDER (BY ITS ACCEPTANCE HEREOF) HEREBY VOLUNTARILY, KNOWINGLY, IRREVOCABLY AND UNCONDITIONALLY WAIVE ANY RIGHT TO HAVE A JURY PARTICIPATE IN RESOLVING ANY DISPUTE (WHETHER BASED ON CONTRACT, TORT, OR OTHERWISE) BETWEEN GUARANTOR AND LENDER ARISING OUT OF OR IN ANY WAY RELATED TO THIS DOCUMENT. THIS PROVISION IS A MATERIAL INDUCEMENT TO LENDER TO PROVIDE THE FINANCING DESCRIBED HEREIN.

[Remainder of page left intentionally blank.]

7

AIC000056

IN WITNESS WHEREOF Guarantor has executed this Guaranty as of the date first above written.

GUARANTOR:

Signed in the presence of:

*Tami A. Kersten*

Typed or Printed Name

*Merk Smolinski*

Typed or Printed Name

ENVIRONMENTAL ADVANCED
RECLAMATION TECHNOLOGY HQ,
LLC, a Wisconsin limited liability company,

By: _____
Name: _Ronald Hidde Von Heuvel_
Title: _Chairman_

STATE OF WISCONSIN     )
                       )ss.
COUNTY OF              )

Be it known, that on this _14th_ day of December, 2013, before me, a Notary Public, in and for said County and State, personally came _Ronald Von Den Heuvel_ who acknowledged himself/herself to be the _Chairman_ of Environmental Advanced Reclamation Technology HQ, LLC, a Wisconsin limited liability company, to me personally known to be the person who executed the foregoing instrument, and acknowledged that he/she executed the same freely and voluntarily for the uses and purposes mentioned in it and as the free act and deed of the said limited liability company.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_Debra S Stary_, Notary Public

_Brown_ County
My Commission Expires: _2/16/14_

8

AIC000057

## COMPANY RESOLUTION

The undersigned being Members holding at least 75% of the total Percentage Interests in Environmental Advanced Reclamation Technology HQ, LLC, a Wisconsin limited liability company, hereby adopt the following Resolution for and on behalf of the Company:

It is resolved that the Company shall guaranty the payment by Green Box NA Green Bay, LLC, a Wisconsin limited liability company, to Maple Bridge Funding, LLC, of all amounts that shall be due and owing under and in connection with that certain loan in the amount of $7,150,000.00 being made by Maple Bridge Funding, LLC to Green Box NA Green Bay, LLC and the various "Loan Documents" executed and delivered in connection with such loan.  It is further resolved that Ronald H. Van Den Heuvel, as Chairman of the Board of Environmental Advanced Reclamation Technology HQ, LLC, shall execute and deliver all agreements, guaranties, instruments, documents and other papers that may be necessary or appropriate for or on behalf of Environmental Advanced Reclamation Technology HQ, LLC in order to accomplish the foregoing.

IN WITNESS WHEREOF, the undersigned have executed this Resolution as of the ___ day of December, 2013.

KVHK, LLC

By: _____
Its:

LS Equities, L.P.

By: _____  · LEG REISINGER
VP of its General Partner SDR Capital, Inc.

RVDH Development, LLC

By: _____
Its: _____

The VK Irrevocable Trust dated
11/1/2010

By: _____
Its: _____

Green Island Spirits

By: _____
Its: _____

AKS Green, LLC

By: _____
Its: _____

Glen Arbor, LLC

By: _____
Its: _____

The Ron VDH Irrevocable Trust dated
7/22/2003

By: _____
Its: _____

11364949.1

AIC000058

*File*
*Closing*

IN WITNESS WHEREOF, the undersigned do hereunto set their signatures this _7_ day of December, 2013.

ENVIRONMENTAL ADVANCED
RECLAMATION TECHNOLOGY HQ, LLC,
a Wisconsin limited liability company,

By: _____
Name: _Ronald H Van Dew Heuvel_
Title: _Chairman_

KYHK, LLC,
a Wisconsin limited liability company

By: _____
Name: _Kelly Yessman (Van Den Heuvel)_
Title: _____

LS EQUITIES, LP,
a ~~California~~ limited partnership
By: _hed ___ . V.P. of SDR CAPITAL, INC._
Its General Partner

By: _____    _Green Island Spirits LLC._
Name: _Manager._
Title: _____

_____
Pedro Fernandez

2

AIC000059

## CLOSING AGREEMENT

THIS CLOSING AGREEMENT (the "Agreement") is entered into this _/O_ day of December, 2013, by and among GREEN BOX NA GREEN BAY, LLC, a Wisconsin limited liability company, 2077B Lawrence Drive, De Pere, Wisconsin 54115 ("Borrower") and MAPLE BRIDGE FUNDING, LLC, a Wyoming limited liability company, 55 N Water Street, Ste. 3, South Norwalk, Connecticut 06854 ("Lender").

## BACKGROUND

Pursuant to separate instruments, Borrower has agreed to borrow from Lender and Lender has agreed to lend to Borrower the sum of Seven Million One Hundred Fifty Thousand and 00/100 Dollars ($7,150,000.00), such loan (the "Loan") being evidenced by a promissory note (the "Note") dated December _/O_, 2013 executed by Borrower to Lender in the amount of Seven Million One Hundred Fifty Thousand and 00/100 Dollars ($7,150,000.00) and various other documents including, but not limited to, a Mortgage and Security Agreement (the "Mortgage"). Pursuant to the terms and conditions of the Mortgage, Borrower has granted Lender a lien upon certain real property owned by Borrower located in Brown County, Wisconsin as more fully described in such Mortgage (the "Property"). The terms and conditions of the Mortgage also grant Lender a lien upon all personal property of Borrower located on or in the Property including all personal property acquired subsequent to the execution of the Mortgage. Borrower has requested Lender agree to subordinate its lien upon personal property acquired after the date of the Mortgage (the "Additional Personal Property") and Lender is willing to subordinate its lien provided certain terms and conditions described herein are satisfied by Borrower at the time of any such request.

NOW, THEREFORE, in consideration of the premises, Borrower and Lender agree as follows:

1. At such time as Borrower elects to acquire Additional Personal Property which will be located on or in the Property, upon request by Borrower that Lender subordinate its lien otherwise granted therein pursuant to the Mortgage, Lender shall subordinate its lien in and on such Additional Personal Property to the lien of a third-party lender (the "Equipment Lender") within five (5) days following Lender's receipt of such request provided that:

    (a) No Event of Default then exists in the Note, the Mortgage or any other document executed by Borrower and delivered to Lender in conjunction with the Loan (the "Loan Documents");

    (b) Borrower provides Lender with the name and address of the Equipment Lender and such other information reasonably requested by Lender including, but not limited to, a complete list of the Additional Personal Property;

    (c) The Equipment Lender is unrelated to Borrower or (i) any subsidiary, parent company, affiliated entity, related entity, predecessor entity, or division thereof; or

1

AIC000060

(ii) any current or former partner, officer, director, trustee, agent or employee, of an entity referenced in or encompassed (i) herein.

(d) Borrower pays Lender the costs it incurs (including reasonable attorneys' fees) in preparing and recording any and all documents necessary to evidence Lender's subordination of its lien to the lien of the Equipment Lender.

2. For purposes hereof, Additional Personal Property shall mean any personal property located on or in the Property other than the personal property described on Exhibit "A" hereto in which an Equipment Lender is granted a security interest by Borrower.

3. If any of the provisions of this Agreement or the application thereof to any persons or circumstances shall to any extent be invalid or unenforceable, the remainder of this Agreement, and the application of such provision or provisions to persons or circumstances other than those as to whom or which it is held invalid or unenforceable, shall not be affected thereby, and every provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

4. In the event of any controversy, claim, dispute, or litigation between the parties hereto to enforce any provision of this Agreement or any right of Lender hereunder, Borrower agrees to pay to Lender all costs and expenses, including reasonable attorneys' fees incurred therein by Lender, whether in preparation for or during any trial, as a result of an appeal from a judgment entered in such litigation or otherwise.

5. This Agreement may not be modified, amended or otherwise changed in any manner unless done so by a writing executed by Borrower and Lender.

6. This Agreement and all the covenants, terms and provisions contained herein shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors and assigns.

7. Any notice required or provided for herein shall be in writing and shall be delivered personally or sent by certified mail or reputable courier service with charges prepaid, to the address for Borrower and Lender set forth on the first page of this Agreement or at such other address as either Borrower or Lender shall designate by written notice as provided in this paragraph. Notice shall be deemed given on the date received. Any notice which is rejected, the acceptance of which is refused or which is incapable of being delivered during normal business hours at the address provided herein or such other address designated pursuant hereto shall be deemed received as of the date of the attempted delivery.

8. Time is of the essence of this Agreement.

2

AIC000061

9. This Agreement, the interpretation hereof and the rights, obligations, duties and liabilities hereunder shall be governed and controlled by the laws of the State of Wisconsin.

