# EXHIBIT I

## BORROWER'S CERTIFICATE

This certificate is made as of the 7th day of December 2013 in connection with that certain opinion letter being issued on or about the date of this Certificate by Arnstein & Lehr LLP (the "Legal Counsel"), and may be relied on by Legal Counsel in connection with same. Such opinions are being issued in connection with a certain $7,150,000.00 mortgage loan (the "Loan") from Maple Bridge Funding, LLC ("Lender") to Green Box NA Green Bay, LLC ("Borrower") secured by that certain property located at 2107 American Blvd., DePere, Wisconsin (the "Project"), with said loan being guaranteed by Environmental Advanced Reclamation Technology HQ, LLC and Ronald H. Van Den Heuvel (the "Guarantors"). As used herein, the "Opinion Parties" means the Borrower and Guarantors. Based on the foregoing, the undersigned hereby certify as follows:

1. Each natural person executing any of the documents or instruments evidencing, securing or governing the Loan (the "Loan Documents") is legally competent to do so.

2. The terms and conditions of the Loan, as reflected in the Loan Documents, have not been amended, modified or supplemented by any other agreement, understanding or waiver, and the Loan Documents are all of the documents and instruments executed by or binding on the Opinion Parties which govern the terms and conditions of the Loan.

3. The factual matters set forth in Borrower's representations and warranties in the Loan Documents are true and accurate in all material respects.

4. Each of the Opinion Parties has the power and authority, and has been duly authorized, to execute and deliver the Loan Documents and to perform its obligations thereunder. Each of the Loan Documents to which the Opinion Parties are a party has been duly executed by the parties and is enforceable in accordance with its terms.

5. There is no litigation or other proceeding pending before any court, administrative agency or other governmental body against any of the Opinion Parties or the Project.

6. No authorization, consent, approval or other action by or filing with any Wisconsin state or federal court or governmental authority is required in connection with the execution and delivery by the Opinion Parties of the Loan Documents, other than any necessary recording and filing of the Loan Documents for putting third parties on notice thereof.

7. The execution, delivery, and performance of the Loan Documents and recordation of the Mortgage do not violate or constitute a breach or default under any agreement to which the Opinion Parties is a party, or any order

11357198.1

AIC000180

of any court or governmental authority, which is binding on the Opinion Parties.

Green Box NA Green Bay, LLC
a Wisconsin limited liability company

Earth Advanced Reclamation Technology HQ, LLC
By: _____

Printed Name: Ronald H. Van Den Heuvel

Its: Manager


Earth Advanced Reclamation Technology HQ, LLC
By: _____

Printed Name: Ronald H. Van Den Heuvel

Its: Manager

Ronald H. Van Den Heuvel, Individually

11357198.1

AIC000181

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS

$~~~~~~$ $\text{\$}~~\text{∞}.~\text{∞}$

A. NAME & PHONE OF CONTACT AT FILER (optional)
Michael L. Helt (816) 867-5182

$~~~~~~$ 19432

B. E-MAIL CONTACT AT FILER (optional)
nhelt@accessus.net

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

Michael L. Helt
Michael L. Helt, P.C.
1609 NW Rust Road
Grain Valley, MO 64029

**Filing # - 130016479936**

**Filed - 12/23/2013 09:10 AM**

**Page 1 of 4**

**Wisconsin Department of
Financial Institutions**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Green Box NA Green Bay, LLC | | | | |
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 2077B Lawrence Drive | De Pere | WI | 54115 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Maple Bridge Funding, LLC | | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 55 N Water Street, Ste. 3 | South Norwalk | CT | 06854 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
Description of collateral attached as Exhibit "B".

Legal description of property attached as Exhibit "A".

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions)  ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien  ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)    International Association of Commercial Administrators (IACA)

AIC000182

AIC000183

## UCC FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS

**Filing # - 130016479936**

**Filed - 12/23/2013 09:10 AM**

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

**Page 2 of 4**

| 9a. ORGANIZATION'S NAME | |
|---|---|
| Green Box NA Green Bay, LLC | |

OR

| 9b. INDIVIDUAL'S SURNAME | |
|---|---|
| | |
| FIRST PERSONAL NAME | |
| ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**Wisconsin Department of Financial Institutions**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| 10a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 10b. INDIVIDUAL'S SURNAME | | | | |
|---|---|---|---|---|
| INDIVIDUAL'S FIRST PERSONAL NAME | | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | | SUFFIX |

| 10c MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

11. ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

| 11a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| 11c MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):
Description of collateral attached as Exhibit "B".

| 13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable) | 14. This FINANCING STATEMENT: ☐ covers timber to be cut ☐ covers as-extracted collateral ☐ is filed as a fixture filing |
|---|---|
| 15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest): | 16. Description of real estate: Legal description of property attached as Exhibit "A". |

17. MISCELLANEOUS:

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)   International Association of Commercial Administrators (IACA)

AIC000184

AIC000185

## EXHIBIT A

Green Box NA Green Bay, LLC – Attachment to financing statement.

Item No. 4 (Item 16 for Form UCC-1 Addendum) continued:

## DESCRIPTION OF PROPERTY

Lot Two (2), Vol. 41 Certified Survey Maps, Page 100, Map No. 6194; said lot being part of Lots One (1), Two (2) and Three (3), according to the recorded Plat of De Pere Business Park South Addition and part of Lot One (1), Vol. 24 Certified Survey Maps, Page 84, Map No. 4035, all being in the Southwest Quarter (SW 1/4), Section Thirty-two (32), Township Twenty-three (23) North, Range Twenty (20) East, in the City of De Pere, West side of Fox River, Brown County, Wisconsin.

ALSO KNOWN AS

Lot Two (2), Vol. 41 Certified Survey Maps, Page 100, Map No. 6194; said lot being part of Lots One (1), Two (2) and Three (3), according to the recorded Plat of De Pere Business Park South Addition and part of the Northeast Quarter (NE 1/4) of the Southwest Quarter (SW 1/4); the Northwest Quarter (NW 1/4) of the Southwest Quarter (SW 1/4) and Southeast Quarter (SE 1/4) of the Southwest Quarter (SW 1/4), Section Thirty-two (32), Township Twenty-three (23) North, Range Twenty (20) East, in the City of De Pere, West side of Fox River, Brown County, Wisconsin.

Property Address: 2107 American Boulevard, De Pere, WI 54115
Tax Parcel Number: WD-1042

**Filing # – 130016479936**

**Filed - 12/23/2013 09:10 AM**

**Page 3 of 4**

**Wisconsin Department of Financial Institutions**

AIC000187

## EXHIBIT B

Green Box NA Green Bay, LLC – Attachment to financing statement.

Item No. 4 (Item 12 for Form UCC-1 Addendum) continued:

This Financing Statement covers the following types or items of property:

A.      All waters and water rights, engines, boilers, elevators and machinery, all heating apparatus, electrical equipment, air-conditioning and ventilating equipment, water and gas fixtures, all carpeting, draperies, ranges, microwave ovens, refrigerators, dishwashers, dehumidification equipment and all furniture and easily removable equipment and FIXTURES of every description owned or leased by Debtor which are or may be placed or used on the real estate (the "Property") in Brown County, Wisconsin more fully described on Exhibit "A" attached, together with any additions thereto and/or replacements thereof.

B.      All cash and other funds now or at any time hereafter deposited by or for Debtor on account of tax, special assessment, replacement or other reserves required to be maintained with Secured Party or a third party, or otherwise deposited with, or in the possession of, Secured Party.

C.      All surveys, soils reports, environmental reports, guaranties, warranties, architect's contracts, construction contracts, drawings and specifications, applications, permits, surety bonds and other contracts relating to the acquisition, design, development, construction and operation of the Property.

D.      All accounts, chattel paper, deposit accounts, instruments, equipment, inventory, documents, general intangibles, letter-of-credit rights, investment property and all other personal property of Debtor.

E.      All present and future rights to condemnation awards, insurance proceeds or other proceeds at any time payable to or received by Debtor on account of the Property or any of the foregoing personal property.

F.      Any and all proceeds from the property described in A through E above.

**Filing # - 130016479936**

**Filed - 12/23/2013 09:10 AM**

**Page 4 of 4**

**Wisconsin Department of Financial Institutions**

AIC000188



## State of Wisconsin
*Department of Financial Institutions*

201 W. Washington Avenue       PO Box 7847       Madison, WI 53707-7847

*Division of Corporate & Consumer Services*

Mail: PO Box 7847 Madison, WI 53707-7847                    Courier: 201 W. Washington Ave Suite 300  Madison, WI 53703
Voice (608) 261-9548          Fax: (608) 264-7965         FTTY: (608) 266-8818          Internet: www.wdfi.org

December 26, 2013

On December 23, 2013 at 9:10:00 AM your INITIAL FINANCING statement was assigned number 130016479936 and was entered into the official Uniform Commercial Code records at the Wisconsin Department of Financial Institutions. The debtor and secured party information that was indexed from that statement is summarized below (if applicable):

Filing Number: 130016479936

| Debtor(s) | Secured Party(s) |
| --- | --- |
| Organization: GREEN BOX NA GREEN BAY, LLC<br>Address: 2077B LAWRENCE DRIVE<br>City: DE PERE<br>State: WI<br>Zip: 54115<br>Country: USA | Organization: MAPLE BRIDGE FUNDING, LLC<br>Address: 55 N WATER STREET, STE. 3<br>City: SOUTH NORWALK<br>State: CT<br>Zip: 06854<br>Country: USA |

AIC000189

## UCC FINANCING STATEMENT AMENDMENT



NAME & PHONE OF CONTACT
Michael L Helt
Michael L. Helt, P.C.
nhelt@accessus.net
8168675182

SEND ACKNOWLEDGMENT TO:
Michael L Helt
Michael L. Helt, P.C.
nhelt@accessus.net

Filing # - 130016784733
Filed - 12/31/2013 3:54:22 PM
Wisconsin Department of Financial Institutions

INITIAL FINANCING STATEMENT FILE #
130016479936
AMENDMENT (PARTY INFORMATION): This Amendment affects Secured Parties of record.

CURRENT RECORD INFORMATION:

| SECURED PARTY'S NAME | | | | |
|---|---|---|---|---|
| MAPLE BRIDGE FUNDING, LLC | | | | |

CHANGED RECORD INFORMATION:

| OR | ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|---|
| | Ability Insurance Company | | | | | |
| | INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(s)/INITIAL(s) | | SUFFIX |
| MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY | |
| 55 N Water Street, Ste. 3 | | South Norwalk | CT | 06854 | UNITED STATES | |

AUTHORIZING PARTY

| OR | ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| | Maple Bridge Funding, LLC | | | |
| | INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(s)/INITIAL(s) | SUFFIX |

OPTIONAL FILER REFERENCE DATA
Not Filled In.

AIC000190

THIS NOTE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"), OR UNDER THE SECURITIES LAWS OF ANY STATE. THIS NOTE MAY NOT BE TRANSFERRED OR RESOLD EXCEPT AS PERMITTED UNDER THE ACT AND THE APPLICABLE STATE SECURITIES LAWS, PURSUANT TO REGISTRATION OR EXEMPTION THEREFROM.

THIS NOTE AND THE INDEBTEDNESS EVIDENCED HEREBY IS SUBORDINATE IN THE MANNER AND TO THE EXTENT SET FORTH HEREIN AND IN THE SUBORDINATION AGREEMENT, DATED AS OF APRIL 16, 2007 (THE "SUBORDINATION AGREEMENT"), BY AND AMONG ST PAPER, LLC, OCONTO FALLS TISSUE, INC. AND GOLDMAN SACHS CREDIT PARTNERS L.P., AS ADMINISTRATIVE AGENT AND COLLATERAL AGENT, TO THE SENIOR INDEBTEDNESS (AS DEFINED IN THE SUBORDINATION AGREEMENT). THE HOLDER OF THIS NOTE, BY ITS ACCEPTANCE HEREOF, SHALL BE BOUND BY THE PROVISIONS OF THE SUBORDINATION AGREEMENT.

<u>SUBORDINATED PROMISSORY NOTE</u>

$8,000,000.00                                                                                    April 16, 2007
Note No. 1

FOR VALUE RECEIVED, the undersigned, **ST PAPER, LLC**, a Delaware limited liability company ("Maker"), hereby promises to pay to the order of **OCONTO FALLS TISSUE, INC.**, a Wisconsin corporation ("Payee"), c/o Tissue Products Technology Corp., 1555 Glory Road, Green Bay, Wisconsin 54304, or such other place as the Payee shall from time to time direct in writing to the Maker, subject to the contingency described herein, the principal sum of Eight Million and 00/100 Dollars ($8,000,000.00). The unpaid principal balance of this Note shall bear interest at a rate per annum equal to seven and one-half percent (7.5%). Interest accrued from and after the date hereof shall be added to the unpaid principal balance of this Note on an annual basis commencing April 16, 2008 and continuing on the subsequent anniversaries of such date until the unpaid principal balance of this Note is paid in full. The unpaid principal balance of this Note, together with accrued and capitalized interest, shall be due and payable on April 16, 2015.

This Note is the Note referred to in Paragraph 2.3 of the Second Amended and Restated Asset Purchase Agreement, dated as of April 16, 2007 (the "Purchase Agreement"), by and between Maker, Payee and others. Reference is made to the Purchase Agreement for relevant terms and provisions that bear upon this Note, including without limitation, Paragraph 9.4 of the Purchase Agreement.

Maker may prepay all or any part of the unpaid balance of this Note at any time, and from time to time, without premium or penalty.

The Purchase Agreement contains provisions for offset against amounts due under this Note. Notwithstanding anything contained herein to the contrary, any offset against amounts due

AIC000191

under this Note in accordance with the Purchase Agreement shall not be considered an Event of Default hereunder.

Payee, by its acceptance hereof, acknowledges that this Note is subordinated and junior in right of payment to all amounts owed to current or future holder of Senior Indebtedness, including, without limitation, interest thereon, whether or not an allowed claim. Payee, by accepting this Note, agrees to execute the Subordination Agreement in the form attached hereto as Exhibit A upon such acceptance and any other documents the Senior Lenders may reasonably request to effect the subordination intended hereunder. For purposes hereof, the term "Senior Indebtedness" has the meaning given in the Subordination Agreement. A "Senior Lender" is any holder of Senior Indebtedness.

The unpaid principal balance of this Note, together with accrued and unpaid interest, shall, at the option of Payee or any subsequent holder hereof, become immediately due and payable upon the occurrence of any of the following events (hereinafter, an "Event of Default"): Maker shall: (i) become insolvent or take or fail to take any action which constitutes an admission of inability to pay its debts as they become due, (ii) make a general assignment for the benefit of creditors or to an agent authorized to liquidate any substantial amount of its assets, (iii) become the subject of an "order for relief" within the meaning of the United States Bankruptcy Code, (iv) file a petition in bankruptcy, or for reorganization, or to effect a plan or other arrangement with creditors, (v) file an answer to a creditor's petition, admitting the material allegations thereof, for an adjudication of bankruptcy or for reorganization or to effect a plan or other arrangement with creditors, (vi) apply to a court for the appointment of a receiver or custodian for any of its assets or properties, (vii) have a receiver or custodian appointed for any of its assets or properties, with or without consent, and such receiver shall not be discharged within sixty (60) days after his appointment, or (viii) take any action for the purpose of effecting any of the foregoing.

No delay or omission on the part of Payee or any holder of this Note in exercising any right or option given to Payee or such holder shall impair such right or option or be considered as a waiver thereof or acquiescence in any default hereunder.

Maker hereby waives presentment, demand, notice of dishonor and protest and consents to any and all extensions and renewals hereof without notice.

Upon payment in full of this Note or upon the adjustment described above, Payee agrees to surrender this Note to Maker for cancellation thereof.

This Note shall be construed in accordance with the internal laws of the State of Wisconsin.

2

AIC000192

**MAKER:**

ST PAPER, LLC

By: _____

     Name: Sharad Tak
     Title:  President

3

AIC000193

## EXHIBIT A

### Subordination Agreement

*(Copy Attached)*

AIC000194

EXECUTION VERSION

## SUBORDINATION AGREEMENT

**THIS SUBORDINATION AGREEMENT** (this "Agreement"), dated as of April 16, 2007, is among ST PAPER, LLC, a Delaware limited liability company ("Borrower"), OCONTO FALL TISSUE, INC., a Wisconsin corporation ("OFTI"), in its capacity as holder of Subordinated Indebtedness (as hereinafter defined) (OFTI, together with any other party from time to time becoming a holder of Subordinated Indebtedness, and their respective successors and assigns, being hereinafter collectively referred to as the "Subordinated Creditors"), and GOLDMAN SACHS CREDIT PARTNERS L.P. ("GSCP"), in its capacity as administrative agent (in such capacity, "Administrative Agent") for the Lenders and as collateral agent (in such capacity, "Collateral Agent") for the Secured Parties under the Credit Agreement referred to below.

## RECITALS

A.    Borrower has entered into a Credit Agreement, dated as of the date hereof (as the same may be amended, restated, supplemented or otherwise modified from time to time as permitted hereunder, the "Credit Agreement" and, collectively with the financing and security documents related thereto, the "Loan Documents"), with Administrative Agent, Collateral Agent, GSCP, as Sole Lead Arranger, Sole Bookrunner and Syndication Agent, and the Lenders from time to time party thereto, pursuant to which, among other things, Lenders have agreed, subject to the terms and conditions set forth in the Credit Agreement, to make certain loans and other financial accommodations to Borrower.

B.    Borrower, OFTI, Tissue Products Technology Corp. and Partners Concepts Development, Inc., a Wisconsin corporation ("PCDI"), have entered into a Second Amended and Restated Asset Purchase Agreement, dated as of the date hereof (as the same may be amended, supplemented, restated or otherwise modified from time to time as permitted hereunder, the "Asset Purchase Agreement"), pursuant to which, among other things, OFTI has extended credit to Borrower as evidenced by four (4) Subordinated Promissory Notes of even date herewith issued by Borrower to OFTI in the original aggregate principal amounts of $8,000,000, $8,000,000, $8,000,000 and    $6,589,000, respectively (as the same may be amended, supplemented, restated or otherwise modified from time to time as permitted hereunder and all notes issued in exchange or substitution of any thereof, the "Subordinated Notes"), and pursuant to which Borrower has incurred and may hereafter incur other obligations and liabilities to OFTI.

C.    As an inducement to and as one of the conditions precedent to the agreement of Administrative Agent, Collateral Agent and Lenders to consummate the transactions contemplated by the Credit Agreement, Administrative Agent, Collateral Agent and Lenders required the execution and delivery of this Agreement by OFTI and Borrower.

NOW, THEREFORE, in order to induce Administrative Agent, Collateral Agent and Lenders to consummate the transactions contemplated by the Credit Agreement, and for other good and valuable consideration, the receipt and sufficiency of which hereby are acknowledged, the parties hereto hereby agree as follows:

AIC000195

1.    Definitions. All capitalized terms used herein but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Credit Agreement. The following terms shall have the following meanings in this Agreement:

"Administrative Agent" shall have the meaning ascribed to such term in the preamble of this Agreement; provided, however that after the consummation of any Permitted Refinancing, the term "Administrative Agent" shall refer to any party appointed by the holders of the Senior Indebtedness as agent for themselves for the purposes of this Agreement.

"Business Day" means any day excluding Saturday, Sunday and any day which is a legal holiday under the laws of the State of New York or is a day on which banking institutions located in such state are authorized or required by law or other governmental action to close.

"Collateral" means all of the collateral securing the obligations of Borrower under the Loan Documents.

"Enforcement Action" is defined in subsection 2.7.

"Lender or Lenders" shall mean any "Lender" or the "Lenders," respectively, as such terms are defined in the Credit Agreement; provided, however that after the consummation of any Permitted Refinancing, such terms shall refer to any holder or all of the holders, respectively, of the Senior Indebtedness.

"Loan Documents" is defined in Recital A.

"Paid in Full" or "Payment in Full" shall mean the indefeasible payment in full in cash of all Senior Indebtedness.

"Permitted Refinancing" shall mean any refinancing of the Senior Indebtedness under the Loan Documents provided that the financing documentation entered into by Borrower in connection with such Permitted Refinancing constitutes Permitted Refinancing Loan Documents.

