UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ABILITY INSURANCE COMPANY,<br><br>   Plaintiff,<br><br>v.<br><br>ST PAPER, LLC,<br><br>   Defendant. | Case No. 1:20-cv-03851-GBD |

**DEFENDANT ST PAPER, LLC'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant ST Paper, LLC ("ST Paper"), by and through its attorneys, submits that the following facts in this action are not in dispute for purposes of its motion for summary judgment:

1. On April 16, 2007, ST Paper entered into a Second Amended and Restated Asset Purchase Agreement in which ST Paper agreed to acquire substantially all of the assets of Oconto Falls Tissue, Inc. ("OFTI"), a company that operated a paper mill in Oconto Falls, Wisconsin. (Declaration of Sharad Tak ("Tak Decl.") ¶ 3, Ex. A.)

2. ST Paper funded the purchase of OFTI's assets through cash provided by a syndicate of lenders represented by Goldman Sachs Credit Partners, L.P. ("Goldman Sachs") through a $65,000,000 term loan facility and a $5,000,000 revolving credit facility, and $30,589,000 in the form of Seller financing provided by OFTI. (Tak Decl. ¶ 4, Ex. B.)

3. On April 16, 2007, ST Paper executed four Subordinated Seller Notes ("Seller Notes") on April 16, 2007, made in favor of OFTI.  (Tak Decl. ¶ 6.)

4. One of the Seller Notes ST Paper made in favor of OFTI, Note 1, was in the principal amount of $8,000,000.  (Tak Decl. Ex. D.)

5.      ST Paper, OFTI and Goldman Sachs agreed that the Seller Notes would be subordinated to the indebtedness of ST Paper to the lenders represented by Goldman Sachs.  (Tak Decl. Exs. B & C.)

6.      Note 1 and the other Seller Notes bear language noting that the note is subordinated and junior in right of payment to all amounts owed to current or future holders of the "Senior Indebtedness" as that term is defined in the Subordination Agreement. (Tak Decl. Ex. D.)

7.      Attached to Note 1 was a copy of the Subordination Agreement dated April 16, 2007.  The Subordination Agreement was entered into by and between ST Paper, OFTI and Goldman Sachs.  (Tak Decl. Ex. C.)

8.      Section 2.1 of the Subordination Agreement states the following: "The payment of any and all of the Subordinated Indebtedness hereby is expressly subordinated, to the extent and in the manner set forth herein, to the Payment in Full of the Senior Indebtedness."   The Subordination Agreement explicitly states that the Seller Notes are deemed to be "subordinated indebtedness."  (Tak Decl. Ex. C.)

9.      On April 16, 2007, ST Paper, Goldman Sachs and the various lenders participating in the loan to ST Paper entered into a Credit Agreement.  (Tak Decl. ¶ 4, Ex. B.)

10.      After the sale of the mill closed on April 16, 2007, ST Paper operated the mill.  As a result of a declaration by Goldman Sachs that ST Paper had defaulted on a loan covenant, Goldman Sachs called the loan to be due. ST Paper and Goldman Sachs entered into a Forbearance Agreement and Amendment to the Credit Agreement and Security Agreement on May 22, 2009. (Tak. Decl. ¶ 7.)

11.      On March 25, 2010, the lenders represented by Goldman Sachs sold the debt owed by ST Paper administered by Goldman Sachs to Macquarie Bank Limited.  (Tak. Decl. ¶ 8.)

12.     In April of 2010, ST Paper pursued the potential of refinancing of the debt associated with the purchase of the mill in 2007.  As a result, a consortium of lenders agreed to finance the transaction and ST Paper made new promissory notes to eight different lenders: WCDLF SUB CDE XXIV, LLC; WCDLF SUB CDE XXV, LLC; USBCDE SUB-CDE LX, LLC; STP/NCF SUB-CDE, LLC; STP2 SUB-CDE, LLC; NNMF SUB-CDE X, LLC; CAPFUND CDE ONE LLC; and CAPMARK CDF SUBFUND III LLC (collectively, the "CDE Lenders").  ST Paper made 16 promissory notes in favor of the CDE Lenders on April 30, 2010.  (Tak Decl. ¶ 9, Ex. E.)

13.     On April 30, 2010, ST Paper Holdings entered into a Purchase and Sale Agreement for Distressed Trades with Macquarie Bank Limited.  Through this transaction, ST Paper Holdings acquired the debt owed by ST Paper in the principal amounts of $64,350,000 on a term loan, $5,000,000 on a revolving commitment, and $2,000,000 for a protective loan. (Tak Decl. ¶ 10, Ex. F.)

14.     On April 30, 2010, Macquarie Bank Limited, as assignor, and ST Paper Holdings, as assignee, executed an Assignment Agreement.  (Tak Decl. ¶ 10, Ex. G.)

15.     On April 30, 2010, Goldman Sach's successor as administrative agent, Wilmington Trust FSB, ST Paper, ST Paper Holdings and Macquarie Bank Limited entered into a Second Amendment to Credit Agreement.  Section 5.1 of the Second Amendment to Credit Agreement states that the April 16, 2007 Credit Agreement remained "in full force and effect and is hereby ratified and confirmed."  Section 7 of the same document states the following with respect to ST Paper's continuing obligation as Borrower: "Except as otherwise provided in this Agreement, the Credit Agreement, the other Loan Documents and the Borrower's Obligations thereunder shall remain in full force and effect, and shall not be waived, modified, superseded or otherwise affected

by this Agreement." Section 9 of the Second Amendment to Credit Agreement states: "This Agreement is a Credit Document for all purposes." (Tak Decl. ¶ 12, Ex. H.)

