# Ex. B

THIS IS AN AUTHENTICATED COPY THE ORIGINAL DOCUMENT

This instrument prepared by
and after recording return to:
Michael L. Helt
Michael L. Helt, P.C.
1609 NW Rust Road
Grain Valley, Missouri 64029

Tax Parcel Number: WD-1042

## ABSOLUTE ASSIGNMENT OF LEASES AND RENTS
(With License Back)

THIS ABSOLUTE ASSIGNMENT OF LEASES AND RENTS (this "Assignment"), is made as of the 10th day of December, 2013 by GREEN BOX NA GREEN BAY, LLC, a Wisconsin limited liability company, 2077B Lawrence Drive, De Pere, Wisconsin 54115 ("Borrower") in favor of MAPLE BRIDGE FUNDING, LLC, a Wyoming limited liability company, 55 N Water Street, Ste. 3, South Norwalk, Connecticut 06854 ("Lender").

WITNESSETH:

FOR AND IN CONSIDERATION of the indebtedness hereinafter described, Borrower has granted, bargained, sold and conveyed, and by these presents does grant, bargain, sell and convey, unto Lender, its successors and assigns forever, all and singular the property hereinafter described (collectively, the "Security"), to wit:

(a) All rents, issues and profits arising from or related to the land situated in the County of Brown and State of Wisconsin described in **Exhibit "A"** attached hereto and fully incorporated herein by reference for all purposes and all improvements and any other property, whether real, personal or mixed, located thereon (which land, improvements and other property are hereinafter collectively called the "Property");

AIC000068

(b)  All of Borrower's rights, titles, interests and privileges, as lessor, in the leases now existing or hereafter made affecting the Property whether or not made by Borrower and as the same may have been, or may from time to time hereafter be, modified, extended and renewed (hereinafter collectively called the "Leases" and individually called a "Lease");

(c)  All tenant security deposits and other amounts due and becoming due under the Leases;

(d)  All guarantees of the Leases, including guarantees of tenant performance;

(e)  All insurance proceeds, including rental loss coverage and business interruption coverage with respect to the Leases; and

(f)  All judgments and settlements of claims in favor of Borrower (including condemnation proceeds, if any) and all rights, claims and causes of action under any court proceeding, including without limitation any bankruptcy, reorganization or insolvency proceeding, or otherwise arising from the Leases.

TO HAVE AND TO HOLD the Security unto Lender, its successors and assigns forever, and Borrower does hereby bind itself, its heirs, legal representatives, successors and assigns, to warrant and forever defend the Security unto Lender, its successors and assigns forever against the claim or claims of all persons whomsoever claiming the same or any part thereof.

## ARTICLE I
## DEFINITIONS

1.01  **Terms Defined Above**.  As used in this Assignment, the terms "Borrower", "Leases", "Lender", "Property" and "Security" shall have the respective meanings indicated above.

1.02  **Certain Definitions**.  The following terms shall have the meanings assigned to them below whenever they are used in this Assignment, unless the context clearly otherwise requires.  Except where the context otherwise requires, words in the singular form shall include the plural and vice versa.

"Event of Default" shall mean any Event of Default as defined in the Loan Documents.

"Lien Instrument" shall mean that certain Mortgage and Security Agreement of even date herewith, executed by Borrower and granting a lien on the Property to Lender, as such instrument may be amended and restated from time to time.

2

"Loan Commitment" shall mean that certain Conditional Commitment Letter dated November 10, 2013 from Lender to Borrower and accepted by Borrower on November 12, 2013.

"Loan Documents" shall mean the Note, the Lien Instrument, this Assignment, the Loan Commitment, that certain Certification of even date herewith from Borrower to Lender and any other supplements and authorizations required by Lender and all other instruments and documents (as the same may be amended from time to time) executed by Borrower and delivered to Lender in connection with, or as security for, the indebtedness evidenced by the Note, except for that certain Environmental Indemnity Agreement of even date herewith given by Borrower and Ronald H. Van Den Heuvel, to Lender, as any of the foregoing may be amended from time to time.

"Note" shall mean that certain Promissory Note of even date herewith, in the original principal amount of Seven Million One Hundred Fifty Thousand and 00/100 Dollars ($7,150,000.00), executed by Borrower and payable to the order of Lender, as such instrument may be amended, renewed and restated from time to time.

