# Ex. F

*In The Matter Of:*

*ABILITY INSURANCE vs*

*ST PAPER*

---

*DAVID G. CHARSKY*

*JULY 27, 2021*

---



BAY REPORTING SERVICE, INC.
2301 Riverside Drive, Suite 6
Green Bay, WI  54301
(920) 432-5662
www.bayreportingservice.com
bayreporting@bayreportingservice.com

DAVID G. CHARSKY - JULY 27, 2021

```
 1                UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF NEW YORK
 2
     -----------------------------------------------------------
 3
     ABILITY INSURANCE COMPANY,
 4
            Plaintiff,
 5
        -vs-                        Case No.:  1:20-cv-03851-GBD
 6
     ST PAPER, LLC,
 7
            Defendant.
 8
     -----------------------------------------------------------
 9

10        VIDEOCONFERENCE
          DEPOSITION OF:    DAVID G. CHARSKY
11

12        DATE:             July 27, 2021

13
          TIME:             1:38 p.m. - 2:51 p.m. (EST)
14

15        DEPONENT
          LOCATION:         TROUTMAN PEPPER HAMILTON
16                          SANDERS LLP
                            3000 Two Logan Square
17                          Eighteenth and Arch Streets
                            Philadelphia, Pennsylvania
18

19

20   REPORTED BY:
     CARRIE S. BOHRER, RPR, RMR, CRR
21   BAY REPORTING SERVICE, INC.
     www.bayreportingservice.com
22   920-432-5662

23

24

25
```

```
 1                   A P P E A R A N C E S
 2
        TROUTMAN PEPPER HAMILTON SANDERS LLP, by
 3      FRANK H. GRIFFIN IV, Attorney at Law
        3000 Two Logan Square
 4      Eighteenth and Arch Streets
        Philadelphia, Pennsylvania  19103
 5      215-981-4247
        frank.griffin@troutman.com
 6          appeared via videoconference
            on behalf of the Plaintiff
 7

 8      TROUTMAN PEPPER HAMILTON SANDERS LLP, by
        ANGELO A. STIO III, Attorney at Law
 9      301 Carnegie Center, Suite 400
        Princeton, New Jersey  08540
10      609-951-4125
        angelo.stio@troutman.com
11          appeared via videoconference
            on behalf of the Plaintiff
12

13      JILL GETTMAN, Attorney at Law
        10250 Regency Circle, Suite 105
14      Omaha, Nebraska  68114
        402-871-8000
15      jgettman@gettmanmills.com
            appeared via videoconference
16          on behalf of the Plaintiff

17

        GODFREY & KAHN, S.C., by
18      JONATHAN T. SMIES, Attorney at Law
        Riverwalk Plaza
19      200 South Washington Street, Suite 100
        Green Bay, Wisconsin  54301
20      920-432-9300
        jsmies@gklaw.com
21          appeared via videoconference
            on behalf of the Defendant
22
23                       *  *  *  *  *
24
25
                                                          2
```

```
 1                       I N D E X
 2   EXAMINATION BY:                                      PAGE
 3    Mr. Smies ....................................      4
 4
     EXHIBITS MARKED:                                  PAGE ID'D
 5
     NONE
 6

 7   REQUESTED INFORMATION:                               PAGE

 8    1)    Investment management agreement
            between Monroe Capital and Ability
 9          Insurance Company ...................... 11

10    2)    Any documents that reflect Ability's
            recovery or proceeds from the sale,
11          net of any expenses, for taking it
            through American Boulevard property
12          through foreclosure .................... 17

13    3)    Any emails that were overlooked that
            relate to any matters with respect to
14          Note Number 1 .......................... 20

15    4)    Total of payments made on the Green Box
            debt ................................... 22
16
      5)    Document that reflects the reduction
17          of the amount due under the mortgage
            after the sale of the mortgage itself .. 37
18

19

20

21

22

23

24

25
                                                          3
```

