UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ABILITY INSURANCE COMPANY,<br><br>                                        Plaintiff,<br><br>                    v.<br><br>ST PAPER, LLC<br><br>                                        Defendant. | Civil Action No.:  1:20-cv-03851 (GBD) |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS**

Pursuant to Local Rule 56.1, Plaintiff Ability Insurance Company ("Ability" or "Plaintiff"), by and through its attorneys Troutman Pepper Hamilton Sanders LLP, hereby submits its Response to ST Paper, LLC's ("ST Paper" or "Defendant") Statement of Undisputed Material Facts in Support of St Paper's Motion for Summary Judgment.  Citations herein to "AIC SMF" refer to Ability's Statement of Undisputed Facts in support of its own concurrently filed Motion for Summary Judgment (ECF 63).

I.     **RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS**

1.     On April 16, 2007, ST Paper entered into a Second Amended and Restated Asset Purchase Agreement in which ST Paper agreed to acquire substantially all of the assets of Oconto Falls Tissue, Inc. ("OFTI"), a company that operated a paper mill in Oconto Falls, Wisconsin.

**RESPONSE:** Not disputed.

2.  ST Paper funded the purchase of OFTI's assets through cash provided by a syndicate of lenders represented by Goldman Sachs Credit Partners, L.P. ("Goldman Sachs") through a $65,000,000 term loan facility and a $5,000,000 revolving credit facility, and $30,589,000 in the form of Seller financing provided by OFTI.

**RESPONSE:** Not disputed.

3.  On April 16, 2007, ST Paper executed four Subordinated Seller Notes ("Seller Notes") on April 16, 2007, made in favor of OFTI.

**RESPONSE:** Not disputed.

4.  One of the Seller Notes ST Paper made in favor of OFTI, Note 1, was in the principal amount of $8,000,000.

**RESPONSE:** Not disputed.

5.  ST Paper, OFTI and Goldman Sachs agreed that the Seller Notes would be subordinated to the indebtedness of ST Paper to the lenders represented by Goldman Sachs.

**RESPONSE:** Disputed. The terms of the agreement between OFTI, ST Paper and Goldman Sachs concerning the treatment of the Seller Notes relative to the loans provided by the Goldman Sachs lenders are set forth in a Subordination Agreement dated April 16, 2007 between those parties and the terms of the Subordination Agreement speak for itself. *See* Declaration of Angelo A. Stio in Support of Plaintiff's Motion for Summary Judgment ("Stio Decl."), Ex. A. By way of further response, this statement is improper as it calls for a response to a conclusion of law.

6.  Note 1 and the other Seller Notes bear language noting that the note is subordinated and junior in right of payment to all amounts owed to current or future holders of the "Senior Indebtedness" as that term is defined in the Subordination Agreement.

**RESPONSE:** Disputed. Plaintiff admits only that Note 1 states, among other things, that the Payee accepts that the Note is subordinated and junior in right of payment to "Senior Indebtedness" as defined in the Subordination and that any Holder of the Note "shall be bound" by the terms of the Subordination Agreement. *See* Stio Decl., Ex. A.

7. Attached to Note 1 was a copy of the Subordination Agreement dated April 16, 2007. The Subordination Agreement was entered into by and between ST Paper, OFTI and Goldman Sachs.

**RESPONSE:** Not disputed.

8. Section 2.1 of the Subordination Agreement states the following: "The payment of any and all of the Subordinated Indebtedness hereby is expressly subordinated, to the extent and in the manner set forth herein, to the Payment in Full of the Senior Indebtedness." The Subordination Agreement explicitly states that the Seller Notes are deemed to be "subordinated indebtedness."

**RESPONSE:** Not disputed.

9. On April 16, 2007, ST Paper, Goldman Sachs and the various lenders participating in the loan to ST Paper entered into a Credit Agreement.