10. NEITHER LENDER NOR BORROWER SHALL BE RESPONSIBLE OR LIABLE TO THE OTHER OR TO ANY OTHER PERSON FOR ANY PUNITIVE, EXEMPLARY OR CONSEQUENTIAL DAMAGES WHICH MAY BE ALLEGED AS A RESULT OF THIS AGREEMENT OR THE TRANSACTION CONTEMPLATED HEREBY, INCLUDING ANY BREACH OR OTHER DEFAULT BY ANY PARTY HERETO.

11. TO THE MAXIMUM EXTENT PERMITTED BY LAW, BORROWER AND LENDER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED ON THE TRANSACTION CONTEMPLATED BY THIS AGREEMENT OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENT (WHETHER VERBAL OR WRITTEN) OR ACTION OF ANY PARTY OR ANY EXERCISE BY ANY PARTY OF THEIR RESPECTIVE RIGHTS UNDER THE LOAN DOCUMENTS OR IN ANY WAY RELATING TO THIS AGREEMENT (INCLUDING ANY ACTION TO RESCIND OR CANCEL THIS AGREEMENT, AND ANY CLAIM OR DEFENSE ASSERTING THAT THIS AGREEMENT WAS FRAUDULENTLY INDUCED OR IS OTHERWISE VOID OR VOIDABLE). THIS WAIVER IS A MATERIAL INDUCEMENT FOR LENDER TO ACCEPT THIS AGREEMENT.   BORROWER AND LENDER HEREBY IRREVOCABLY SUBMIT TO THE JURISDICTION OF ANY FEDERAL OR STATE COURT IN THE STATE OF WISCONSIN IN ANY ACTION, SUIT OR PROCEEDING BROUGHT AGAINST IT AND RELATED TO OR IN CONNECTION WITH THIS AGREEMENT AND TO THE EXTENT PERMITTED BY APPLICABLE LAW, THE PARTIES HERETO HEREBY WAIVE AND AGREE NOT TO ASSERT BY WAY OF MOTION, AS A DEFENSE OR OTHERWISE, IN ANY SUCH SUIT, ACTION OR PROCEEDING ANY CLAIM THAT IT IS NOT SUBJECT TO THE JURISDICTION OF SUCH FEDERAL OR STATE COURTS, THAT THE SUIT, ACTION OR PROCEEDING IS BROUGHT IN AN INCONVENIENT FORUM, THAT THE VENUE OF THE SUIT, ACTION OR PROCEEDING IS IMPROPER, OR THAT THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT OR ANY OTHER DOCUMENT OR INSTRUMENT REFERRED TO HEREIN OR THEREIN OR THE SUBJECT MATTER HEREOF OR THEREOF MAY NOT BE LITIGATED IN OR BY SUCH FEDERAL OR STATE COURTS.

12. **THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AS TO THE**

3

AIC000062

MATTERS REFERENCED HEREIN AND THEREIN AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.  THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

[Remainder of this page left intentionally blank.]

4

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date and year first above written.

BORROWER:

GREEN BOX NA GREEN BAY, LLC,
a Wisconsin limited liability company
By: ENVIRONMENTAL ADVANCED
RECLAMATION TECHNOLOGY HQ, LLC,
a Wisconsin limited liability company,
its Manager

By: _____
   Name: Ronald Van Den Heuvel
   Title: Chairman

LENDER:

MAPLE BRIDGE FUNDING, LLC,
a Wyoming limited liability company

By: _____
   Name: Tim O'Shea
   Its: Manager

5

AIC000064



Non production auxiliary equipment owned by Green Box

Vacuum Pump System
Vacuum Pump System

Air Compressor System
Air Compressor System
Air Compressor System

Fire Pump Booster
Fire Pump Booster

Fork Lift
Fork Lift
Fork Lift

Clamp PR
Clamp PR

Wrapper-Paper
Wrapper-Paper

Dust and Air Handling System

Plastic Stretch Wrapper
Plastic Stretch Wrapper

Approximate total installed value               $1,830,000.00

Exhibit "A"

AIC000065

## BORROWER'S CERTIFICATE

This certificate is made as of the 7th day of December 2013 in connection with that certain opinion letter being issued on or about the date of this Certificate by Arnstein & Lehr LLP (the "Legal Counsel"), and may be relied on by Legal Counsel in connection with same. Such opinions are being issued in connection with a certain $7,150,000.00 mortgage loan (the "Loan") from Maple Bridge Funding, LLC ("Lender") to Green Box NA Green Bay, LLC ("Borrower") secured by that certain property located at 2107 American Blvd., DePere, Wisconsin (the "Project"), with said loan being guaranteed by Environmental Advanced Reclamation Technology HQ, LLC and Ronald H. Van Den Heuvel (the "Guarantors"). As used herein, the "Opinion Parties" means the Borrower and Guarantors. Based on the foregoing, the undersigned hereby certify as follows:

1.   Each natural person executing any of the documents or instruments evidencing, securing or governing the Loan (the "Loan Documents") is legally competent to do so.

2.   The terms and conditions of the Loan, as reflected in the Loan Documents, have not been amended, modified or supplemented by any other agreement, understanding or waiver, and the Loan Documents are all of the documents and instruments executed by or binding on the Opinion Parties which govern the terms and conditions of the Loan.

3.   The factual matters set forth in Borrower's representations and warranties in the Loan Documents are true and accurate in all material respects.

4.   Each of the Opinion Parties has the power and authority, and has been duly authorized, to execute and deliver the Loan Documents and to perform its obligations thereunder. Each of the Loan Documents to which the Opinion Parties are a party has been duly executed by the parties and is enforceable in accordance with its terms.

5.   There is no litigation or other proceeding pending before any court, administrative agency or other governmental body against any of the Opinion Parties or the Project.

6.   No authorization, consent, approval or other action by or filing with any Wisconsin state or federal court or governmental authority is required in connection with the execution and delivery by the Opinion Parties of the Loan Documents, other than any necessary recording and filing of the Loan Documents for putting third parties on notice thereof.

7.   The execution, delivery, and performance of the Loan Documents and recordation of the Mortgage do not violate or constitute a breach or default under any agreement to which the Opinion Parties is a party, or any order

11357198.1

AIC000066

of any court or governmental authority, which is binding on the Opinion Parties.

Green Box NA Green Bay, LLC
a Wisconsin limited liability company

Earth Advanced Reclamation Technology HQ, LLC
By: _____

Printed Name: Ronald H. Van Den Heuvel

Its: Manager


Earth Advanced Reclamation Technology HQ, LLC
By: _____

Printed Name: Ronald H. Van Den Heuvel

Its: Manager

_____
Ronald H. Van Den Heuvel, Individually

11357198.1

AIC000067



This instrument prepared by
and after recording return to:
Michael L. Helt
Michael L. Helt, P.C.
1609 NW Rust Road
Grain Valley, Missouri 64029

Tax Parcel Number: WD-1042

## ABSOLUTE ASSIGNMENT OF LEASES AND RENTS
### (With License Back)

THIS ABSOLUTE ASSIGNMENT OF LEASES AND RENTS (this "Assignment"), is made as of the _10th_ day of December, 2013 by GREEN BOX NA GREEN BAY, LLC, a Wisconsin limited liability company, 2077B Lawrence Drive, De Pere, Wisconsin 54115 ("Borrower") in favor of MAPLE BRIDGE FUNDING, LLC, a Wyoming limited liability company, 55 N Water Street, Ste. 3, South Norwalk, Connecticut 06854 ("Lender").

WITNESSETH:

FOR AND IN CONSIDERATION of the indebtedness hereinafter described, Borrower has granted, bargained, sold and conveyed, and by these presents does grant, bargain, sell and convey, unto Lender, its successors and assigns forever, all and singular the property hereinafter described (collectively, the "Security"), to wit:

(a)   All rents, issues and profits arising from or related to the land situated in the County of Brown and State of Wisconsin described in **Exhibit "A"** attached hereto and fully incorporated herein by reference for all purposes and all improvements and any other property, whether real, personal or mixed, located thereon (which land, improvements and other property are hereinafter collectively called the "Property");

1

AIC000068

(b)     All of Borrower's rights, titles, interests and privileges, as lessor, in the leases now existing or hereafter made affecting the Property whether or not made by Borrower and as the same may have been, or may from time to time hereafter be, modified, extended and renewed (hereinafter collectively called the "Leases" and individually called a "Lease");

(c)     All tenant security deposits and other amounts due and becoming due under the Leases;

(d)     All guarantees of the Leases, including guarantees of tenant performance;

(e)     All insurance proceeds, including rental loss coverage and business interruption coverage with respect to the Leases; and

(f)     All judgments and settlements of claims in favor of Borrower (including condemnation proceeds, if any) and all rights, claims and causes of action under any court proceeding, including without limitation any bankruptcy, reorganization or insolvency proceeding, or otherwise arising from the Leases.

TO HAVE AND TO HOLD the Security unto Lender, its successors and assigns forever, and Borrower does hereby bind itself, its heirs, legal representatives, successors and assigns, to warrant and forever defend the Security unto Lender, its successors and assigns forever against the claim or claims of all persons whomsoever claiming the same or any part thereof.