"Permitted Refinancing Loan Documents" shall mean any financing documentation which replaces the Loan Documents and pursuant to which the Senior Indebtedness under the Loan Documents is refinanced, as such financing documentation may be amended, restated, supplemented or otherwise modified from time to time.

"Proceeding" is defined in subsection 2.3.

"Required Lenders" shall have the meaning ascribed to such term in the Credit Agreement; provided, however that after the consummation of any Permitted Refinancing, the term "Required Lenders" shall mean the holders of Senior Indebtedness having the right and/or ability under the Permitted Refinancing Loan Documents to effectuate the waiver, amendment, granting of consent or other matter in question.

"Senior Indebtedness" shall mean the "Obligations," as such term is defined in the Credit Agreement, including all interest, fees, expenses, indemnities, in each instance, whether before or after the commencement of a Proceeding and without regard to whether or not an allowed claim, and all obligations and liabilities incurred with respect to Permitted Refinancings, together with any amendments, restatements, modifications, renewals or extensions of any thereof permitted hereunder.

2

AIC000196

"Subordinated Creditors" shall mean the Subordinated Creditors who are signatories to this Agreement and any other holders of the Subordinated Notes or any other Subordinated Indebtedness from time to time.

"Subordinated Indebtedness" shall mean all of the obligations of Borrower to Subordinated Creditors evidenced by the Subordinated Notes and all other amounts and other obligations now or hereafter owed by Borrower to Subordinated Creditors pursuant to the Subordinated Note Documents.

"Subordinated Note Documents" shall mean the Subordinated Notes, the Asset Purchase Agreement, any guaranty with respect to the Subordinated Indebtedness and all other documents and instruments evidencing, securing or pertaining to any portion of the Subordinated Indebtedness, as amended, supplemented, restated or otherwise modified from time to time as permitted hereunder.

2.    **Subordination of Subordinated Indebtedness to Senior Indebtedness.**

2.1    **Subordination.**  The payment of any and all of the Subordinated Indebtedness hereby expressly is subordinated, to the extent and in the manner set forth herein, to the Payment in Full of the Senior Indebtedness.  Each holder of Senior Indebtedness, whether now outstanding or hereafter arising, shall be deemed to have acquired Senior Indebtedness in reliance upon the provisions contained herein.

2.2    **Restriction on Payments.**  No payment (whether made in cash, securities or other property or by set-off) of principal, interest or any other amount due with respect to the Subordinated Indebtedness shall be made or received, and no Subordinated Creditor shall exercise any right of set-off or recoupment with respect to any Subordinated Indebtedness, until all of the Senior Indebtedness is Paid in Full.

2.3    **Proceedings.**  In the event of any insolvency, bankruptcy, receivership, custodianship, liquidation, reorganization, assignment for the benefit of creditors or other proceeding for the liquidation, dissolution or other winding up of Borrower or any of its Subsidiaries or any of their respective properties (a "Proceeding"):

A.    all Senior Indebtedness first shall be Paid in Full before any payment (whether made in cash, securities or other property) of or with respect to the Subordinated Indebtedness shall be made;

B.    any payment which, but for the terms hereof, otherwise would be payable or deliverable in respect of the Subordinated Indebtedness, shall be paid or delivered directly to Administrative Agent (to be held and/or applied by Administrative Agent in accordance with the terms of the Credit Agreement or the Permitted Refinancing Loan Documents) until all Senior Indebtedness is Paid in Full, and each Subordinated Creditor irrevocably authorizes, empowers and directs all receivers, trustees, liquidators, custodians, conservators and others having authority in the premises to effect all such payments and deliveries, and each Subordinated Creditor also irrevocably authorizes, empowers and directs Administrative Agent to demand, sue for, collect and receive every such payment or distribution; and

3

AIC000197

C.      each Subordinated Creditor agrees to execute, verify, deliver and file any proofs of claim in respect of the Subordinated Indebtedness requested by Administrative Agent in connection with any such Proceeding and hereby irrevocably authorizes, empowers and appoints Administrative Agent its agent and attorney-in-fact to execute, verify, deliver and file such proofs of claim upon the failure of such Subordinated Creditor promptly to do so (and in any event prior to 15 days before the expiration of the time to file any such proof); provided Administrative Agent shall have no obligation to execute, verify, deliver, and/or file any such proof of claim.

The Senior Indebtedness shall continue to be treated as Senior Indebtedness and the provisions of this Agreement shall continue to govern the relative rights and priorities of Administrative Agent, Collateral Agent, Lenders and Subordinated Creditors even if all or part of the Senior Indebtedness or the liens securing the Senior Indebtedness are subordinated, set aside, avoided or disallowed in connection with any such Proceeding.  This Agreement shall be reinstated if at any time any payment of any of the Senior Indebtedness is rescinded or must otherwise be returned by any holder of the Senior Indebtedness or any representative of such holder and the Senior Indebtedness, or portion thereof, intended to have been satisfied shall be deemed to be reinstated and outstanding as if such payment had not occurred.

2.4      **Incorrect Payments**.  If any payment (whether made in cash, securities or other property) not permitted under this Agreement is received by any Subordinated Creditor on account of the Subordinated Indebtedness before all Senior Indebtedness is Paid in Full, such payment shall not be commingled with any asset of such Subordinated Creditor, shall be held in trust by such Subordinated Creditor for the benefit of Lenders and shall be paid over to Administrative Agent, or its designated representative, for application (in accordance with the Credit Agreement or the Permitted Refinancing Loan Documents) to the payment of the Senior Indebtedness then remaining unpaid, until all of the Senior Indebtedness is Paid in Full.

2.5      **Sale, Transfer**.  (a) No Subordinated Creditor shall sell, assign, dispose of or otherwise transfer all or any portion of the Subordinated Indebtedness (1) unless prior to the consummation of any such action, the transferor and transferee thereof shall execute and deliver to Administrative Agent a joinder to this Agreement, or an agreement substantially identical to this Agreement, in either case providing for the continued subordination and forbearance of the Subordinated Indebtedness to the Senior Indebtedness as provided herein and for the continued effectiveness of all of the rights of Administrative Agent, Collateral Agent and Lenders arising under this Agreement and (2) unless following such sale, assignment, disposition or other transfer, there shall be no more than five (5) holders who shall have rights in and to the Subordinated Indebtedness.

(b)      Notwithstanding the failure to execute or deliver any such agreement or appoint any such agent, the subordination effected hereby shall survive any sale, assignment, disposition or other transfer of all or any portion of the Subordinated Indebtedness, and the terms of this Agreement shall be binding upon the successors and assigns of each Subordinated Creditor, as provided in Section 9 below.

4

AIC000198

2.6   Legends.  Until the Senior Indebtedness is Paid in Full and all commitments to lend under the Loan Documents or Permitting Refinancing Loan Documents have terminated, each of the Subordinated Note Documents at all times shall contain in a conspicuous manner the following legend:

"This Note and the indebtedness evidenced hereby is subordinate in the manner and to the extent set forth herein and in the Subordination Agreement, dated as of April 16, 2007 (the "Subordination Agreement"), by and among ST Paper, LLC, Oconto Falls Tissue, Inc. and Goldman Sachs Credit Partners L.P., as Administrative Agent and Collateral Agent, to the Senior Indebtedness (as defined in the Subordination Agreement).  The holder of this Note, by its acceptance hereof, shall be bound by the provisions of the Subordination Agreement."

2.7   Restriction on Action by Subordinated Creditors.

(a)   Subordinated Creditors may at any time and from time to time without the consent of or notice to the Administrative Agent, Collateral Agent or any Lender, without incurring liability to the Administrative Agent, Collateral Agent or any Lender, change the manner or place of payment or extend the time of payment of or renew or alter the Subordinated Notes, or amend, restate, supplement or otherwise modify in any manner the Asset Purchase Agreement; provided, that until the Senior Indebtedness is Paid in Full and all commitments to lend under the Loan Documents or Permitted Refinancing Loan Documents have terminated, the Subordinated Creditor shall not, without the prior written consent of Administrative Agent, agree to any amendment, modification or supplement to the Subordinated Note Documents, the effect of which is to (i) increase the maximum principal amount of the Subordinated Indebtedness or increase the rate of interest on any of the Subordinated Indebtedness or make any such interest payable in cash, (ii) shorten the dates upon which payments of principal or interest on the Subordinated Indebtedness are due, (iii) change in a manner adverse to Borrower or add any event of default or add or make more restrictive any covenant with respect to the Subordinated Indebtedness (or Permitted Refinancing Loan Documents), (iv) change the redemption, prepayment or put provisions of the Subordinated Indebtedness, (v) subordinate the Subordinated Indebtedness to any other debt, (vi) alter the repayment terms of the Subordinated Indebtedness in a manner adverse to Borrower, (vii) take any liens in any assets of Borrower or any of its Subsidiaries or any other assets securing the Senior Indebtedness, or (viii) obtain any guaranties or credit support from any party other than Borrower.

(b)   Until the Senior Indebtedness is Paid in Full, no Subordinated Creditor shall, without the prior written consent of Administrative Agent, take any action to collect, enforce payment or accelerate any of the Subordinated Indebtedness, exercise any of the remedies with respect to the Subordinated Indebtedness set forth in any of the Subordinated Note Documents or that otherwise may be available to any Subordinated Creditor, either at law or in equity, by judicial proceedings (including by filing a Proceeding) or otherwise (an "Enforcement Action"), except as provided in the following sentence.

NY\121131\0.8

AIC000199

(c)     Until the Senior Indebtedness is Paid in Full and all commitments to lend under the Loan Documents or Permitted Refinancing Loan Documents have terminated, any liens of Subordinated Creditors in the Collateral which may exist in breach of each Subordinated Creditor's agreement pursuant to subsection 2.7(a)(vii) or Section 16 of this Agreement shall be and hereby are subordinated for all purposes and in all respects to the liens of Collateral Agent in the Collateral, regardless of the time, manner or order of perfection of any such liens.  In the event that any Subordinated Creditor obtains any liens in the Collateral in violation of subsection 2.7(a)(vii) or Section 16 of this Agreement, Subordinated Creditors (i) shall (or shall cause their agent) to promptly execute and/or deliver to Administrative Agent such termination statements and releases as Administrative Agent shall request to effect the release of the liens of such Subordinated Creditor in such Collateral and (ii) shall be deemed to have authorized Administrative Agent to file any and all termination statements required by Administrative Agent in respect of such liens. In furtherance of the foregoing, each Subordinated Creditor hereby irrevocably appoints Administrative Agent its attorney-in-fact, with full authority in the place and stead of such Subordinated Creditor and in the name of such Subordinated Creditor or otherwise, to execute and deliver any document or instrument which such Subordinated Creditor may be required to deliver pursuant to this subsection 2.7(c).

3.     **Continued Effectiveness of this Agreement; Modifications to Senior Indebtedness.** (a) The terms of this Agreement, the subordination effected hereby, and the rights and the obligations of Subordinated Creditors, Administrative Agent, Collateral Agent and Lenders arising hereunder, shall not be affected, modified or impaired in any manner or to any extent by: (i) any amendment or modification of or supplement to the Credit Agreement, any other Loan Document or any Permitted Refinancing Loan Document (to the extent such amendment, modification or supplement is not prohibited under the terms of this Agreement) or any Subordinated Note Documents; (ii) the validity or enforceability of any of such documents; or (iii) any exercise or non-exercise of any right, power or remedy under or in respect of the Senior Indebtedness or the Subordinated Indebtedness or any of the instruments or documents referred to in clause (i) above.

(b)    Administrative Agent, Collateral Agent and Lenders may at any time and from time to time without the consent or notice to any Subordinated Creditor, without incurring liability to any Subordinated Creditor and without impairing or releasing the obligations of any Subordinated Creditor under this Agreement, change the manner or place of payment or extend the time of payment of or renew or alter any Senior Indebtedness, or amend, restated, supplement or otherwise modify in any manner any Loan Document or Permitted Refinancing Loan Document.

4.     **Cumulative Rights, No Waivers.** Each and every right, remedy and power granted to Administrative Agent, Collateral Agent or Lenders hereunder shall be cumulative and in addition to any other right, remedy or power specifically granted herein, in the Credit Agreement, the other Loan Documents or Permitted Refinancing Loan Documents or now or hereafter existing in equity, at law, by virtue of statute or otherwise, and may be exercised by Administrative Agent, Collateral Agent or Lenders, from time to time, concurrently or independently and as often and in such order as Administrative Agent, Collateral Agent or Lenders may deem expedient.  Any failure or delay on the part of Administrative Agent,

6

AIC000200

Collateral Agent or Lenders in exercising any such right, remedy or power, or abandonment or discontinuance of steps to enforce the same, shall not operate as a waiver thereof or affect Administrative Agent's, Collateral Agent's or Lenders' right thereafter to exercise the same, and any single or partial exercise of any such right, remedy or power shall not preclude any other or further exercise thereof or the exercise of any other right, remedy or power, and no such failure, delay, abandonment or single or partial exercise of Administrative Agent's, Collateral Agent's or Lenders' rights hereunder shall be deemed to establish a custom or course of dealing or performance among the parties hereto.

5.     **Modification**.  Any modification or waiver of any provision of this Agreement, or any consent to any departure by Administrative Agent, Collateral Agent or any Subordinated Creditor therefrom, shall not be effective in any event unless the same is in writing and signed by Administrative Agent, Collateral Agent and the holders of greater than 50% of the then outstanding principal balance of the Subordinated Indebtedness, and then such modification, waiver or consent shall be effective only in the specific instance and for the specific instance and for the specific purpose given.  Any notice to or demand on any Subordinated Creditor in any event not specifically required of Administrative Agent or Collateral Agent hereunder shall not entitle any Subordinated Creditor to any other or further notice or demand in the same, similar or other circumstances unless specifically required hereunder.

6.     **Additional Documents and Actions**.  Each Subordinated Creditor at any time, and from time to time, after the execution and delivery of this Agreement, upon the request of Administrative Agent or Collateral Agent and at the expense of Borrower, promptly will execute and deliver such further documents and do such further acts and things as Administrative Agent or Collateral Agent may request in order to effect fully the purposes of this Agreement.

7.     **Notices**.  All notices and other communications provided for hereunder shall be in writing and shall be mailed, facsimiled or delivered to the following addresses:

| | |
|---|---|
| If to OFTI: | Oconto Falls Tissue, Inc.<br>c/o Tissue Products Technology Corp.<br>1555 Glory Road<br>Green Bay, Wisconsin 54304<br>Attention: Ron van den Heuvel |
| If to any other Subordinated Creditor: | To the address specified in a joinder delivered to Administrative Agent |
| If to Borrower: | ST Paper, LLC<br>1555 Glory Road<br>Green Bay, Wisconsin 54304<br>Attention: Sharad Tak |

7

AIC000201

with a copy to:

Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, New York  10017
Attention:  Ken S. Wyman

If to Collateral Agent or
Administrative Agent:

Goldman, Sachs & Co.
30 Hudson Street, 17th Floor
Jersey City, NJ 07302
Attention: Pedro Ramirez
Telecopier: (212) 428-1622

with a copy to:

Latham & Watkins LLP
885 Third Avenue
New York, New York  10022
Attention: Kirk A. Davenport, Esq.

or to any other address, as to any of the parties hereto, as such party shall designate in a written notice to the other parties hereto.  All notices sent pursuant to the terms of this Section 7 shall be effective, (i) if mailed, when received or three days after deposited in the mails, whichever occurs first, (ii) if transmitted by facsimile, on the date of transmission if transmitted before 4:00 p.m. (New York time) otherwise on the next Business Day, (iii) if delivered by personal delivery, upon delivery, or (iv) if delivered by overnight courier one (1) Business Day after delivery to the courier, in each case, properly addressed.

8.    Severability.    Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining portions hereof or affecting the validity or enforceability of such provision in any other jurisdiction.

9.    Successors and Assigns.    This Agreement shall inure to the benefit of the successors and assigns of Administrative Agent, Collateral Agent and Lenders and shall be binding upon the successors and assigns of Subordinated Creditors and Borrower.

10.    Counterparts.    This Agreement may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which shall be deemed to be an original, but all of which taken together shall constitute one and the same agreement.  Delivery of an executed counterpart of this Agreement by facsimile shall be equally as effective as delivery of an original executed counterpart of this Agreement. Any party delivering an executed counterpart of this Agreement by facsimile also shall deliver an original executed counterpart of this Agreement but the failure to deliver an original executed counterpart shall not affect the validity, enforceability, and binding effect of this Agreement.

11.    Defines Rights of Creditors; Subrogation.

A.    The provisions of this Agreement are solely for the purpose of defining the relative rights of Subordinated Creditors, Administrative Agent, Collateral Agent and Lenders

8

AIC000202

and shall not be deemed to create any rights or priorities in favor of any other party, including, without limitation, Borrower. As between Borrower and Subordinated Creditors, nothing contained herein shall impair the unconditional and absolute obligation of Borrower to Subordinated Creditors to pay the Subordinated Indebtedness as such Subordinated Indebtedness shall become due and payable in accordance with the Subordinated Note Documents.

B.    Subject to the Payment in Full of the Senior Indebtedness and termination of all commitments to lend under the Loan Documents or Permitted Refinancing Loan Documents, in the event and to the extent cash, property or securities otherwise payable or deliverable to the holders of the Subordinated Indebtedness shall have been applied pursuant to this Agreement to the payment of Senior Indebtedness, then and in each such event, the holders of the Subordinated Indebtedness shall be subrogated to the rights of each holder of Senior Indebtedness to receive any further payment or distribution in respect of or applicable to the Senior Indebtedness; and, for the purposes of such subrogation, no payment or distribution to the holders of Senior Indebtedness of any cash, property or securities to which any holder of Subordinated Indebtedness would be entitled except for the provisions of this Agreement shall, and no payment over pursuant to the provisions of this Agreement to the holders of Senior Indebtedness by the holders of the Subordinated Indebtedness shall, as between Borrower, its creditors other than the holders of Senior Indebtedness and the holders of Subordinated Indebtedness, be deemed to be a payment by Borrower to or on account of Senior Indebtedness.

12.    **Conflict**. In the event of any conflict between any term, covenant or condition of this Agreement and any term, covenant or condition of any of the Subordinated Note Documents, the provisions of this Agreement shall control and govern.

13.    **Statement of Indebtedness to Subordinated Creditors**. Borrower will furnish to Administrative Agent upon demand, a statement of the indebtedness owing from Borrower to Subordinated Creditors, and will give Administrative Agent access to the books of Borrower in accordance with the Credit Agreement so that Administrative Agent can make a full examination of the status of such indebtedness.

14.    **Headings**. Section headings herein are included for convenience of reference only and shall not constitute a part of this Agreement for any other purpose.

15.    **Termination**. This Agreement shall terminate upon the Payment in Full of the Senior Indebtedness and termination of all commitments to lend under the Loan Documents and Permitted Refinancing Loan Documents.

16.    **No Contest of Senior Indebtedness or Liens; No Security for Subordinated Indebtedness**. Each Subordinated Creditor agrees that it will not, and will not encourage any other party to, at any time, contest the validity, perfection, priority or enforceability of the Senior Indebtedness or liens in the Collateral granted to Collateral Agent pursuant to the Credit Agreement, the other Loan Documents or the Permitted Refinancing Loan Documents or accept or take any collateral security for the Subordinated Indebtedness.

9

AIC000203

17.   APPLICABLE LAW.  THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAW OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND TO BE PERFORMED IN THE STATE OF NEW YORK.