16.     ST Paper used the funding provided by the CDE Lenders to replace the original debt from 2007 administered by Goldman Sachs. Specifically, ST Paper used the proceeds from the loans made by the CDE Lenders to pay $83,013,871 to ST Paper Holdings to repay the debt originally administered by Goldman Sachs. (Tak Decl. ¶ 13.)

17.     On or about December 10, 2013, Maple Bridge Funding, LLC ("Maple Bridge") and Green Box NA Green Bay, LLC ("Green Box") executed a Mortgage and Security Agreement through which Green Box granted Maple Bridge a mortgage and security interest in certain real property located in De Pere, Wisconsin. The Mortgage and Security Agreement does not reference Note 1. (Declaration of Jonathan T. Smies ("Smies Decl."), Ex. B.)

18.     Green Box provided the Mortgage and Security Agreement to Maple Bridge as security for a loan Maple Bridge made to Green Box in the principal amount of $7,150,000 on December 10, 2013. (Smies Decl. Ex B.)

19.     On December 10, 2013, Green Box made a promissory note in favor of Maple Bridge in the principal amount of $7,150,000 (the "Green Box Note"). The Green Box Note does not reference Note 1. (Smies Decl. Ex. G.)

20.     Green Box also executed an Absolute Assignment of Leases and Rents in favor of Maple Bridge on December 10, 2013. The Absolute Assignment of Leases and Rents does not reference Note 1. (Smies Decl. Ex. C.)

21.     On or about December 11, 2013, Maple Bridge executed an Assignment of Mortgage, assigning the Mortgage and Security Agreement to Ability Insurance Company. (Smies Decl. Ex. D.)

22.     On or about December 11, 2013, Maple Bridge executed an Assignment of Collateral Security, assigning the Absolute Assignment of Leases and Rents to Ability Insurance Company.  (Smies Decl. Ex. E.)

23.     Neither of the assignments executed by Maple Bridge on December 11, 2013 reference Note 1.  (Smies Decl. Exs. D & E.)

24.     On or about December 11, 2013, Maple Bridge and Green Box executed an Assignment of Rights.  The Assignment of Rights document purports to assign from Green Box to Maple Bridge all of Green Box's right, title and interest in and to all payments of principal and interest from ST Paper on Note 1.  (Smies Decl. Ex. F.)

25.     On December 11, 2013, Maple Bridge executed an Allonge which purported to be attached to and formed a part of the Green Box Note, i.e., the promissory note dated December 11, 2013 executed by Green Box in favor of Maple Bridge in the original principal amount of $7,150,000.  (Smies Decl. Ex. H.)

26.     The Allonge stated that the Green Box Note was to be altered as follows "**PAY TO THE ORDER OF ABILITY INSURANCE COMPANY WITHOUT RECOURSE**."   The Allonge did not reference Note 1.  (Smies Decl. Ex. H.)

27.     Ability Insurance Company has failed to produce in this litigation any document executed by Maple Bridge purporting to transfer any of its rights in Note 1 to Ability Insurance Company.  (Smies Decl. ¶¶ 1-2, Ex. A & I.)

28.     On May 2, 2017, the CDE Lenders in the 2010 refinancing transaction assigned or transferred their interest in the loans made to ST Paper to two different entities: ST Paper Holdings, LLC and WCDLF Investment Fund XXIV, LLC.  (Tak Decl. ¶ 14, Exs. I-K.)

29.     On March 19, 2019, ST Paper executed an Amended and Consolidated Promissory Note in the face amount of $63,962,000 in favor of WCDLF Investment Fund XXIV, LLC.  (Tak Decl. ¶ 16, Ex. L.)

30.     On March 19, 2019, ST Paper executed a Second Amended and Restated Promissory Note in the face amount of $21,970,150 in favor of ST Paper Holdings, LLC.  (Tak Decl. ¶ 17, Ex. M.)

31.     As a result of the assignments referenced above, ST Paper remains indebted to ST Paper Holdings, LLC and WCDLF Investment Fund XXIV, LLC for the replacement debt ST Paper incurred in 2010 to refinance the debt it incurred in connection with the acquisition of the mill in 2007.  (Tak Decl. ¶¶ 15, 18.)

Dated this 16th day of August, 2021.

Respectfully submitted,

**GODFREY & KAHN, S.C.**

By: */s Jonathan T. Smies*

Jonathan T. Smies
Admitted Pro Hac Vice
200 South Washington St., Suite 100
Green Bay, WI 54301-4298
Phone: 920-432-9300
Fax: 920-436-7988
Email: jsmies@gklaw.com

**TANNENBAUM HELPERN
SYRACUSE & HIRSCHTRITT LLP**

Carl F. Regelmann
900 Third Avenue
New York, New York 10022
(212) 508-6700
regelmann@thsh.com

*Attorneys for Defendant ST Paper, LLC*