"Obligations" shall mean the following:

(a) The indebtedness evidenced by the Note and all interest thereon;

(b) The performance of all covenants and agreements of Borrower contained in the Loan Documents;

(c) All funds hereafter advanced by Lender to or for the benefit of Borrower as contemplated by any covenant or provision contained in any Loan Document and all interest thereon;

(d) All renewals, extensions, rearrangements and modifications of any of the Obligations described hereinabove; and

(e) Any and all attorneys' fees and expenses of collection payable under the terms of any Loan Document.

## ARTICLE II
## ASSIGNMENT

2.01 **Absolute Assignment**. This Assignment is, and is intended to be, an absolute and present assignment of the Security from Borrower to Lender with a concurrent license back to Borrower (which license is subject to revocation upon the occurrence of an

AIC000070

Event of Default as herein provided) and is not intended as merely the granting of a security interest relating to the Obligations.

2.02  **License**. Borrower is hereby granted the license to manage and control the Security and to collect at the time of, but not prior to, the date provided for the payment thereof, all rents, issues and profits from the Property, and to retain, use and enjoy the same. The license created and granted hereby shall be revocable upon the terms and conditions contained herein.

2.03  **Revocation of License**. Immediately upon the occurrence of an Event of Default and at any time thereafter, Lender may, at its option and without regard to the adequacy of the security for the Obligations, either by an authorized representative or agent, with or without bringing or instituting any judicial or other action or proceeding, or by a receiver appointed by a court, immediately revoke the license granted in Section 2.02, as evidenced by a written notice to said effect given to Borrower, and further, at Lender's option (without any obligation to do so), take possession of the Property and the Security and have, hold, manage, lease and operate the Property and the Security on such terms and for such period of time as Lender may deem proper, and, in addition, either with or without taking possession of the Property, demand, sue for or otherwise collect and receive all rents, issues and profits from the Property, including those past due and unpaid, with full power to make, from time to time, all alterations, renovations, repairs or replacements thereto or thereof as may seem proper to Lender in its sole discretion, and to apply (in such order and priority as Lender shall determine in its sole discretion) such rents, issues and profits to the payment of:

(a)  all expenses of (i) managing the Property, including without implied limitation, the salaries, fees and wages of a managing agent and such other employees as Lender may in its sole discretion deem necessary or desirable, (ii) operating and maintaining the Property, including without implied limitation, all taxes, charges, claims, assessments, water rents, sewer rents and any other liens and premiums for all insurance which Lender may in its sole discretion deem necessary or desirable, (iii) the cost of any and all alterations, renovations, repairs or replacements of or to the Property, and (iv) any and all expenses incident to taking and retaining possession of the Property and the Security; and

(b)  the Obligations.

The exercise by Lender of the rights granted it in this Section 2.03, and the collection and receipt of rents, issues and profits and the application thereof as herein provided, shall not be considered a waiver of any Event of Default.

2.04  **Trust Funds**. All monies or funds covered by this Assignment paid to, or for the benefit of, Borrower after any Event of Default are hereby declared, and shall be deemed to be, trust funds in the hands of Borrower for the sole benefit of Lender, until all

4

Events of Default have been cured or waived or the Obligations have been paid and performed in full. Borrower, or any officer, director, representative or agent thereof receiving such trust funds or having control or direction of same, is hereby made and shall be construed to be a trustee of such trust funds so received or under its control and direction, and such person shall be under a strict obligation and duty should such persons receive or constructively receive trust funds to (a) remit any and all such trust funds to Lender within twenty-four (24) hours of receipt, upon demand therefor by Lender or (b) to apply such trust funds only to Obligations then due or the operating expenses of the Property.