| | | |
|---|---|---|
| 1 | | in favor of Maple Bridge Funding, LLC; is that |
| 2 | | your understanding? |
| 3 | A | **Yes.** |
| 4 | Q | Okay.  But the actual funding of the monies paid |
| 5 | | to Green Box NA Green Bay, LLC was, you're |
| 6 | | saying, provided by Ability in the first |
| 7 | | instance; is that fair? |
| 8 | A | **Yes, and then was assigned -- the note and all** |
| 9 | | **collateral associated with the note was assigned** |
| 10 | | **to Ability Insurance Company.** |
| 11 | Q | Right.  I think the two occurred fairly close in |
| 12 | | time, if I recall.  It could be that on |
| 13 | | December 10th, 2013 Green Box made the note to |
| 14 | | Maple Bridge Funding and then on December 11th of |
| 15 | | 2013 it was an allonge executed for the payment |
| 16 | | to be ordered to Ability Insurance Company by |
| 17 | | Maple Bridge Funding, LLC by Tim O'Shea.  Does |
| 18 | | that comport with your recollection of the |
| 19 | | facts? |
| 20 | | MR. GRIFFIN:  Objection to the form |
| 21 | | of the question. |
| 22 | A | **I can't confirm the exact dates.  But yes, that** |
| 23 | | **time frame sounds about when the initial funding** |
| 24 | | **was sent to Green Box.** |
| 25 | Q | Okay.  And the sequence is correct, that is, |

13

1      Green Box gave a note to Maple Bridge and then
2      soon thereafter Maple Bridge basically directed
3      that Green Box pay to the order of Ability on
4      the note; is that fair?
5  A   I don't know the exact sequencing of it.
6  Q   Well, I'll show you -- we'll get to that later.
7           So with the funding, do you know whether
8      that funding -- was that money that Ability paid
9      around the time of that note being executed by
10     Green Box, directly to Green Box?
11 A   **Yes, the money -- the money was funded from**
12     **Ability Insurance Company accounts.**
13 Q   And that was 7.15 million?
14 A   **Correct.**
15 Q   So today on Ability's books what does it believe
16     it is owed by Green Box NA Green Bay, LLC?
17 A   **Well, we do have a list of running totals from**
18     **all expenses paid to actually recover on the**
19     **initial note.  We've estimated somewhere along**
20     **the lines of an additional 9 -- 9 million plus**
21     **of interest, professional fees, taxes, and**
22     **operating costs on that initial investment.**
23 Q   Okay.  So you've got this debt that goes back to
24     2013, just over $7 million, and you're saying
25     that -- and is that net of any kind of recovery

14

```
 1         loan to Green Box.  And then after that what did
 2         Ability -- what steps did Ability take to
 3         collect, if any, after funding the loan?
 4         Because that was back in 2013.  Do you know what
 5         the immediate -- what the terms of that note
 6         were as far as payment to Ability?
 7                   MR. GRIFFIN:  Objection to form.
 8   A     So no communication with Maple Bridge.  We
 9         communicate with Monroe Capital.
10   Q     Okay.
11   A     Who's, again, the asset manager on the account
12         and the loan.  So yes, we'd communicate interest
13         payments on that loan --
14   Q     Were there --
15   A     -- to make sure they were coming in.
16   Q     I'm sorry to interrupt.  Were there payments
17         made on the Green Box loan?
18   A     Yes.  Initially, yes, there were a few payments
19         made.  Interest was paid on the loan.
20   Q     So it was sort of an interest-only situation for
21         a period of time?
22   A     Yes.
23   Q     Do you know how long payments were made or how
24         much?
25   A     I'd have to check the records.  But a few months'
```

21

| | | |
|---|---|---|
| 1 | | worth of payments. |
| 2 | | MR. SMIES: That's information I would |
| 3 | | be interested in seeing, Counsel, and if it's |
| 4 | | already produced forgive me, but to the extent |
| 5 | | you can find the total of payments made on the |
| 6 | | Green Box debt, I would like that produced. |
| 7 | | MR. GRIFFIN: Understood. |
| 8 | Q | So at some point it became evident, I take it, |
| 9 | | that Green Box wasn't going to pay all that was |
| 10 | | due under the Green Box note? Is that a fair |
| 11 | | summary of the history with Ability? |
| 12 | A | Correct. And interest stopped being paid on the |
| 13 | | account. |
| 14 | Q | Do you know if that was before or after there |
| 15 | | was a declaration of bankruptcy? |
| 16 | A | I'm not sure. |
| 17 | Q | Did you take any steps to attempt to collect on |
| 18 | | that debt before initiating foreclosure, any |
| 19 | | correspondence with Green Box? |
| 20 | A | No correspondence with Green Box. It would all |
| 21 | | go through the investment manager, Monroe |
| 22 | | Capital, who has the relationship with -- you |
| 23 | | know, with Green Box. |
| 24 | Q | That's Tim O'Shea? |
| 25 | A | Yes. He's one of the principals. |

22