**RESPONSE:** Not disputed.

10. After the sale of the mill closed on April 16, 2007, ST Paper operated the mill. As a result of a declaration by Goldman Sachs that ST Paper had defaulted on a loan covenant, Goldman Sachs called the loan to be due. ST Paper and Goldman Sachs entered into a Forbearance Agreement and Amendment to the Credit Agreement and Security Agreement on May 22, 2009.

**RESPONSE:** Not disputed.

11. On March 25, 2010, the lenders represented by Goldman Sachs sold the debt owed by ST Paper administered by Goldman Sachs to Macquarie Bank Limited.

**RESPONSE:** Not disputed.

12. In April of 2010, ST Paper pursued the potential of refinancing of the debt associated with the purchase of the mill in 2007. As a result, a consortium of lenders agreed to finance the transaction and ST Paper made new promissory notes to eight different lenders: WCDLF SUB CDE XXIV, LLC; WCDLF SUB CDE XXV, LLC; USBCDE SUB-CDE LX, LLC; STP/NCF SUB-CDE, LLC; STP2 SUB-CDE, LLC; NNMF SUB-CDE X, LLC; CAPFUND CDE ONE LLC; and CAPMARK CDF SUBFUND III LLC (collectively, the "CDE Lenders"). ST Paper made 16 promissory notes in favor of the CDE Lenders on April 30, 2010.

> **RESPONSE:** Disputed. In April 2010, ST Paper began a "Refinancing Scheme" by which it sought to retire the GS Debt in a manner in which it or other companies controlled by Sharad Tak would control the "Senior Indebtedness" and could avoid ever having to pay that debt in full or the subordinated Seller Notes. The scheme included loans made by the named CDEs dated April 30, 2010. AIC SMF ¶¶ 30-66.

13. On April 30, 2010, ST Paper Holdings entered into a Purchase and Sale Agreement for Distressed Trades with Macquarie Bank Limited. Through this transaction, ST Paper Holdings acquired the debt owed by ST Paper in the principal amounts of $64,350,000 on a term loan, $5,000,000 on a revolving commitment, and $2,000,000 for a protective loan.

> **RESPONSE:** The first sentence of paragraph 13 is not disputed. The second sentence is disputed as misleading. By way of further response, pursuant to the Purchase and Sale Agreement for Distressed Trades, ST Paper Holdings acquired the debt owed by ST Paper for approximately $20 million. AIC SMF ¶ 50.

14. On April 30, 2010, Macquarie Bank Limited, as assignor, and ST Paper Holdings, as assignee, executed an Assignment Agreement.

> **RESPONSE:** Not disputed.

15. On April 30, 2010, Goldman Sachs successor as administrative agent, Wilmington Trust FSB, ST Paper, ST Paper Holdings and Macquarie Bank Limited entered into a Second Amendment to Credit Agreement. Section 5.1 of the Second Amendment to Credit Agreement states that the April 16, 2007 Credit Agreement remained "in full force and effect and

is hereby ratified and confirmed." Section 7 of the same document states the following with respect to ST Paper's continuing obligation as Borrower: "Except as otherwise provided in this Agreement, the Credit Agreement, the other Loan Documents and the Borrower's Obligations thereunder shall remain in full force and effect, and shall not be waived, modified, superseded or otherwise affected by this Agreement." Section 9 of the Second Amendment to Credit Agreement states: "This Agreement is a Credit Document for all purposes."

>**RESPONSE:** Not disputed.

16. ST Paper used the funding provided by the CDE Lenders to replace the original debt from 2007 administered by Goldman Sachs. Specifically, ST Paper used the proceeds from the loans made by the CDE Lenders to pay $83,013,871 to ST Paper Holdings to repay the debt originally administered by Goldman Sachs.

>**RESPONSE**: Disputed.  ST Paper took out approximately $90 million in loans from the CDEs and then transferred those funds to ST Paper Holdings.  ST Paper Holdings then used the CDE money to purchase the $69,350,000 Goldman Sachs debt for under $20 million, and the used remainder in other financial transactions.  AIC SMF ¶¶ 47-65.