## ARTICLE I
## DEFINITIONS

1.01     **Terms Defined Above**. As used in this Assignment, the terms "Borrower", "Leases", "Lender", "Property" and "Security" shall have the respective meanings indicated above.

1.02     **Certain Definitions**.   The following terms shall have the meanings assigned to them below whenever they are used in this Assignment, unless the context clearly otherwise requires.   Except where the context otherwise requires, words in the singular form shall include the plural and vice versa.

"Event of Default" shall mean any Event of Default as defined in the Loan Documents.

"Lien Instrument" shall mean that certain Mortgage and Security Agreement of even date herewith, executed by Borrower and granting a lien on the Property to Lender, as such instrument may be amended and restated from time to time.

2

AIC000069

"Loan Commitment" shall mean that certain Conditional Commitment Letter dated November 10, 2013 from Lender to Borrower and accepted by Borrower on November 12, 2013.

"Loan Documents" shall mean the Note, the Lien Instrument, this Assignment, the Loan Commitment, that certain Certification of even date herewith from Borrower to Lender and any other supplements and authorizations required by Lender and all other instruments and documents (as the same may be amended from time to time) executed by Borrower and delivered to Lender in connection with, or as security for, the indebtedness evidenced by the Note, except for that certain Environmental Indemnity Agreement of even date herewith given by Borrower and Ronald H. Van Den Heuvel, to Lender, as any of the foregoing may be amended from time to time.

"Note" shall mean that certain Promissory Note of even date herewith, in the original principal amount of Seven Million One Hundred Fifty Thousand and 00/100 Dollars ($7,150,000.00), executed by Borrower and payable to the order of Lender, as such instrument may be amended, renewed and restated from time to time.

"Obligations" shall mean the following:

    (a)    The indebtedness evidenced by the Note and all interest thereon;

    (b)    The performance of all covenants and agreements of Borrower contained in the Loan Documents;

    (c)    All funds hereafter advanced by Lender to or for the benefit of Borrower as contemplated by any covenant or provision contained in any Loan Document and all interest thereon;

    (d)    All renewals, extensions, rearrangements and modifications of any of the Obligations described hereinabove; and

    (e)    Any and all attorneys' fees and expenses of collection payable under the terms of any Loan Document.

## ARTICLE II
## ASSIGNMENT

2.01    **Absolute Assignment**.  This Assignment is, and is intended to be, an absolute and present assignment of the Security from Borrower to Lender with a concurrent license back to Borrower (which license is subject to revocation upon the occurrence of an

AIC000070

Event of Default as herein provided) and is not intended as merely the granting of a security interest relating to the Obligations.

2.02   **License**.  Borrower is hereby granted the license to manage and control the Security and to collect at the time of, but not prior to, the date provided for the payment thereof, all rents, issues and profits from the Property, and to retain, use and enjoy the same. The license created and granted hereby shall be revocable upon the terms and conditions contained herein.

2.03   **Revocation of License**.  Immediately upon the occurrence of an Event of Default and at any time thereafter, Lender may, at its option and without regard to the adequacy of the security for the Obligations, either by an authorized representative or agent, with or without bringing or instituting any judicial or other action or proceeding, or by a receiver appointed by a court, immediately revoke the license granted in Section 2.02, as evidenced by a written notice to said effect given to Borrower, and further, at Lender's option (without any obligation to do so), take possession of the Property and the Security and have, hold, manage, lease and operate the Property and the Security on such terms and for such period of time as Lender may deem proper, and, in addition, either with or without taking possession of the Property, demand, sue for or otherwise collect and receive all rents, issues and profits from the Property, including those past due and unpaid, with full power to make, from time to time, all alterations, renovations, repairs or replacements thereto or thereof as may seem proper to Lender in its sole discretion, and to apply (in such order and priority as Lender shall determine in its sole discretion) such rents, issues and profits to the payment of:

(a)   all expenses of (i) managing the Property, including without implied limitation, the salaries, fees and wages of a managing agent and such other employees as Lender may in its sole discretion deem necessary or desirable, (ii) operating and maintaining the Property, including without implied limitation, all taxes, charges, claims, assessments, water rents, sewer rents and any other liens and premiums for all insurance which Lender may in its sole discretion deem necessary or desirable, (iii) the cost of any and all alterations, renovations, repairs or replacements of or to the Property, and (iv) any and all expenses incident to taking and retaining possession of the Property and the Security; and

(b)   the Obligations.

The exercise by Lender of the rights granted it in this Section 2.03, and the collection and receipt of rents, issues and profits and the application thereof as herein provided, shall not be considered a waiver of any Event of Default.

2.04   **Trust Funds**.  All monies or funds covered by this Assignment paid to, or for the benefit of, Borrower after any Event of Default are hereby declared, and shall be deemed to be, trust funds in the hands of Borrower for the sole benefit of Lender, until all

AIC000071

Events of Default have been cured or waived or the Obligations have been paid and performed in full. Borrower, or any officer, director, representative or agent thereof receiving such trust funds or having control or direction of same, is hereby made and shall be construed to be a trustee of such trust funds so received or under its control and direction, and such person shall be under a strict obligation and duty should such persons receive or constructively receive trust funds to (a) remit any and all such trust funds to Lender within twenty-four (24) hours of receipt, upon demand therefor by Lender or (b) to apply such trust funds only to Obligations then due or the operating expenses of the Property.

## ARTICLE III
## COVENANTS, REPRESENTATIONS AND WARRANTIES

3.01     **Liability**.  Lender shall not be liable for any loss sustained by Borrower resulting from Lender's failure to let the Property after an Event of Default or from any other act or omission of Lender in managing the Property or the Security after an Event of Default, except for acts constituting gross negligence or willful misconduct. Lender shall not be obligated to perform or discharge, nor does Lender hereby undertake to perform or discharge, any obligation, duty or liability under any Lease, and Borrower shall and does hereby indemnify Lender for, and save and hold Lender harmless from, any and all liability, loss or damages, except so much thereof as shall result from the gross negligence or willful misconduct of Lender, which may or might be incurred under any Lease or under or by reason of this Assignment and from any and all claims and demands whatsoever which may be asserted against Lender by reason of any alleged obligation or undertaking on its part to perform or discharge any of the terms, covenants or agreements contained in any Lease, including, without implied limitation, any claims by any tenants of credit for rents for any period paid to and received by Borrower but not delivered to Lender. Should Lender incur any such liability under any Lease in defense of any such claim or demand, the amount thereof, including, without implied limitation, all costs, expenses and attorneys' fees, shall be added to the principal of the Note and Borrower shall reimburse Lender therefore immediately upon demand.  This Assignment shall not operate to place responsibility upon Lender for the control, care, upkeep, management, operation or repair of the Property and the Security or for the carrying out of any of the terms and conditions of any Lease; nor shall this Assignment operate to make Lender responsible or liable for any waste committed on the Property by the tenants or any other party, for any dangerous or defective condition of the Property or for any negligence in the control, care, upkeep, operation, management or repair of the Property resulting in loss or injury or death to any tenant, licensee, employee, stranger or other person whatsoever.

3.02     **Termination**.  Upon payment and performance of the Obligations in full, this Assignment shall become null and void and of no further legal force or effect, but the affidavit, certificate, letter or statement of any officer, agent, authorized representative or attorney of Lender showing any part of the Obligations remaining unpaid or unperformed shall be and constitute conclusive evidence of the validity, effectiveness and continuing force of this Assignment upon which any person may, and is hereby authorized to, rely. Borrower hereby authorizes and directs all tenants under the Leases, all guarantors of Leases, all insurers providing rental loss or business interruption insurance with respect to

5

AIC000072

the Property, all governmental authorities and all other occupants of the Property, upon receipt from Lender of written notice to the effect that Lender is then the holder of the Note and that an Event of Default exists, to pay over to Lender all rents and other amounts due and to become due under the Leases and under guaranties of the Leases and all other issues and profits from the Property and to continue so to do until otherwise notified in writing by Lender.  This right may be exercised without Lender taking actual or constructive possession of the Property or any part thereof.

  3.03 **Security**.  Lender may take or release any security for the payment or performance of the Obligations, may release any party primarily or secondarily liable therefor and may apply any security held by it to the satisfaction of all or any portion of the Obligations, without prejudice to any of its rights under this Assignment, the other Loan Documents or otherwise available at law or in equity.

  3.04 **Covenants**.  Borrower covenants with Lender:

   (a) to observe and perform all the obligations imposed upon the lessor under all Leases and not to do or permit to be done anything to impair the same without Lender's prior written consent;

   (b) not to collect any of the rent or other amounts due under any Lease or other issues or profits from the Property in any manner in advance of the time when the same shall become due (save and except only for collecting one month's rent in advance plus the security deposit, if any, at the time of execution of a Lease);

   (c) not to execute any other assignment of rents, issues or profits arising or accruing from the Leases or from the Property;

   (d) not to enter into any lease agreement affecting the Property except in the ordinary course of business with commercially reasonable terms and provisions;

   (e) to execute and deliver, at the request of Lender, all such further assurances and acknowledgments of the assignment contained herein and the other provisions hereof, with respect to specific Leases or otherwise, as Lender shall from time to time require;

   (f) to request, and use commercially reasonable efforts to obtain, from any tenant at the Property, from time to time as requested by Lender, estoppel certificates in form and substance satisfactory to Lender, confirming the terms of such tenant's Lease and the absence of default thereunder;

6

AIC000073

(g)     to provide Lender with a current rent roll and copies of all Leases, not later than fifteen (15) days following Lender's written request therefor;

(h)     to provide prompt written notice to Lender of any notice of Borrower's default received from any tenant and to further provide to Lender a complete copy thereof; and

(i)     not cancel, surrender or terminate any Lease, exercise any option which might lead to such termination or consent to any change, modification, or alteration thereof, to the release of any party liable thereunder or to the assignment of the lessee's interest therein, without the prior written consent of Lender, and any of said acts, if done without the prior written consent of Lender, shall be null and void.