18.   CONSENT TO JURISDICTION; SERVICE OF PROCESS AND VENUE. ANY LEGAL ACTION OR PROCEEDING WITH RESPECT TO THIS AGREEMENT MAY BE BROUGHT IN THE COURTS OF THE STATE OF NEW YORK IN THE COUNTY OF NEW YORK OR OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK, AND, BY EXECUTION AND DELIVERY OF THIS AGREEMENT, EACH SUBORDINATED CREDITOR, ADMINISTRATIVE AGENT, COLLATERAL AGENT AND BORROWER HEREBY IRREVOCABLY ACCEPTS IN RESPECT OF ITS PROPERTY, GENERALLY AND UNCONDITIONALLY, THE JURISDICTION OF THE AFORESAID COURTS.  EACH SUBORDINATED CREDITOR AND BORROWER HEREBY IRREVOCABLY APPOINTS THE SECRETARY OF STATE OF THE STATE OF NEW YORK AS ITS AGENT FOR SERVICE OF PROCESS IN RESPECT OF ANY SUCH ACTION OR PROCEEDING AND FURTHER IRREVOCABLY CONSENTS TO THE SERVICE OF PROCESS OUT OF ANY OF THE AFOREMENTIONED COURTS AND IN ANY SUCH ACTION OR PROCEEDING BY THE MAILING OF COPIES THEREOF BY REGISTERED OR CERTIFIED MAIL, POSTAGE PREPAID, TO THE SUCH PARTY AT ITS ADDRESS FOR NOTICES AS SET FORTH IN SECTION 7 AND TO THE SECRETARY OF STATE OF THE STATE OF NEW YORK, SUCH SERVICE TO BECOME EFFECTIVE TEN (10) DAYS AFTER SUCH MAILING. NOTHING HEREIN SHALL AFFECT THE RIGHT OF SUBORDINATED CREDITORS, THE ADMINISTRATIVE AGENT, COLLATERAL AGENT AND THE LENDERS TO SERVICE OF PROCESS IN ANY OTHER MANNER PERMITTED BY LAW.  EACH OF ADMINISTRATIVE AGENT, COLLATERAL AGENT, SUBORDINATED CREDITOR AND BORROWER HEREBY EXPRESSLY AND IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY OBJECTION WHICH IT MAY NOW OR HEREAFTER HAVE TO THE JURISDICTION OR LAYING OF VENUE OF ANY SUCH LITIGATION BROUGHT IN ANY SUCH COURT REFERRED TO IN THE FIRST SENTENCE OF THIS SECTION AND ANY CLAIM THAT ANY SUCH LITIGATION HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.  TO THE EXTENT THAT SUBORDINATED CREDITOR OR BORROWER HAS OR HEREAFTER MAY ACQUIRE ANY IMMUNITY FROM JURISDICTION OF ANY COURT OR FROM ANY LEGAL PROCESS (WHETHER THROUGH SERVICE OR NOTICE, ATTACHMENT PRIOR TO JUDGMENT, ATTACHMENT IN AID OF EXECUTION OR OTHERWISE) WITH RESPECT TO ITSELF OR ITS PROPERTY, EACH SUCH PARTY HEREBY IRREVOCABLY WAIVES SUCH IMMUNITY IN RESPECT OF ITS OBLIGATIONS UNDER THIS AGREEMENT.

19.   WAIVER OF RIGHT TO JURY TRIAL.   EACH SUBORDINATED CREDITOR, BORROWER, ADMINISTRATIVE AGENT AND COLLATERAL AGENT HEREBY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM CONCERNING ANY RIGHTS UNDER THIS

NY\1211310.8

AIC000204

AGREEMENT, OR UNDER ANY AMENDMENT, WAIVER, CONSENT, INSTRUMENT, DOCUMENT OR OTHER AGREEMENT DELIVERED OR WHICH IN THE FUTURE MAY BE DELIVERED IN CONNECTION HEREWITH, OR ARISING FROM THIS AGREEMENT, AND AGREES THAT ANY SUCH ACTION, PROCEEDINGS OR COUNTERCLAIM SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY. EACH SUBORDINATED CREDITOR AND BORROWER HEREBY CERTIFIES THAT NO OFFICER, REPRESENTATIVE, AGENT OR ATTORNEY OF ADMINISTRATIVE AGENT, COLLATERAL AGENT OR ANY LENDER HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT ADMINISTRATIVE AGENT, COLLATERAL AGENT OR ANY LENDER WOULD NOT, IN THE EVENT OF ANY ACTION, PROCEEDING OR COUNTERCLAIM, SEEK TO ENFORCE THE FOREGOING WAIVERS. EACH SUBORDINATED CREDITOR AND BORROWER HEREBY ACKNOWLEDGES THAT THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE ADMINISTRATIVE AGENT AND COLLATERAL AGENT ENTERING INTO THIS AGREEMENT.

[*The remainder of this page is intentionally left blank.*]

NYI2II3I08

AIC000205

IN WITNESS WHEREOF, the parties hereto have caused this Subordination Agreement to be executed as of the date first above written.

OCONTO FALLS TISSUE, INC.

By: _____
    Name: Ronald H. Van Den Heuvel
    Title: President

ST PAPER, LLC

By: _____
    Name:
    Title:

GOLDMAN SACHS CREDIT PARTNERS L.P.,
as Administrative Agent and Collateral Agent

By: _____
    Authorized Signatory

OFTI Subordination Agreement

AIC000206

IN WITNESS WHEREOF, the parties hereto have caused this Subordination Agreement to be executed as of the date first above written.

**OCONTO FALLS TISSUE, INC.**

By:_____
    Name:
    Title:

**ST PAPER, LLC**

By:_____
    Name: Sahil Tak
    Title:   Vice President

**GOLDMAN SACHS CREDIT PARTNERS L.P.,**
as Administrative Agent and Collateral Agent

By:_____
    Authorized Signatory

AIC000207

IN WITNESS WHEREOF, the parties hereto have caused this Subordination Agreement to be executed as of the date first above written.

OCONTO FALLS TISSUE, INC.

By:_____
    Name:
    Title:

ST PAPER, LLC

By:_____
    Name:
    Title:

GOLDMAN SACHS CREDIT PARTNERS L.P.,
as Administrative Agent and Collateral Agent

By:_____
    Authorized Signatory

BRUCE H. MENDELSOHN
AUTHORIZED SIGNATORY

OFTI Subordination Agreement

AIC000208

8 0 1 9 7 6 4 8
Tx:40136797

2654010
CATHY WILLIQUETTE LINDSAY
BROWN COUNTY RECORDER
GREEN BAY, WI
RECORDED ON
12/13/2013 3:07 PM
REC FEE: 30.00
EXEMPT #
PAGES: 4

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Michael L. Helt (816) 867-5182

B. E-MAIL CONTACT AT FILER (optional)
nhelt@accessus.net

C. SEND ACKNOWLEDGMENT TO:   (Name and Address)

┌─────────────────────────────────┐
Michael L. Helt
Michael L. Helt, P.C.
1609 NW Rust Road
Grain Valley, MO 64029
└─────────────────────────────────┘
*T1- 942.93*

BAY TITLE

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME Green Box NA Green Bay, LLC | | | |
|---|---|---|---|
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS 2077B Lawrence Drive | CITY De Pere | STATE WI · POSTAL CODE 54115 | COUNTRY USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE · POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY)  Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME Maple Bridge Funding, LLC | | | |
|---|---|---|---|
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS 55 N Water Street, Ste. 3 | CITY South Norwalk | STATE CT · POSTAL CODE 06854 | COUNTRY USA |

4. COLLATERAL: This financing statement covers the following collateral
Description of collateral attached as Exhibit "B".

Legal description of property attached as Exhibit "A".

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien   ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)    International Association of Commercial Administrators (IACA)

AIC000209

# UCC FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR:  Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| 9a. ORGANIZATION'S NAME |
|---|
| Green Box NA Green Bay, LLC |

OR

| 9b. INDIVIDUAL'S SURNAME |
|---|
| FIRST PERSONAL NAME |
| ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME:  Provide (10a or 10b) only **one** additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| 10a. ORGANIZATION'S NAME |
|---|

OR

| 10b. INDIVIDUAL'S SURNAME |
|---|
| INDIVIDUAL'S FIRST PERSONAL NAME |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

11. ☐ ADDITIONAL SECURED PARTY'S NAME **or** ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only **one** name (11a or 11b)

| 11a. ORGANIZATION'S NAME |
|---|

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral)
Description of collateral attached as Exhibit "B".

13. ☑ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS  (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut   ☐ covers as-extracted collateral   ☑ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

16. Description of real estate:
Legal description of property attached as Exhibit "A".

17. MISCELLANEOUS:

AIC000210

## EXHIBIT A

Green Box NA Green Bay, LLC — Attachment to financing statement.

Item No. 4 (Item 16 for Form UCC-1 Addendum) continued:

### DESCRIPTION OF PROPERTY

Lot Two (2), Vol. 41 Certified Survey Maps, Page 100, Map No. 6194; said lot being part of Lots One (1), Two (2) and Three (3), according to the recorded Plat of De Pere Business Park South Addition and part of Lot One (1), Vol. 24 Certified Survey Maps, Page 84, Map No. 4035, all being in the Southwest Quarter (SW 1/4), Section Thirty-two (32), Township Twenty-three (23) North, Range Twenty (20) East, in the City of De Pere, West side of Fox River, Brown County, Wisconsin.

ALSO KNOWN AS

Lot Two (2), Vol. 41 Certified Survey Maps, Page 100, Map No. 6194; said lot being part of Lots One (1), Two (2) and Three (3), according to the recorded Plat of De Pere Business Park South Addition and part of the Northeast Quarter (NE 1/4) of the Southwest Quarter (SW 1/4); the Northwest Quarter (NW 1/4) of the Southwest Quarter (SW 1/4) and Southeast Quarter (SE 1/4) of the Southwest Quarter (SW 1/4), Section Thirty-two (32), Township Twenty-three (23) North, Range Twenty (20) East, in the City of De Pere, West side of Fox River, Brown County, Wisconsin.

Property Address: 2107 American Boulevard, De Pere, WI 54115
Tax Parcel Number: WD-1042

**EXHIBIT B**

Green Box NA Green Bay, LLC  – Attachment to financing statement.

Item No. 4 (Item 12 for Form UCC-1 Addendum) continued:

This Financing Statement covers the following types or items of property:

A.   All waters and water rights, engines, boilers, elevators and machinery, all heating apparatus, electrical equipment, air-conditioning and ventilating equipment, water and gas fixtures, all carpeting, draperies, ranges, microwave ovens, refrigerators, dishwashers, dehumidification equipment and all furniture and easily removable equipment and FIXTURES of every description owned or leased by Debtor which are or may be placed or used on the real estate (the "Property") in Brown County, Wisconsin more fully described on Exhibit "A" attached, together with any additions thereto and/or replacements thereof.

B.   All cash and other funds now or at any time hereafter deposited by or for Debtor on account of tax, special assessment, replacement or other reserves required to be maintained with Secured Party or a third party, or otherwise deposited with, or in the possession of, Secured Party.

C.   All surveys, soils reports, environmental reports, guaranties, warranties, architect's contracts, construction contracts, drawings and specifications, applications, permits, surety bonds and other contracts relating to the acquisition, design, development, construction and operation of the Property.

D.   All accounts, chattel paper, deposit accounts, instruments, equipment, inventory, documents, general intangibles, letter-of-credit rights, investment property and all other personal property of Debtor.

E.   All present and future rights to condemnation awards, insurance proceeds or other proceeds at any time payable to or received by Debtor on account of the Property or any of the foregoing personal property.

F.   Any and all proceeds from the property described in A through E above.

AIC000212

THIS IS AN
AUTHENTICATED COPY OF

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Michael L. Helt (816) 867-5182

B. E-MAIL CONTACT AT FILER (optional)
nhelt@nccessus.net

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

Michael L. Helt
Michael L. Helt, P.C.
1609 NW Rust Road
Grain Valley, MO 64029

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Green Box NA Green Bay, LLC | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 2077B Lawrence Drive | De Pere | WI | 54115 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY)  Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Maple Bridge Funding, LLC | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 55 N Water Street, Ste. 3 | South Norwalk | CT | 06854 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
Description of collateral attached as Exhibit "B".

Legal description of property attached as Exhibit "A".

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions)   ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien   ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable):   ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)          International Association of Commercial Administrators (IACA)

AIC000213

# UCC FINANCING STATEMENT ADDENDUM

**FOLLOW INSTRUCTIONS**

**9. NAME OF FIRST DEBTOR:** Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| | |
|---|---|
| **9a. ORGANIZATION'S NAME** | |
| Green Box NA Green Bay, LLC | |

OR

| | |
|---|---|
| **9b. INDIVIDUAL'S SURNAME** | |
| **FIRST PERSONAL NAME** | |
| **ADDITIONAL NAME(S)/INITIAL(S)** | **SUFFIX** |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**10. DEBTOR'S NAME:** Provide (10a or 10b) only **one** additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| | | | | |
|---|---|---|---|---|
| **10a. ORGANIZATION'S NAME** | | | | |

OR

| | | | | |
|---|---|---|---|---|
| **10b. INDIVIDUAL'S SURNAME** | | | | |
| **INDIVIDUAL'S FIRST PERSONAL NAME** | | | | |
| **INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)** | | | | **SUFFIX** |
| **10c. MAILING ADDRESS** | **CITY** | | **STATE** **POSTAL CODE** | **COUNTRY** |

**11.** ☐ **ADDITIONAL SECURED PARTY'S NAME** or ☐ **ASSIGNOR SECURED PARTY'S NAME:** Provide only **one** name (11a or 11b)

| | | | |
|---|---|---|---|
| **11a. ORGANIZATION'S NAME** | | | |

OR

| | | | |
|---|---|---|---|
| **11b. INDIVIDUAL'S SURNAME** | **FIRST PERSONAL NAME** | **ADDITIONAL NAME(S)/INITIAL(S)** | **SUFFIX** |
| **11c. MAILING ADDRESS** | **CITY** | **STATE** **POSTAL CODE** | **COUNTRY** |

**12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):**
Description of collateral attached as Exhibit "B".

| | |
|---|---|
| **13.** ☑ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable) | **14.** This FINANCING STATEMENT: ☐ covers timber to be cut   ☐ covers as-extracted collateral   ☑ is filed as a fixture filing |
| **15.** Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest): | **16.** Description of real estate: Legal description of property attached as Exhibit "A". |
| **17. MISCELLANEOUS:** | |

AIC000214

## EXHIBIT A

Green Box NA Green Bay, LLC – Attachment to financing statement.

Item No. 4 (Item 16 for Form UCC-1 Addendum) continued:

### DESCRIPTION OF PROPERTY

Lot Two (2), Vol. 41 Certified Survey Maps, Page 100, Map No. 6194; said lot being part of Lots One (1), Two (2) and Three (3), according to the recorded Plat of De Pere Business Park South Addition and part of Lot One (1), Vol. 24 Certified Survey Maps, Page 84, Map No. 4035, all being in the Southwest Quarter (SW 1/4), Section Thirty-two (32), Township Twenty-three (23) North, Range Twenty (20) East, in the City of De Pere, West side of Fox River, Brown County, Wisconsin.

ALSO KNOWN AS

Lot Two (2), Vol. 41 Certified Survey Maps, Page 100, Map No. 6194; said lot being part of Lots One (1), Two (2) and Three (3), according to the recorded Plat of De Pere Business Park South Addition and part of the Northeast Quarter (NE 1/4) of the Southwest Quarter (SW 1/4); the Northwest Quarter (NW 1/4) of the Southwest Quarter (SW 1/4) and Southeast Quarter (SE 1/4) of the Southwest Quarter (SW 1/4), Section Thirty-two (32), Township Twenty-three (23) North, Range Twenty (20) East, in the City of De Pere, West side of Fox River, Brown County, Wisconsin.

Property Address: 2107 American Boulevard, De Pere, WI 54115
Tax Parcel Number: WD-1042

AIC000215

## EXHIBIT B

Green Box NA Green Bay, LLC – Attachment to financing statement.

Item No. 4 (Item 12 for Form UCC-1 Addendum) continued:

This Financing Statement covers the following types or items of property:

A.   All waters and water rights, engines, boilers, elevators and machinery, all heating apparatus, electrical equipment, air-conditioning and ventilating equipment, water and gas fixtures, all carpeting, draperies, ranges, microwave ovens, refrigerators, dishwashers, dehumidification equipment and all furniture and easily removable equipment and FIXTURES of every description owned or leased by Debtor which are or may be placed or used on the real estate (the "Property") in Brown County, Wisconsin more fully described on Exhibit "A" attached, together with any additions thereto and/or replacements thereof.

B.   All cash and other funds now or at any time hereafter deposited by or for Debtor on account of tax, special assessment, replacement or other reserves required to be maintained with Secured Party or a third party, or otherwise deposited with, or in the possession of, Secured Party.

C.   All surveys, soils reports, environmental reports, guaranties, warranties, architect's contracts, construction contracts, drawings and specifications, applications, permits, surety bonds and other contracts relating to the acquisition, design, development, construction and operation of the Property.

D.   All accounts, chattel paper, deposit accounts, instruments, equipment, inventory, documents, general intangibles, letter-of-credit rights, investment property and all other personal property of Debtor.

E.   All present and future rights to condemnation awards, insurance proceeds or other proceeds at any time payable to or received by Debtor on account of the Property or any of the foregoing personal property.

F.   Any and all proceeds from the property described in A through E above.

AIC000216

## ASSIGNMENT OF RIGHTS

Simultaneously with the execution and delivery of this Assignment of Rights (the "Assignment"), Maple Bridge Funding, LLC, a Wyoming limited liability company ("Assignee") has agreed to make a loan to Green Box NA Green Bay, LLC, a Wisconsin limited liability company ("Assignor"), in the principal sum of Seven Million One Hundred Fifty Thousand and 00/100 Dollars ($7,150,000.00) (the "Loan") in lawful money of the United States of America, such Loan being evidenced by various documents (the "Loan Documents") including, but not limited to, that certain Promissory Note (which instrument, as it may be amended, restated, renewed and extended, is hereinafter referred to as the "Note") of even date herewith issued by Assignor and payable to Assignee, with interest thereon, all at the rate and on the terms set forth in the provisions of the Note, with final maturity no later than June 1, 2015 (all of which are hereby incorporated by reference herein).

As a specific condition to the making of the Loan, Assignee has required Assignor execute and deliver this Assignment in favor of Assignee and Assignor has determined it is in its interest to execute this Assignment and that Assignor will receive substantial benefit from the Loan being made by Assignee to Assignor.

THEREFORE, BY THIS AGREEMENT, Assignor, for valuable consideration, the receipt of which is hereby acknowledged, does hereby assign, transfer, convey and set over to Assignee all of Assignor's right, title and interest in and to all payments of principal and interest, all distributions, redemption proceeds, cash, warrants, rights, options, instruments, securities, receivables and other property or proceeds now due, owing or accruing due or which may hereafter become due, owing or accruing due (collectively, the "Receivables") to Assignor from ST Paper, LLC, a Delaware limited liability company ("Maker") under and with respect to that certain promissory note executed by Maker in favor of Oconto Falls Tissue, Inc., a Wisconsin corporation, dated April 16, 2007 identified as "Note 1" (the "Note"), in the original principal amount of Eight Million and 00/100 Dollars ($8,000,000.00) and assigned to Assignor by written Allonge of even date herewith.

TO HAVE AND TO HOLD the same from this day forward so long as any part of the Obligations (as hereinafter defined) of Assignor in favor of Assignee pursuant to the Loan, remains unpaid and unperformed.

This Assignment is made as and shall constitute collateral security for any and all obligations, indebtedness and liabilities of any kind and nature of Assignor to Assignee from time to time, direct or indirect, absolute or contingent, liquidated or unliquidated, as principal or surety, alone or with others, of whatsoever nature or kind, in any currency or otherwise, due or to become due, now existing or hereafter arising, under or related to the Loan (the "Obligations"). The assignment contemplated hereunder shall be continuing collateral security to Assignee without impairment or novation of any other existing or future security and shall operate as a general security for the payment, performance and satisfaction of the Obligations.

1.    Assignor represents, warrants and covenants that:

1

AIC000217

(a)   Assignor is the owner and holder of the Note; the current balance of the Note is $12,950,201.55; and it is entitled to receive all payments of interest and principal on the Note, as and when paid by Maker;

(b)   Assignor has good right and authority to make this Assignment;

(c)   Assignor has not heretofore alienated, assigned, pledged or otherwise disposed of or encumbered its interest in the Note (except any outright assignment of the Note requires the consent of Goldman Sachs Credit Partners, L.P.) or its right to receive payment of interest and principal on the Note, as and when paid by Maker;

(d)   Assignor will make no other assignment of its interest in the Note or of any right or interest therein including, but not limited to, the right to receive payment of interest and principal as and when paid by Maker;

(e)   Assignor will deliver to Assignee, simultaneous with the execution of this Assignment, the original of the Note which shall be held by Assignee pursuant to the terms and conditions set forth herein and returned to Assignor upon payment of the Obligations in full.