## ARTICLE III
## COVENANTS, REPRESENTATIONS AND WARRANTIES

3.01 **Liability**. Lender shall not be liable for any loss sustained by Borrower resulting from Lender's failure to let the Property after an Event of Default or from any other act or omission of Lender in managing the Property or the Security after an Event of Default, except for acts constituting gross negligence or willful misconduct. Lender shall not be obligated to perform or discharge, nor does Lender hereby undertake to perform or discharge, any obligation, duty or liability under any Lease, and Borrower shall and does hereby indemnify Lender for, and save and hold Lender harmless from, any and all liability, loss or damages, except so much thereof as shall result from the gross negligence or willful misconduct of Lender, which may or might be incurred under any Lease or under or by reason of this Assignment and from any and all claims and demands whatsoever which may be asserted against Lender by reason of any alleged obligation or undertaking on its part to perform or discharge any of the terms, covenants or agreements contained in any Lease, including, without implied limitation, any claims by any tenants of credit for rents for any period paid to and received by Borrower but not delivered to Lender. Should Lender incur any such liability under any Lease in defense of any such claim or demand, the amount thereof, including, without implied limitation, all costs, expenses and attorneys' fees, shall be added to the principal of the Note and Borrower shall reimburse Lender therefore immediately upon demand. This Assignment shall not operate to place responsibility upon Lender for the control, care, upkeep, management, operation or repair of the Property and the Security or for the carrying out of any of the terms and conditions of any Lease; nor shall this Assignment operate to make Lender responsible or liable for any waste committed on the Property by the tenants or any other party, for any dangerous or defective condition of the Property or for any negligence in the control, care, upkeep, operation, management or repair of the Property resulting in loss or injury or death to any tenant, licensee, employee, stranger or other person whatsoever.

3.02 **Termination**. Upon payment and performance of the Obligations in full, this Assignment shall become null and void and of no further legal force or effect, but the affidavit, certificate, letter or statement of any officer, agent, authorized representative or attorney of Lender showing any part of the Obligations remaining unpaid or unperformed shall be and constitute conclusive evidence of the validity, effectiveness and continuing force of this Assignment upon which any person may, and is hereby authorized to, rely. Borrower hereby authorizes and directs all tenants under the Leases, all guarantors of Leases, all insurers providing rental loss or business interruption insurance with respect to

AIC000072

the Property, all governmental authorities and all other occupants of the Property, upon receipt from Lender of written notice to the effect that Lender is then the holder of the Note and that an Event of Default exists, to pay over to Lender all rents and other amounts due and to become due under the Leases and under guaranties of the Leases and all other issues and profits from the Property and to continue so to do until otherwise notified in writing by Lender. This right may be exercised without Lender taking actual or constructive possession of the Property or any part thereof.

3.03  **Security.**  Lender may take or release any security for the payment or performance of the Obligations, may release any party primarily or secondarily liable therefor and may apply any security held by it to the satisfaction of all or any portion of the Obligations, without prejudice to any of its rights under this Assignment, the other Loan Documents or otherwise available at law or in equity.

3.04  **Covenants.**  Borrower covenants with Lender:

(a) to observe and perform all the obligations imposed upon the lessor under all Leases and not to do or permit to be done anything to impair the same without Lender's prior written consent;

(b) not to collect any of the rent or other amounts due under any Lease or other issues or profits from the Property in any manner in advance of the time when the same shall become due (save and except only for collecting one month's rent in advance plus the security deposit, if any, at the time of execution of a Lease);

(c) not to execute any other assignment of rents, issues or profits arising or accruing from the Leases or from the Property;

(d) not to enter into any lease agreement affecting the Property except in the ordinary course of business with commercially reasonable terms and provisions;

(e) to execute and deliver, at the request of Lender, all such further assurances and acknowledgments of the assignment contained herein and the other provisions hereof, with respect to specific Leases or otherwise, as Lender shall from time to time require;

(f) to request, and use commercially reasonable efforts to obtain, from any tenant at the Property, from time to time as requested by Lender, estoppel certificates in form and substance satisfactory to Lender, confirming the terms of such tenant's Lease and the absence of default thereunder;

AIC000073

(g) to provide Lender with a current rent roll and copies of all Leases, not later than fifteen (15) days following Lender's written request therefor;

(h) to provide prompt written notice to Lender of any notice of Borrower's default received from any tenant and to further provide to Lender a complete copy thereof; and

(i) not cancel, surrender or terminate any Lease, exercise any option which might lead to such termination or consent to any change, modification, or alteration thereof, to the release of any party liable thereunder or to the assignment of the lessee's interest therein, without the prior written consent of Lender, and any of said acts, if done without the prior written consent of Lender, shall be null and void.