17. On or about December 10, 2013, Maple Bridge Funding, LLC ("Maple Bridge") and Green Box NA Green Bay, LLC ("Green Box") executed a Mortgage and Security Agreement through which Green Box granted Maple Bridge a mortgage and security interest in certain real property located in De Pere, Wisconsin. The Mortgage and Security Agreement does not reference Note 1.

>**RESPONSE:**  The first sentence of Paragraph 17 is not disputed.  However, Note 1 is incorporated in the Mortgage and Security Agreement to the extent the agreement refers to all "Loan Documents" which includes the Green Box Assignment of Rights to Note 1. *See* Declaration of Angelo A. Stio in Opposition to Defendant's Motion for Summary Judgement ("Stio Opp. Decl."), Ex. A at 3.

18. Green Box provided the Mortgage and Security Agreement to Maple Bridge as security for a loan Maple Bridge made to Green Box in the principal amount of $7,150,000 on December 10, 2013.

**RESPONSE**: Not disputed.

19. On December 10, 2013, Green Box made a promissory note in favor of Maple Bridge in the principal amount of $7,150,000 (the "Green Box Note"). The Green Box Note does not reference Note 1.

**RESPONSE:** The first sentence is not disputed. However, the Green Box Note incorporates Note 1 to the extent it refers to all "Loan Documents", which includes the Green Box Assignment of Rights to Note 1. Stio Decl., Ex. C at 1-2.

20. Green Box also executed an Absolute Assignment of Leases and Rents in favor of Maple Bridge on December 10, 2013. The Absolute Assignment of Leases and Rents does not reference Note 1.

**RESPONSE:** The first sentence is not disputed. However, the Absolute Assignment of Leases and Rents incorporates Note 1 to the extent it refers to all "Loan Documents", which includes the Green Box Assignment of Rights to Note 1. Stio Opp. Decl., Ex. B at 3.

21. On or about December 11, 2013, Maple Bridge executed an Assignment of Mortgage, assigning the Mortgage and Security Agreement to Ability Insurance Company.

**RESPONSE:** Not disputed.

22. On or about December 11, 2013, Maple Bridge executed an Assignment of Collateral Security, assigning the Absolute Assignment of Leases and Rents to Ability Insurance Company.

**RESPONSE:** Not disputed.

23. Neither of the assignments executed by Maple Bridge on December 11, 2013 reference Note 1.

>   **RESPONSE:** Assuming that "assignments" refers to the two documents described in Paragraph 22, it is not disputed that the assignment documents themselves do not refer to Note 1. The underlying documents, however, incorporate Note 1 to the extent they refer to all "Loan Documents", which includes the Green Box Assignment of Rights to Note 1. Stio Opp. Decl., Ex. B at 3; Ex. C at 1-2.

24. On or about December 11, 2013, Maple Bridge and Green Box executed an Assignment of Rights. The Assignment of Rights document purports to assign from Green Box to Maple Bridge all of Green Box's right, title and interest in and to all payments of principal and interest from ST Paper on Note 1.

>   **RESPONSE:** The December 11, 2013 Assignment of Rights to Note 1 was executed solely by Green Box in favor of Maple Bridge. Additionally, the Assignment of Rights was effective and *did* in fact assign to Maple Bridge all of Green Box's right, title and interests in and to all payments of principal and interest from ST Paper on Note 1 so long as the Loan remained unpaid. Stio Opp. Decl., Ex. C.

25. On December 11, 2013, Maple Bridge executed an Allonge which purported to be attached to and formed a part of the Green Box Note, i.e., the promissory note dated December 11, 2013 executed by Green Box in favor of Maple Bridge in the original principal amount of $7,150,000.

>   **RESPONSE:** The Allonge is effective and attached to the Green Box Note, and directs that the Green Box Note is payable to "Ability Insurance Company Without Recourse." Stio Decl., Ex. D.