3.05    **Authority to Assign.**  Borrower represents and warrants that:

(a)     Borrower has full right and authority to execute this Assignment and has no knowledge of any existing defaults under any existing Lease;

(b)     all conditions precedent to the effectiveness of any existing Lease have been satisfied;

(c)     Borrower has not executed or granted any modification of any existing Lease, either orally or in writing;

(d)     all existing Leases are in full force and effect according to the terms set forth in the lease instruments heretofore submitted to Lender; and

(e)     Borrower has not executed any other instrument which might prevent Lender from operating under any of the terms and conditions of this Assignment, including any other assignment of the Leases or the rents, issues and profits from the Property.

3.06    **Cross-Default.**   Violation or default under any of the covenants, representations, warranties and provisions contained in this Assignment by Borrower shall be deemed a default hereunder as well as under the terms of the other Loan Documents, and any default thereunder shall likewise be a default under this Assignment. Any default by Borrower under any of the terms of any Lease shall be deemed a default hereunder and under the terms of the other Loan Documents, and any expenditures made by Lender in curing such default on Borrower's behalf, with interest thereon at the Default Rate (as defined in the Note), shall become part of the Obligations.

3.07    **No Mortgagee in Possession.**   The acceptance by Lender of this Assignment, with all of the rights, powers, privileges and authority created hereby, shall

7

AIC000074

not, prior to entry upon and taking possession of the Property by Lender, be deemed or construed to constitute Lender a "mortgagee in possession", or hereafter or at any time or in any event obligate Lender to appear in or defend any action or proceeding relating to any Lease, the Property or the Security, to take any action hereunder, to expend any money, incur any expense, perform or discharge any obligation, duty or liability under any Lease, or to assume any obligation or responsibility for any security deposits or other deposits delivered to Borrower by any tenant and not actually delivered to Lender. Lender shall not be liable in any way for any injury or damage to any person or property sustained in or about the Property.

3.08    **Representation and Warranty**.  Borrower represents and warrants that: (a) no Lease grants the tenant thereunder or any other party (i) the right or option to acquire the Property or any portion of the Property or (ii) any rights with respect to any other property owned by Borrower; (b) Borrower is the sole owner of the lessor's or landlord's interest in the Leases; (c) all existing Leases are in full force and effect, are valid and enforceable and have not been altered, modified or amended in any manner; (d) no portion of the Leases or any interest therein has heretofore been assigned or pledged; (e) all rent due to date under the Leases has been collected and no tenant has been granted a concession in the form of a waiver, release, reduction, discount or other alteration of the rentals due or to become due under the Leases; (f) no rent for any period subsequent to the date of this Assignment has been collected in advance of the time when the same is due under the terms of the existing Leases; (g) neither Borrower or any tenant under the Leases is in default under any of the terms, covenants or conditions in any of the existing Leases; and (h) no tenant has any defense, set-off or counterclaim against Borrower under any of the existing Leases.

## ARTICLE IV
## GENERAL

4.01    **Remedies**.  The rights and remedies provided Lender in this Assignment and the other Loan Documents are cumulative.  Nothing contained in this Assignment, and no act done or omitted by Lender pursuant hereto, including, without implied limitation, the collection of any rents, shall be deemed to be a waiver by Lender of any of its rights and remedies under the other Loan Documents or applicable law or a waiver of any default under the other Loan Documents, and this Assignment is made and accepted without prejudice to any of the rights and remedies provided Lender by the other Loan Documents. The right of Lender to collect the principal sum and the interest due on the Note and to enforce the other Loan Documents may be exercised by Lender either prior to, simultaneously with, or subsequent to any action taken by it hereunder.

4.02    **Notice**.  Any notice required or provided for herein shall be in writing and shall be delivered personally or sent by certified mail or reputable courier service with charges prepaid, to the address for Borrower and Lender set forth on the first page of this Assignment or at such other address as either Borrower or Lender shall designate by written notice as provided in this paragraph.  Notice shall be deemed given on the date received. Any notice which is rejected, the acceptance of which is refused or which is incapable of

8

AIC000075

being delivered during normal business hours at the address provided herein or such other address designated pursuant hereto shall be deemed received as of the date of the attempted delivery.

4.03 **Appointment.** Borrower irrevocably appoints Lender its true and lawful attorney in fact, which appointment is coupled with an interest, to execute any or all of the rights or powers described herein with the same force and effect as if executed by Borrower, and Borrower ratifies and confirms any and all acts done or omitted to be done by Lender, its agents, servants, employees or attorneys in, to or about the Property.

4.04 **Captions**. The title and headings of the various Articles and Sections hereof are intended solely for reference and are not intended to modify, explain or affect the meaning of the provisions of this Assignment.

4.05 **Severability**. If any of the provisions of this Assignment or the application thereof to any persons or circumstances shall to any extent be invalid or unenforceable, the remainder of this Assignment, and the application of such provision or provisions to persons or circumstances other than those as to whom or which it is held invalid or unenforceable, shall not be affected thereby, and every provision of this Assignment shall be valid and enforceable to the fullest extent permitted by law.

4.06 **Attorneys' Fees**. In the event of any controversy, claim, dispute, or litigation between the parties hereto to enforce any provision of this Assignment or any right of Lender hereunder, Borrower agrees to pay to Lender all costs and expenses, including reasonable attorneys' fees incurred therein by Lender, whether in preparation for or during any trial, as a result of an appeal from a judgment entered in such litigation or otherwise.

4.07 **Amendments**. This Assignment may not be modified, amended or otherwise changed in any manner unless done so by a writing executed by Borrower and Lender.

4.08 **Benefits**. This Assignment and all the covenants, terms and provisions contained herein shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors and assigns.

4.09 **Assignment**. Borrower shall have no right to assign or transfer the revocable license granted herein. Any such assignment or transfer shall constitute a default.

4.10 **Time of Essence**. Time is of the essence of this Assignment.

9

AIC000076

4.11 **Governing Law**. This Assignment, the interpretation hereof and the rights, obligations, duties and liabilities hereunder shall be governed and controlled by the laws of the State of Wisconsin.

4.12 **Limitation of Liability**. Notwithstanding any provision contained in this Assignment, the personal liability of Borrower shall be limited as provided in the Note.

4.13 **Conflicts**. This Assignment is intended to be supplementary to, and not in substitution for or in derogation of any assignment of leases and rents contained in any other Loan Document specifically including, but not limited to, the Lien Instrument. If any conflict or inconsistency exists between this Assignment and the assignment of the rents and leases as security in any of the other Loan Documents, the terms of this Assignment shall control.

4.14 **WAIVER OF PUNITIVE OR CONSEQUENTIAL DAMAGES.** NEITHER LENDER (BY ITS ACCEPTANCE HEREOF) NOR BORROWER SHALL BE RESPONSIBLE OR LIABLE TO THE OTHER OR TO ANY OTHER PERSON FOR ANY PUNITIVE, EXEMPLARY OR CONSEQUENTIAL DAMAGES WHICH MAY BE ALLEGED AS A RESULT OF THIS ASSIGNMENT OR THE TRANSACTION CONTEMPLATED HEREBY, INCLUDING ANY BREACH OR OTHER DEFAULT BY ANY PARTY HERETO.