2.     Assignor hereby authorizes Assignee, upon the occurrence of an Event of Default by Assignor hereunder or under the Loan Documents, which remains uncured after the expiration of any grace period provided herein or therein, to receive any and all payments of interest and principal on the Note to the extent of the outstanding balance of the Loan.  For purposes hereof, an Event of Default under this Assignment shall be mean (a) Assignor's breach of any material covenant or other term or condition of this Assignment which is not cured within thirty (30) days following written notice of such breach by Assignee; (b) any material representation or warranty of Assignor made herein shall be false or misleading in any material respect; (c) the dissolution, liquidation or winding up by Assignor of a substantial portion of its business; (d) Assignor shall make an assignment for the benefit of creditors, or apply for or consent to the appointment of a receiver or trustee for it or for a substantial part of its property or business or such a receiver or trustee shall otherwise be appointed; or (e) the bankruptcy, insolvency, reorganization or liquidation proceedings or other proceedings or relief under any bankruptcy law or any law, or the issuance of any notice in relation to such event, for the relief of debtors shall be instituted by or against Assignor. Assignor hereby authorizes Maker to accept this Assignment and irrevocably authorizes and directs Maker, upon delivery of written notice by Assignee to Maker, in accordance with this Agreement, of the occurrence of an Event of Default (a "Default Notice"), to deliver any and all payments of interest and principal on the Note to Assignee to the full extent of the Obligations to an account maintained at JP Morgan Bank, N.A., ABA Routing Number 021000021, Account Number 496-653-465.  In consideration of Maker's compliance with such direction, Assignor hereby (i) releases, indemnifies and holds harmless Maker, its officers, managers, members, insurers, partners, directors, agents, servants, employees, predecessors, successors, assigns and their respective heirs, executors and administrators (the "Released Parties"), from any claims, damages, liabilities or expenses Assignor might otherwise have or assert against any or all of the Released Parties by reason of Maker paying Receivables to Assignee and (ii) covenants not to initiate any legal proceedings of any nature against any or all of the

AIC000218

Released Parties arising out of the same.  Maker shall be entitled to rely on any Default Notice it receives from Assignee pursuant to this Agreement.

3.      Assignor does hereby make, constitute and appoint Assignee, its successors and assigns, Assignor's true and lawful attorney in fact, with full power of substitution, and in Assignor's name, place and stead, or otherwise, upon the occurrence of an Event of Default, as described above:

(a)      To do, execute, acknowledge, obtain and deliver any and all instruments, documents, acts, items or things necessary or required as a term, condition or provision by Maker prior to the payment of any Receivable;

(b)      To give any notices, instructions, or other communications to Maker in connection with this Agreement or the Loan Documents; and

(c)      To file any claim or to take any other action or proceeding, either in its own name or in the name of Assignor, or otherwise, to enforce payment of any Receivable.

4.      Assignee shall not be subject to any obligation or liability to Maker, including, without limitation, any duty to perform any of the terms, conditions, provisions or agreements made by Assignor under the Note, but any and all such obligations and liabilities shall continue to rest upon Assignor as though this Assignment had not been made.  Assignee and its agents shall not be liable for any failure to exercise the rights, powers or remedies arising hereunder or otherwise, including without limitation any failure to collect, demand, sue for, enforce, recover or receive the Receivables, or to take any steps or proceedings for any such purposes.  Assignee and its agents shall not be liable to Assignor for any loss or damage which Assignor may hereafter suffer or incur as a result of the negligence (but not gross negligence or wanton or willful misconduct) of Assignee or any of its agents in the collection, enforcement, recovery, receipt or demand or suit for, the Receivables or the enforcement of its rights, powers or remedies hereunder.  Subject to the foregoing, Assignee shall use reasonable care in the custody and preservation of collateral in its possession.

5.      This Assignment and the power of attorney contained herein are solely for the benefit and protection of Assignee, its successors and assigns.  Assignee shall have no obligation to exercise any of the foregoing rights and powers in any event. The power of attorney given herein is a power coupled with an interest and shall be irrevocable so long as any part of the Obligations remain unpaid or unperformed.

6.      Notwithstanding any other provision of this Assignment, any provision of any instrument executed in connection with the Loan, and notwithstanding any failure on the part of Maker to comply with and honor the rights granted to Assignee herein, Assignor shall repay the Loan.

7.      The taking of this Assignment by Assignee shall not affect the release of any other collateral now or hereafter held by Assignee as security for the Loan, nor shall the taking of additional security for the Loan hereafter effect a release or termination of this Assignment, or any terms or provisions hereof.

3

AIC000219

8.     This Assignment and the rights and obligations of the parties hereunder shall be construed and interpreted in accordance with the laws of the State of Wisconsin.

9.     Time is of the essence hereof.  This Assignment shall be binding upon Assignor and its successors and assigns and shall inure to the benefit of Assignee its successors and assigns, but is not intended to confer upon any person other than the parties hereto and their successors and assigns any right or remedies under or by reason of this Assignment.

10.     In the event it becomes necessary for Assignee to employ legal counsel or to bring an action at law or other proceeding to enforce any of the terms, covenants or conditions of this Assignment, Assignor shall pay all costs and reasonable attorneys' fees incurred by Assignee. Such costs and attorneys' fees shall be set by the court and not by jury, shall be included in any judgment obtained by Assignee, and shall be secured by the Loan Documents.

11.     No failure or delay on the part of Assignee in exercising any right, power or privilege hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, power or privilege.  The rights and remedies hereunder are cumulative and may be exercised by Assignee either independently of or concurrently with any other right, remedy or power contained herein or, in the case of Assignee, in any instrument executed in connection with the Loan.

12.     Any notice required or provided for herein shall be in writing and shall be delivered personally or sent by certified mail or reputable courier service with charges prepaid, to the address for Assignor and Assignee as hereinafter set forth or at such other address as either Assignor or Assignee shall designate by written notice as provided in this paragraph.  Notice shall be deemed given on the date received.  Any notice which is rejected, the acceptance of which is refused or which is incapable of being delivered during normal business hours at the address provided herein or such other address designated pursuant hereto shall be deemed received as of the date of the attempted delivery.

Assignor:

Green Box NA Green Bay, LLC
2077B Lawrence Drive
De Pere, Wisconsin 54115
Attn.:  Ronald Van Den Heuvel

4

AIC000220

Assignee:

Maple Bridge Funding, LLC
55 N Water Street, Ste. 3
South Norwalk, Connecticut 06854
Attn.: Tim O'Shea, Manager

13.     All moneys received by Assignor from the collection of or in satisfaction of the Receivables or any of them shall be received and held by Assignor in trust for Assignee.

14.     Any and all payments made in respect of the Obligations from time to time shall be applied in accordance with the provisions of the Loan Documents.

15.     Assignor acknowledges the right of Assignee as the absolute assignee of the Receivables, either directly or through its agents, to collect, demand, sue for, enforce, recover or receive as Assignee and its agents may consider expedient, and to give valid and binding receipts and discharges therefor and in respect thereof, either in the name of Assignee or in the name of Assignor, without notice to Assignor to the extent permitted by law and without prejudice to any rights which Assignee has against other persons and without prejudice to the rights Assignee may have against Assignor for any deficiency.

16.     In addition to those rights granted herein and any other rights Assignee may have at law, in equity or otherwise, Assignee shall have all rights and remedies of a secured party under applicable personal property security laws.

17.     Capitalized terms used herein but not defined shall have the meanings ascribed thereto in the Loan Documents.

18.     Each of the provisions contained in this Agreement is distinct and severable and a declaration of invalidity or unenforceability of any such provision or part thereof by a court of competent jurisdiction shall not affect the validity or enforceability of any other provision hereof. To the extent permitted by applicable law, the parties waive any provision of law which renders any provision of this Agreement invalid or unenforceable in any respect. The parties shall engage in good faith negotiations to replace any provision which is declared invalid or unenforceable with a valid and enforceable provision, the economic effect of which comes as close as possible to that of the invalid or unenforceable provision which it replaces.

19.     No amendment or waiver of this Agreement shall be binding unless executed in writing by Assignor and Assignee. No waiver of any provision of this Agreement shall constitute a waiver of any other provision nor shall any waiver of any provision of this Agreement constitute a continuing waiver unless otherwise expressly provided.

20.     NEITHER ASSIGNEE (BY ITS ACCEPTANCE HEREOF) NOR ASSIGNOR SHALL BE RESPONSIBLE OR LIABLE TO THE OTHER OR TO ANY OTHER PERSON FOR ANY PUNITIVE, EXEMPLARY OR CONSEQUENTIAL DAMAGES WHICH MAY BE ALLEGED AS A RESULT OF THIS ASSIGNMENT OR THE TRANSACTION

AIC000221

CONTEMPLATED HEREBY, INCLUDING ANY BREACH OR OTHER DEFAULT BY ANY PARTY HERETO.

21.     TO THE MAXIMUM EXTENT PERMITTED BY LAW, ASSIGNOR AND ASSIGNEE (BY ITS ACCEPTANCE HEREOF) HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED ON THE TRANSACTION CONTEMPLATED BY THIS ASSIGNMENT OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS ASSIGNMENT OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENT (WHETHER VERBAL OR WRITTEN) OR ACTION OF ANY PARTY OR ANY EXERCISE BY ANY PARTY OF THEIR RESPECTIVE RIGHTS UNDER OR IN ANY WAY RELATING TO THIS ASSIGNMENT (INCLUDING ANY ACTION TO RESCIND OR CANCEL THIS ASSIGNMENT, AND ANY CLAIM OR DEFENSE ASSERTING THAT THIS ASSIGNMENT WAS FRAUDULENTLY INDUCED OR IS OTHERWISE VOID OR VOIDABLE). THIS WAIVER IS A MATERIAL INDUCEMENT FOR ASSIGNEE TO ACCEPT THIS ASSIGNMENT. ASSIGNOR AND ASSIGNEE HEREBY IRREVOCABLY SUBMIT TO THE JURISDICTION OF ANY FEDERAL OR STATE COURT IN THE STATE OF WISCONSIN IN ANY ACTION, SUIT OR PROCEEDING BROUGHT AGAINST IT AND RELATED TO OR IN CONNECTION WITH THIS ASSIGNMENT AND TO THE EXTENT PERMITTED BY APPLICABLE LAW, THE PARTIES HERETO HEREBY WAIVE AND AGREE NOT TO ASSERT BY WAY OF MOTION, AS A DEFENSE OR OTHERWISE, IN ANY SUCH SUIT, ACTION OR PROCEEDING ANY CLAIM THAT IT IS NOT SUBJECT TO THE JURISDICTION OF SUCH FEDERAL OR STATE COURTS, THAT THE SUIT, ACTION OR PROCEEDING IS BROUGHT IN AN INCONVENIENT FORUM, THAT THE VENUE OF THE SUIT, ACTION OR PROCEEDING IS IMPROPER, OR THAT THIS ASSIGNMENT OR ANY OTHER DOCUMENT OR INSTRUMENT REFERRED TO HEREIN OR THE SUBJECT MATTER HEREOF OR THEREOF MAY NOT BE LITIGATED IN OR BY SUCH FEDERAL OR STATE COURTS.

[The remainder of this page has been left intentionally blank.]

6

AIC000222

IN WITNESS WHEREOF, Assignor has executed this Assignment as of the _11ᵗʰ_ day of December, 2013.

Signed in the presence of:

_____

Typed or Printed Name

_____

Tami Kersten

Typed or Printed Name

ASSIGNOR:

GREEN BOX NA GREEN BAY, LLC,
a Wisconsin limited liability company
By: ENVIRONMENTAL ADVANCED
RECLAMATION TECHNOLOGY HQ,
LLC, a Wisconsin limited liability company,
its Manager

By: _____
    Name: Ronald Vanden Heuvel
    Title: Chairman

STATE OF WISCONSIN    )
                      )ss.
COUNTY OF             )

Be it known, that on this _11ᵗʰ_ day of December, 2013, before me, a Notary Public, in and for said County and State, personally came _Ronald Van Den Heuvel_ , who acknowledged himself/herself to be the _Chairman_ of Environmental Advanced Reclamation Technology HQ, LLC, a Wisconsin limited liability company, as Manager of GREEN BOX NA GREEN BAY, LLC, a Wisconsin limited liability company, to me personally known to be the person who executed the foregoing instrument, and acknowledged that he/she executed the same freely and voluntarily for the uses and purposes mentioned in it and as the free act and deed of the said limited liability company.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Michael A Baeten , Notary Public

_____Brown_____ County

My
Commission Expires: _3-27-16_

7



AIC000224

## ALLONGE

THIS ALLONGE is attached to and forms a part of that certain Promissory Note dated December ___, 2013, executed by Green Box NA Green Bay, LLC, a Wisconsin limited liability company ("Maker"), in favor of Maple Bridge Funding, LLC, a Wyoming limited liability company ("Lender"), in the original principal amount of $7,150,000.00.

**PAY TO THE ORDER OF ABILITY INSURANCE COMPANY WITHOUT RECOURSE.**

Dated this ___ day of December, 2013.

MAPLE BRIDGE FUNDING, LLC,
a Wyoming limited liability company

By: _____
Name: Tim O'Shea
Its: Manager

AIC000225

**NOTICE TO MAKER:  UPON MATURITY OR EARLIER ACCELERATION,
A BALLOON PAYMENT OF THE ENTIRE PRINCIPAL BALANCE OF THIS NOTE,
PLUS ANY THEN ACCRUED BUT UNPAID INTEREST THEREON
WILL BE DUE AND PAYABLE.**

<u>**PROMISSORY NOTE**</u>

$7,150,000.00                                                    December  10th, 2013

FOR VALUE RECEIVED, the undersigned GREEN BOX NA GREEN BAY, LLC, a Wisconsin limited liability company ("Maker"), unconditionally promises to pay to the order of MAPLE BRIDGE FUNDING, LLC, a Wyoming limited liability company, its successors and assigns ("Lender"), without setoff, at the office of Lender or its agent, designee or assignee, 55 N Water Street, Ste. 3, South Norwalk, Connecticut 06854, or at such other address as Lender may from time to time designate in writing, the principal sum of Seven Million One Hundred Fifty Thousand and 00/100 Dollars ($7,150,000.00), or so much thereof as may be advanced, in lawful money of the United States of America, together with interest from the date hereof, on the whole of said principal sum unpaid hereunder computed on the basis of a three hundred sixty (360) day year and charged on the actual number of days principal is outstanding at the rate of  Twelve percent (12%) per annum.  In computing the number of days during which interest accrues, the day on which funds are initially advanced shall be included regardless of the time of day such advance is made.

Principal and interest shall be paid by Maker as follows:

Interest only payments, payable monthly in arrears, beginning January 1, 2014 and continuing on the first (1st) day of each succeeding month until June 1, 2015 (the "Maturity Date") at which time the entire principal balance and all accrued and unpaid interest thereon shall be due and payable.

If any installment payable under this Note (including the final installment due on the Maturity Date) is not received by Lender within five (5) days after the date on which it is due (without regard to any applicable cure and/or notice period as described below), Maker shall pay to Lender a late fee equal to five percent (5%) of the amount of any such installment.

The term "Debt" means, collectively, (i) the unpaid principal balance of and the accrued but unpaid interest on this Note, and (ii) all other sums due, payable or reimbursable to Lender and all other liabilities and obligations of Maker under this Note or the Loan Documents  (including, without limitation, sums due or payable by Maker for deposit into any escrows established or required by this Note or the Loan Documents).  "Loan Documents" means this Note, the Mortgage and Security Agreement of even date herewith from Maker to Lender, the Absolute Assignment of Leases and Rents of even date herewith from Maker to Lender, the Conditional Commitment Letter dated November 10, 2013 from Lender to Maker and accepted by Maker on November 12, 2013, that certain Certification of even date herewith from Maker  to Lender and any other

1

AIC000226

document executed in conjunction with the transaction contemplated hereby, except for that certain Environmental Indemnity Agreement of even date herewith given by Maker and Ronald H. Van Den Heuvel to Lender, as the same now exist or may hereafter be amended, modified, supplemented, extended, renewed, restated or replaced.

If any payment of principal and interest shall become due on a day which is not a Business Day, such payment shall be made on the next succeeding Business Day and such extension of time shall be included in the computing of interest in connection with such payment. As used herein, the term "Business Day" shall mean any day other than a Saturday, Sunday or federal banking holiday upon which Lender is closed. Any check, draft, money order or other instrument given in payment of all or any portion of this Note may be accepted by Lender and handled in collections in the customary manner, but the same shall not constitute payment or diminish any rights of Lender except to the extent that actual cash proceeds of such instrument are unconditionally received by Lender. Any and every payment of principal, interest or any other sums shall be made in the lawful money of the United States of America that is legal tender for payment of all debts and dues, public and private, at the time of payment, and shall be applied (i) to pay any expenses due Lender under this Note or any other Loan Document until paid in full, (ii) to pay any fees then due to Lender under the Loan Documents until paid in full, (iii) to pay any accrued and unpaid interest on the principal balance of this Note, and (iv) to pay the principal balance due under this Note until paid in full. After the proper crediting of any principal payments, interest shall cease upon the portion of the principal so credited.

For purposes of this Note, an "Event of Default" shall be construed to mean a default under this Note or the Loan Documents. Upon the occurrence of an Event of Default, Lender shall give notice to Maker. If the Event of Default is the result of a failure on the part of Maker to make any payment required in this Note or the other Loan Documents, such Event of Default shall be cured within five (5) days after the date on which Lender shall have given notice of default to Maker. If the Event of Default is due to any other default under this Note or under any other Loan Document such Event of Default shall be cured within thirty (30) days after the date on which Lender shall have given notice of default to Maker (or if such default is not curable within such 30-day period, Maker shall have not diligently undertaken and continued to pursue the curing of such default and deposited an amount sufficient to cure such default in an escrow account satisfactory to Lender). If Maker fails to cure the Event of Default within the time permitted, Lender may, at its option, without notice or demand to Maker, declare the Debt immediately due and payable. All remedies hereunder, the Loan Documents and at law or in equity shall be cumulative. In the event that it should become necessary to employ counsel to collect the Debt or to protect or foreclose the security for the Debt or to defend against any claims asserted by Maker arising from or related to this Note or the Loan Documents, Maker also agrees to pay to Lender on demand all costs of collection or defense incurred by Lender, including reasonable attorney's fees for the services of counsel whether or not suit be brought. Upon the occurrence of an Event of Default, Maker shall pay interest on the entire principal sum and any other amounts due under the Loan Documents at the Default Rate (as hereinafter defined). The Default Rate shall be computed from the occurrence of the Event of Default until the cure of the Event of Default. Amounts of interest accrued at the Default Rate shall constitute a portion of the Debt, and shall be deemed secured by the Loan Documents. For purposes of this Note, "Default Rate" shall be construed to mean an interest rate equal to eighteen (18%) percent per annum, provided however, in no event shall interest be

2

charged in excess of the highest interest rate allowable by applicable law. In no event shall the notice and cure period provisions recited above constitute a grace period for the purpose of commencing interest at the Default Rate.

Provided no Event of Default then exists, the principal balance of this Note may be prepaid, in whole or in part, without premium or penalty, upon not less than five (5) days prior written notice to Lender specifying the date on which the prepayment is to be made (the "Prepayment Date") and upon Lender's receipt of any such prepayment, such amount shall be applied (i) to pay any expenses due Lender under this Note or the Loan Documents until paid in full, (ii) to pay any fees then due to Lender under the Loan Documents until paid in full, (iii) to pay any accrued and unpaid interest on the principal balance of this Note, and (iv) to pay the principal balance due under this Note until paid in full. No prepayment shall postpone any other payment required under this Note or affect the obligation to pay the same when due.