3.05 **Authority to Assign**. Borrower represents and warrants that:

(a) Borrower has full right and authority to execute this Assignment and has no knowledge of any existing defaults under any existing Lease;

(b) all conditions precedent to the effectiveness of any existing Lease have been satisfied;

(c) Borrower has not executed or granted any modification of any existing Lease, either orally or in writing;

(d) all existing Leases are in full force and effect according to the terms set forth in the lease instruments heretofore submitted to Lender; and

(e) Borrower has not executed any other instrument which might prevent Lender from operating under any of the terms and conditions of this Assignment, including any other assignment of the Leases or the rents, issues and profits from the Property.

3.06 **Cross-Default**. Violation or default under any of the covenants, representations, warranties and provisions contained in this Assignment by Borrower shall be deemed a default hereunder as well as under the terms of the other Loan Documents, and any default thereunder shall likewise be a default under this Assignment. Any default by Borrower under any of the terms of any Lease shall be deemed a default hereunder and under the terms of the other Loan Documents, and any expenditures made by Lender in curing such default on Borrower's behalf, with interest thereon at the Default Rate (as defined in the Note), shall become part of the Obligations.

3.07 **No Mortgagee in Possession**. The acceptance by Lender of this Assignment, with all of the rights, powers, privileges and authority created hereby, shall

AIC000074

not, prior to entry upon and taking possession of the Property by Lender, be deemed or construed to constitute Lender a "mortgagee in possession", or hereafter or at any time or in any event obligate Lender to appear in or defend any action or proceeding relating to any Lease, the Property or the Security, to take any action hereunder, to expend any money, incur any expense, perform or discharge any obligation, duty or liability under any Lease, or to assume any obligation or responsibility for any security deposits or other deposits delivered to Borrower by any tenant and not actually delivered to Lender. Lender shall not be liable in any way for any injury or damage to any person or property sustained in or about the Property.

       3.08   **Representation and Warranty**. Borrower represents and warrants that: (a) no Lease grants the tenant thereunder or any other party (i) the right or option to acquire the Property or any portion of the Property or (ii) any rights with respect to any other property owned by Borrower; (b) Borrower is the sole owner of the lessor's or landlord's interest in the Leases; (c) all existing Leases are in full force and effect, are valid and enforceable and have not been altered, modified or amended in any manner; (d) no portion of the Leases or any interest therein has heretofore been assigned or pledged; (e) all rent due to date under the Leases has been collected and no tenant has been granted a concession in the form of a waiver, release, reduction, discount or other alteration of the rentals due or to become due under the Leases; (f) no rent for any period subsequent to the date of this Assignment has been collected in advance of the time when the same is due under the terms of the existing Leases; (g) neither Borrower or any tenant under the Leases is in default under any of the terms, covenants or conditions in any of the existing Leases; and (h) no tenant has any defense, set-off or counterclaim against Borrower under any of the existing Leases.

ARTICLE IV
GENERAL

       4.01   **Remedies**. The rights and remedies provided Lender in this Assignment and the other Loan Documents are cumulative. Nothing contained in this Assignment, and no act done or omitted by Lender pursuant hereto, including, without implied limitation, the collection of any rents, shall be deemed to be a waiver by Lender of any of its rights and remedies under the other Loan Documents or applicable law or a waiver of any default under the other Loan Documents, and this Assignment is made and accepted without prejudice to any of the rights and remedies provided Lender by the other Loan Documents. The right of Lender to collect the principal sum and the interest due on the Note and to enforce the other Loan Documents may be exercised by Lender either prior to, simultaneously with, or subsequent to any action taken by it hereunder.

       4.02   **Notice**. Any notice required or provided for herein shall be in writing and shall be delivered personally or sent by certified mail or reputable courier service with charges prepaid, to the address for Borrower and Lender set forth on the first page of this Assignment or at such other address as either Borrower or Lender shall designate by written notice as provided in this paragraph. Notice shall be deemed given on the date received. Any notice which is rejected, the acceptance of which is refused or which is incapable of

AIC000075

being delivered during normal business hours at the address provided herein or such other address designated pursuant hereto shall be deemed received as of the date of the attempted delivery.