26. The Allonge stated that the Green Box Note was to be altered as follows "**PAY TO THE ORDER OF ABILITY INSURANCE COMPANY WITHOUT RECOURSE**." The Allonge did not reference Note 1.

>   **RESPONSE**: The first sentence is not disputed. Ability does not dispute that the Allonge itself did not refer to Note 1. However, as noted above, the underlying Green Box Note incorporated all "Loan Documents", which included the Green Box Assignment of Rights to Note 1. Stio Decl., Ex. D.

27. Ability Insurance Company has failed to produce in this litigation any document executed by Maple Bridge purporting to transfer any of its rights in Note 1 to Ability Insurance Company.

> **RESPONSE:** Disputed. Maple Bridge executed an allonge assigning all of its rights associated with the Green Box Note to Ability. The Green Box Note incorporates all "Loan Documents" (i.e., "all documents executed in conjunction with" the Loan), which includes the Green Box Assignment of Rights to Note 1. The Green Box Note further provides that upon any uncured event of default, Maple Bridge (or the assignee) is entitled to declare the "Debt" due and exercise remedies available under the Loan Documents, including those remedies available under the Green Box Assignment of Rights to Note 1. Stio Opp. Decl., Ex. G.

28. On May 2, 2017, the CDE Lenders in the 2010 refinancing transaction assigned or transferred their interest in the loans made to ST Paper to two different entities: ST Paper Holdings, LLC and WCDLF Investment Fund XXIV, LLC.

> **RESPONSE:** Disputed. The CDE Lenders entered into a series of transactions with Tak Companies on May 2, 2017, in which ST Paper retired any CDE Debt. First, WCDLF Fund XXIV entered into a series of "Redemption Agreements" with six of the CDEs. *See* AIC SMF ¶ 60. By the Redemption Agreements, these six CDEs exchanged the 2010 loans they had made to ST for equity investments that WCDLF Fund XXIV had made to the CDEs. *Id.* The net result was that the WCDLF Fund XXIV owned twelve of the fourteen CDE Loans. *Id.* Following the consolidation of these loans, Tak Investments effectively purchased the WCDLF Fund XXIV pursuant to the terms of an April 2010 agreement between ST Holdings, WCDLF Fund XXXIV and USBDC. AIC SMF ¶ 61. The net result was that Tak – through Tak Investments – controlled the majority of ST's debts to the CDEs. AIC SMF ¶ 62. Second, as described above, as part of the April 30, 2010 transactions, ST Holdings had purchased the participation interest in a $21,970,250 loan from Capmark Inc. to the Capmark Fund. AIC SMF ¶ 44. On May 2, 2017, the note between the Capmark CDE and ST Paper was assigned to the Capmark Fund pursuant to a Redemption Agreement. AIC SMF ¶ 57. The Capmark Fund subsequently assigned the note to USBCDC, which in turn, assigned it to ST Holdings. AIC SMF ¶¶ 58-59. As a result of these transactions, either ST Holdings (ST's parent) or WCDLF Fund XXIV (ST's affiliate) owned all of ST's outstanding debt to the CDEs. AIC SMF ¶ 62.

29. On March 19, 2019, ST Paper executed an Amended and Consolidated Promissory Note in the face amount of $63,962,000 in favor of WCDLF Investment Fund XXIV, LLC.

**RESPONSE**: Not disputed.

30. On March 19, 2019, ST Paper executed a Second Amended and Restated Promissory Note in the face amount of $21,970,150 in favor of ST Paper Holdings, LLC.

**RESPONSE:** Not disputed.

31. As a result of the assignments referenced above, ST Paper remains indebted to ST Paper Holdings, LLC and WCDLF Investment Fund XXIV, LLC for the replacement debt ST Paper incurred in 2010 to refinance the debt it incurred in connection with the acquisition of the mill in 2007.