4.15 **WAIVER OF JURY TRIAL/SUBMISSION TO JURISDICTION**. TO THE MAXIMUM EXTENT PERMITTED BY LAW, BORROWER AND LENDER (BY ITS ACCEPTANCE HEREOF) HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED ON THE TRANSACTION CONTEMPLATED BY THIS ASSIGNMENT OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS ASSIGNMENT OR ANY OTHER LOAN DOCUMENT, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENT (WHETHER VERBAL OR WRITTEN) OR ACTION OF ANY PARTY OR ANY EXERCISE BY ANY PARTY OF THEIR RESPECTIVE RIGHTS UNDER THE LOAN DOCUMENTS OR IN ANY WAY RELATING TO THIS ASSIGNMENT OR THE SECURITY (INCLUDING ANY ACTION TO RESCIND OR CANCEL THIS ASSIGNMENT, AND ANY CLAIM OR DEFENSE ASSERTING THAT THIS ASSIGNMENT WAS FRAUDULENTLY INDUCED OR IS OTHERWISE VOID OR VOIDABLE). THIS WAIVER IS A MATERIAL INDUCEMENT FOR LENDER TO ACCEPT THIS ASSIGNMENT. BORROWER AND LENDER HEREBY IRREVOCABLY SUBMIT TO THE JURISDICTION OF ANY FEDERAL OR STATE COURT IN THE STATE OF WISCONSIN IN ANY ACTION, SUIT OR PROCEEDING BROUGHT AGAINST IT AND RELATED TO OR IN CONNECTION WITH THIS ASSIGNMENT AND TO THE EXTENT PERMITTED BY APPLICABLE LAW, THE PARTIES HERETO HEREBY WAIVE AND AGREE NOT TO ASSERT BY WAY OF MOTION, AS A DEFENSE OR OTHERWISE, IN ANY SUCH SUIT, ACTION OR PROCEEDING ANY CLAIM THAT IT IS NOT SUBJECT TO THE JURISDICTION OF SUCH FEDERAL OR STATE COURTS, THAT THE SUIT, ACTION OR PROCEEDING IS BROUGHT IN AN INCONVENIENT FORUM, THAT THE VENUE OF THE SUIT, ACTION OR

10

PROCEEDING IS IMPROPER, OR THAT THIS ASSIGNMENT OR ANY OTHER LOAN DOCUMENT OR ANY OTHER DOCUMENT OR INSTRUMENT REFERRED TO HEREIN OR THEREIN OR THE SUBJECT MATTER HEREOF OR THEREOF MAY NOT BE LITIGATED IN OR BY SUCH FEDERAL OR STATE COURTS.

[Remainder of this Page Left Intentionally Blank.]

11

AIC000078

IN WITNESS WHEREOF, this Assignment has been executed as of the day and year first-above written.

**BORROWER:**

Signed in the presence of:

_Tami A. Kersten_ (signature)

**GREEN BOX NA GREEN BAY, LLC,**
a Wisconsin limited liability company
By: ENVIRONMENTAL ADVANCED
RECLAMATION TECHNOLOGY HQ,
LLC, a Wisconsin limited liability company,
its Manager

Tami a. Kersten
Typed or Printed Name

By: _____
    Name: Ronald Van Den Heuvel
    Title: Chairman

_Mark Smolinski_ (signature)

Mark Smolinski
Typed or Printed Name

STATE OF WISCONSIN    )
                      )ss.
COUNTY OF             )

Be it known, that on this 10th day of December, 2013, before me, a Notary Public, in and for said County and State, personally came Ronald Van Den Heuvel who acknowledged himself/herself to be the Chairman of Environmental Advanced Reclamation Technology HQ, LLC, a Wisconsin limited liability company, as Manager of GREEN BOX NA GREEN BAY, LLC, a Wisconsin limited liability company, to me personally known to be the person who executed the foregoing instrument, and acknowledged that he/she executed the same freely and voluntarily for the uses and purposes mentioned in it and as the free act and deed of the said limited liability company.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.



Debra S. Stary (signature)
Debra S. Stary , Notary Public

Brown County
My Commission Expires: 2/16/14

12

# EXHIBIT "A"
## LEGAL DESCRIPTION OF PROPERTY

Lot Two (2), Vol. 41 Certified Survey Maps, Page 100, Map No. 6194; said lot being part of Lots One (1), Two (2) and Three (3), according to the recorded Plat of De Pere Business Park South Addition and part of Lot One (1), Vol. 24 Certified Survey Maps, Page 84, Map No. 4035, all being in the Southwest Quarter (SW 1/4), Section Thirty-two (32), Township Twenty-three (23) North, Range Twenty (20) East, in the City of De Pere, West side of Fox River, Brown County, Wisconsin.

ALSO KNOWN AS

Lot Two (2), Vol. 41 Certified Survey Maps, Page 100, Map No. 6194; said lot being part of Lots One (1), Two (2) and Three (3), according to the recorded Plat of De Pere Business Park South Addition and part of the Northeast Quarter (NE 1/4) of the Southwest Quarter (SW 1/4); the Northwest Quarter (NW 1/4) of the Southwest Quarter (SW 1/4) and Southeast Quarter (SE 1/4) of the Southwest Quarter (SW 1/4), Section Thirty-two (32), Township Twenty-three (23) North, Range Twenty (20) East, in the City of De Pere, West side of Fox River, Brown County, Wisconsin.

Property Address: 2107 American Boulevard, De Pere, WI 54115
Tax Parcel Number: WD-1042

AIC000080



**First American Title**

## Loan Policy of Title Insurance

ISSUED BY

**First American Title Insurance Company**

# Loan Policy

POLICY NUMBER

**5011300-1192758e**

Any notice of claim and any other notice or statement in writing required to be given to the Company under this policy must be given to the Company at the address shown in Section 17 of the Conditions.

### COVERED RISKS

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B, AND THE CONDITIONS, FIRST AMERICAN TITLE INSURANCE COMPANY, a California corporation (the "Company") insures as of Date of Policy and, to the extent stated in Covered Risks 11, 13, and 14, after Date of Policy, against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of:

1. Title being vested other than as stated in Schedule A.
2. Any defect in or lien or encumbrance on the Title. This Covered Risk includes but is not limited to insurance against loss from
   (a) A defect in the Title caused by
       (i) forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation;
       (ii) failure of any person or Entity to have authorized a transfer or conveyance;
       (iii) a document affecting Title not properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered;
       (iv) failure to perform those acts necessary to create a document by electronic means authorized by law;
       (v) a document executed under a falsified, expired, or otherwise invalid power of attorney;
       (vi) a document not properly filed, recorded, or indexed in the Public Records including failure to perform those acts by electronic means authorized by law; or
       (vii) a defective judicial or administrative proceeding.
   (b) The lien of real estate taxes or assessments imposed on the Title by a governmental authority due or payable, but unpaid.
   (c) Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land. The term "encroachment" includes encroachments of existing improvements located on the Land onto adjoining land, and encroachments onto the Land of existing improvements located on adjoining land.
3. Unmarketable Title.
4. No right of access to and from the Land.

**(Covered Risks Continued on Page 2)**

In Witness Whereof, First American Title Insurance Company has caused its corporate name to be hereunto affixed by its authorized officers as of Date of Policy shown in Schedule A.

**First American Title Insurance Company**

Dennis J. Gilmore
President

Timothy Kemp
Secretary

For Reference:

**File #:** TI-94292
**Loan #:** N/A

Issued By:

**Bay Title & Abstract, Inc.**
345 S. Monroe Avenue
Green Bay, WI 54301

(This Policy is valid only when Schedules A and B are attached)     This Jacket was created electronically and constitutes an original document

Copyright 2006-2009 American Land Title Association. All rights reserved. The use of this form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

Form 5011300 (8-1-09)     Page 1 of 6     ALTA Loan Policy of Title Insurance (6-17-06)

AIC000081

**COVERED RISKS (Continued)**

5. The violation or enforcement of any law, ordinance, permit, or governmental regulation (including those relating to building and zoning restricting, regulating, prohibiting, or relating to
   (a) the occupancy, use, or enjoyment of the Land;
   (b) the character, dimensions, or location of any improvement erected on the Land;
   (c) the subdivision of land; or
   (d) environmental protection
   if a notice, describing any part of the Land, is recorded in the Public Records setting forth the violation or intention to enforce, but only to the extent of the violation or enforcement referred to in that notice.

6. An enforcement action based on the exercise of a governmental police power not covered by Covered Risk 5 if a notice of the enforcement action, describing any part of the Land, is recorded in the Public Records, but only to the extent of the enforcement referred to in that notice.

7. The exercise of the rights of eminent domain if a notice of the exercise, describing any part of the Land, is recorded in the Public Records.

8. Any taking by a governmental body that has occurred and is binding on the rights of a purchaser for value without Knowledge.

9. The invalidity or unenforceability of the lien of the Insured Mortgage upon the Title. This Covered Risk includes but is not limited to insurance against loss from any of the following impairing the lien of the Insured Mortgage
   (a) forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation;
   (b) failure of any person or Entity to have authorized a transfer or conveyance;
   (c) the Insured Mortgage not being properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered;
   (d) failure to perform those acts necessary to create a document by electronic means authorized by law;
   (e) a document executed under a falsified, expired, or otherwise invalid power of attorney;
   (f) a document not properly filed, recorded, or indexed in the Public Records including failure to perform those acts by electronic means authorized by law; or
   (g) a defective judicial or administrative proceeding.

10. The lack of priority of the lien of the Insured Mortgage upon the Title over any other lien or encumbrance.

11. The lack of priority of the lien of the Insured Mortgage upon the Title
    (a) as security for each and every advance of proceeds of the loan secured by the Insured Mortgage over any statutory lien for services, labor, or material arising from construction of an improvement or work related to the Land when the improvement or work is either
        (i) contracted for or commenced on or before Date of Policy; or
        (ii) contracted for, commenced, or continued after Date of Policy if the construction is financed, in whole or in part, by proceeds of the loan secured by the Insured Mortgage that the Insured has advanced or is obligated on Date of Policy to advance; and
    (b) over the lien of any assessments for street improvements under construction or completed at Date of Policy.