It is expressly stipulated and agreed to be the intent of Maker and Lender at all times to comply with applicable state law or applicable United States federal law (to the extent that it permits Lender to contract for, charge, take, reserve or receive a greater amount of interest than under state law) and that this section shall control every other covenant and agreement in this Note and the Loan Documents. If the applicable law (state or federal) is ever judicially interpreted so as to render usurious any amount called for under this Note or under the Loan Documents, or contracted for, charged, taken, reserved or received with respect to the indebtedness evidenced by this Note or the Loan Documents, or if Lender's exercise of the option to accelerate the maturity of this Note, or if any prepayment by Maker results in Maker having paid any interest in excess of that permitted by applicable law, then it is Maker's and Lender's express intent that all excess amounts theretofore collected by Lender be credited on the principal balance of this Note (or, if this Note has been or would thereby be paid in full, refunded to Maker), and the provisions of this Note and the Loan Documents shall immediately be deemed reformed and the amounts thereafter collectible hereunder and thereunder reduced, without the necessity of the execution of any new document, so as to comply with applicable law, but so as to permit the recovery of the fullest amount otherwise called for hereunder and thereunder. All sums paid or agreed to be paid to Lender for the use, forbearance and detention of the indebtedness evidenced by this Note and the Loan Documents shall, to the extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full term of such indebtedness until payment in full so that the rate or amount of interest on account of such indebtedness does not exceed the maximum rate permitted under applicable law from time to time in effect and applicable to the indebtedness evidenced hereby for so long as such indebtedness remains outstanding. Notwithstanding anything to the contrary contained in this Note or the Loan Documents, it is not the intention of Lender to accelerate the maturity of any interest that has not accrued at the time of such acceleration or to collect unearned interest at the time of such acceleration.

EXCEPT AS SPECIFICALLY PROVIDED HEREIN OR IN THE LOAN DOCUMENTS, MAKER AND ANY ENDORSERS, SURETIES OR GUARANTORS HEREOF JOINTLY AND SEVERALLY WAIVE PRESENTMENT AND DEMAND FOR PAYMENT, NOTICE OF INTENT TO ACCELERATE MATURITY, NOTICE OF ACCELERATION OF MATURITY, PROTEST AND NOTICE OF PROTEST AND NON-PAYMENT, ALL APPLICABLE EXEMPTION RIGHTS, VALUATION AND APPRAISEMENT, NOTICE OF DEMAND, AND ALL OTHER NOTICES IN CONNECTION WITH THE DELIVERY,

3

AIC000228

ACCEPTANCE, PERFORMANCE, DEFAULT OR ENFORCEMENT OF THE PAYMENT OF THIS NOTE AND THE BRINGING OF SUIT AND DILIGENCE IN TAKING ANY ACTION TO COLLECT THE SUMS OWING HEREUNDER OR IN PROCEEDING AGAINST ANY OF THE RIGHTS AND COLLATERAL SECURING PAYMENT HEREOF. Maker and any surety, endorser or guarantor hereof agree (i) that the time for any payment hereunder may be extended from time to time without notice and consent, (ii) to the acceptance of further collateral, (iii) the release of any existing collateral for the payment of this Note, (iv) to any and all renewals, waivers or modifications that may be granted by Lender with respect to the payment or other provisions of this Note, and/or (v) that additional makers, endorsers, guarantors or sureties may become parties hereto all without notice to them and without in any manner affecting their liability under or with respect to this Note. No extension of time for the payment of this Note or any installment hereof shall affect the liability of Maker under this Note or any endorser or guarantor hereof even though Maker or such endorser or guarantor is not a party to such agreement. It is agreed that time is of the essence of this Note and all the obligations of Maker hereunder.

Failure of Lender to exercise any of the options granted herein to Lender upon the happening of one or more of the events giving rise to such options shall not constitute a waiver of the right to exercise the same or any other option at any subsequent time in respect to the same or any other event. The acceptance by Lender of any payment hereunder that is less than payment in full of all amounts due and payable at the time of such payment shall not constitute a waiver of the right to exercise any of the options granted herein to Lender at that time or at any subsequent time or nullify any prior exercise of any such option without the express written acknowledgment of Lender.

Maker represents that Maker has full power, authority and legal right to execute, deliver and perform its obligations pursuant to this Note and the Loan Documents and that this Note and the Loan Documents constitute legal, valid and binding obligations of Maker.

Any notice required or provided for herein shall be in writing and shall be delivered personally or sent by certified mail or reputable courier service with charges prepaid, to the address for Maker and Lender set forth herein or at such other address as either Maker or Lender shall designate by written notice as provided in this paragraph. Notice shall be deemed given on the date received. Any notice which is rejected, the acceptance of which is refused or which is incapable of being delivered during normal business hours at the address provided herein or such other address designated pursuant hereto shall be deemed received as of the date of the attempted delivery.

Lender shall have the unrestricted right at any time or from time to time to sell this Note and the loan evidenced by this Note and the Loan Documents or participation interests therein. Maker shall execute, acknowledge and deliver any and all instruments requested by Lender to satisfy such purchasers or participants that the unpaid indebtedness evidenced by this Note is outstanding upon the terms and provisions set out in this Note and the Loan Documents.

Neither this Note nor the Loan Documents nor any uncertainty or ambiguity herein or therein shall be construed or resolved against Lender by virtue of the fact that such document has originated with Lender as drafter. Maker acknowledges that it has reviewed this Note and has had

AIC000229

the opportunity to consult with counsel on same. This Note therefore, shall be construed and interpreted according to the ordinary meanings of the words used so as to fairly accomplish the purposes and intentions of the parties hereto.

To the extent this Note conflicts with or is in any way incompatible with any other Loan Document, this Note shall control over any other such document, and if this Note does not address an issue, the other Loan Documents shall control to the extent they deal most specifically with the issue.

On the Maturity Date, Maker must repay the entire principal balance of this Note and all unpaid interest then due. Lender is under no obligation to refinance the outstanding principal balance of this Note (if any) at that time. Maker will therefore, be required to make payment out of other assets Maker may own; or Maker will have to find a lender willing to lend Maker the money at prevailing market rates, which may be higher than the interest rate on the outstanding principal balance of this Note. If any person has guaranteed payment of this Note, such person may be required to perform under such guaranty.

**THIS NOTE SHALL BE DEEMED TO HAVE BEEN MADE IN THE STATE OF WISCONSIN AND SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF WISCONSIN WITHOUT REGARD TO PRINCIPLES OF CONFLICT OF LAWS. MAKER HEREBY IRREVOCABLY AND UNCONDITIONALLY SUBMITS ITSELF AND ITS PROPERTY TO THE JURISDICTION OF ANY FEDERAL OR STATE COURT IN THE STATE OF WISCONSIN; <u>PROVIDED</u> THAT NOTHING CONTAINED IN THIS NOTE WILL PREVENT LENDER FROM BRINGING ANY ACTION, ENFORCING ANY AWARD OR JUDGMENT OR EXERCISING ANY RIGHTS AGAINST ANY LOAN PARTY OR AGAINST ANY PROPERTY WITHIN ANY OTHER COUNTY, STATE OR OTHER FOREIGN OR DOMESTIC JURISDICTION.**

**TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, MAKER HEREBY WAIVES ITS RIGHT TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS NOTE OR ANY OF THE TRANSACTIONS CONTEMPLATED HEREIN, INCLUDING CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW OR STATUTORY CLAIMS. MAKER REPRESENTS THAT IT HAS REVIEWED THIS WAIVER AND KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH LEGAL COUNSEL. IN THE EVENT OF LITIGATION, A COPY OF THIS NOTE MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT. THIS PROVISION IS A MATERIAL INDUCEMENT TO LENDER TO ENTER INTO THE TRANSACTIONS CONTEMPLATED HEREBY AND BY THE LOAN DOCUMENTS. THIS PROVISION SHALL NOT IN ANY WAY AFFECT, WAIVE, LIMIT, AMEND OR MODIFY LENDER'S ABILITY TO PURSUE ITS REMEDIES AS SET FORTH IN THIS NOTE AND THE LOAN DOCUMENTS.**

**THIS NOTE AND THE OTHER LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AS TO THE OBLIGATIONS EVIDENCED HEREBY AND THEREBY AND MAY NOT BE CONTRADICTED BY EVIDENCE OF**

AIC000230

PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.  THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

Executed as of the day and year first above written.

MAKER:

GREEN BOX NA GREEN BAY, LLC,
a Wisconsin limited liability company
By: ENVIRONMENTAL ADVANCED
RECLAMATION TECHNOLOGY HQ,
LLC, a Wisconsin limited liability company,
its Manager

By: _____
Name: _____
Title: _____

Address of Maker:

2077B Lawrence Drive
De Pere, Wisconsin 54115

6

AIC000231

LIFE AND ACCIDENT AND HEALTH COMPANIES - ASSOCIATION EDITION



# ANNUAL STATEMENT
### For the Year Ended DECEMBER 31, 2015
OF THE CONDITION AND AFFAIRS OF THE

## ABILITY INSURANCE COMPANY (FKA MEDICO LIFE) NAME CHANGE 02/10/09

| NAIC Group Code | 4824 | , | 4824 | NAIC Company Code | 71471 | Employer's ID Number | 47-0520541 |
|---|---|---|---|---|---|---|---|
| | (Current Period) | | (Prior Period) | | | | |

Organized under the Laws of     Nebraska     State of Domicile or Port of Entry     Nebraska

Country of Domicile     United States of America

Incorporated/Organized     10/06/1967     Commenced Business     06/10/1968

Statutory Home Office     222 South 15th Street Suite 1202S     Omaha, NE, 68102
         (Street and Number)          (City or Town, State, Country and Zip Code)

Main Administrative Office     222 South 15th Street Suite 1202S
         (Street and Number)

Omaha, NE, 68102     (402)218-4069
(City or Town, State, Country and Zip Code)     (Area Code) (Telephone Number)

Mail Address     P. O. Box 3735     Omaha, NE, 68103
         (Street and Number or P.O. Box)          (City or Town, State, Country and Zip Code)

Primary Location of Books and Records     One City Center, 4th Floor
         (Street and Number)

Portland, ME, 04101     (978)261-3074
(City or Town, State, Country and Zip Code)     (Area Code) (Telephone Number)

Internet Website Address     www.abilityinsurance.com

Statutory Statement Contact     David Gerard Charsky     (978)261-3074
         (Name)          (Area Code)(Telephone Number)(Extension)

DACharsky@tri-plus.net     (866)797-5837
(E-Mail Address)     (Fax Number)

## OFFICERS

| Name | Title |
|---|---|
| Kenneth King | President, CEO |
| Stephen Robert La Pierre | Secretary |
| David Gerard Charsky | Treasurer |

### OTHERS

## DIRECTORS OR TRUSTEES

| | |
|---|---|
| John Paul Grant | Ian Kilpatrick |
| Kenneth King | Daniel Bret Cathcart |
| William Austin Lewis IV | |

State of            
County of            ss

The officers of this reporting entity being duly sworn, each depose and say that they are the described officers of the said reporting entity, and that on the reporting period stated above, all of the herein described assets were the absolute property of the said reporting entity, free and clear from any liens or claims thereon, except as herein stated, and that this statement, together with related exhibits, schedules and explanations therein contained, annexed or referred to, is a full and true statement of all the assets and liabilities and of the condition and affairs of the said reporting entity as of the reporting period stated above, and of its income and deductions therefrom for the period ended, and have been completed in accordance with the NAIC Annual Statement Instructions and Accounting Practices and Procedures manual except to the extent that: (1) state law may differ; or, (2) that state rules or regulations require differences in reporting not related to accounting practices and procedures, according to the best of their information, knowledge and belief, respectively. Furthermore, the scope of this attestation by the described officers also includes the related corresponding electronic filing with the NAIC, when required, that is an exact copy (except for formatting differences due to electronic filing) of the enclosed statement. The electronic filing may be requested by various regulators in lieu of or in addition to the enclosed statement.

| (Signature) | (Signature) | (Signature) |
|---|---|---|
| Kenneth King | Stephen Robert La Pierre | David Gerard Charsky |
| (Printed Name) | (Printed Name) | (Printed Name) |
| 1. | 2. | 3. |
| President, CEO | Secretary | Treasurer |
| (Title) | (Title) | (Title) |

Subscribed and sworn to before me this     a. Is this an original filing?     Yes[X] No[ ]

       day of        , 2016     b. If no,    1. State the amendment number

                                      2. Date filed

                                      3. Number of pages attached

(Notary Public Signature)

AIC000232

ANNUAL STATEMENT FOR THE YEAR 2015 OF THE **ABILITY INSURANCE COMPANY (FKA MEDICO LIFE) NAME CHANGE 02/10/09**
## Notes to Financial Statements

(4)  An age analysis of mortgage loans, aggregated by type, is illustrated following:

| | Commercial | | Total |
|---|---|---|---|
| | Insured | All Other | |
| a. Current Year | | | |
| 1. Recorded Investment (All) | | | |
| (a) Current | | 75,645,826 | 75,645,826 |
| (b) 30-59 Days Past Due | | | |
| (c) 60-89 Days Past Due | | 3,221,930 | 3,221,930 |
| (d) 90-179 Days Past Due | | | |
| (e) 180 Days Past Due | | 7,150,000 | 7,150,000 |
| 2. Accruing Interest 90-179 Days Past Due | | | |
| (a) Recorded Investment | | | |
| (b) Interest Accrued | | | |
| 3. Accruing Interest 180+ Days Past Due | | | |
| (a) Recorded Investment | | 7,150,000 | 7,150,000 |
| (b) Interest Accrued | | 572,000 | 572,000 |
| 4. Interest Reduced | | Not applicable | Not applicable |
| b. Prior Year | | | |
| 1. Recorded Investment (All) | | 48,417,284 | 48,417,284 |
| (a) Current | | 42,044,180 | 42,044,180 |
| (b) 30-59 Days Past Due | | 3,850,000 | 3,850,000 |
| (c) 60-89 Days Past Due | | | |
| (d) 90-179 Days Past Due | | 2,523,404 | 2,523,404 |
| (e) 180 Days Past Due | | | |
| 2. Accruing Interest 90-179 Days Past Due | | | |
| (a) Recorded Investment | | 2,523,404 | 2,523,404 |
| (b) Interest Accrued | | 163,389 | 163,389 |
| 3. Accruing Interest 180+ Days Past Due | | NONE | NONE |

(5)  None of the Company's current mortgage loans are impaired.

(6)  Not applicable.

(7)  The Company has not incurred any credit losses in the financial statements presented in this filing.

(8)  The Company does not have any mortgage loans derecognized as a result of foreclosure.

(9)  Not Applicable.

B.  Debt Restructuring

The Company does not have any restructured debt in which it is a creditor.

C.  Reverse Mortgages

The Company does not have any reverse mortgages.

D.  Loan-Backed Securities

(1)  Prepayment assumptions for mortgage-backed/loan-backed and structured securities were obtained from broker-dealer survey values or internal estimates.

(2)  N/A.

(3)  N/A.

19.3

AIC000233

ANNUAL STATEMENT FOR THE YEAR 2015 OF THE ABILITY INSURANCE COMPANY (FKA MEDICO LIFE) NAME CHANGE 02/10/09

## SCHEDULE B - PART 1
### Showing All Mortgage Loans OWNED December 31 of Current Year

REDACTED

| 1 Loan Number | 2 Code | 3 Location City | 3 Location State | 5 Loan Type | 6 Date Acquired | 7 Rate of Interest | 8 Book Value/Recorded Investment Excluding Accrued Interest | 9 Unrealized Valuation Increase (Decrease) | 10 Current Year's (Amortization)/ Accretion | 11 Current Year's Other-Than-Temporary Impairment Recognized | 12 Capitalized Deferred Interest and Other | 13 Total Foreign Exchange Change in Book Value | 14 Value of Land and Buildings | 15 Date of Last Appraisal or Valuation |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mortgages In Good Standing - Commercial Mortgages - All Other | | | | | | | | | | | | | | |
| | | Brooklyn | NY | | 03/13/2015 | 8.000 | 1,150,000 | | 4,006 | | | | 3,550,000 | 03/10/2015 |
| | | Antler | PA | | 05/22/2014 | 12.000 | 550,000 | | 5,246 | | | | 1,550,000 | 05/05/2014 |
| | | Baton Rouge | LA | | 04/14/2014 | 12.000 | 1,043,767 | | 3,282 | | | | 3,400,000 | 05/22/2014 |
| | | Wilmington | NC | | 10/01/2014 | 12.000 | 100,013 | | 3,740 | | | | 1,100,000 | 06/03/2014 |
| | | Birmingham | AL | | 01/03/2014 | 12.000 | 528,607 | | 2,006 | | | | 1,350,000 | 09/03/2014 |
| | | Huntersville | NC | | 10/06/2014 | 12.000 | 750,000 | | 2,095 | | | | 2,500,000 | 08/13/2014 |
| | | Dallas | TX | | 02/27/2015 | 12.000 | 1,599,360 | | 13,335 | | | | 5,500,000 | 12/17/2014 |
| | | Dallas | TX | | 01/16/2015 | 12.000 | 1,599,390 | | 1,909 | | | | 1,600,000 | 08/14/2014 |
| | | Houston | TX | | 01/10/2014 | 12.000 | 584,500 | | 535 | | | | 1,600,000 | 01/15/2014 |
| | | Dallas | TX | | 04/25/2014 | 10.500 | 4,753,533 | | (5,492) | | | | 7,348,000 | 12/19/2014 |
| | | Kansas City | MO | | 01/14/2015 | 12.000 | 7,500,000 | | | | | | 7,500,000 | 11/25/2014 |
| | | Brooklyn | NY | | 05/22/2014 | 12.000 | 300,000 | | 3,374 | | | | 3,350,000 | 04/23/2014 |
| | | Antler | PA | | 05/22/2014 | 12.000 | 300,000 | | 2,006 | | | | 1,550,000 | 04/22/2014 |
| | | Atlanta | GA | | 11/17/2014 | 12.000 | 430,177 | | | | | | 1,678,000 | 10/07/2014 |
| | | Long Island City | NY | | 08/11/2014 | 12.000 | 460,002 | | 2,593 | | | | 980,000 | 10/04/2013 |
| | | Philadelphia | PA | | 08/11/2014 | 12.000 | 490,002 | | 2,577 | | | | 810,000 | 10/14/2013 |
| | | Washington | PA | | 06/05/2014 | 12.000 | 537,500 | | 1,427 | | | 14,400 | 4,000,000 | 10/03/2014 |
| | | Chicago | IL | | 08/15/2014 | 12.000 | 630,026 | | 4,331 | | | 58,500 | 594,000 | 10/03/2014 |
| | | Houston | TX | | 08/12/2014 | 12.000 | 230,000 | | 818,321 | | | 38,500 | 839,000 | 04/14/2013 |
| | | Charlotte | NC | | 11/04/2014 | 12.000 | 700,000 | | 5,945 | | | | 2,212,763 | 09/11/2014 |
| | | Paso County | FL | | 11/25/2013 | 12.000 | 3,526,875 | | | | | | 4,750,000 | 10/01/2013 |
| | | Aberdeen | IL | | 04/10/2014 | 9.750 | 700,000 | | | | | | 4,750,000 | 04/22/2014 |
| | | Chicago | IL | | 07/09/2014 | 12.000 | 625,000 | | (12,877) | | | | 785,000 | 04/04/2014 |
| | | Rockledge | PA | | 05/22/2014 | 12.000 | 312,000 | | 3,518 | | | | 785,000 | 04/04/2014 |
| | | Philadelphia | PA | | 06/16/2014 | 12.000 | 326,000 | | 1,316 | | | | 551,000 | 04/04/2014 |
| | | San Antonio | TX | | 04/16/2015 | 8.000 | 3,740,705 | | | | | | 14,765,963 | 11/24/2015 |
| | | San Antonio | TX | | 06/15/2015 | 12.000 | 2,011,754 | | | | | | 2,501,564 | 11/25/2014 |
| | | Aberdeen | PA | | 08/15/2015 | 12.000 | 615,835 | | | | | | 3,300,000 | 06/05/2015 |
| | | Brooklyn | NY | | 06/11/2015 | 12.000 | 705,035 | | | | | 14,857 | 1,090,000 | 08/20/2015 |
| | | Brooklyn | NY | | 05/01/2015 | 12.000 | 218,190 | | | | | | 1,050,000 | 04/20/2016 |
| | | New York | NY | | 07/16/2015 | 11.000 | 371,727 | | | | | | 3,100,000 | 11/25/2014 |
| | | New York | NY | | 07/16/2015 | 11.000 | 371,727 | | 1,696 | | | | 4,100,000 | 04/03/2014 |
| | | Weehawken | NJ | | 09/14/2015 | 8.630 | 14,765,863 | | | | | | 14,765,963 | 11/24/2015 |
| | | Woodside | NY | | 10/02/2015 | 8.630 | 214,572 | | | | | | 815,000 | 11/24/2015 |
| | | Woodside | NY | | 12/02/2015 | 7.000 | 214,572 | | | | | | 815,000 | 11/24/2015 |
| | | St. Charles | MO | | 10/16/2015 | 8.000 | 1,090,613 | | | | | | 13,250,000 | 11/04/2014 |
| | | Birmingham | AL | | 10/28/2015 | 8.000 | 1,838,888 | | | | | | 2,184,317 | 09/26/2015 |
| | | San Antonio | TX | | 11/20/2015 | 8.000 | 1,935,957 | | | | | | 100,400,000 | 09/28/2015 |
| | | Brooklyn | NY | | 11/08/2015 | 8.000 | 1,929,194 | | | | | | 10,000,000 | 09/28/2015 |
| | | Corpus Christi | TX | | 05/12/2013 | 12.000 | 1,230,000 | | 7,423 | | | | 4,090,000 | 06/05/2013 |
| | | Rosedale | TX | | 07/17/2015 | 12.000 | 8,431,820 | | | | | | 4,750,000 | 10/01/2013 |
| | | Farmleigh | IRL | | 01/01/2013 | 7.000 | 1,230,000 | | | | | | 3,080,000 | 06/05/2013 |
| | | Newark | NJ | | 02/10/2014 | 12.000 | 1,104,000 | | 4,956 | | | | 1,840,000 | 11/15/2013 |
| 0599999 Subtotal - Mortgages in Good Standing - Commercial Mortgages - All Other | | | | | | | 78,857,756 | | 57,224 | | 125,257 | (644,480) | 191,926,562 | X X X |
| Mortgages in Good Standing (Sum of Lines 0159999 thru 0799999) | | | | | | | | | | | | | | |
| 0899999 Total - Mortgages in Good Standing - Commercial Mortgages - All Other | | | | | | | 78,857,756 | | 57,224 | | 125,257 | (644,480) | 191,926,562 | X X X |
| Mortgages With Overdue Interest Over 90 Days, Not in Process Of Foreclosure - Commercial Mortgages - All Other | | | | | | | | | | | | | | |
| | | De Pere | WI | | 12/10/2013 | 12.000 | 7,150,000 | | 21,594 | | | | | |
| GREENBOX/2 | | | | | | | | | | | | | | |
| 2199999 Subtotal - Mortgages With Overdue Interest Over 90 Days, Not in Process of Foreclosure - Commercial Mortgages - All Other | | | | | | | 7,150,000 | | 21,594 | | | | | |