4.03  **Appointment.** Borrower irrevocably appoints Lender its true and lawful attorney in fact, which appointment is coupled with an interest, to execute any or all of the rights or powers described herein with the same force and effect as if executed by Borrower, and Borrower ratifies and confirms any and all acts done or omitted to be done by Lender, its agents, servants, employees or attorneys in, to or about the Property.

4.04  **Captions.** The title and headings of the various Articles and Sections hereof are intended solely for reference and are not intended to modify, explain or affect the meaning of the provisions of this Assignment.

4.05  **Severability.** If any of the provisions of this Assignment or the application thereof to any persons or circumstances shall to any extent be invalid or unenforceable, the remainder of this Assignment, and the application of such provision or provisions to persons or circumstances other than those as to whom or which it is held invalid or unenforceable, shall not be affected thereby, and every provision of this Assignment shall be valid and enforceable to the fullest extent permitted by law.

4.06  **Attorneys' Fees.** In the event of any controversy, claim, dispute, or litigation between the parties hereto to enforce any provision of this Assignment or any right of Lender hereunder, Borrower agrees to pay to Lender all costs and expenses, including reasonable attorneys' fees incurred therein by Lender, whether in preparation for or during any trial, as a result of an appeal from a judgment entered in such litigation or otherwise.

4.07  **Amendments.** This Assignment may not be modified, amended or otherwise changed in any manner unless done so by a writing executed by Borrower and Lender.

4.08  **Benefits.** This Assignment and all the covenants, terms and provisions contained herein shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors and assigns.

4.09  **Assignment.** Borrower shall have no right to assign or transfer the revocable license granted herein. Any such assignment or transfer shall constitute a default.

4.10  **Time of Essence.** Time is of the essence of this Assignment.

AIC000076

4.11     Governing Law. This Assignment, the interpretation hereof and the rights, obligations, duties and liabilities hereunder shall be governed and controlled by the laws of the State of Wisconsin.

4.12     Limitation of Liability. Notwithstanding any provision contained in this Assignment, the personal liability of Borrower shall be limited as provided in the Note.

4.13     Conflicts. This Assignment is intended to be supplementary to, and not in substitution for or in derogation of any assignment of leases and rents contained in any other Loan Document specifically including, but not limited to, the Lien Instrument. If any conflict or inconsistency exists between this Assignment and the assignment of the rents and leases as security in any of the other Loan Documents, the terms of this Assignment shall control.

4.14     **WAIVER OF PUNITIVE OR CONSEQUENTIAL DAMAGES.** NEITHER LENDER (BY ITS ACCEPTANCE HEREOF) NOR BORROWER SHALL BE RESPONSIBLE OR LIABLE TO THE OTHER OR TO ANY OTHER PERSON FOR ANY PUNITIVE, EXEMPLARY OR CONSEQUENTIAL DAMAGES WHICH MAY BE ALLEGED AS A RESULT OF THIS ASSIGNMENT OR THE TRANSACTION CONTEMPLATED HEREBY, INCLUDING ANY BREACH OR OTHER DEFAULT BY ANY PARTY HERETO.

4.15     **WAIVER OF JURY TRIAL/SUBMISSION TO JURISDICTION.** TO THE MAXIMUM EXTENT PERMITTED BY LAW, BORROWER AND LENDER (BY ITS ACCEPTANCE HEREOF) HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED ON THE TRANSACTION CONTEMPLATED BY THIS ASSIGNMENT OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS ASSIGNMENT OR ANY OTHER LOAN DOCUMENT, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENT (WHETHER VERBAL OR WRITTEN) OR ACTION OF ANY PARTY OR ANY EXERCISE BY ANY PARTY OF THEIR RESPECTIVE RIGHTS UNDER THE LOAN DOCUMENTS OR IN ANY WAY RELATING TO THIS ASSIGNMENT OR THE SECURITY (INCLUDING ANY ACTION TO RESCIND OR CANCEL THIS ASSIGNMENT, AND ANY CLAIM OR DEFENSE ASSERTING THAT THIS ASSIGNMENT WAS FRAUDULENTLY INDUCED OR IS OTHERWISE VOID OR VOIDABLE). THIS WAIVER IS A MATERIAL INDUCEMENT FOR LENDER TO ACCEPT THIS ASSIGNMENT. BORROWER AND LENDER HEREBY IRREVOCABLY SUBMIT TO THE JURISDICTION OF ANY FEDERAL OR STATE COURT IN THE STATE OF WISCONSIN IN ANY ACTION, SUIT OR PROCEEDING BROUGHT AGAINST IT AND RELATED TO OR IN CONNECTION WITH THIS ASSIGNMENT AND TO THE EXTENT PERMITTED BY APPLICABLE LAW, THE PARTIES HERETO HEREBY WAIVE AND AGREE NOT TO ASSERT BY WAY OF MOTION, AS A DEFENSE OR OTHERWISE, IN ANY SUCH SUIT, ACTION OR PROCEEDING ANY CLAIM THAT IT IS NOT SUBJECT TO THE JURISDICTION OF SUCH FEDERAL OR STATE COURTS, THAT THE SUIT, ACTION OR PROCEEDING IS BROUGHT IN AN INCONVENIENT FORUM, THAT THE VENUE OF THE SUIT, ACTION OR