> **RESPONSE**: Disputed. ST is not "indebted" to any company. ST Holdings is ST's 100% owner and WCDLF Fund XXIV is ST's corporate affiliate. AIC SMF ¶¶ 15-20. All of these entities are owned (directly or indirectly) by Tak Investments, which is controlled by Tak. *Id.* ST does not have to make any payments on the purported promissory notes until 2040, and Tak has signaled that he will "refinance" the purported debt again before it becomes due. AIC SMF ¶ 70. Accordingly, there is little to no chance that ST will ever have to make any payment on its purported debt. *Id.*

## II. ABILITY'S STATEMENT OF ADDITIONAL MATERIAL FACTS

### A. The Assignment of Note 1 to Ability

1. At the time of the Green Box Loan ("Loan"), Ability had a working relationship with Monroe Capital, LLC ("Monroe"), an investment management firm, through which Ability funded certain loans that Monroe arranged with third parties. September 9, 2021 Declaration of Tim O'Shea ("O'Shea Decl.") ¶ 3. One such loan was $7,150,000 loan made to Green Box in or around December 11, 2013. *Id.* ¶ 4.

2. The Loan was funded by Ability through an entity called Maple Bridge Funding, LLC ("Maple Bridge"), which was previously engaged in originating various commercial loans made throughout the United States. *Id.* ¶ 5.

3. Maple Bridge was responsible for conducting due diligence into Green Box and securing collateral sufficient to fund the Loan. As one of the Managers of Maple Bridge, Tim O'Shea supervised those efforts. *Id.* ¶ 6.

4. In connection with the Loan, Maple Bridge obtained an assignment from Green Box of its right to receive payments of principal and interest from an $8,000,000 promissory note from ST Paper dated April 16, 2007 in favor of Oconto Falls Tissue Inc., which at that time was assigned to Green Box. *Id.* ¶ 7.

5. The Loan – funded by Ability -- was made on or around December 11, 2013 and was documented by various documents (the "Loan Documents") including, but not limited to, a $7.15 million promissory note made by Green Box in favor of Maple Bridge ("Green Box Note"). *Id.* ¶ 8.

6. To secure the Loan, Green Box provided: (1) a Mortgage on the Property; (2) an Assignment of Rights to Leases and Rents on the Property; (3) a Guarantee from Ronald Van Den Heuval; (4) an additional Guarantee from Environmental Advanced Reclamation Technology, Inc. (another company that, to my recollection, was associated with Mr. Van Den Heuval); and (5) an Assignment of Rights to Note 1 ("Assignment of Rights"). *Id.* ¶ 9.

7. Immediately following the closing of the Loan, Maple Bridge assigned all of its rights in the Loan to Ability, as evidenced by an allonge to the Green Box Note. *Id.* ¶ 10.

8. According to Tim O'Shea, one of Maple Bridge's Managers supervising the due diligence concerning the Loan, it was Maple Bridge's intention to assign all of its rights

in and to the Loan, including all collateral securing the Loan, to Ability after the Loan was funded. *Id.* ¶¶ 11-12.

9. Following Maple Bridge's assignment of the Loan and the collateral securing the Loan to Ability, Maple Bridge intended that Ability would be entitled to exercise the rights and remedies provided in the Loan Documents including, but not limited to, the right to execute on the collateral securing the Loan. *Id.* ¶ 11.

10. Mr. O'Shea, one of Maple Bridge's Managers, has participated in multiple transactions where Ability has funded loans to borrowers. *Id.* ¶ 12. As a matter of course, because Ability funded the Loan, Maple Bridge would have assigned its rights and interests in the Loan (including any collateral obtained for the Loan) to Ability. *Id.*

11. Tim O'Shea personally delivered the original executed version of Note 1 to Ability after the Loan was assigned to Ability. *Id.* ¶ 13.