12. The invalidity or unenforceability of any assignment of the Insured Mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the Insured Mortgage in the named Insured assignee free and clear of all liens.

13. The invalidity, unenforceability, lack of priority, or avoidance of the lien of the Insured Mortgage upon the Title
    (a) resulting from the avoidance in whole or in part, or from a court order providing an alternative remedy, of any transfer of all or any part of the title to or any interest in the Land occurring prior to the transaction creating the lien of the Insured Mortgage because that prior transfer constituted a fraudulent or preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws; or
    (b) because the Insured Mortgage constitutes a preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws by reason of the failure of its recording in the Public Records
        (i) to be timely, or
        (ii) to impart notice of its existence to a purchaser for value or to a judgment or lien creditor.

14. Any defect in or lien or encumbrance on the Title or other matter included in Covered Risks 1 through 13 that has been created or attached or has been filed or recorded in the Public Records subsequent to Date of Policy and prior to the recording of the Insured Mortgage in the Public Records.

The Company will also pay the costs, attorneys' fees, and expenses incurred in defense of any matter insured against by this Policy, but only to the extent provided in the Conditions.

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
   (i) the occupancy, use, or enjoyment of the Land;
   (ii) the character, dimensions, or location of any improvement erected on the Land;

   (iii) the subdivision of land; or
   (iv) environmental protection;
   or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.

   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

AIC000082

Policy # :   5011300-1192758e

3.  Defects, liens, encumbrances, adverse claims, or other matters
    (a)  created, suffered, assumed, or agreed to by the Insured
    Claimant;

    (b)  not Known to the Company, not recorded in the Public
Records at Date of Policy, but Known to the Insured Claimant and not
disclosed in writing to the Company by the Insured Claimant prior to the
date the Insured Claimant became an Insured under this policy;
    (c)  resulting in no loss or damage to the Insured Claimant;
    (d)  attaching or created subsequent to Date of Policy (however,
this does not modify or limit the coverage provided under Covered Risk
11, 13, or 14); or
    (e)  resulting in loss or damage that would not have been
sustained if the Insured Claimant had paid value for the Insured
Mortgage.
4.   Unenforceability of the lien of the Insured Mortgage because of the
inability or failure of an Insured to comply with applicable doing-

business laws of the state where the Land is situated.
5.   Invalidity or unenforceability in whole or in part of the lien of the
Insured Mortgage that arises out of the transaction evidenced by the
Insured Mortgage and is based upon usury or any consumer credit
protection or truth-in-lending law.
6.   Any claim, by reason of the operation of federal bankruptcy, state
insolvency, or similar creditors' rights laws, that the transaction creating
the lien of the Insured Mortgage, is
    (a)  a fraudulent conveyance or fraudulent transfer, or
    (b)  a preferential transfer for any reason not stated in Covered
        Risk 13(b) of this policy.
7.   Any lien on the Title for real estate taxes or assessments imposed
by governmental authority and created or attaching between Date of
Policy and the date of recording of the Insured Mortgage in the Public
Records. This Exclusion does not modify or limit the coverage provided
under Covered Risk 11 (b).

## CONDITIONS

### 1.   DEFINITION OF TERMS
The following terms when used in this policy mean:

    (a)  "Amount of Insurance": The amount stated in Schedule A, as
may be increased or decreased by endorsement to this policy, increased
by Section 8(b) or decreased by Section 10 of these Conditions.
    (b)  "Date of Policy": The date designated as "Date of Policy" in
Schedule A.
    (c)  "Entity": A corporation, partnership, trust, limited liability
company, or other similar legal entity.
    (d)  "Indebtedness": The obligation secured by the Insured
Mortgage including one evidenced by electronic means authorized by
law, and if that obligation is the payment of a debt, the Indebtedness is
the sum of
        (i)   the amount of the principal disbursed as of Date of Policy;
        (ii)  the amount of the principal disbursed subsequent to Date
of Policy;
        (iii)  the construction loan advances made subsequent to Date
of Policy for the purpose of financing in whole or in part the
construction of an improvement to the Land or related to the Land
that the Insured was and continued to be obligated to advance at
Date of Policy and at the date of the advance;
        (iv)  interest on the loan;
        (v)  the prepayment premiums, exit fees, and other similar
fees or penalties allowed by law;
        (vi)  the expenses of foreclosure and any other costs of
enforcement;
        (vii)  amounts advanced to assure compliance with laws or
to protect the lien or the priority of the lien of the Insured Mortgage
before the acquisition of the estate or interest in the Title;
        (viii)  the amounts to pay taxes and insurance; and
        (ix)  the reasonable amounts expended to prevent
deterioration of improvements;
But the Indebtedness is reduced by the total of all payments and by
any amount forgiven by an Insured.
    (e)  "Insured": The Insured named in Schedule A.
        (i)  The term "Insured" also includes
            (A)  the owner of the Indebtedness and each successor
        in ownership of the Indebtedness, whether the owner or
        successor owns the Indebtedness for its own account or as a
        trustee or other fiduciary, except a successor who is obligor
        under the provisions of Section 12(c) of these Conditions;
            (B)  the person or Entity who has "control" of the
        "transferable record," if the Indebtedness is evidenced by a
        "transferable record," as these terms are defined by applicable

electronic transactions law;
            (C)  successors to an Insured by dissolution, merger,
        consolidation, distribution, or reorganization;
            (D)  successors to an Insured by its conversion to
        another kind of Entity;
            (E)  a grantee of an Insured under a deed delivered
        without payment of actual valuable consideration conveying
        the Title
                (1) if the stock, shares, memberships, or other equity
            interests of the grantee are wholly-owned by the named
            Insured,
                (2) if the grantee wholly owns the named Insured, or
                (3) if the grantee is wholly-owned by an affiliated
            Entity of the named Insured, provided the affiliated Entity
            and the named Insured are both wholly-owned by the
            same person or Entity;
            (F)  any government agency or instrumentality that is an
        insurer or guarantor under an insurance contract or guaranty
        insuring or guaranteeing the Indebtedness secured by the
        Insured Mortgage, or any part of it, whether named as an
        Insured or not;
        (ii)  With regard to (A), (B), (C), (D), and (E) reserving,
    however, all rights and defenses as to any successor that the
    Company would have had against any predecessor Insured, unless
    the successor acquired the Indebtedness as a purchaser for value
    without Knowledge of the asserted defect, lien, encumbrance, or
    other matter insured against by this policy.
    (f)  "Insured Claimant": An Insured claiming loss or damage.
    (g)  "Insured Mortgage": The Mortgage described in paragraph 4 of
Schedule A.
    (h)  "Knowledge" or "Known": Actual knowledge, not constructive
knowledge or notice that may be imputed to an Insured by reason of the
Public Records or any other records that impart constructive notice of
matters affecting the Title.
    (i)  "Land": The land described in Schedule A, and affixed
improvements that by law constitute real property. The term "Land" does
not include any property beyond the lines of the area described in
Schedule A, nor any right, title, interest, estate, or easement in abutting
streets, roads, avenues, alleys, lanes, ways, or waterways, but this does
not modify or limit the extent that a right of access to and from the Land
is insured by this policy.
    (j)  "Mortgage": Mortgage, deed of trust, trust deed, or other
security instrument, including one evidenced by electronic means
authorized by law.

---

| Form 5011300 (8-1-09) | Page 3 of 6 | ALTA Loan Policy of Title Insurance (6-17-06) |

(k)  "Public Records": Records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge. With respect to Covered Risk 5(d), "Public Records" shall also include environmental protection liens filed in the records of the clerk of the United States District Court for the district where the Land is located.

(l)  "Title": The estate or interest described in Schedule A.

(m)  "Unmarketable Title": Title affected by an alleged or apparent matter that would permit a prospective purchaser or lessee of the Title or lender on the Title or a prospective purchaser of the Insured Mortgage to be released from the obligation to purchase, lease, or lend if there is a contractual condition requiring the delivery of marketable title.

## 2.   CONTINUATION OF INSURANCE

The coverage of this policy shall continue in force as of Date of Policy in favor of an Insured after acquisition of the Title by an Insured or after conveyance by an Insured, but only so long as the Insured retains an estate or interest in the Land, or holds an obligation secured by a purchase money Mortgage given by a purchaser from the Insured, or only so long as the Insured shall have liability by reason of warranties in any transfer or conveyance of the Title. This policy shall not continue in force in favor of any purchaser from the Insured of either (i) an estate or interest in the Land, or (ii) an obligation secured by a purchase money Mortgage given to the Insured.

## 3.   NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT

The Insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 5(a) of these Conditions, (ii) in case Knowledge shall come to an Insured of any claim of title or interest that is adverse to the Title or the lien of the Insured Mortgage, as insured, and that might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if the Title or the lien of the Insured Mortgage, as insured, is rejected as Unmarketable Title.  If the Company is prejudiced by the failure of the Insured Claimant to provide prompt notice, the Company's liability to the Insured Claimant under the policy shall be reduced to the extent of the prejudice.