E04

AIC000234

From: (816) 867-5182
Michael Helt
MICHAEL L. HELT, P.C.
1609 NW Rust Road

GRAN VALLEY, MO 64029

Origin ID: OJCA



Ship Date: 11MAR15
ActWgt: 1.0 LB
CAD: 1657022/INET3610

Delivery Address Bar Code

E

J/G121502230Gw

SHIP TO: (920) 983-5648          BILL SENDER
**Sharad Tak**
**ST Paper, LLC**
**1555 Glory Road**

**GREEN BAY, WI 54304**

Ref #
Invoice #
PO #
Dept #

THU - 12 MAR 3:00P
STANDARD OVERNIGHT

TRK# 7731 0102 4034
0291

## XH GRBA

54304
WI-US
ATW

537J10P5A/E4B

**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

https://www.fedex.com/shipping/html/en/PrintIFrame.html

3/11/2015

AIC000235

# *MICHAEL L. HELT, P.C.*
### *1609 NW RUST ROAD*
### *GRAIN VALLEY, MISSOURI 64029*
### *(816) 867-5182*
### *FAX: (816) 847-7001*
### *nhelt@accessus.net*

March 11, 2015

ST Paper, LLC
Attn.: Sharad Tak
1555 Glory Road
Green Bay, WI 54304

> Re:   Subordinated Promissory Note No. 1 dated April 16, 2007 in the amount of
>           $8,000,000.00
>           Note Maker:  ST Paper, LLC
>           Original Holder:  Oconto Falls Tissue, Inc.
>           Current Holder:  Green Box NA Green Bay, LLC

Dear Mr. Tak:

This office represents Ability Insurance Company ("Lender") in regard to a loan (the "Loan") made to Green Box NA Green Bay, LLC ("Borrower") dated December 11, 2013.  The Loan was originated by Maple Bridge Funding, LLC ("Maple Bridge"). Subsequent to the closing of the Loan, Maple Bridge assigned all of its rights to the Loan to Lender.

As you are aware, on April 16, 2007 ST Paper, LLC ("Maker") executed a Subordinated Promissory Note in the amount of $8,000,000.00 ("Subordinated Note") to Oconto Falls Tissue, Inc. ("Oconto").  The Subordinated Note was subsequently endorsed by Oconto and at present, Borrower is the holder of the Subordinated Note.

As part of the loan transaction between Borrower and Maple Bridge, Borrower executed an Assignment of Rights (the "Assignment") in favor of Maple Bridge wherein Borrower assigned its right to receive payment of interest and principal on the Subordinated Note to Maple Bridge.  As noted above, Maple Bridge has assigned its rights under the Assignment to Lender.

Pursuant to the terms and conditions of the Assignment, in the event of a default under the Loan, Borrower agreed Lender was authorized and directed to notify Maker a default had occurred and thereafter, direct that all payments of interest and principal on the Subordinated Note be remitted to Lender.  The purpose of this letter is to (i) notify you of

AIC000236

ST Paper, LLC
Attn.: Sharad Tak
March 11, 2015
2

the existence of the Assignment; (ii) notify you a default has occurred under the Loan; and (iii) notify you all payments of interest and principal due on the Subordinated Note should be paid to Lender in lieu of Borrower.

For your reference, I have enclosed a copy of the Subordinated Note and the Assignment.  I must also advise you Lender is in possession of the original of the Subordinated Note.

According to the terms and conditions of the Subordinated Note, the unpaid principal balance and all accrued and capitalized interest thereon is due and payable on April 16, 2015.  Accordingly, please contact my office upon receipt of this letter so that we may coordinate payment of the amount due.

Sincerely,

Michael L. Helt

cc:     Client
        Ken S. Wyman
        Simpson, Thacher & Bartlett, LP

AIC000237

From: (816) 867-5182
Michael Helt
MICHAEL L. HELT, P.C.
1609 NW Rust Road
GRAIN VALLEY, MO 64029

Origin ID: OJCA

**FedEx** Express

Ship Date: 11MAR15
ActWgt: 1.0 LB
CAD: 1657022/NET3610

Delivery Address Bar Code

SHIP TO: (920) 983-5648          BILL SENDER
Sharad Tak
ST Paper, LLC
1555 Glory Road

GREEN BAY, WI 54304

Ref #
Invoice #
PO #
Dept #

TRK#   7731 0102 4034
0201

**THU - 12 MAR 3:00P**
STANDARD OVERNIGHT

54304
WI-US
ATW

# XH GRBA

After printing this label:
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

AIC000238

From: (816) 867-5182
Michael Helt
MICHAEL L. HELT, P.C.
1600 NW Rusi Road
GRAIN VALLEY, MO 64029

Origin ID: OJCA



Ship Date: 11MAR15
ActWgt: 1.0 LB
CAD: 1657022/INET3610

Delivery Address Bar Code

SHIP TO: (301) 869-7220          BILL SENDER
Sharad Tak
ST Paper, LLC
401 Professional Drive, Ste. 110

GAITHERSBURG, MD 20879

Ref #
Invoice #
PO #
Dept #

THU - 12 MAR 3:00P
STANDARD OVERNIGHT

TRK#   7731 0099 7152
0201

20879
MD-US
IAD

## XC EDGA

After printing this label:
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

THIS NOTE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"), OR UNDER THE SECURITIES LAWS OF ANY STATE. THIS NOTE MAY NOT BE TRANSFERRED OR RESOLD EXCEPT AS PERMITTED UNDER THE ACT AND THE APPLICABLE STATE SECURITIES LAWS, PURSUANT TO REGISTRATION OR EXEMPTION THEREFROM.

THIS NOTE AND THE INDEBTEDNESS EVIDENCED HEREBY IS SUBORDINATE IN THE MANNER AND TO THE EXTENT SET FORTH HEREIN AND IN THE SUBORDINATION AGREEMENT, DATED AS OF APRIL 16, 2007 (THE "SUBORDINATION AGREEMENT"), BY AND AMONG ST PAPER, LLC, OCONTO FALLS TISSUE, INC. AND GOLDMAN SACHS CREDIT PARTNERS L.P., AS ADMINISTRATIVE AGENT AND COLLATERAL AGENT, TO THE SENIOR INDEBTEDNESS (AS DEFINED IN THE SUBORDINATION AGREEMENT). THE HOLDER OF THIS NOTE, BY ITS ACCEPTANCE HEREOF, SHALL BE BOUND BY THE PROVISIONS OF THE SUBORDINATION AGREEMENT.

## SUBORDINATED PROMISSORY NOTE

$8,000,000.00                                                          April 16, 2007
Note No. 1

FOR VALUE RECEIVED, the undersigned, **ST PAPER, LLC**, a Delaware limited liability company ("Maker"), hereby promises to pay to the order of **OCONTO FALLS TISSUE, INC.**, a Wisconsin corporation ("Payee"), c/o Tissue Products Technology Corp., 1555 Glory Road, Green Bay, Wisconsin 54304, or such other place as the Payee shall from time to time direct in writing to the Maker, subject to the contingency described herein, the principal sum of Eight Million and 00/100 Dollars ($8,000,000.00). The unpaid principal balance of this Note shall bear interest at a rate per annum equal to seven and one-half percent (7.5%). Interest accrued from and after the date hereof shall be added to the unpaid principal balance of this Note on an annual basis commencing April 16, 2008 and continuing on the subsequent anniversaries of such date until the unpaid principal balance of this Note is paid in full. The unpaid principal balance of this Note, together with accrued and capitalized interest, shall be due and payable on April 16, 2015.

This Note is the Note referred to in Paragraph 2.3 of the Second Amended and Restated Asset Purchase Agreement, dated as of April 16, 2007 (the "Purchase Agreement"), by and between Maker, Payee and others. Reference is made to the Purchase Agreement for relevant terms and provisions that bear upon this Note, including without limitation, Paragraph 9.4 of the Purchase Agreement.

Maker may prepay all or any part of the unpaid balance of this Note at any time, and from time to time, without premium or penalty.

The Purchase Agreement contains provisions for offset against amounts due under this Note. Notwithstanding anything contained herein to the contrary, any offset against amounts due

AIC000240

under this Note in accordance with the Purchase Agreement shall not be considered an Event of Default hereunder.

Payee, by its acceptance hereof, acknowledges that this Note is subordinated and junior in right of payment to all amounts owed to current or future holder of Senior Indebtedness, including, without limitation, interest thereon, whether or not an allowed claim. Payee, by accepting this Note, agrees to execute the Subordination Agreement in the form attached hereto as Exhibit A upon such acceptance and any other documents the Senior Lenders may reasonably request to effect the subordination intended hereunder. For purposes hereof, the term "Senior Indebtedness" has the meaning given in the Subordination Agreement. A "Senior Lender" is any holder of Senior Indebtedness.

The unpaid principal balance of this Note, together with accrued and unpaid interest, shall, at the option of Payee or any subsequent holder hereof, become immediately due and payable upon the occurrence of any of the following events (hereinafter, an "Event of Default"): Maker shall: (i) become insolvent or take or fail to take any action which constitutes an admission of inability to pay its debts as they become due, (ii) make a general assignment for the benefit of creditors or to an agent authorized to liquidate any substantial amount of its assets, (iii) become the subject of an "order for relief" within the meaning of the United States Bankruptcy Code, (iv) file a petition in bankruptcy, or for reorganization, or to effect a plan or other arrangement with creditors, (v) file an answer to a creditor's petition, admitting the material allegations thereof, for an adjudication of bankruptcy or for reorganization or to effect a plan or other arrangement with creditors, (vi) apply to a court for the appointment of a receiver or custodian for any of its assets or properties, (vii) have a receiver or custodian appointed for any of its assets or properties, with or without consent, and such receiver shall not be discharged within sixty (60) days after his appointment, or (viii) take any action for the purpose of effecting any of the foregoing.

No delay or omission on the part of Payee or any holder of this Note in exercising any right or option given to Payee or such holder shall impair such right or option or be considered as a waiver thereof or acquiescence in any default hereunder.

Maker hereby waives presentment, demand, notice of dishonor and protest and consents to any and all extensions and renewals hereof without notice.

Upon payment in full of this Note or upon the adjustment described above, Payee agrees to surrender this Note to Maker for cancellation thereof.

This Note shall be construed in accordance with the internal laws of the State of Wisconsin.

2

AIC000241

**MAKER:**

ST PAPER, LLC

By: _____
    Name: Sharad Tak
    Title:  President

3

AIC000242

## EXHIBIT A

### Subordination Agreement

*(Copy Attached)*

4

AIC000243

EXECUTION VERSION

## SUBORDINATION AGREEMENT

**THIS SUBORDINATION AGREEMENT** (this "<u>Agreement</u>"), dated as of April 16, 2007, is among ST PAPER, LLC, a Delaware limited liability company ("<u>Borrower</u>"), OCONTO FALL TISSUE, INC., a Wisconsin corporation ("<u>OFTI</u>"), in its capacity as holder of Subordinated Indebtedness (as hereinafter defined) (OFTI, together with any other party from time to time becoming a holder of Subordinated Indebtedness, and their respective successors and assigns, being hereinafter collectively referred to as the "<u>Subordinated Creditors</u>"), and GOLDMAN SACHS CREDIT PARTNERS L.P. ("<u>GSCP</u>"), in its capacity as administrative agent (in such capacity, "<u>Administrative Agent</u>") for the Lenders and as collateral agent (in such capacity, "<u>Collateral Agent</u>") for the Secured Parties under the Credit Agreement referred to below.

## R E C I T A L S

A.     Borrower has entered into a Credit Agreement, dated as of the date hereof (as the same may be amended, restated, supplemented or otherwise modified from time to time as permitted hereunder, the "<u>Credit Agreement</u>" and, collectively with the financing and security documents related thereto, the "<u>Loan Documents</u>"), with Administrative Agent, Collateral Agent, GSCP, as Sole Lead Arranger, Sole Bookrunner and Syndication Agent, and the Lenders from time to time party thereto, pursuant to which, among other things, Lenders have agreed, subject to the terms and conditions set forth in the Credit Agreement, to make certain loans and other financial accommodations to Borrower.

B.     Borrower, OFTI, Tissue Products Technology Corp. and Partners Concepts Development, Inc., a Wisconsin corporation ("<u>PCDI</u>"), have entered into a Second Amended and Restated Asset Purchase Agreement, dated as of the date hereof (as the same may be amended, supplemented, restated or otherwise modified from time to time as permitted hereunder, the "<u>Asset Purchase Agreement</u>"), pursuant to which, among other things, OFTI has extended credit to Borrower as evidenced by four (4) Subordinated Promissory Notes of even date herewith issued by Borrower to OFTI in the original aggregate principal amounts of $8,000,000, $8,000,000, $8,000,000 and  $6,589,000, respectively (as the same may be amended, supplemented, restated or otherwise modified from time to time as permitted hereunder and all notes issued in exchange or substitution of any thereof, the "<u>Subordinated Notes</u>"), and pursuant to which Borrower has incurred and may hereafter incur other obligations and liabilities to OFTI.

C.     As an inducement to and as one of the conditions precedent to the agreement of Administrative Agent, Collateral Agent and Lenders to consummate the transactions contemplated by the Credit Agreement, Administrative Agent, Collateral Agent and Lenders required the execution and delivery of this Agreement by OFTI and Borrower.

NOW, THEREFORE, in order to induce Administrative Agent, Collateral Agent and Lenders to consummate the transactions contemplated by the Credit Agreement, and for other good and valuable consideration, the receipt and sufficiency of which hereby are acknowledged, the parties hereto hereby agree as follows:

AIC000244

1.    <u>Definitions</u>.  All capitalized terms used herein but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Credit Agreement. The following terms shall have the following meanings in this Agreement:

"<u>Administrative Agent</u>" shall have the meaning ascribed to such term in the preamble of this Agreement; provided, however that after the consummation of any Permitted Refinancing, the term "Administrative Agent" shall refer to any party appointed by the holders of the Senior Indebtedness as agent for themselves for the purposes of this Agreement.

"<u>Business Day</u>" means any day excluding Saturday, Sunday and any day which is a legal holiday under the laws of the State of New York or is a day on which banking institutions located in such state are authorized or required by law or other governmental action to close.

"<u>Collateral</u>" means all of the collateral securing the obligations of Borrower under the Loan Documents.

"<u>Enforcement Action</u>" is defined in subsection 2.7.

"<u>Lender or Lenders</u>" shall mean any "Lender" or the "Lenders," respectively, as such terms are defined in the Credit Agreement; <u>provided</u>, <u>however</u> that after the consummation of any Permitted Refinancing, such terms shall refer to any holder or all of the holders, respectively, of the Senior Indebtedness.

"<u>Loan Documents</u>" is defined in Recital A.

"<u>Paid in Full</u>" or "<u>Payment in Full</u>" shall mean the indefeasible payment in full in cash of all Senior Indebtedness.

"<u>Permitted Refinancing</u>" shall mean any refinancing of the Senior Indebtedness under the Loan Documents provided that the financing documentation entered into by Borrower in connection with such Permitted Refinancing constitutes Permitted Refinancing Loan Documents.

"<u>Permitted Refinancing Loan Documents</u>" shall mean any financing documentation which replaces the Loan Documents and pursuant to which the Senior Indebtedness under the Loan Documents is refinanced, as such financing documentation may be amended, restated, supplemented or otherwise modified from time to time.

"<u>Proceeding</u>" is defined in subsection 2.3.

"<u>Required Lenders</u>" shall have the meaning ascribed to such term in the Credit Agreement; provided, however that after the consummation of any Permitted Refinancing, the term "Required Lenders" shall mean the holders of Senior Indebtedness having the right and/or ability under the Permitted Refinancing Loan Documents to effectuate the waiver, amendment, granting of consent or other matter in question.

"<u>Senior Indebtedness</u>" shall mean the "Obligations," as such term is defined in the Credit Agreement, including all interest, fees, expenses, indemnities, in each instance, whether before or after the commencement of a Proceeding and without regard to whether or not an allowed claim, and all obligations and liabilities incurred with respect to Permitted Refinancings, together with any amendments, restatements, modifications, renewals or extensions of any thereof permitted hereunder.

2

AIC000245

"Subordinated Creditors" shall mean the Subordinated Creditors who are signatories to this Agreement and any other holders of the Subordinated Notes or any other Subordinated Indebtedness from time to time.

"Subordinated Indebtedness" shall mean all of the obligations of Borrower to Subordinated Creditors evidenced by the Subordinated Notes and all other amounts and other obligations now or hereafter owed by Borrower to Subordinated Creditors pursuant to the Subordinated Note Documents.

"Subordinated Note Documents" shall mean the Subordinated Notes, the Asset Purchase Agreement, any guaranty with respect to the Subordinated Indebtedness and all other documents and instruments evidencing, securing or pertaining to any portion of the Subordinated Indebtedness, as amended, supplemented, restated or otherwise modified from time to time as permitted hereunder.

2.     **Subordination of Subordinated Indebtedness to Senior Indebtedness**.

2.1     **Subordination**.  The payment of any and all of the Subordinated Indebtedness hereby expressly is subordinated, to the extent and in the manner set forth herein, to the Payment in Full of the Senior Indebtedness.  Each holder of Senior Indebtedness, whether now outstanding or hereafter arising, shall be deemed to have acquired Senior Indebtedness in reliance upon the provisions contained herein.