AIC000077

PROCEEDING IS IMPROPER, OR THAT THIS ASSIGNMENT OR ANY OTHER LOAN DOCUMENT OR ANY OTHER DOCUMENT OR INSTRUMENT REFERRED TO HEREIN OR THEREIN OR THE SUBJECT MATTER HEREOF OR THEREOF MAY NOT BE LITIGATED IN OR BY SUCH FEDERAL OR STATE COURTS.

[Remainder of this Page Left Intentionally Blank.]

AIC000078

IN WITNESS WHEREOF, this Assignment has been executed as of the day and year first-above written.

Signed in the presence of:

_____
Tami A. Kersten
Typed or Printed Name

_____
Mark Smolinski
Typed or Printed Name

BORROWER:

GREEN BOX NA GREEN BAY, LLC,
a Wisconsin limited liability company
By: ENVIRONMENTAL ADVANCED
RECLAMATION TECHNOLOGY HQ,
LLC, a Wisconsin limited liability company,
its Manager

By: _____
Name: Ronald Van Den Heuvel
Title: Chairman

STATE OF WISCONSIN    )
                      )ss.
COUNTY OF             )

Be it known, that on this 10th day of December, 2013, before me, a Notary Public, in and for said County and State, personally came Ronald Van Den Heuvel who acknowledged himself/herself to be the Chairman of Environmental Advanced Reclamation Technology HQ, LLC, a Wisconsin limited liability company, as Manager of GREEN BOX NA GREEN BAY, LLC, a Wisconsin limited liability company, to me personally known to be the person who executed the foregoing instrument, and acknowledged that he/she executed the same freely and voluntarily for the uses and purposes mentioned in it and as the free act and deed of the said limited liability company.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Debra S. Stary, Notary Public
Brown County
My Commission Expires: 2/16/14

[Notary Seal: DEBRA S. STARY, NOTARY PUBLIC, STATE OF WISCONSIN]

12

AIC000079

# EXHIBIT "A"
# LEGAL DESCRIPTION OF PROPERTY

Lot Two (2), Vol. 41 Certified Survey Maps, Page 100, Map No. 6194; said lot being part of Lots One (1), Two (2) and Three (3), according to the recorded Plat of De Pere Business Park South Addition and part of Lot One (1), Vol. 24 Certified Survey Maps, Page 84, Map No. 4035, all being in the Southwest Quarter (SW 1/4), Section Thirty-two (32), Township Twenty-three (23) North, Range Twenty (20) East, in the City of De Pere, West side of Fox River, Brown County, Wisconsin.

ALSO KNOWN AS

Lot Two (2), Vol. 41 Certified Survey Maps, Page 100, Map No. 6194; said lot being part of Lots One (1), Two (2) and Three (3), according to the recorded Plat of De Pere Business Park South Addition and part of the Northeast Quarter (NE 1/4) of the Southwest Quarter (SW 1/4); the Northwest Quarter (NW 1/4) of the Southwest Quarter (SW 1/4) and Southeast Quarter (SE 1/4) of the Southwest Quarter (SW 1/4), Section Thirty-two (32), Township Twenty-three (23) North, Range Twenty (20) East, in the City of De Pere, West side of Fox River, Brown County, Wisconsin.

Property Address: 2107 American Boulevard, De Pere, WI 54115
Tax Parcel Number: WD-1042

AIC000080