12. The definition of "Loan Documents" in the December 10, 2013 Mortgage and Security Agreement between Maple Bridge and Green Box defines "Loan Documents" includes "any agreement entered into or document executed by [Green Box] and delivered to [Maple Bridge] in conjunction with the transaction contemplated herewith". Stio Opp. Decl., Ex. A at 3.

13. The definition of "Loan Documents" in the Absolute Assignment of Leases and Rents executed by Green Box on December 10, 2013 includes "all other instruments and documents (as the same may be amended from time to time) executed by borrower and delivered to lender in connection with, or as security for, the indebtedness evidenced by the Note." Stio Opp. Decl., Ex. B at 3.

14. The definition of "Loan Documents" in the Assignment of Rights executed by Green Box on December 11, 2013 concerning Note 1 includes all documents evidencing the Loan.  Stio Opp. Decl., Ex. C at 1.

15. The definition of "Loan Documents" in the Green Box Note includes "any other document executed in connection with the transaction contemplated hereby."  Stio Decl., Ex. C at 1-2.

16. The December 11, 2013 Assignment of Rights executed by Green Box concerning Note 1 was given "[a]s a specific condition to the making of the Loan."  Stio Opp. Decl., Ex. C at 1.

17. Maple Bridge required Green Box to execute the December 10, 2013 Assignment of Rights concerning Note 1 as a condition to making the Loan.  *Id.*

18. The Green Box Note provides that upon any uncured event of default, the Noteholder has the right to "declare the Debt immediately due and payable" and to exercise all remedies available under the Green Box Note or any of the Loan Documents. Stio Decl., Ex. C at 2.

19. After making a limited number of interest payments, Green Box defaulted on the Green Box Note. Stio Opp. Decl., Ex. F ("Charsky Tr.") at 21:16-22.

I. **The Parallel Litigation in Wisconsin**

20. During discovery in the matter of *Oconto Falls Tissue, Inc. v. ST Paper, LLC*, No. 17 cv 104 (Wisconsin Circuit Court for Oconto County) ("Wisconsin Action"), ST sought and obtained an admission from OFTI that "Green Box directed that Note 1 be paid to Ability." Stio Opp. Decl., Ex. E (Requests For Admissions ¶¶ 5-11).

21. On a motion for partial summary judgment in the Wisconsin Action, ST represented to the court that "Note No. 1 is held by Ability." AIC SMF ¶ 10.

22. The court in the Wisconsin Action granted ST's motion for partial summary judgment with respect to Note 1. Stio Opp. Decl., Ex. D at 16:8-20.

23. At the hearing on ST's motion for partial summary judgment, the Court stated that "[Note] One, I understand or learned in all the submissions, I guess is in litigation now in New York or so I'm told." *Id.* at 15:18-25.

**C. ST's Purported "Refinancing" of the 2007 Debt to Goldman Sachs**

The additional facts concerning ST's purported "refinancing" of the 2007 GS Debt that Ability believes are relevant to this motion are set forth in detail in Ability's Statement of Undisputed Material Facts in Support of its own Motion for Summary Judgment (ECF No. 63, "AIC SMF"). In the interest of time and space, Ability respectfully incorporates the AIC SMF in its affirmative motion here by references. Consistent with this document, citations to "AIC Add. SMF" in Ability's opposition memorandum of law refer to its affirmative statement of undisputed facts.

DATED: New York, NY
September 10, 2021

                                        **TROUTMAN PEPPER HAMILTON SANDERS LLP**

                                        By: */s/ Angelo A. Stio, III*
                                        Angelo A. Stio, III
                                        Melissa A. Chuderewicz
                                        875 Third Avenue
                                        New York, NY 10002
                                        *Attorneys for Ability Insurance Company*

**CERTIFICATE OF SERVICE**

      I hereby certify that on September 10, 2021, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                    */s/ Angelo A. Stio, III*
                                    Angelo A. Stio, III
                                    875 Third Avenue
                                    New York, NY 10002
                                    *Attorneys for Ability Insurance Company*