## 4.   PROOF OF LOSS

In the event the Company is unable to determine the amount of loss or damage, the Company may, at its option, require as a condition of payment that the Insured Claimant furnish a signed proof of loss.  The proof of loss must describe the defect, lien, encumbrance, or other matter insured against by this policy that constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage.

## 5.   DEFENSE AND PROSECUTION OF ACTIONS

(a)  Upon written request by the Insured, and subject to the options contained in Section 7 of these Conditions, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an Insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured.  This obligation is limited to only those stated causes of action alleging matters insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the Insured to object for reasonable cause) to represent the Insured as to those stated causes of action.

It shall not be liable for and will not pay the fees of any other counsel.  The Company will not pay any fees, costs, or expenses incurred by the Insured in the defense of those causes of action that allege matters not insured against by this policy.

(b)  The Company shall have the right, in addition to the options contained in Section 7 of these Conditions, at its own cost, to institute and prosecute any action or proceeding or to do any other act that in its opinion may be necessary or desirable to establish the Title or the lien of

the Insured Mortgage, as insured, or to prevent or reduce loss or damage to the Insured.

The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable to the Insured.  The exercise of these rights shall not be an admission of liability or waiver of any provision of this policy.  If the Company exercises its rights under this subsection, it must do so diligently.

(c)  Whenever the Company brings an action or asserts a defense as required or permitted by this policy, the Company may pursue the litigation to a final determination by a court of competent jurisdiction, and it expressly reserves the right, in its sole discretion, to appeal any adverse judgment or order.

## 6.   DUTY OF INSURED CLAIMANT TO COOPERATE

(a)  In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding and any appeals, the Insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, including the right to use, at its option, the name of the Insured for this purpose. Whenever requested by the Company, the Insured, at the Company's expense, shall give the Company all reasonable aid (i) in securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act that in the opinion of the Company may be necessary or desirable to establish the Title, the lien of the Insured Mortgage, or any other matter as insured. If the Company is prejudiced by the failure of the Insured to furnish the required cooperation, the Company's obligations to the Insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

(b)  The Company may reasonably require the Insured Claimant to submit to examination under oath by any authorized representative of the Company and to produce for examination, inspection, and copying, at such reasonable times and places as may be designated by the authorized representative of the Company, all records, in whatever medium maintained, including books, ledgers, checks, memoranda, correspondence, reports, e-mails, disks, tapes, and videos whether bearing a date before or after Date of Policy, that reasonably pertain to the loss or damage.  Further, if requested by any authorized representative of the Company, the Insured Claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect, and copy all of these records in the custody or control of a third party that reasonably pertain to the loss or damage.  All information designated as confidential by the Insured Claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim.  Failure of the Insured Claimant to submit for examination under oath, produce any reasonably requested information, or grant permission to secure reasonably necessary information from third parties as required in this subsection, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

## 7.   OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY

In case of a claim under this policy, the Company shall have the following additional options:

(a)  To Pay or Tender Payment of the Amount of Insurance or to Purchase the Indebtedness.

(i)  To pay or tender payment of the Amount of Insurance under this policy together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the

AIC000084

time of payment or tender of payment and that the Company is obligated to pay; or

(ii)   To purchase the Indebtedness for the amount of the Indebtedness on the date of purchase, together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of purchase and that the Company is obligated to pay.

When the Company purchases the Indebtedness, the Insured shall transfer, assign, and convey to the Company the Indebtedness and the Insured Mortgage, together with any collateral security.

Upon the exercise by the Company of either of the options provided for in subsections (a)(i) or (ii), all liability and obligations of the Company to the Insured under this policy, other than to make the payment required in those subsections, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

(b)   To Pay or Otherwise Settle With Parties Other Than the Insured or With the Insured Claimant.

(i)   to pay or otherwise settle with other parties for or in the name of an Insured Claimant any claim insured against under this policy. In addition, the Company will pay any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay; or

(ii)   to pay or otherwise settle with the Insured Claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in subsections (b)(i) or (ii), the Company's obligations to the Insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

**8.   DETERMINATION AND EXTENT OF LIABILITY**

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant who has suffered loss or damage by reason of matters insured against by this policy.

(a)   The extent of liability of the Company for loss or damage under this policy shall not exceed the least of

(i)   the Amount of Insurance,

(ii)   the Indebtedness,

(iii)   the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy, or

(iv)   If a government agency or instrumentality is the Insured Claimant, the amount it paid in the acquisition of the Title or the Insured Mortgage in satisfaction of its insurance contract or guaranty.

(b)   If the Company pursues its rights under Section 5 of these Conditions and is unsuccessful in establishing the Title or the lien of the Insured Mortgage, as insured,

(i)   the Amount of Insurance shall be increased by 10%, and

(ii)   the Insured Claimant shall have the right to have the loss or damage determined either as of the date the claim was made by the Insured Claimant or as of the date it is settled and paid.

(c)   In the event the Insured has acquired the Title in the manner described in Section 2 of these Conditions or has conveyed the Title, then the extent of liability of the Company shall continue as set forth in Section 8(a) of these Conditions.

(d)   In addition to the extent of liability under (a), (b), and (c), the Company will also pay those costs, attorneys' fees, and expenses incurred in accordance with Sections 5 and 7 of these Conditions.

**9.   LIMITATION OF LIABILITY**

(a)   If the Company establishes the Title, or removes the alleged defect, lien, or encumbrance, or cures the lack of a right of access to or from the Land, or cures the claim of Unmarketable Title, or establishes the lien of the Insured Mortgage, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused to the Insured.

(b)   In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals, adverse to the Title or to the lien of the Insured Mortgage, as insured.

(c)   The Company shall not be liable for loss or damage to the Insured for liability voluntarily assumed by the Insured in settling any claim or suit without the prior written consent of the Company.

**10.   REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY**

(a)   All payments under this policy, except payments made for costs, attorneys' fees, and expenses, shall reduce the Amount of Insurance by the amount of the payment. However, any payments made prior to the acquisition of Title as provided in Section 2 of these Conditions shall not reduce the Amount of Insurance afforded under this policy except to the extent that the payments reduce the Indebtedness.

(b)   The voluntary satisfaction or release of the Insured Mortgage shall terminate all liability of the Company except as provided in Section 2 of these Conditions.

**11.   PAYMENT OF LOSS**

When liability and the extent of loss or damage have been definitely fixed in accordance with these Conditions, the payment shall be made within 30 days.

**12.   RIGHTS OF RECOVERY UPON PAYMENT OR SETTLEMENT**

(a)   The Company's Right to Recover

Whenever the Company shall have settled and paid a claim under this policy, it shall be subrogated and entitled to the rights of the Insured Claimant in the Title or Insured Mortgage and all other rights and remedies in respect to the claim that the Insured Claimant has against any person or property, to the extent of the amount of any loss, costs, attorneys' fees, and expenses paid by the Company. If requested by the Company, the Insured Claimant shall execute documents to evidence the transfer to the Company of these rights and remedies. The Insured Claimant shall permit the Company to sue, compromise, or settle in the name of the Insured Claimant and to use the name of the Insured Claimant in any transaction or litigation involving these rights and remedies.

If a payment on account of a claim does not fully cover the loss of the Insured Claimant, the Company shall defer the exercise of its right to recover until after the Insured Claimant shall have recovered its loss.

(b)   The Insured's Rights and Limitations

(i)   The owner of the Indebtedness may release or substitute the personal liability of any debtor or guarantor, extend or otherwise modify the terms of payment, release a portion of the Title from the lien of the Insured Mortgage, or release any collateral security for the Indebtedness, if it does not affect the enforceability or priority of the lien of the Insured Mortgage.

AIC000085

Policy # : 5011300-1192758e

(ii)  If the Insured exercises a right provided in (b)(i), but has Knowledge of any claim adverse to the Title or the lien of the Insured Mortgage insured against by this policy, the Company shall be required to pay only that part of any losses insured against by this policy that shall exceed the amount, if any, lost to the Company by reason of the impairment by the Insured Claimant of the Company's right of subrogation.

(c)  The Company's Rights Against Non-insured Obligors

The Company's right of subrogation includes the Insured's rights against non-insured obligors including the rights of the Insured to indemnities, guaranties, other policies of insurance, or bonds, notwithstanding any terms or conditions contained in those instruments that address subrogation rights.

The Company's right of subrogation shall not be avoided by acquisition of the Insured Mortgage by an obligor (except an obligor described in Section 1(e)(i)(F) of these Conditions) who acquires the Insured Mortgage as a result of an indemnity, guarantee, other policy of insurance, or bond, and the obligor will not be an Insured under this policy.

13.  ARBITRATION

Either the Company or the Insured may demand that the claim or controversy shall be submitted to arbitration pursuant to the Title Insurance Arbitration Rules of the American Land Title Association ("Rules"). Except as provided in the Rules, there shall be no joinder or consolidation with claims or controversies of other persons. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Insured arising out of or relating to this policy, any service in connection with its issuance or the breach of a policy provision, or to any other controversy or claim arising out of the transaction giving rise to this policy. All arbitrable matters when the Amount of Insurance is $2,000,000 or less shall be arbitrated at the option of either the Company or the Insured. All arbitrable matters when the Amount of Insurance is in excess of $2,000,000 shall be arbitrated only when agreed to by both the Company and the Insured. Arbitration pursuant to this policy and under the Rules shall be binding upon the parties. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court of competent jurisdiction.