2.2     **Restriction on Payments**.  No payment (whether made in cash, securities or other property or by set-off) of principal, interest or any other amount due with respect to the Subordinated Indebtedness shall be made or received, and no Subordinated Creditor shall exercise any right of set-off or recoupment with respect to any Subordinated Indebtedness, until all of the Senior Indebtedness is Paid in Full.

2.3     **Proceedings**.  In the event of any insolvency, bankruptcy, receivership, custodianship, liquidation, reorganization, assignment for the benefit of creditors or other proceeding for the liquidation, dissolution or other winding up of Borrower or any of its Subsidiaries or any of their respective properties (a "Proceeding"):

A.     all Senior Indebtedness first shall be Paid in Full before any payment (whether made in cash, securities or other property) of or with respect to the Subordinated Indebtedness shall be made;

B.     any payment which, but for the terms hereof, otherwise would be payable or deliverable in respect of the Subordinated Indebtedness, shall be paid or delivered directly to Administrative Agent (to be held and/or applied by Administrative Agent in accordance with the terms of the Credit Agreement or the Permitted Refinancing Loan Documents) until all Senior Indebtedness is Paid in Full, and each Subordinated Creditor irrevocably authorizes, empowers and directs all receivers, trustees, liquidators, custodians, conservators and others having authority in the premises to effect all such payments and deliveries, and each Subordinated Creditor also irrevocably authorizes, empowers and directs Administrative Agent to demand, sue for, collect and receive every such payment or distribution; and

3

AIC000246

C. each Subordinated Creditor agrees to execute, verify, deliver and file any proofs of claim in respect of the Subordinated Indebtedness requested by Administrative Agent in connection with any such Proceeding and hereby irrevocably authorizes, empowers and appoints Administrative Agent its agent and attorney-in-fact to execute, verify, deliver and file such proofs of claim upon the failure of such Subordinated Creditor promptly to do so (and in any event prior to 15 days before the expiration of the time to file any such proof); provided Administrative Agent shall have no obligation to execute, verify, deliver, and/or file any such proof of claim.

The Senior Indebtedness shall continue to be treated as Senior Indebtedness and the provisions of this Agreement shall continue to govern the relative rights and priorities of Administrative Agent, Collateral Agent, Lenders and Subordinated Creditors even if all or part of the Senior Indebtedness or the liens securing the Senior Indebtedness are subordinated, set aside, avoided or disallowed in connection with any such Proceeding. This Agreement shall be reinstated if at any time any payment of any of the Senior Indebtedness is rescinded or must otherwise be returned by any holder of the Senior Indebtedness or any representative of such holder and the Senior Indebtedness, or portion thereof, intended to have been satisfied shall be deemed to be reinstated and outstanding as if such payment had not occurred.

2.4    **Incorrect Payments.** If any payment (whether made in cash, securities or other property) not permitted under this Agreement is received by any Subordinated Creditor on account of the Subordinated Indebtedness before all Senior Indebtedness is Paid in Full, such payment shall not be commingled with any asset of such Subordinated Creditor, shall be held in trust by such Subordinated Creditor for the benefit of Lenders and shall be paid over to Administrative Agent, or its designated representative, for application (in accordance with the Credit Agreement or the Permitted Refinancing Loan Documents) to the payment of the Senior Indebtedness then remaining unpaid, until all of the Senior Indebtedness is Paid in Full.

2.5    **Sale, Transfer.** (a) No Subordinated Creditor shall sell, assign, dispose of or otherwise transfer all or any portion of the Subordinated Indebtedness (1) unless prior to the consummation of any such action, the transferor and transferee thereof shall execute and deliver to Administrative Agent a joinder to this Agreement, or an agreement substantially identical to this Agreement, in either case providing for the continued subordination and forbearance of the Subordinated Indebtedness to the Senior Indebtedness as provided herein and for the continued effectiveness of all of the rights of Administrative Agent, Collateral Agent and Lenders arising under this Agreement and (2) unless following such sale, assignment, disposition or other transfer, there shall be no more than five (5) holders who shall have rights in and to the Subordinated Indebtedness.

(b)    Notwithstanding the failure to execute or deliver any such agreement or appoint any such agent, the subordination effected hereby shall survive any sale, assignment, disposition or other transfer of all or any portion of the Subordinated Indebtedness, and the terms of this Agreement shall be binding upon the successors and assigns of each Subordinated Creditor, as provided in Section 9 below.

NY\12113108

AIC000247

2.6    **Legends.**  Until the Senior Indebtedness is Paid in Full and all commitments to lend under the Loan Documents or Permitting Refinancing Loan Documents have terminated, each of the Subordinated Note Documents at all times shall contain in a conspicuous manner the following legend:

> "This Note and the indebtedness evidenced hereby is subordinate in the manner and to the extent set forth herein and in the Subordination Agreement, dated as of April 16, 2007 (the "Subordination Agreement"), by and among ST Paper, LLC, Oconto Falls Tissue, Inc. and Goldman Sachs Credit Partners L.P., as Administrative Agent and Collateral Agent, to the Senior Indebtedness (as defined in the Subordination Agreement).   The holder of this Note, by its acceptance hereof, shall be bound by the provisions of the Subordination Agreement."

2.7    **Restriction on Action by Subordinated Creditors.**

(a)     Subordinated Creditors may at any time and from time to time without the consent of or notice to the Administrative Agent, Collateral Agent or any Lender, without incurring liability to the Administrative Agent, Collateral Agent or any Lender, change the manner or place of payment or extend the time of payment of or renew or alter the Subordinated Notes, or amend, restate, supplement or otherwise modify in any manner the Asset Purchase Agreement; provided, that until the Senior Indebtedness is Paid in Full and all commitments to lend under the Loan Documents or Permitted Refinancing Loan Documents have terminated, the Subordinated Creditor shall not, without the prior written consent of Administrative Agent, agree to any amendment, modification or supplement to the Subordinated Note Documents, the effect of which is to (i) increase the maximum principal amount of the Subordinated Indebtedness or increase the rate of interest on any of the Subordinated Indebtedness or make any such interest payable in cash, (ii) shorten the dates upon which payments of principal or interest on the Subordinated Indebtedness are due, (iii) change in a manner adverse to Borrower or add any event of default or add or make more restrictive any covenant with respect to the Subordinated Indebtedness (or Permitted Refinancing Loan Documents), (iv) change the redemption, prepayment or put provisions of the Subordinated Indebtedness, (v) subordinate the Subordinated Indebtedness to any other debt, (vi) alter the repayment terms of the Subordinated Indebtedness in a manner adverse to Borrower, (vii) take any liens in any assets of Borrower or any of its Subsidiaries or any other assets securing the Senior Indebtedness, or (viii) obtain any guaranties or credit support from any party other than Borrower.

(b)     Until the Senior Indebtedness is Paid in Full, no Subordinated Creditor shall, without the prior written consent of Administrative Agent, take any action to collect, enforce payment or accelerate any of the Subordinated Indebtedness, exercise any of the remedies with respect to the Subordinated Indebtedness set forth in any of the Subordinated Note Documents or that otherwise may be available to any Subordinated Creditor, either at law or in equity, by judicial proceedings (including by filing a Proceeding) or otherwise (an "Enforcement Action"), except as provided in the following sentence.

NY\1211310.8

AIC000248

(c)     Until the Senior Indebtedness is Paid in Full and all commitments to lend under the Loan Documents or Permitted Refinancing Loan Documents have terminated, any liens of Subordinated Creditors in the Collateral which may exist in breach of each Subordinated Creditor's agreement pursuant to subsection 2.7(a)(vii) or Section 16 of this Agreement shall be and hereby are subordinated for all purposes and in all respects to the liens of Collateral Agent in the Collateral, regardless of the time, manner or order of perfection of any such liens.  In the event that any Subordinated Creditor obtains any liens in the Collateral in violation of subsection 2.7(a)(vii) or Section 16 of this Agreement, Subordinated Creditors (i) shall (or shall cause their agent) to promptly execute and/or deliver to Administrative Agent such termination statements and releases as Administrative Agent shall request to effect the release of the liens of such Subordinated Creditor in such Collateral and (ii) shall be deemed to have authorized Administrative Agent to file any and all termination statements required by Administrative Agent in respect of such liens. In furtherance of the foregoing, each Subordinated Creditor hereby irrevocably appoints Administrative Agent its attorney-in-fact, with full authority in the place and stead of such Subordinated Creditor and in the name of such Subordinated Creditor or otherwise, to execute and deliver any document or instrument which such Subordinated Creditor may be required to deliver pursuant to this subsection 2.7(c).

3.     **Continued Effectiveness of this Agreement; Modifications to Senior Indebtedness.** (a) The terms of this Agreement, the subordination effected hereby, and the rights and the obligations of Subordinated Creditors, Administrative Agent, Collateral Agent and Lenders arising hereunder, shall not be affected, modified or impaired in any manner or to any extent by: (i) any amendment or modification of or supplement to the Credit Agreement, any other Loan Document or any Permitted Refinancing Loan Document (to the extent such amendment, modification or supplement is not prohibited under the terms of this Agreement) or any Subordinated Note Documents; (ii) the validity or enforceability of any of such documents; or (iii) any exercise or non-exercise of any right, power or remedy under or in respect of the Senior Indebtedness or the Subordinated Indebtedness or any of the instruments or documents referred to in clause (i) above.

(b)   Administrative Agent, Collateral Agent and Lenders may at any time and from time to time without the consent of or notice to any Subordinated Creditor, without incurring liability to any Subordinated Creditor and without impairing or releasing the obligations of any Subordinated Creditor under this Agreement, change the manner or place of payment or extend the time of payment of or renew or alter any Senior Indebtedness, or amend, restated, supplement or otherwise modify in any manner any Loan Document or Permitted Refinancing Loan Document.

4.     **Cumulative Rights, No Waivers.**  Each and every right, remedy and power granted to Administrative Agent,  Collateral Agent or Lenders hereunder shall be cumulative and in addition to any other right, remedy or power specifically granted herein, in the Credit Agreement, the other Loan Documents or Permitted Refinancing Loan Documents or now or hereafter existing in equity, at law, by virtue of statute or otherwise, and may be exercised by Administrative Agent, Collateral Agent or Lenders, from time to time, concurrently or independently and as often and in such order as Administrative Agent, Collateral Agent or Lenders may deem expedient.  Any failure or delay on the part of Administrative Agent,

6

AIC000249

Collateral Agent or Lenders in exercising any such right, remedy or power, or abandonment or discontinuance of steps to enforce the same, shall not operate as a waiver thereof or affect Administrative Agent's, Collateral Agent's or Lenders' right thereafter to exercise the same, and any single or partial exercise of any such right, remedy or power shall not preclude any other or further exercise thereof or the exercise of any other right, remedy or power, and no such failure, delay, abandonment or single or partial exercise of Administrative Agent's, Collateral Agent's or Lenders' rights hereunder shall be deemed to establish a custom or course of dealing or performance among the parties hereto.

     5.    **Modification**. Any modification or waiver of any provision of this Agreement, or any consent to any departure by Administrative Agent, Collateral Agent or any Subordinated Creditor therefrom, shall not be effective in any event unless the same is in writing and signed by Administrative Agent, Collateral Agent and the holders of greater than 50% of the then outstanding principal balance of the Subordinated Indebtedness, and then such modification, waiver or consent shall be effective only in the specific instance and for the specific instance and for the specific purpose given. Any notice to or demand on any Subordinated Creditor in any event not specifically required of Administrative Agent or Collateral Agent hereunder shall not entitle any Subordinated Creditor to any other or further notice or demand in the same, similar or other circumstances unless specifically required hereunder.

     6.    **Additional Documents and Actions**. Each Subordinated Creditor at any time, and from time to time, after the execution and delivery of this Agreement, upon the request of Administrative Agent or Collateral Agent and at the expense of Borrower, promptly will execute and deliver such further documents and do such further acts and things as Administrative Agent or Collateral Agent may request in order to effect fully the purposes of this Agreement.

     7.    **Notices**. All notices and other communications provided for hereunder shall be in writing and shall be mailed, facsimiled or delivered to the following addresses:

| | |
|---|---|
| If to OFTI: | Oconto Falls Tissue, Inc. |
| | c/o Tissue Products Technology Corp. |
| | 1555 Glory Road |
| | Green Bay, Wisconsin 54304 |
| | Attention: Ron van den Heuvel |
| | |
| If to any other Subordinated Creditor: | To the address specified in a joinder delivered to Administrative Agent |
| | |
| If to Borrower: | ST Paper, LLC |
| | 1555 Glory Road |
| | Green Bay, Wisconsin 54304 |
| | Attention: Sharad Tak |

7

AIC000250

|                              |                                      |
|------------------------------|--------------------------------------|
| with a copy to:              | Simpson Thacher & Bartlett LLP<br>425 Lexington Avenue<br>New York, New York  10017<br>Attention:  Ken S. Wyman |
| If to Collateral Agent or<br>Administrative Agent: | Goldman, Sachs & Co.<br>30 Hudson Street, 17th Floor<br>Jersey City, NJ 07302<br>Attention: Pedro Ramirez<br>Telecopier: (212) 428-1622 |
| with a copy to:              | Latham & Watkins LLP<br>885 Third Avenue<br>New York, New York  10022<br>Attention: Kirk A. Davenport, Esq. |

or to any other address, as to any of the parties hereto, as such party shall designate in a written notice to the other parties hereto.  All notices sent pursuant to the terms of this Section 7 shall be effective, (i) if mailed, when received or three days after deposited in the mails, whichever occurs first, (ii) if transmitted by facsimile, on the date of transmission if transmitted before 4:00 p.m. (New York time) otherwise on the next Business Day, (iii) if delivered by personal delivery, upon delivery, or (iv) if delivered by overnight courier one (1) Business Day after delivery to the courier, in each case, properly addressed.

8.      **Severability.**   Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining portions hereof or affecting the validity or enforceability of such provision in any other jurisdiction.

9.      **Successors and Assigns.**   This Agreement shall inure to the benefit of the successors and assigns of Administrative Agent, Collateral Agent and Lenders and shall be binding upon the successors and assigns of Subordinated Creditors and Borrower.

10.      **Counterparts.**   This Agreement may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which shall be deemed to be an original, but all of which taken together shall constitute one and the same agreement.  Delivery of an executed counterpart of this Agreement by facsimile shall be equally as effective as delivery of an original executed counterpart of this Agreement.  Any party delivering an executed counterpart of this Agreement by facsimile also shall deliver an original executed counterpart of this Agreement but the failure to deliver an original executed counterpart shall not affect the validity, enforceability, and binding effect of this Agreement.

11.      **Defines Rights of Creditors; Subrogation.**

A.      The provisions of this Agreement are solely for the purpose of defining the relative rights of Subordinated Creditors, Administrative Agent, Collateral Agent and Lenders

NY\1211310.8

AIC000251

and shall not be deemed to create any rights or priorities in favor of any other party, including, without limitation, Borrower. As between Borrower and Subordinated Creditors, nothing contained herein shall impair the unconditional and absolute obligation of Borrower to Subordinated Creditors to pay the Subordinated Indebtedness as such Subordinated Indebtedness shall become due and payable in accordance with the Subordinated Note Documents.

B.     Subject to the Payment in Full of the Senior Indebtedness and termination of all commitments to lend under the Loan Documents or Permitted Refinancing Loan Documents, in the event and to the extent cash, property or securities otherwise payable or deliverable to the holders of the Subordinated Indebtedness shall have been applied pursuant to this Agreement to the payment of Senior Indebtedness, then and in each such event, the holders of the Subordinated Indebtedness shall be subrogated to the rights of each holder of Senior Indebtedness to receive any further payment or distribution in respect of or applicable to the Senior Indebtedness; and, for the purposes of such subrogation, no payment or distribution to the holders of Senior Indebtedness of any cash, property or securities to which any holder of Subordinated Indebtedness would be entitled except for the provisions of this Agreement shall, and no payment over pursuant to the provisions of this Agreement to the holders of Senior Indebtedness by the holders of the Subordinated Indebtedness shall, as between Borrower, its creditors other than the holders of Senior Indebtedness and the holders of Subordinated Indebtedness, be deemed to be a payment by Borrower to or on account of Senior Indebtedness.

12.     <u>Conflict</u>. In the event of any conflict between any term, covenant or condition of this Agreement and any term, covenant or condition of any of the Subordinated Note Documents, the provisions of this Agreement shall control and govern.

13.     <u>Statement of Indebtedness to Subordinated Creditors</u>. Borrower will furnish to Administrative Agent upon demand, a statement of the indebtedness owing from Borrower to Subordinated Creditors, and will give Administrative Agent access to the books of Borrower in accordance with the Credit Agreement so that Administrative Agent can make a full examination of the status of such indebtedness.

14.     <u>Headings</u>. Section headings herein are included for convenience of reference only and shall not constitute a part of this Agreement for any other purpose.

15.     <u>Termination</u>. This Agreement shall terminate upon the Payment in Full of the Senior Indebtedness and termination of all commitments to lend under the Loan Documents and Permitted Refinancing Loan Documents.

16.     <u>No Contest of Senior Indebtedness or Liens; No Security for Subordinated Indebtedness</u>. Each Subordinated Creditor agrees that it will not, and will not encourage any other party to, at any time, contest the validity, perfection, priority or enforceability of the Senior Indebtedness or liens in the Collateral granted to Collateral Agent pursuant to the Credit Agreement, the other Loan Documents or the Permitted Refinancing Loan Documents or accept or take any collateral security for the Subordinated Indebtedness.

NY\12113108

AIC000252

17.   APPLICABLE LAW.  THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAW OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND TO BE PERFORMED IN THE STATE OF NEW YORK.

18.   CONSENT TO JURISDICTION; SERVICE OF PROCESS AND VENUE. ANY LEGAL ACTION OR PROCEEDING WITH RESPECT TO THIS AGREEMENT MAY BE BROUGHT IN THE COURTS OF THE STATE OF NEW YORK IN THE COUNTY OF NEW YORK OR OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK, AND, BY EXECUTION AND DELIVERY OF THIS AGREEMENT, EACH SUBORDINATED CREDITOR, ADMINISTRATIVE AGENT, COLLATERAL AGENT AND BORROWER HEREBY IRREVOCABLY ACCEPTS IN RESPECT OF ITS PROPERTY, GENERALLY AND UNCONDITIONALLY, THE JURISDICTION OF THE AFORESAID COURTS.  EACH SUBORDINATED CREDITOR AND BORROWER HEREBY IRREVOCABLY APPOINTS THE SECRETARY OF STATE OF THE STATE OF NEW YORK AS ITS AGENT FOR SERVICE OF PROCESS IN RESPECT OF ANY SUCH ACTION OR PROCEEDING AND FURTHER IRREVOCABLY CONSENTS TO THE SERVICE OF PROCESS OUT OF ANY OF THE AFOREMENTIONED COURTS AND IN ANY SUCH ACTION OR PROCEEDING BY THE MAILING OF COPIES THEREOF BY REGISTERED OR CERTIFIED MAIL, POSTAGE PREPAID, TO THE SUCH PARTY AT ITS ADDRESS FOR NOTICES AS SET FORTH IN SECTION 7 AND TO THE SECRETARY OF STATE OF THE STATE OF NEW YORK, SUCH SERVICE TO BECOME EFFECTIVE TEN (10) DAYS AFTER SUCH MAILING.  NOTHING HEREIN SHALL AFFECT THE RIGHT OF SUBORDINATED CREDITORS, THE ADMINISTRATIVE AGENT, COLLATERAL AGENT AND THE LENDERS TO SERVICE OF PROCESS IN ANY OTHER MANNER PERMITTED BY LAW.  EACH OF ADMINISTRATIVE AGENT, COLLATERAL AGENT, SUBORDINATED CREDITOR AND BORROWER HEREBY EXPRESSLY AND IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY OBJECTION WHICH IT MAY NOW OR HEREAFTER HAVE TO THE JURISDICTION OR LAYING OF VENUE OF ANY SUCH LITIGATION BROUGHT IN ANY SUCH COURT REFERRED TO IN THE FIRST SENTENCE OF THIS SECTION AND ANY CLAIM THAT ANY SUCH LITIGATION HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.  TO THE EXTENT THAT SUBORDINATED CREDITOR OR BORROWER HAS OR HEREAFTER MAY ACQUIRE ANY IMMUNITY FROM JURISDICTION OF ANY COURT OR FROM ANY LEGAL PROCESS (WHETHER THROUGH SERVICE OR NOTICE, ATTACHMENT PRIOR TO JUDGMENT, ATTACHMENT IN AID OF EXECUTION OR OTHERWISE) WITH RESPECT TO ITSELF OR ITS PROPERTY, EACH SUCH PARTY HEREBY IRREVOCABLY WAIVES SUCH IMMUNITY IN RESPECT OF ITS OBLIGATIONS UNDER THIS AGREEMENT.