14.  LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT

(a)  This policy together with all endorsements, if any, attached to it by the Company is the entire policy and contract between the Insured and the Company.  In interpreting any provision of this policy, this policy shall be construed as a whole.

(b)  Any claim of loss or damage that arises out of the status of the Title or lien of the Insured Mortgage or by any action asserting such claim shall be restricted to this policy.

(c)  Any amendment of or endorsement to this policy must be in writing and authenticated by an authorized person, or expressly incorporated by Schedule A of this policy.

(d)  Each endorsement to this policy issued at any time is made a part of this policy and is subject to all of its terms and provisions.  Except as the endorsement expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsement, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance.

15.  SEVERABILITY

In the event any provision of this policy, in whole or in part, is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision or such part held to be invalid, but all other provisions shall remain in full force and effect.

16.  CHOICE OF LAW; FORUM

(a)  Choice of Law:  The Insured acknowledges the Company has underwritten the risks covered by this policy and determined the premium charged therefore in reliance upon the law affecting interests in real property and applicable to the interpretation, rights, remedies, or enforcement of policies of title insurance of the jurisdiction where the Land is located.

Therefore, the court or an arbitrator shall apply the law of the jurisdiction where the Land is located to determine the validity of claims against the Title or the lien of the Insured Mortgage that are adverse to the Insured and to interpret and enforce the terms of this policy.  In neither case shall the court or arbitrator apply its conflicts of law principles to determine the applicable law.

(b)  Choice of Forum:  Any litigation or other proceeding brought by the Insured against the Company must be filed only in a state or federal court within the United States of America or its territories having appropriate jurisdiction.

17.  NOTICES, WHERE SENT

Any notice of claim and any other notice or statement in writing required to be given to the Company under this policy must be given to the Company at First American Title Insurance Company, Attn: Claims National Intake Center, 1 First American Way, Santa Ana, CA 92707. Phone: 888-632-1642.

AIC000086

**Bay Title & Abstract, Inc.**
345 S. Monroe Avenue Green Bay, WI 54301
Phone: (920) 431-6100   Fax: (920) 431-6101
Issuing Agent for:
First American Title Insurance Co.
1650 W. Big Beaver Road P.O. Box 1289 Troy, MI 48099

# Mortgage Schedule A

File Number: TI-94292-FA

Policy Number:   5011300-1192758e
Loan No.:   N/A

Amount of Insurance: $7,150,000.00

Date of Policy: 12/13/2013, at 3:07:00PM

1. Name of Insured: Ability Insurance Company its successors and/or assigns as their interest may appear as defined in paragraph 1.e. of the policy Definition of Terms

2. The estate or interest in the Land that is encumbered by the Insured Mortgage is: Fee Simple

3. Title is vested in:

   Green Box NA Green Bay, LLC,
   a Wisconsin limited liability company

4. The Insured Mortgage and its assignments, if any, are described as follows:

   Mortgage and Security Agreement executed by Green Box NA Green Bay, LLC, a Wisconsin limited liability company to Maple Bridge Funding, LLC, in the amount of $7,150,000.00, dated December 10, 2013 and recorded December 13, 2013 at 3:07 PM as Doc. No. 2654008.

   The foregoing Mortgage and Security Agreement were assigned to Ability Insurance Company in an Assignment of Mortgage dated December 11, 2013 and recorded December 13, 2013 at 3:07 PM as Doc. No. 2654011.

5. The Land referred to in this policy is described as follows:

   Lot Two (2), Vol. 41 Certified Survey Maps, Page 100, Map No. 6194; said lot being part of Lots One (1), Two (2) and Three (3), according to the recorded Plat of De Pere Business Park South Addition and part of Lot One (1), Vol. 24 Certified Survey Maps, Page 84, Map No. 4035, all being in the Southwest Quarter (SW 1/4), Section Thirty-two (32), Township Twenty-three (23) North, Range Twenty (20) East, in the City of De Pere, West side of Fox River, Brown County, Wisconsin.

   ALSO KNOWN AS

   Lot Two (2), Vol. 41 Certified Survey Maps, Page 100, Map No. 6194; said lot being part of Lots One (1), Two (2) and Three (3), according to the recorded Plat of De Pere Business Park South Addition and part of the Northeast Quarter (NE 1/4) of the Southwest Quarter (SW 1/4); the Northwest Quarter (NW 1/4) of the Southwest Quarter (SW 1/4) and Southeast Quarter (SE 1/4) of the Southwest Quarter (SW 1/4), Section Thirty-two (32), Township Twenty-three (23) North, Range Twenty (20) East, in the City of De Pere, West side of Fox River, Brown County, Wisconsin.

   Property Address: 2107 American Boulevard De Pere, WI 54115

   Tax Parcel Number: WD-1042

   The Property Address shown herein is for informational purposes only.

6. This policy incorporates by reference those ALTA endorsements selected below:

   _____   4-06       Condominium
   _____   4.1-06
   _____   5-06       Planned Unit Development

**Continued on Next Page**

Schedule A - ALTA Loan Policy of Title Insurance 6/06

**Customer Copy**

Bay Title & Abstract, Inc.

By: _____

John C. May, President

AIC000087

## Mortgage Schedule A Continued

File Number: TI-94292-FA

Policy Number: 5011300-1192758e
Loan No.: N/A

| | | |
|---|---|---|
| _____ | 5.1-06 | |
| _____ | 6-06 | Variable Rate |
| _____ | 6.2-06 | Variable Rate – Negative Amortization |
| _____ | 8.1-06 | Environmental Protection Lien - Paragraph b refers to the following state statue(s): |
| _____ | 9-06 | Restrictions, Encroachments, Minerals |
| _____ | 13.1-06 | Leasehold Loan |
| _____ | 14-06 | Future Advance - Priority |
| X | 14.1-06 | Future Advance - Knowledge |
| _____ | 14.3-06 | Future Advance - Reverse Mortgage |
| _____ | 22-06 | Location Endorsement - The type of improvement is a one to four family residential structures, and the street address is as shown above. |

Schedule A - ALTA Loan Policy of Title Insurance 6/06

**Customer Copy**

Bay Title & Abstract, Inc.

By: _____

John C. May, President

AIC000088

# Mortgage Schedule B-I

File No.:  TI-94292-FA                              Policy No.  5011300-1192758e

## EXCEPTIONS FROM COVERAGE

Except as provided in Schedule B - Part II, this policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees, or expenses that arise by reason of:

PART I

1. Taxes and special assessments, actual or pending, which are not yet due and payable.

2. Rights of the public in that portion of the within described premises lying within the limits of public roads and public rights of way.

3. Building setback requirements and utility easement contained on the Plat of De Pere Business Park South Addition recorded in Vol. 20 Plats, Page 125, as Doc. No. 1550790.

4. Building setback requirements, utility easements and notes contained on Map recorded in Vol. 39 Certified Survey Maps, Page 340, as Doc. No. 1724354.

5. Utility Easement contained on Map recorded in Vol. 24 Certified Survey Maps, Page 84 as Doc. No. 1232048.

6. Building setback requirements, utility easements, storm sewer easement and note contained in Map recorded in Vol. 41 Certified Survey Maps, Page 100 as Doc. No. 1763206.

7. Any encroachment, encumbrances, violation, variation, or adverse circumstance affecting the title including discrepancies, conflict in boundary lines, shortages in area, or any facts that would be disclosed by an accurate and complete land survey of the land, and that are not shown in the public records.

8. Roads, ways, streams, easements or claims of easements, or encumbrances, if any, that are not shown by the public records, riparian rights and the title to any filled in lands.

First American Title Insurance Co.

Customer Copy

Schedule B-ALTA Loan Policy of Title Insurance

AIC000089

# Mortgage Schedule B-II

File No.:   TI-94292-FA

Policy No.: 5011300-1192758e

In addition to the matters set forth in Part I of this Schedule, the Title is subject to the following matter, and the Company insures against loss or damage sustained in the event that they are not subordinate to the lien of the Insured Mortgage:

PART II

Absolute Assignment of Leases and Rents executed by Green Box NA Green Bay, LLC, a Wisconsin limited liability company to Maple Bridge Funding, LLC, dated December 10, 2013 and recorded December 13, 2013 at 3:07 PM as Doc. No. 2654009.

The foregoing Absolute Assignment of Leases and Rents were assigned to Ability Insurance Company in an Assignment of Collateral Security dated December 11, 2013 and recorded December 13, 2013 at 3:07 PM as Doc. No. 2654012.

Financing Statement filed pursuant to the Uniform Commercial Code which lists Green Box NA Green Bay, LLC, as Debtor and Maple Bridge Funding, LLC, as Secured Party in the Office of the Register of Deeds for Brown County, Wisconsin on December 13, 2007 at 3:07 PM as Doc. No. 2654010.

First American Title Insurance Co.

Customer Copy

Schedule B-ALTA Loan Policy of Title Insurance

AIC000090