19.   WAIVER OF RIGHT TO JURY TRIAL.  EACH SUBORDINATED CREDITOR, BORROWER, ADMINISTRATIVE AGENT AND COLLATERAL AGENT HEREBY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM CONCERNING ANY RIGHTS UNDER THIS

NY\12113\0.8

AIC000253

AGREEMENT, OR UNDER ANY AMENDMENT, WAIVER, CONSENT, INSTRUMENT, DOCUMENT OR OTHER AGREEMENT DELIVERED OR WHICH IN THE FUTURE MAY BE DELIVERED IN CONNECTION HEREWITH, OR ARISING FROM THIS AGREEMENT, AND AGREES THAT ANY SUCH ACTION, PROCEEDINGS OR COUNTERCLAIM SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY. EACH SUBORDINATED CREDITOR AND BORROWER HEREBY CERTIFIES THAT NO OFFICER, REPRESENTATIVE, AGENT OR ATTORNEY OF ADMINISTRATIVE AGENT, COLLATERAL AGENT OR ANY LENDER HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT ADMINISTRATIVE AGENT, COLLATERAL AGENT OR ANY LENDER WOULD NOT, IN THE EVENT OF ANY ACTION, PROCEEDING OR COUNTERCLAIM, SEEK TO ENFORCE THE FOREGOING WAIVERS. EACH SUBORDINATED CREDITOR AND BORROWER HEREBY ACKNOWLEDGES THAT THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE ADMINISTRATIVE AGENT AND COLLATERAL AGENT ENTERING INTO THIS AGREEMENT.

*[The remainder of this page is intentionally left blank.]*

NY\1211310.8

AIC000254

IN WITNESS WHEREOF, the parties hereto have caused this Subordination Agreement to be executed as of the date first above written.

OCONTO FALLS TISSUE, INC.

By: _____
   Name: Ronald H. Van Den Heuvel
   Title: President

ST PAPER, LLC

By: _____
   Name:
   Title:

GOLDMAN SACHS CREDIT PARTNERS L.P.,
as Administrative Agent and Collateral Agent

By: _____
       Authorized Signatory

OFTI Subordination Agreement

AIC000255

IN WITNESS WHEREOF, the parties hereto have caused this Subordination Agreement to be executed as of the date first above written.

OCONTO FALLS TISSUE, INC.

By:_____
    Name:
    Title:

ST PAPER, LLC

By:_____
    Name: Sahil Tak
    Title:   Vice President

GOLDMAN SACHS CREDIT PARTNERS L.P.,
as Administrative Agent and Collateral Agent

By:_____
    Authorized Signatory

OFII Subordination Agreement

AIC000256

IN WITNESS WHEREOF, the parties hereto have caused this Subordination Agreement to be executed as of the date first above written.

OCONTO FALLS TISSUE, INC.

By:_____
  Name:
  Title:

ST PAPER, LLC

By:_____
  Name:
  Title:

GOLDMAN SACHS CREDIT PARTNERS L.P.,
as Administrative Agent and Collateral Agent

By:_____
  Authorized Signatory

BRUCE H. MENDELSOHN
AUTHORIZED SIGNATORY

OFTI Subordination Agreement

AIC000257

## ASSIGNMENT OF RIGHTS

Simultaneously with the execution and delivery of this Assignment of Rights (the "Assignment"), Maple Bridge Funding, LLC, a Wyoming limited liability company ("Assignee") has agreed to make a loan to Green Box NA Green Bay, LLC, a Wisconsin limited liability company ("Assignor"), in the principal sum of Seven Million One Hundred Fifty Thousand and 00/100 Dollars ($7,150,000.00) (the "Loan") in lawful money of the United States of America, such Loan being evidenced by various documents (the "Loan Documents") including, but not limited to, that certain Promissory Note (which instrument, as it may be amended, restated, renewed and extended, is hereinafter referred to as the "Note") of even date herewith issued by Assignor and payable to Assignee, with interest thereon, all at the rate and on the terms set forth in the provisions of the Note, with final maturity no later than June 1, 2015 (all of which are hereby incorporated by reference herein).

As a specific condition to the making of the Loan, Assignee has required Assignor execute and deliver this Assignment in favor of Assignee and Assignor has determined it is in its interest to execute this Assignment and that Assignor will receive substantial benefit from the Loan being made by Assignee to Assignor.

THEREFORE, BY THIS AGREEMENT, Assignor, for valuable consideration, the receipt of which is hereby acknowledged, does hereby assign, transfer, convey and set over to Assignee all of Assignor's right, title and interest in and to all payments of principal and interest, all distributions, redemption proceeds, cash, warrants, rights, options, instruments, securities, receivables and other property or proceeds now due, owing or accruing due or which may hereafter become due, owing or accruing due (collectively, the "Receivables") to Assignor from ST Paper, LLC, a Delaware limited liability company ("Maker") under and with respect to that certain promissory note executed by Maker in favor of Oconto Falls Tissue, Inc., a Wisconsin corporation, dated April 16, 2007 identified as "Note 1" (the "Note"), in the original principal amount of Eight Million and 00/100 Dollars ($8,000,000.00) and assigned to Assignor by written Allonge of even date herewith.

TO HAVE AND TO HOLD the same from this day forward so long as any part of the Obligations (as hereinafter defined) of Assignor in favor of Assignee pursuant to the Loan, remains unpaid and unperformed.

This Assignment is made as and shall constitute collateral security for any and all obligations, indebtedness and liabilities of any kind and nature of Assignor to Assignee from time to time, direct or indirect, absolute or contingent, liquidated or unliquidated, as principal or surety, alone or with others, of whatsoever nature or kind, in any currency or otherwise, due or to become due, now existing or hereafter arising, under or related to the Loan (the "Obligations"). The assignment contemplated hereunder shall be continuing collateral security to Assignee without impairment or novation of any other existing or future security and shall operate as a general security for the payment, performance and satisfaction of the Obligations.

1.    Assignor represents, warrants and covenants that:

1

AIC000258

(a)     Assignor is the owner and holder of the Note; the current balance of the Note is $12,950,201.55; and it is entitled to receive all payments of interest and principal on the Note, as and when paid by Maker;

(b)     Assignor has good right and authority to make this Assignment;

(c)     Assignor has not heretofore alienated, assigned, pledged or otherwise disposed of or encumbered its interest in the Note (except any outright assignment of the Note requires the consent of Goldman Sachs Credit Partners, L.P.) or its right to receive payment of interest and principal on the Note, as and when paid by Maker;

(d)     Assignor will make no other assignment of its interest in the Note or of any right or interest therein including, but not limited to, the right to receive payment of interest and principal as and when paid by Maker;

(e)     Assignor will deliver to Assignee, simultaneous with the execution of this Assignment, the original of the Note which shall be held by Assignee pursuant to the terms and conditions set forth herein and returned to Assignor upon payment of the Obligations in full.

2.     Assignor hereby authorizes Assignee, upon the occurrence of an Event of Default by Assignor hereunder or under the Loan Documents, which remains uncured after the expiration of any grace period provided herein or therein, to receive any and all payments of interest and principal on the Note to the extent of the outstanding balance of the Loan. For purposes hereof, an Event of Default under this Assignment shall be mean (a) Assignor's breach of any material covenant or other term or condition of this Assignment which is not cured within thirty (30) days following written notice of such breach by Assignee; (b) any material representation or warranty of Assignor made herein shall be false or misleading in any material respect; (c) the dissolution, liquidation or winding up by Assignor of a substantial portion of its business; (d) Assignor shall make an assignment for the benefit of creditors, or apply for or consent to the appointment of a receiver or trustee for it or for a substantial part of its property or business or such a receiver or trustee shall otherwise be appointed; or (e) the bankruptcy, insolvency, reorganization or liquidation proceedings or other proceedings or relief under any bankruptcy law or any law, or the issuance of any notice in relation to such event, for the relief of debtors shall be instituted by or against Assignor. Assignor hereby authorizes Maker to accept this Assignment and irrevocably authorizes and directs Maker, upon delivery of written notice by Assignee to Maker, in accordance with this Agreement, of the occurrence of an Event of Default (a "Default Notice"), to deliver any and all payments of interest and principal on the Note to Assignee to the full extent of the Obligations to an account maintained at JP Morgan Bank, N.A., ABA Routing Number 021000021, Account Number 496-653-465. In consideration of Maker's compliance with such direction, Assignor hereby (i) releases, indemnifies and holds harmless Maker, its officers, managers, members, insurers, partners, directors, agents, servants, employees, predecessors, successors, assigns and their respective heirs, executors and administrators (the "Released Parties"), from any claims, damages, liabilities or expenses Assignor might otherwise have or assert against any or all of the Released Parties by reason of Maker paying Receivables to Assignee and (ii) covenants not to initiate any legal proceedings of any nature against any or all of the

2

AIC000259

Released Parties arising out of the same.  Maker shall be entitled to rely on any Default Notice it receives from Assignee pursuant to this Agreement.

3.     Assignor does hereby make, constitute and appoint Assignee, its successors and assigns, Assignor's true and lawful attorney in fact, with full power of substitution, and in Assignor's name, place and stead, or otherwise, upon the occurrence of an Event of Default, as described above:

    (a)     To do, execute, acknowledge, obtain and deliver any and all instruments, documents, acts, items or things necessary or required as a term, condition or provision by Maker prior to the payment of any Receivable;

    (b)     To give any notices, instructions, or other communications to Maker in connection with this Agreement or the Loan Documents; and

    (c)     To file any claim or to take any other action or proceeding, either in its own name or in the name of Assignor, or otherwise, to enforce payment of any Receivable.

4.     Assignee shall not be subject to any obligation or liability to Maker, including, without limitation, any duty to perform any of the terms, conditions, provisions or agreements made by Assignor under the Note, but any and all such obligations and liabilities shall continue to rest upon Assignor as though this Assignment had not been made.  Assignee and its agents shall not be liable for any failure to exercise the rights, powers or remedies arising hereunder or otherwise, including without limitation any failure to collect, demand, sue for, enforce, recover or receive the Receivables, or to take any steps or proceedings for any such purposes.  Assignee and its agents shall not be liable to Assignor for any loss or damage which Assignor may hereafter suffer or incur as a result of the negligence (but not gross negligence or wanton or willful misconduct) of Assignee or any of its agents in the collection, enforcement, recovery, receipt or demand or suit for, the Receivables or the enforcement of its rights, powers or remedies hereunder.  Subject to the foregoing, Assignee shall use reasonable care in the custody and preservation of collateral in its possession.

5.     This Assignment and the power of attorney contained herein are solely for the benefit and protection of Assignee, its successors and assigns.  Assignee shall have no obligation to exercise any of the foregoing rights and powers in any event. The power of attorney given herein is a power coupled with an interest and shall be irrevocable so long as any part of the Obligations remain unpaid or unperformed.

6.     Notwithstanding any other provision of this Assignment, any provision of any instrument executed in connection with the Loan, and notwithstanding any failure on the part of Maker to comply with and honor the rights granted to Assignee herein, Assignor shall repay the Loan.

7.     The taking of this Assignment by Assignee shall not affect the release of any other collateral now or hereafter held by Assignee as security for the Loan, nor shall the taking of additional security for the Loan hereafter effect a release or termination of this Assignment, or any terms or provisions hereof.

AIC000260

8.      This Assignment and the rights and obligations of the parties hereunder shall be construed and interpreted in accordance with the laws of the State of Wisconsin.

9.      Time is of the essence hereof.  This Assignment shall be binding upon Assignor and its successors and assigns and shall inure to the benefit of Assignee its successors and assigns, but is not intended to confer upon any person other than the parties hereto and their successors and assigns any right or remedies under or by reason of this Assignment.

10.     In the event it becomes necessary for Assignee to employ legal counsel or to bring an action at law or other proceeding to enforce any of the terms, covenants or conditions of this Assignment, Assignor shall pay all costs and reasonable attorneys' fees incurred by Assignee. Such costs and attorneys' fees shall be set by the court and not by jury, shall be included in any judgment obtained by Assignee, and shall be secured by the Loan Documents.

11.     No failure or delay on the part of Assignee in exercising any right, power or privilege hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, power or privilege.  The rights and remedies hereunder are cumulative and may be exercised by Assignee either independently of or concurrently with any other right, remedy or power contained herein or, in the case of Assignee, in any instrument executed in connection with the Loan.

12.     Any notice required or provided for herein shall be in writing and shall be delivered personally or sent by certified mail or reputable courier service with charges prepaid, to the address for Assignor and Assignee as hereinafter set forth or at such other address as either Assignor or Assignee shall designate by written notice as provided in this paragraph.  Notice shall be deemed given on the date received.  Any notice which is rejected, the acceptance of which is refused or which is incapable of being delivered during normal business hours at the address provided herein or such other address designated pursuant hereto shall be deemed received as of the date of the attempted delivery.

Assignor:

Green Box NA Green Bay, LLC
2077B Lawrence Drive
De Pere, Wisconsin 54115
Attn.:  Ronald Van Den Heuvel

4

AIC000261

Assignee:

Maple Bridge Funding, LLC
55 N Water Street, Ste. 3
South Norwalk, Connecticut 06854
Attn.: Tim O'Shea, Manager

13.     All moneys received by Assignor from the collection of or in satisfaction of the Receivables or any of them shall be received and held by Assignor in trust for Assignee.

14.     Any and all payments made in respect of the Obligations from time to time shall be applied in accordance with the provisions of the Loan Documents.

15.     Assignor acknowledges the right of Assignee as the absolute assignee of the Receivables, either directly or through its agents, to collect, demand, sue for, enforce, recover or receive as Assignee and its agents may consider expedient, and to give valid and binding receipts and discharges therefor and in respect thereof, either in the name of Assignee or in the name of Assignor, without notice to Assignor to the extent permitted by law and without prejudice to any rights which Assignee has against other persons and without prejudice to the rights Assignee may have against Assignor for any deficiency.

16.     In addition to those rights granted herein and any other rights Assignee may have at law, in equity or otherwise, Assignee shall have all rights and remedies of a secured party under applicable personal property security laws.

17.     Capitalized terms used herein but not defined shall have the meanings ascribed thereto in the Loan Documents.

18.     Each of the provisions contained in this Agreement is distinct and severable and a declaration of invalidity or unenforceability of any such provision or part thereof by a court of competent jurisdiction shall not affect the validity or enforceability of any other provision hereof. To the extent permitted by applicable law, the parties waive any provision of law which renders any provision of this Agreement invalid or unenforceable in any respect. The parties shall engage in good faith negotiations to replace any provision which is declared invalid or unenforceable with a valid and enforceable provision, the economic effect of which comes as close as possible to that of the invalid or unenforceable provision which it replaces.

19.     No amendment or waiver of this Agreement shall be binding unless executed in writing by Assignor and Assignee. No waiver of any provision of this Agreement shall constitute a waiver of any other provision nor shall any waiver of any provision of this Agreement constitute a continuing waiver unless otherwise expressly provided.

20.     NEITHER ASSIGNEE (BY ITS ACCEPTANCE HEREOF) NOR ASSIGNOR SHALL BE RESPONSIBLE OR LIABLE TO THE OTHER OR TO ANY OTHER PERSON FOR ANY PUNITIVE, EXEMPLARY OR CONSEQUENTIAL DAMAGES WHICH MAY BE ALLEGED AS A RESULT OF THIS ASSIGNMENT OR THE TRANSACTION

5

AIC000262

CONTEMPLATED HEREBY, INCLUDING ANY BREACH OR OTHER DEFAULT BY ANY PARTY HERETO.

21.   TO THE MAXIMUM EXTENT PERMITTED BY LAW, ASSIGNOR AND ASSIGNEE (BY ITS ACCEPTANCE HEREOF) HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED ON THE TRANSACTION CONTEMPLATED BY THIS ASSIGNMENT OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS ASSIGNMENT OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENT (WHETHER VERBAL OR WRITTEN) OR ACTION OF ANY PARTY OR ANY EXERCISE BY ANY PARTY OF THEIR RESPECTIVE RIGHTS UNDER OR IN ANY WAY RELATING TO THIS ASSIGNMENT (INCLUDING ANY ACTION TO RESCIND OR CANCEL THIS ASSIGNMENT, AND ANY CLAIM OR DEFENSE ASSERTING THAT THIS ASSIGNMENT WAS FRAUDULENTLY INDUCED OR IS OTHERWISE VOID OR VOIDABLE).   THIS WAIVER IS A MATERIAL INDUCEMENT FOR ASSIGNEE TO ACCEPT THIS ASSIGNMENT. ASSIGNOR AND ASSIGNEE HEREBY IRREVOCABLY SUBMIT TO THE JURISDICTION OF ANY FEDERAL OR STATE COURT IN THE STATE OF WISCONSIN IN ANY ACTION, SUIT OR PROCEEDING BROUGHT AGAINST IT AND RELATED TO OR IN CONNECTION WITH THIS ASSIGNMENT AND TO THE EXTENT PERMITTED BY APPLICABLE LAW, THE PARTIES HERETO HEREBY WAIVE AND AGREE NOT TO ASSERT BY WAY OF MOTION, AS A DEFENSE OR OTHERWISE, IN ANY SUCH SUIT, ACTION OR PROCEEDING ANY CLAIM THAT IT IS NOT SUBJECT TO THE JURISDICTION OF SUCH FEDERAL OR STATE COURTS, THAT THE SUIT, ACTION OR PROCEEDING IS BROUGHT IN AN INCONVENIENT FORUM, THAT THE VENUE OF THE SUIT, ACTION OR PROCEEDING IS IMPROPER, OR THAT THIS ASSIGNMENT OR ANY OTHER DOCUMENT OR INSTRUMENT REFERRED TO HEREIN OR THE SUBJECT MATTER HEREOF OR THEREOF MAY NOT BE LITIGATED IN OR BY SUCH FEDERAL OR STATE COURTS.

[The remainder of this page has been left intentionally blank.]

6

AIC000263

IN WITNESS WHEREOF, Assignor has executed this Assignment as of the _11ᵗʰ_ day of December, 2013.

Signed in the presence of:

_Guy Pionett_
_Guy Pionek_
Typed or Printed Name

_Tami Kersten_
_Tami Kersten_
Typed or Printed Name

ASSIGNOR:

GREEN BOX NA GREEN BAY, LLC,
a Wisconsin limited liability company
By: ENVIRONMENTAL ADVANCED
RECLAMATION TECHNOLOGY HQ,
LLC, a Wisconsin limited liability company,
its Manager

By: _____
Name: _Ronald VanDen Heuvel_
Title: _Chairman_

STATE OF WISCONSIN        )
                          )ss.
COUNTY OF _____       )

Be it known, that on this _11ᵗʰ_ day of December, 2013, before me, a Notary Public, in and for said County and State, personally came _Ronald Van Den Heuvel_, who acknowledged himself/herself to be the _Chairman_ of Environmental Advanced Reclamation Technology HQ, LLC, a Wisconsin limited liability company, as Manager of GREEN BOX NA GREEN BAY, LLC, a Wisconsin limited liability company, to me personally known to be the person who executed the foregoing instrument, and acknowledged that he/she executed the same freely and voluntarily for the uses and purposes mentioned in it and as the free act and deed of the said limited liability company.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_Michael A Beeta_
_Michael A Beeker_, Notary Public

_Brown_ County
                                        My
Commission Expires: _3-27-16_

7

AIC000264



AIC000265