# EXHIBIT C

FILED
03-28-2019
Clerk of Courts
Oconto County WI
2017CV000104

STATE OF WISCONSIN : CIRCUIT COURT : OCONTO COUNTY

OCONTO FALLS TISSUE, INC.,

               Plaintiff,

    v.

ST PAPER, LLC, VHC, INC., DAVID VAN
DEN HEUVEL, NICOLET BANKSHARES,
INC. and ABILITY INSURANCE COMPANY,

               Defendants.

Case No. 17 CV 104

Code No(s). 30303 (Other Contracts)

## DEFENDANT ST PAPER, LLC'S ANSWER AND AFFIRMATIVE DEFENSES TO AMENDED COMPLAINT

Defendant ST Paper, LLC ("ST Paper"), by and through its attorneys, Godfrey & Kahn, S.C., and as and for its answers and affirmative defenses to Plaintiff's Amended Complaint states as follows with each allegation a numbered paragraph followed by a response:

## I.    INTRODUCTION

1.    This is an action to collect more than $60 million in principal and interest that ST Paper agreed to pay under four (4) subordinated promissory notes in favor of OFTI (the "Seller Notes").

RESPONSE: ST Paper admits that the Amended Complaint seeks the relief specified in Paragraph 1, but denies that Plaintiff is entitled to such relief.

2.    ST Paper issued the Seller Notes as partial payment for the purchase of OFTI's paper mill and related assets in Oconto Falls, Wisconsin in 2007.

RESPONSE:  ST Paper admits the allegations contained in Paragraph 2 of the Amended Complaint and affirmatively alleges, for this and all subsequent responses, that the Seller Notes and all of the documents referenced in the Amended Complaint speak for themselves.

3.     The purchase price for the mill and related assets was $86.4 million plus other consideration, with the original principal amount of the Seller Notes ($30,589,000) accounting for roughly one-third of the total.  See the Closing Statement attached as Exhibit A.

RESPONSE:  ST Paper admits the allegations contained in Paragraph 3 of the Amended Complaint.

4.     To pay for the other two-thirds, ST Paper secured a $65 million term loan and a $2.8 million revolving loan brokered and administered by Goldman Sachs Credit Partners, L.P. ("Goldman").  These loans were senior to the Seller Notes.  In other words, ST Paper was to repay the senior loans first and then the subordinate Seller Notes would become due and payable.

RESPONSE:  ST Paper admits the allegations contained in Paragraph 4 of the Amended Complaint and affirmatively alleges that the terms of all the documents referenced in the Complaint speak for themselves.

5.     The senior term loan was set to mature no later than March 31, 2013, and the Seller Notes were to become due and fully payable two years later, on April 16, 2015.

RESPONSE:  ST Paper denies the allegations contained in Paragraph 5 of the Amended Complaint and affirmatively alleges that the terms of all the documents referenced in the Complaint speak for themselves.

6.     By that date, the amount due under the four Seller Notes, including principal and interest, was over $54 million and additional interest continues to accrue.  The Seller Notes are attached hereto and incorporated herein and marked as Exhibit B.

RESPONSE:  ST Paper denies the allegations contained in the first sentence of Paragraph 6 of the Amended Complaint.  ST Paper admits that copies of the Seller Notes are attached to the Amended Complaint and affirmatively alleges that the Plaintiff no longer has actual or constructive possession of at least three of the Seller Notes.

7.      ST Paper, however, has never paid and refuses to pay on the Seller Notes.  ST Paper claims it has no obligation to pay because there is allegedly still senior debt outstanding, to which the Seller Notes are subordinate.  ST Paper claims, moreover, that it expects this supposed senior debt to remain outstanding for "many years."

RESPONSE:  ST Paper admits the allegations contained in Paragraph 7 of the Amended Complaint, but affirmatively alleges that Paragraph 7 incompletely and inaccurately summarizes ST Paper's position.

8.      ST Paper's claims are false.  In truth, in 2010 ST Paper fully paid off the original Goldman loans for $24 million – a significant discount that ST Paper negotiated.

RESPONSE:  ST Paper denies the allegations contained in Paragraph 8 of the Amended Complaint.

9.      On May 5, 2010, Goldman's complete satisfaction of mortgage and security interests was recorded in Oconto County.  Accordingly, there is no longer any senior creditor who stands in line to be repaid before OFTI, and the Seller Notes are therefore fully due and payable.

RESPONSE:  ST Paper admits only the first sentence of Paragraph 9 of the Amended Complaint.  ST Paper denies the remaining allegations of Paragraph 9 of the Amended Complaint.

10.     ST Paper then obtained entirely new loans from new creditors for nearly four times the amount of the negotiated payoff to Goldman and then unilaterally declared that these new "loans" are also somehow senior to the Seller Notes.  This was a deliberate ruse by ST Paper to try to escape its duty to pay OFTI under the Seller Notes.  Upon information and belief, the new "loans" were obtained without any consideration or insufficient consideration.

RESPONSE:  ST Paper admits that it obtained new loans as part of a permitted and anticipated refinancing of the Goldman debt.  ST Paper denies the remaining allegations of Paragraph 10 of the Amended Complaint.

11.     ST Paper's new loans include (1) a loan of $26,970,150 (roughly the amount of the discounted payoff to Goldman) from a now-defunct company called Capmark and (2) a second "loan" of $63,962,000 (roughly the amount of the original Goldman loan) from seven (7) "community development entities."

RESPONSE:  ST Paper admits the allegations contained in Paragraph 11 of the Amended Complaint, with the exception of the allegation that Capmark is "defunct."

12.     In 2010, at or about the same time as the Goldman payoff and the satisfaction of Goldman's mortgage, ST Paper filed two new mortgages on the paper mill to secure the purported new loans.

RESPONSE:  ST Paper admits the allegations contained in Paragraph 12 of the Amended Complaint.

13.     Upon information and belief, the second of these new "loans" was fictitious; no credit in that amount was actually extended to ST Paper in 2010.  Moreover, upon information and belief, ST Paper did not structure these new "loans" – which were issued under the federal seven-year New Markets Tax Credit Program – like a normal commercial loan.  Among other

4

things, ST Paper has arranged to make interest-only payments on the $63 million "loan" in order to leave the principal balance on its books indefinitely as an excuse under the subordination agreement to continue avoiding its payment obligations to OFTI.

RESPONSE:  ST Paper denies the allegations contained in Paragraph 13 of the Amended Complaint.

14.     Based on the foregoing, ST Paper could effectively *never* repay the Seller Notes, thus depriving OFTI of more than one-third of the purchase price for its former paper mill even though the subordination agreement specifically provided that nothing "shall impair [ST Paper's] unconditional and absolute obligation" to pay OFTI when the notes become due.

RESPONSE:  ST Paper denies the allegations contained in Paragraph 14 of the Amended Complaint.

15.     The Seller Notes and related agreements between the parties prohibit such an absurd and unfair result.  OFTI therefore brings this action to vindicate its right to full and immediate payment under the Seller Notes.

RESPONSE:  ST Paper denies the allegations contained in Paragraph 15 of the Amended Complaint.

16.     In addition to the foregoing, Plaintiff OFTI assigned Note 1 to Defendant Maplebridge Funding, LLC, see Exhibit C, as security for certain lending offered by Maplebridge Funding, LLC (now defunct).  This is Note 1 of the four Seller Notes.  That Note was then assigned by Maplebridge Funding, LLC to Defendant Ability Insurance Company as evinced by Exhibit D attached hereto.

RESPONSE:  ST Paper lacks sufficient knowledge or information to answer the allegations contained in Paragraph 16 of the Amended Complaint and incorporates by reference its response to Paragraph 6 above.

17.     As security, OFTI transferred Notes 3 and 4 to defendant VHC, Inc. for certain lending to the plaintiff company.  Said transfer for security purposes was agreed by and between the plaintiff company and defendants VHC, Inc. and David Van Den Heuvel.  See Exhibits E and F attached hereto.

RESPONSE:  ST Paper lacks sufficient knowledge or information to answer the allegations contained in Paragraph 17 of the Amended Complaint and incorporates by references its response to Paragraph 6 and 16 above.

## II.     PARTIES AND JURISDICTION

18.     Oconto Falls Tissue Inc. is a Wisconsin corporation with its principal place of business at 2077 Lawrence Drive, Suite A, De Pere, Wisconsin 54115.

RESPONSE:  ST Paper admits the allegations contained in Paragraph 18 of the Amended Complaint, but specifically denies that this Court has jurisdiction because Plaintiff's choice of venue is improper given its consent to the jurisdiction of the courts of New York.  *See* ST Paper's Eighth Affirmative Defense.

19.     ST Paper is a Delaware limited liability company with its principal place of business located at 106 East Central Avenue, Oconto Falls, Wisconsin 54154.

RESPONSE:  ST Paper admits the allegations contained in Paragraph 19 of the Amended Complaint, but specifically denies that this Court has jurisdiction because Plaintiff's choice of venue is improper given its consent to the jurisdiction of the courts of New York.  *See* ST Paper's Eighth Affirmative Defense.

20.     Defendant Ability Insurance Company is, upon information and belief, a Connecticut corporation doing business at 55 North Water Street, Suite 3, South Norwalk, Connecticut 06854.  Ability has done substantial business in the State of Wisconsin.  Ability Insurance Co. is joined in this lawsuit so as to ensure complete relief is afforded to the parties. Wis. Stat. § 803.03.

RESPONSE:  ST Paper lacks sufficient knowledge or information to answer the allegations contained in Paragraph 20 of the Amended Complaint.

21.     Defendant VHC, Inc. is a Wisconsin corporation with its principal place of business located at 3090 Holmgren Way, Green Bay, Wisconsin 54304.  VHC, Inc. is joined in this lawsuit as to ensure complete relief is afforded to the parties.  Wis. Stat. § 803.03

RESPONSE:  ST Paper lacks sufficient knowledge or information to answer the allegations contained in Paragraph 21 of the Amended Complaint.

22.     Defendant David Van Den Heuvel is a citizen of the State of Wisconsin residing at 1180 South Pine Tree Road, De Pere, Wisconsin 54115.  David Van Den Heuvel is joined in this lawsuit so as to ensure complete relief is afforded to the parties.  Wis. Stat. § 803.03.

RESPONSE:  ST Paper lacks sufficient knowledge or information to answer the allegations contained in Paragraph 22 of the Amended Complaint.

23.     Defendant Nicolet Bankshares, Inc. is a Wisconsin corporation with its principal place of business located at 111 North Washington Street, Green Bay, Wisconsin 54301.  Nicolet Bankshares Inc. is joined in this lawsuit so as to ensure complete relief is afforded to the parties. Wis. Stat. § 803.03.

RESPONSE:  ST Paper lacks sufficient knowledge or information to answer the allegations contained in Paragraph 23 of the Amended Complaint.

20301426.1

24.     Defendants Ability Insurance Company, VHC, Inc., David Van Den Heuvel and Nicolet Bankshares, Inc. are necessary parties in order for there to be a full and complete adjudication of all matters currently before the Court regarding the seller Notes described herein.

RESPONSE:  The allegations of Paragraph 24 of the Amended Complaint contain a legal conclusion to which no response is required.  To the extent any response is required, ST Paper denies the allegations contained in Paragraph 24 of the Amended Complaint.

### III.     BACKGROUND

**A.     Van Den Heuvel and Tak Develop a Joint Business Plan in 2005 and 2006.**

25.     Ronald Van Den Heuvel is an engineer, entrepreneur, and experienced professional in the paper-tissue industry.  For decades, he and other members of his family have operated some of the preeminent tissue-machine contracting companies in the United States and have completed nearly fifty tissue-machine installations.  He is no longer an officer or shareholder of the plaintiff corporation.

RESPONSE:  Admits that Mr. Van Den Heuvel at times has been an entrepreneur and has experience in the paper tissue industry.  Denies Mr. Van Den Heuvel has any degree or license as an engineer.  ST Paper lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 25 of the Amended Complaint.

26.     In 1997, Van Den Heuvel acquired from Kimberly-Clark Tissue Company a shuttered paper mill in Oconto Falls, Wisconsin, which Van Den Heuvel and his business partners operated for the next decade.

RESPONSE:   ST Paper admits the allegations contained in Paragraph 26 of the Amended Complaint.

27.    In 2000, OFTI formed a strategic partnership with Enron, which backed a bond issue.  When Enron filed for bankruptcy in 2001, the bonds and other debt obligations were called, and the Enron trustee sued OFTI for the millions of dollars by which Enron had fraudulently inflated the value of its investment.

RESPONSE:  ST Paper lacks sufficient information or knowledge to answer the allegations of Paragraph 27 of the Amended Complaint.

28.    This Enron debacle created financial havoc for OFTI, forcing it to obtain alternative financing at much higher cost and to pledge the OFTI mill and other assets as collateral.

RESPONSE:  ST Paper lacks sufficient knowledge or information to answer the allegations contained in Paragraph 28 of the Amended Complaint.

29.    To deal with these financial challenges, Mr. Van Den Heuvel began to consider selling the OFTI mill.  Eventually, he found an interested buyer named Sharad Tak.

RESPONSE:  ST Paper admits that Mr. Van Den Heuvel found Sharad Tak to be an interested buyer of the assets of the OFTI mill.  ST Paper denies the remaining allegations contained in Paragraph 29 of the Amended Complaint.

30.    Mr. Tak is an entrepreneur who has since the 1970s acquired or owned businesses in a variety of industries including government contracting, television and radio, electrical power, and commercial real estate.

RESPONSE:  ST Paper admits the allegations of Paragraph 30 of the Amended Complaint.

31.     In or around 2005, while exploring investment opportunities, Tak determined that there was a need for additional, efficient paper-manufacturing operations in the United States. He believed that supply was not keeping pace with demand in the paper industry.

RESPONSE:  ST Paper admits the allegations contained in Paragraph 31 of the Amended Complaint.

32.     While researching the paper industry, Tak learned about Van Den Heuvel, his tissue-installation contracting business, and his acquisition of the paper mill at Oconto Falls. This was precisely the kind of business Tak was interested in pursuing.

RESPONSE:  ST Paper admits the allegations contained in Paragraph 32 of the Amended Complaint.

33.     Tak approached Van Den Heuvel in 2005 about a possible investment in OFTI. Over the course of the next year or two, the two men developed a joint business plan concerning both OFTI and other, related ventures.

RESPONSE:  Admits that Tak approached Ron Van Den Heuvel in 2005 about a possible investment in OFTI.  Admits that while Van Den Heuvel and Tak had numerous discussions over the course of the next two years, including discussions contemplating future business between the two and their related companies, at no time did they undertake a "joint business plan" and denies that allegation.

34.     Their plan called for Tak or one of his companies to acquire OFTI and two smaller entities, thereby generating sufficient funds to pay off all of OFTI's creditors.

RESPONSE:  ST Paper denies the allegations of Paragraph 34 of the Amended Complaint.

35.     Another part of the strategy was for Van Den Heuvel to contribute his talent, experience, and expertise in the paper industry – to which Tak was a newcomer – by acquiring an ownership interest and remaining involved in the new companies.

RESPONSE:  ST Paper denies the allegations of Paragraph 35 of the Amended Complaint.

36.     Van Den Heuvel's continued involvement in the business was critical to ensure its success.  Among other reasons, Van Den Heuvel had negotiated a long-term off-take contract with SCA, one of the world's largest paper companies, to take virtually all of the paper produced at OFTI.  Van Den Heuvel was to help maintain this important relationship with SCA.

RESPONSE:  ST Paper denies the allegations of Paragraph 36 of the Amended Complaint.

37.     OFTI was in a challenging financial situation, primarily because of the failed strategic relationship with Enron.

RESPONSE:  ST Paper lacks sufficient knowledge and information to answer the allegations of Paragraph 37 of the Amended Complaint.

38.     Tak brought to the table a history of acquiring and improving distressed companies and an ability to secure financing, including a pre-existing relationship with Goldman.

RESPONSE:  ST Paper admits that Tak had a history of acquiring and improving distressed companies and an ability to secure financing, including a pre-existing relationship with Goldman.

39.     Tak's relationship with Goldman was particularly important because the parties envisioned needing to secure funding of $85 million or more the purchase of the OFTI mill and

20301426.1

the satisfaction of Van Den Heuvel's existing debts, as well as additional funding for more mills around the country.

RESPONSE:  ST Paper denies the allegations contained in Paragraph 39 of the Amended Complaint.

40.     The combination of Tak's experience in business and financial connections with Van Den Heuvel's assets and industry expertise seemed to provide the basis for a successful partnership.  So the parties continued to pursue a joint business plan.

RESPONSE:  ST Paper denies the allegations contained in Paragraph 40 of the Amended Complaint.

41.     Their efforts eventually led to the consummation of several transactions between the parties, including the one at the heart of this lawsuit – the purchase of OFTI's mill and related assets by Tak's company ST Paper.

RESPONSE:  ST Paper admits the allegations contained in Paragraph 41 of the Amended Complaint.

**B.     ST Paper Purchases OFTI's Mill in 2007 Through a Senior Loan from Goldman and Subordinated Notes in Favor of OFTI.**

42.     On April 16, 2007, ST Paper and OFTI entered into a Second Amended and Restated Asset Purchase Agreement (the "Purchase Agreement," attached as Exhibit G) for ST Paper to acquire substantially all of OFTI's assets for a purchase price of $86.4 million.

RESPONSE:  ST Paper admits the allegations contained in Paragraph 42 of the Amended Complaint and affirmatively alleges that the document speaks for itself.

43.     Under paragraph 2.3 of the Purchase Agreement, ST Paper was to pay the purchase price at closing through a combination of (1) $55,811,000 in cash and (b) $30,589,000 in promissory notes issued to OFTI.  See Closing Statement attached as Exhibit A.

RESPONSE:  ST Paper admits the allegations contained in Paragraph 43 of the Amended Complaint and affirmatively alleges that the document speaks for itself.

44.     To finance the cash portion, Tak and ST Paper turned to a syndicate of lenders represented by Goldman (the "Lenders").  On the same date as the OFTI closing – April 16, 2007 – ST Paper entered into a lengthy contract with the Lenders and with Goldman as their agent, pursuant to which ST Paper borrowed $67,811,000 ($65 million term and $2,811,000 revolving) (the "Goldman Loans").  As security for these loans, Goldman took various forms of collateral, including a $70 million mortgage on the paper mill.

RESPONSE:  ST Paper admits the allegations contained in Paragraph 44 of the Amended Complaint and affirmatively alleges that the document speaks for itself.

45.     To fund the remainder of the purchase price, ST Paper issued four Subordinated Seller Notes dated April 16, 2007 (the "Seller Notes," attached as Exhibit B, under which it promised to pay OFTI an aggregate principal amount of $30,589,000 plus interest at 7.5% per annum.

RESPONSE:  ST Paper admits the allegations contained in Paragraph 45 of the Amended Complaint and affirmatively alleges that the documents speak for themselves.

46.     However, Goldman and the Lenders required that their right to repayment should take priority over OFTI's.  This was an express inducement and condition precedent to Goldman's and the Lenders' willingness to enter into the Credit Agreement.

RESPONSE:  ST Paper admits the allegations contained in Paragraph 46 of the Amended Complaint and affirmatively alleges that the document speaks for itself.

47.     Therefore, the Seller Notes were made subject to a separate Subordination Agreement, also executed on April 16, 2007,  between ST Paper, OFTI, and Goldman (as agent for the Lenders), which made payment on the Seller Notes (defined as "Subordinated Indebtedness") junior and subordinate to repayment of the Goldman Loans under the Credit Agreement (defined as "Senior Indebtedness").  A copy of the Subordination Agreement is attached as Exhibit H.

RESPONSE:  ST Paper admits the allegations contained in Paragraph 47 of the Amended Complaint and affirmatively alleges that the document speaks for itself.

48.     ST Paper was to repay the Goldman Loans by March 31, 2013, under the terms of the Credit Agreement.  The Seller Notes were to become due and payable two years later, on April 16, 2015.

RESPONSE:  ST Paper admits the allegations contained in Paragraph 48 of the Amended Complaint and affirmatively alleges that the document speaks for itself.

### C.     The Parties Enter Into Other Agreements.

49.     Around the same time as the sale of the paper mill, Tak and Van Den Heuvel also consummated several other transactions, which are not directly at issue here but provide important context regarding the parties' overall relationship and support for this transaction.

RESPONSE:  ST Paper admits that Tak, through his entities, and Van Den Heuvel, through his entities, consummated other transactions.  ST Paper denies the remaining allegations contained in Paragraph 49 of the Amended Complaint.

20301426.1

50.     First, to ensure Van Den Heuvel's continued involvement in the business – which, as discussed above, was important to ST Paper's success as the new mill owner, particularly concerning the off-take contract with SCA – the parties agreed to a long-term sales and marketing agreement that would pay Tissue Technology, LLC (one of Van Den Heuvel's companies) 4% of certain incoming revenues, or about $200,000 per month, for many years.

RESPONSE:  ST Paper admits that ST Paper, LLC and Tissue Technology, LLC entered into an agreement for the payment for services on specified terms not relevant to this matter, and affirmatively alleges that the document speaks for itself.  ST Paper denies the remaining allegations contained in Paragraph 50 of the Amended Complaint.

51.     Second, to fund necessary improvements to the mill, which Goldman insisted b done so that ST Paper could meet its production and sales projections, the parties jointly borrowed $20 million from Johnson Bank, and Van Den Heuvel pledged an $11.8 million money market account as collateral.  In a "Final Business Terms Agreement" dated April 16, 2007, the parties agreed that in the event the bank drew on the collateral, Van Den Heuvel would be compensated with a 22% ownership in Tak's investment company.

RESPONSE:  ST Paper denies the allegations of Paragraph 51 of the Amended Complaint.

52.     Third, the parties originally intended that, in addition to the purchase of OFTI's mill, Tak would acquire another, related company called Eco Fibre, Inc., which ran a pulp mill. Due to problems finding adequate financing, that purchase was put on the back burner.  But the parties agreed to an arrangement to incentivize a future Eco Fibre deal: Tak issued $16.4 million in promissory notes to Van Den Heuvel.  If the Eco Fibre deal closed, Van Den Heuvel would forgive the notes; but if it did not, then Van Den Heuvel could either redeem the notes or cancel

15

them in exchange for a 27% ownership interest in Tak's investment company.  This arrangement was also set forth in the Final Business Terms Agreement.

RESPONSE:  ST Paper admits that the parties contemplated a potential acquisition by an entity of Eco Fibre, Inc., which ran a pulp mill.  ST Paper denies the remaining allegations contained in Paragraph 52 of the Amended Complaint.

**D.     ST Paper Pays Off The Goldman Loans, Yet Refuses To Pay OFTI When the Seller Notes Become Due in 2015.**

53.     In 2009, ST Paper encountered financial difficulty and was underperforming. Goldman became concerned about ST Paper's ability to repay the Goldman Loans according to the terms of the Credit Agreement.  Goldman therefore began exploring alternative options to maximize its recovery.  These included direct negotiations with Tak.

RESPONSE:  ST Paper denies the allegations of Paragraph 53 of the Amended Complaint, except to admit that Goldman and Tak explored a variety of alternatives in direct negotiations.

54.     Upon information and belief, sometime in 2010, Goldman accepted a payment of approximately $24 million from ST Paper in full satisfaction of the remaining amount owed on the Goldman Loans.  On May 5, 2010, a satisfaction on that mortgage was recorded in the Oconto County Recorder's Office extinguishing Goldman's interest.  In short, the Goldman Loans were full paid off and satisfied in 2010.

RESPONSE:  ST Paper admits the second sentence of Paragraph 54 of the Amended Complaint.  ST Paper denies the remaining allegations of Paragraph 54 of the Amended Complaint and affirmatively alleges that such documents speak for themselves.

55. Thus, when the Seller Notes became due and payable several years later, on April 16, 2015, there was no longer any Senior Indebtedness to which the Seller Notes were junior.

RESPONSE: ST Paper denies the allegations contained in Paragraph 55 of the Amended Complaint.

56. Therefore, on or about March 27, 2015, OFTI demanded full payment on the Seller Notes in the amount of $54,554,803 (which included accrued interest) by April 16, 2015. A copy of OFTI's letter demanding payment is attached as Exhibit I.

RESPONSE: ST Paper admits the allegations contained in Paragraph 56 of the Amended Complaint characterizing the OFTI "demand."

57. On May 8, 2015, Tak, on ST Paper's behalf, refused to pay because he claimed that unidentified "Senior Indebtedness" was outstanding and would remain outstanding for "many years." A copy of Tak's response is attached as Exhibit J.

RESPONSE: ST Paper admits the allegations contained in Paragraph 57 of the Amended Complaint and affirmatively alleges that the document speaks for itself.

### E.     ST Paper Is Trying To Escape Its Payment Obligations Through A Deliberate Ruse.

58. Although Tak did not identify the "Senior Indebtedness" that is supposedly still outstanding, upon information and belief, he was referring to several supposed new loans that ST Paper allegedly obtained from a group of third parties in 2010, at least some of which ST Paper may have used to fund the $24 million payoff to Goldman.

RESPONSE: ST Paper denies the allegations of Paragraph 58 of the Amended Complaint.

20301426.1

59.     The Oconto County Register of Deeds recorded a series of documents relating to these new "loans" on or around May 5, 2010 the same date that the satisfaction of Goldman's mortgage was recorded.

RESPONSE:  ST Paper admits the allegations contained in Paragraph 59 of the Amended Complaint and affirmatively alleges that the documents speak for themselves.

60.     The first document is an "Intercreditor Agreement" dated April 30, 2010 between ST Paper and eight "Subsidiary CDE's" (Capmark, CapFund, WCDLF XXIV, WCDLF XXV, NCF, NCF2, USBCDE, and NNMF).  A copy of the Intercreditor Agreement is attached as Exhibit K.

RESPONSE:  ST Paper admits the allegations contained in Paragraph 60 of the Amended Complaint and affirmatively alleges that the document speaks for itself.

61.     Upon information and belief, the Subsidiary CDEs were set up as "Community Development Entities" (CDEs) to receive New Markets Tax Credits (NMTC) that the federal government makes available for certain investments in low-income communities.

RESPONSE:  ST Paper lacks sufficient knowledge or information to answer the allegations contained in Paragraph 61 of the Amended Complaint.

62.     According to the Intercreditor Agreement, each CDE extended two loans to ST Paper, totaling $90,932,150 in the aggregate (the "Community Development Loans").

RESPONSE:  ST Paper admits that a combination of CDEs extended two loans to ST Paper and affirmatively alleges that the document speaks for itself.  ST Paper denies the remaining allegations of Paragraph 62 of the Amended Complaint.

63.     The specific alleged loan amounts were listed in Exhibit C to the agreement, along with the amounts allocated for NMTC purposes:

20301426.1

**EXHIBIT C**
**NMTC ALLOCATION AND LOAN AMOUNTS**

| Sub CDE Lender | NMTC Allocation Amount | Loan A Amount | Loan B Amount |
|---|---|---|---|
| WCDLF XXIV | $10,000,000 | $7,427,623 | $2,372,377 |
| WCDLF XXV | $20,000,000 | $14,855,237 | $4,744,763 |
| NCF | $4,000,000 | $3,090,174 | $829,826 |
| NCF2 | $6,000,000 | $4,635,261 | $1,244,739 |
| USBCDE | $6,200,000 | $4,602,840 | $1,535,160 |
| CapFund | $4,200,000 | $3,202,473 | $871,527 |
| Capmark | $26,970,150 | $21,970,150 | $5,000,000 |
| NNMF | $15,000,000 | $11,437,402 | $3,112,598 |
| *TOTALS* | *$92,370,150* | *$71,221,160* | *$19,710,990* |

RESPONSE:  ST Paper admits the allegations contained in Paragraph 63 of the Amended Complaint and affirmatively alleges that the document speaks for itself.

64.     The Intercreditor Agreement (on page 2) states that each CDE "received one or more sub allocations of new markets tax credits" and that ST Paper "will benefit from the favorable terms of the Loans made possible by the NMTC Allocations."

RESPONSE:  ST Paper admits the allegations contained in Paragraph 64 of the Amended Complaint and affirmatively alleges that the document speaks for itself.

65.     ST Paper also executed two mortgages as security for the Community Development Loans.  The mortgages were recorded in the Oconto County Register of Deeds Office along with the Intercreditor Agreement.

RESPONSE:  ST Paper admits the allegations contained in Paragraph 65 of the Amended Complaint and affirmatively alleges that the document speaks for itself.

66.     One of the mortgages was executed in favor of Capmark to secure alleged loans and "and other extensions of credit" in the aggregate principal amount of $26,970,150.

RESPONSE:  ST Paper admits the allegations contained in Paragraph 66 of the Amended Complaint and affirmatively alleges that the document speaks for itself.

20301426.1

67.    The other was executed in favor of the seven other CDEs to secure alleged loans and "and other extensions of credit" in the aggregate principal amount of $63,962,000.

RESPONSE:  ST Paper admits the allegations contained in Paragraph 67 of the Amended Complaint and affirmatively alleges that the document speaks for itself.

68.    Upon information and belief, ST Paper structured the Community Development Loans in such a way that the principal balance will remain on ST Paper's books indefinitely.  In other words, ST Paper is trying to use the Community Development Loans as a ruse to indefinitely defer any payments on the Seller Notes.

RESPONSE:  ST Paper denies the allegations contained in Paragraph 68 of the Amended Complaint.

69.    For example (and without limitation), upon information and belief, ST Paper has arranged to make interest-only payments on the $63 million "loan" in order to leave the principal balance on its books indefinitely.

RESPONSE:  ST Paper denies the allegations of Paragraph 69 of the Amended Complaint.

70.    Furthermore, in Section 5 of the Intercreditor Agreement, ST Paper made full repayment of the $26 million "loan" subordinate to repayment of the $63 million "loan."  As a result, some portion of the $26 million loan will also remain on ST Paper's books indefinitely.

RESPONSE:  ST Paper denies the allegations of Paragraph 70 of the Amended Complaint.

71.    In other words, if ST Paper had its way, the Seller Notes would remain stuck behind the new Community Development Loans indefinitely, and OFTI would have no

20

20301426.1

foreseeable prospect of recovering the principal and interest that became due in 2015, which now

exceeds $60 million because recovery would be barred by operation of the statute of limitations.

RESPONSE:  ST Paper denies the allegations of Paragraph 71 of the Amended

Complaint, with the exception of the allegation concerning operation of the statute of limitations,

which states a legal conclusion to which no response is required.

72.     The Community Development Loans do not constitute "Senior Indebtedness"

under the Subordination Agreement, they do not enjoy the priority rights created by the Credit

Agreement, and they do not take precedence over the Seller Notes.

RESPONSE:  ST Paper denies the allegations contained in Paragraph 72 of the Amended

Complaint.

73.     Instead, the Community Development Loans are entirely new loans on entirely

different terms.  Among other differences:

a.      The Goldman Loans were paid off for approximately $24 million, but the
        principal amount of the new Community Development Loans is allegedly almost
        four times that figure; and

b.      The Goldman Loans were set to expire by March 31, 2013, but the new
        Community Development Loans, according to Tak, will remain outstanding for
        many years, possibly indefinitely.

RESPONSE:  ST Paper denies the allegations of Paragraph 73 of the Amended

Complaint and affirmatively alleges that the documents speak for themselves.

74.     Declaring that these new "loans" – of much greater value and longer duration –

are somehow senior to the Seller Notes would fundamentally change the terms of the deal that

OFTI agreed to.

RESPONSE:  ST Paper denies the allegations of paragraph 74 of the Amended

Complaint.

75.     ST Paper has no right to unilaterally place new debts in front of OFTI in priority of payment.  OFTI did not agree to give ST Paper such a blank check and never would have agreed to do so, for that would erase the value of the Seller Notes and undermine the whole basis of the original transaction between OFTI and ST Paper.  Moreover, there have never been any written modifications to the Subordination Agreement by substituting parties or any other signatories thereto.

RESPONSE:  ST Paper denies the allegations contained in Paragraph 75 of the Amended Complaint.

76.     Nor are the new Community Development Loans a "Permitted Refinancing" of the original Goldman Loans under the Subordination Agreement.  None of the new "loans" were permitted or in compliance with the original loan documents.  Moreover, at least in the case of the $63 million "loan," they were in no way a refinancing of the $24 million Goldman payoff.

RESPONSE:  ST Paper denies the allegations of Paragraph 76 of the Amended Complaint.

77.     None of the original loan documents – not the Credit Agreement, not the Goldman mortgage, not the Subordination Agreement, and not any other documents – were assigned to the CDEs.  And the new CDE "loan" documents did not replace, or even purport to replace, the original loan documents.  Indeed, they make no mention of the original documents.

RESPONSE:  ST Paper admits the first sentence of Paragraph 77 of the Amended Complaint.  ST Paper denies the remaining allegations of Paragraph 77 of the Amended Complaint.

78.     The Credit Agreement (in paragraph 9.6(a)) provides that "[n]othing in this Agreement, expressed or implied, shall be construed to confer upon any Person" other than the

parties, certain affiliates, and their "respective successors and assigns permitted hereby" any

"legal or equitable right."  The Credit Agreement then lays out detailed requirements and

procedures for a new entity to become a permitted successor or assign.

RESPONSE:  ST Paper admits the first sentence of Paragraph 78 of the Amended

Complaint.  ST Paper denies the remaining allegations of Paragraph 78 of the Amended

Complaint and affirmatively alleges that the document speaks for itself.

79.     The CDEs do not meet those requirements and did not follow those procedures.

Among other things, they never executed or delivered to Goldman any Assignment Agreement,

as would have been required.

RESPONSE:  ST Paper denies the allegations of Paragraph 79 of the Amended

Complaint.

80.     That is because the Community Development Loans are not and were not in fact

structured to replace or refinance ST Paper's original debt obligations.

RESPONSE:  ST Paper denies the allegations contained in Paragraph 80 of the Amended

Complaint.

81.     By refusing to pay OFTI under the Seller Notes on the basis of the new

Community Development Loans, ST Paper is trying to create and exploit a perceived "loophole"

in the Subordination Agreement to deprive OFTI of the benefit of its bargain.

RESPONSE:  ST Paper denies the allegations contained in Paragraph 81 of the Amended

Complaint.

82.     The terms of the Subordination Agreement and applicable law prohibit ST

Paper's attempt to avoid its obligations.  Indeed, paragraph 11.A of the Subordination Agreement

expressly states that it "shall not be deemed to create any rights or priorities in favor of any other

party," such as the third-party CDEs.  Moreover, the same provision states that ST Paper's duty to pay on the Seller Notes is "unconditional and absolute" and that "nothing contained herein shall impair" that obligation.

RESPONSE:  ST Paper denies the allegations contained in the first sentence of Paragraph 82 of the Amended Complaint.  ST Paper admits that the Subordination Agreement contains the language cited in Paragraph 82 of the Amended Complaint, but denies that the cited language refers to third-party CDEs, and affirmatively alleges that the document speaks for itself.

### F.      Tak Also Breached the Parties' Other Agreements.

83.      In what has unfortunately become a pattern of refusing to honor his commitments to OFTI and related companies including Tissue Technology LLC, Tak also violated the parties' other, related agreements.

RESPONSE:  ST Paper denies the allegations contained in Paragraph 83 of the Amended Complaint.

84.      Tak breached the sales and marketing agreement by cutting off and refusing to pay Tissue Technology's commissions on incoming sales.

RESPONSE:  ST Paper denies the allegations contained in Paragraph 84 of the Amended Complaint.

85.      Tak also breached the Final Business Terms Agreement by refusing to confer the agreed ownership interests to Tissue Technology after Johnson Bank drew on his collateral and Tissue Technology cancelled the $16.4 million notes.

RESPONSE:  ST Paper denies the allegations contained in Paragraph 85 of the Amended Complaint.

20301426.1

86. OFTI now brings this action, to enforce the Seller Notes and to collect the rest of the consideration that ST Paper agreed to pay when it bought OFTI's paper mill nearly a decade ago.

RESPONSE: Admits that Plaintiff brings the action as stated in this matter but denies that Plaintiff is entitled to any relief.

## IV.     CLAIMS FOR RELIEF

### Count One:
### Breach of Contract – ST Paper

87. OFTI reincorporates herein as if fully set forth all of its preceding allegations of this Amended Complaint.

RESPONSE: ST Paper reincorporates as if fully set forth all preceding paragraphs.

88. The Seller Notes contain valid and enforceable promises to pay.

RESPONSE: ST Paper admits the allegations contained in Paragraph 88 of the Amended Complaint with all documents subject to the terms and conditions they contain and the affirmative defenses contained here.

89. OFTI is the holder of the Seller Notes and is entitled to enforce them.

RESPONSE: ST Paper denies the allegations contained in Paragraph 89 of the Amended Complaint.

90. The full amount of principal and interest under the Seller Notes became due and payable on April 16, 2015.

RESPONSE: ST Paper denies the allegations contained in Paragraph 90 of the Amended Complaint.

91. There is no outstanding Senior Indebtedness to which the Seller Notes are subordinated.

20301426.1

RESPONSE:  ST Paper denies the allegations contained in Paragraph 91 of the Amended Complaint.

92.     Therefore, ST Paper has a present obligation to pay the full amount of principal and interest under the Seller Notes.

RESPONSE:  ST Paper denies the allegations contained in Paragraph 92 of the Amended Complaint.

93.     ST Paper has refused to make such payment in violation of the express terms of the Seller Notes.

RESPONSE:  ST Paper denies the allegations contained in Paragraph 93 of the Amended Complaint.

94.     In addition, ST Paper's attempts to avoid payment under the Seller Notes, as detailed above, violate the contractual covenant of good faith and fair dealing.

RESPONSE:  ST Paper denies the allegations contained in Paragraph 94 of the Amended Complaint.

95.     ST Paper's breaches have directly harmed OFTI by depriving it of the value of the Seller Notes and of the underlying assets it sold to ST Paper.

RESPONSE:  ST Paper denies the allegations contained in Paragraph 95 of the Amended Complaint.

**Count two (in the alternative)**
**Unjust Enrichment – ST Paper**

96.     Plaintiff OFTI reincorporates herein as if fully set forth all of its preceding allegations of this Amended Complaint.

RESPONSE:  ST Paper reincorporates as if fully set forth all preceding paragraphs.

97.     By acquiring and retaining OFTI's former assets without paying full value, ST Paper has been unjustly enriched.

RESPONSE:  ST Paper denies the allegations contained in Paragraph 97 of the Amended Complaint.

98.     ST Paper's enrichment has been at OFTI's expense, as OFTI still has not received full compensation for the sale of its assets.

RESPONSE:  ST Paper denies the allegations contained in Paragraph 98 of the Amended Complaint.

99.     It would be unjust and inequitable to allow ST Paper to retain the assets without restitution to OFTI.

RESPONSE:  ST Paper denies the allegations contained in Paragraph 99 of the Amended Complaint.

## Count Three:
### Breach of Contract – VHC, Inc., David Van Den Heuvel and Nicolet Bankshares, Inc.

100.    Plaintiff OFTI reincorporates herein as if fully set forth all of its preceding allegations of this Amended Complaint.

RESPONSE:  ST Paper reincorporates as if fully set forth all preceding paragraphs.

101.    On or about September 10, 2010, plaintiff OFTI assigned and transferred Notes 3 and 4 to Defendant VHC, Inc.  Prior to that time, OFTI had transferred the original Note to Nicolet National Bank to hold as collateral.  Note 4 was still in the possession of OFTI and was provided to VHC, Inc. as collateral.

RESPONSE:  ST Paper lacks sufficient knowledge or information to answer the allegations contained in Paragraph 101 of the Amended Complaint and incorporates by reference the response to Paragraph 6 above.

20301426.1

102. Both Notes 3 and 4 were always intended to be collateral only in the hands of VHC, Inc.

RESPONSE: ST Paper lacks sufficient knowledge or information to answer the allegations contained in Paragraph 102 of the Amended Complaint and incorporates by reference the response to Paragraph 6 above.

103. Despite the transfer of said Seller Notes 3 and 4, it was always the intention of the parties that upon payment of the debt associated with the assignment, the original Notes would be returned to the plaintiff company for the purpose of collecting on the additional proceeds over and above the secured amounts.

RESPONSE: ST Paper lacks sufficient knowledge or information to answer the allegations contained in Paragraph 103 of the Amended Complaint and incorporates by reference the response to Paragraph 6 above.

104. On or about December 3, 2010, defendants VHC, Inc. and David Van Den Heuvel acting on behalf of VHC, executed a Settlement Agreement & Release by and between Tak Investments, Inc. and VHC, Inc. regarding Notes 3 and 4. The Settlement Agreement and Release is attached hereto as Exhibit L.

RESPONSE: ST Paper admits the allegations contained in Paragraph 104 of the Amended Complaint and incorporates by reference the response to Paragraph 6 above.

105. At all times relative hereto, defendant Nicolet Bankshares acted as the escrow agent for the transaction by and between defendant VHC, Inc. and Tak Investments, Inc.

RESPONSE: ST Paper admits the allegations contained in Paragraph 105 of the Amended Complaint.

20301426.1

106.    The agreement by and between Tak Investments, Inc. and VHC, Inc., to which Nicolet Bankshares was a party as the "escrow agent," provided that upon payment of certain debts, Tak Investments, Inc. owed to Nicolet Bankshares, Notes 3 and 4 were to be released and assigned to Tak Investments, Inc.  Upon information and belief, the Notes were delivered to Tak Investments, Inc. in December of 2018 after the obligations of Tak Investments, Inc. were paid in full to Nicolet Bank.

RESPONSE:  ST Paper admits the allegations contained in Paragraph 106 of the Amended Complaint and incorporates by reference the response to Paragraph 6 above.

107.    The agreement by and between Tak Investments, Inc., VHC, Inc. and Nicolet Bankshares, Inc. provided that Notes 3 and 4 were to be provided to Tak Investments, Inc. upon payment of a Note to Nicolet Bankshares owed by Tak Investments, Inc. and guaranteed by VHC, Inc.  In using the Escrow Agreement, and the subsequent Assignment, VHC, Inc. transferred what is now more than $30 million owed under the two Notes to Tak Investments, Inc. for nothing more than a guarantee to make payments Tak Investments, Inc. was already required to make.  The only advantage for VHC, Inc. was that it would insure that its guarantee of the debt of Tak Investments, Inc. to Nicolet Bankshares would be extinguished.

RESPONSE:  ST Paper admits the first sentence of Paragraph 107 of the Amended Complaint.  ST Paper denies the remaining allegations of Paragraph 107 of the Amended Complaint.

108.    All times relative hereto, VHC, Inc. and its Chief Executive Officer, David Van Den Heuvel, knew that there was significant value in said Notes but nevertheless ignored the fact that the Notes were intended to be security for debts owed by OFTI to VHC, Inc.

20301426.1

RESPONSE:  ST Paper lacks sufficient knowledge or information to answer the allegations contained in Paragraph 108 of the Amended Complaint.

109.    The Notes in question were of significantly greater value than the amounts owed by Plaintiff OFTI to VHC, Inc.

RESPONSE:  ST Paper lacks sufficient knowledge or information to answer the allegations contained in Paragraph 109 of the Amended Complaint.

110.    As a result of the foregoing, VHC, Inc. breached its contract and agreements with OFTI relating to Notes 3 and 4 thereby entitling OFTI to damages in an undetermined amount.

RESPONSE:  ST Paper lacks sufficient knowledge or information to answer the allegations contained in Paragraph 110 of the Amended Complaint.

**Count Four:**
**Breach of Fiduciary Duty – VHC, Inc., David Van Den Heuvel and Nicolet Bankshares**

111.    Plaintiff OFTI reincorporates herein as if fully set forth all of its preceding allegations of this Amended Complaint.

RESPONSE:  ST Paper reincorporates as if fully set forth all preceding paragraphs.

112.    When VHC, Inc., at the behest of David Van Den Heuvel, and Nicolet Bankshares, executed the Escrow Agreement dated December 3, 2010, they knew at all times that plaintiff OFTI was owed certain sums of money by ST Paper, LLC reflected in said Notes which was greater than the amount of the Notes at that time.

RESPONSE:  ST Paper lacks sufficient knowledge or information to answer the allegations contained in Paragraph 112 of the Amended Complaint.

113.    Despite that knowledge, VHC, Inc., David Van Den Heuvel and Nicolet Bankshares entered into the Escrow Agreement wherein and whereby all interest of plaintiff OFTI was extinguished.

RESPONSE:  ST Paper lacks sufficient knowledge or information to answer the allegations contained in Paragraph 113 of the Amended Complaint.

114.     The actions of VHC, Inc., David Van Den Heuvel and Nicolet Bankshares were done in an intentional, reckless and indifferent manner contrary to the duties they all owed to OFTI and as outlined in Wis. Stat. § 409.607, which duties included preserving the amounts owed to OFTI over and above the amounts owed by OFTI to VHC under Notes 3 and 4 and prosecuting the notes against the maker.

RESPONSE:  ST Paper lacks sufficient knowledge or information to answer the allegations contained in Paragraph 114 of the Amended Complaint.

115.     Nicolet Bankshares owed a fiduciary duty to plaintiff OFTI because Nicolet Bankshares was holding said Notes for the benefit of OFTI, which was also a customer of Nicolet Bankshares and contrary to the fiduciary duties owed to OFTI.

RESPONSE:  ST Paper lacks sufficient knowledge or information to answer the allegations contained in Paragraph 115 of the Amended Complaint.

116.     The actions of Nicolet Bankshares, VHC, Inc. and David Van Den Heuvel all violated their fiduciary duties, done in bad faith, thereby entitling plaintiff OFTI to punitive damages, as well as actual damages, for said breaches.

RESPONSE:  ST Paper lacks sufficient knowledge or information to answer the allegations contained in Paragraph 116 of the Amended Complaint.

**Count Five:**
**Fraudulent Transfer – VHC, Inc., David Van Den Heuvel and Nicolet Bankshares**

117.     Plaintiff OFTI reincorporates herein as if fully set forth all of its preceding allegations of this Amended Complaint.

RESPONSE:  ST Paper reincorporates as if fully set forth all preceding paragraphs.

31

118.    The transfer of Notes 3 and 4 to Tak Investments, Inc. as described was a fraudulent transfer, as that is described in Chapter 242 of the Wisconsin Statutes, in that the transfer was made without the knowledge or consent of OFTI and in derogation of the rights of OFTI and for no consideration or meager consideration wholly out of proportion to the amounts due under the notes.

RESPONSE:  ST Paper lacks sufficient knowledge or information to answer the allegations contained in Paragraph 118 of the Amended Complaint.

119.    Said fraudulent transfer thereby entitles plaintiff OFTI to actual damages, punitive damages, attorney's fees and the costs and disbursements of this action.

RESPONSE:  ST Paper lacks sufficient knowledge or information to answer the allegations contained in Paragraph 119 of the Amended Complaint.

**Count Six:**
**Conversion – VHC, Inc. and David Van Den Heuvel**

120.    Plaintiff OFTI reincorporates herein as if fully set forth all of its preceding allegations of this Amended Complaint.

RESPONSE:  ST Paper reincorporates as if fully set forth all preceding paragraphs.

121.    The actions of David Van Den Heuvel and VHC, Inc. converted Notes 3 and 4 for their own and sole benefit, without value and in derogation of the rights of OFTI.

RESPONSE:  ST Paper lacks sufficient knowledge or information to answer the allegations contained in Paragraph 121 of the Amended Complaint.

122.    David Van Den Heuvel and VHC, Inc. intended thereby to permanently deprive OFTI (and its creditors) of property properly theirs.

RESPONSE:  ST Paper lacks sufficient knowledge or information to answer the allegations contained in Paragraph 122 of the Amended Complaint.

123.     As a result of the conversion of said Notes, defendants VHC, Inc. and David Van

Den Heuvel are indebted to the Plaintiff for compensatory and punitive damages.

RESPONSE:  ST Paper lacks sufficient knowledge or information to answer the

allegations contained in Paragraph 123 of the Amended Complaint.

### Count Seven:
### Negligence – VHC, Inc., David Van Den Heuvel and Nicolet Bankshares

124.     Plaintiff OFTI reincorporates herein as if fully set forth all of its preceding

allegations of this Amended Complaint.

RESPONSE:  ST Paper reincorporates as if fully set forth all preceding paragraphs.

125.     The actions of VHC, Inc., David Van Den Heuvel and Nicolet Bankshares, Inc.,

in transferring Notes 3 and 4 to Tak Investments, Inc., without value and in derogation of the

rights of plaintiff OFTI was a breach of the duties owed to plaintiff OFTI which caused damage

to said company in an undetermined amount.

RESPONSE:  ST Paper lacks sufficient knowledge or information to answer the

allegations contained in Paragraph 125 of the Amended Complaint.

### Count 8:
### Breach of Contract – Ability Insurance Co.

126.     OFTI reincorporates herein as if fully set forth all of its preceding allegations of

this Amended Complaint.

RESPONSE:  ST Paper reincorporates as if fully set forth all preceding paragraphs.

127.     On or about December 10, 2013, OFTI, as security, assigned its rights to Note 1

to Maplebridge Funding, LLC as a result of a certain loan to an associated company of the

plaintiff herein.  Said assignment was to constitute additional collateral security for certain

obligations.  The note was then assigned to defendant Ability Insurance Co.

RESPONSE:  ST Paper lacks sufficient knowledge or information to answer the allegations contained in Paragraph 127 of the Amended Complaint.

128.    Upon information and belief, the Note remains in the possession of defendant Ability Insurance Co. and is held as collateral for certain obligations of OFTI in an undetermined amount.

RESPONSE:  ST Paper lacks sufficient knowledge or information to answer the allegations contained in Paragraph 128 of the Amended Complaint.

129.    Upon information and belief, Ability Insurance Co. is holding said Note as collateral, has failed and refused to attempt enforcement of said Note and has failed and refused to permit plaintiff OFTI to sue under said Note in derogation of its duties under Wis.  Stat. § 409.607.

RESPONSE:  ST Paper lacks sufficient knowledge or information to answer the allegations contained in Paragraph 129 of the Amended Complaint.

130.    Pursuant to the terms of said Note, the amount due under said Note exceeds the amount owed to Ability Insurance Co., with the proceeds thereof due and payable to plaintiff OFTI.

RESPONSE:  ST Paper lacks sufficient knowledge or information to answer the allegations contained in Paragraph 130 of the Amended Complaint.

131.    As a result of the foregoing, Plaintiff OFTI has been damaged in an undetermined amount.

RESPONSE:  ST Paper lacks sufficient knowledge or information to answer the allegations contained in Paragraph 131 of the Amended Complaint.

**Count 9:**
**Negligence – Ability Insurance Company**

132.    OFTI reincorporates herein as I f fully set forth all of its preceding allegations of this Amended Complaint.

RESPONSE:  ST Paper reincorporates as if fully set forth all preceding paragraphs.

133.    Despite due demand, Ability Insurance Company has failed and refused to sue under said Note and have failed and refused to assign said Note to OFTI to sue pursuant to the terms of same.

RESPONSE:  ST Paper lacks sufficient knowledge or information to answer the allegations contained in Paragraph 133 of the Amended Complaint.

134.    Ability Insurance Company has a duty to either enforce the Note or assign it back to plaintiff OFTI so it could sue thereon and has breached that duty thereby causing damages to plaintiff company in an undetermined amount.

RESPONSE:  ST Paper lacks sufficient knowledge or information to answer the allegations contained in Paragraph 134 of the Amended Complaint.

## V.    RELIEF REQUESTED

WHEREFORE, OFTI seeks a judgment in its favor and against the named defendants, jointly and severally, for compensatory damages in an amount to be determined, with said amount exceeding $60 million and reserves the right to request the appointment of a receiver over ST Paper's assets, and OFTI further seeks actual and punitive damages, actual attorney's fees, the costs and the disbursements of this action and such other and further relief as the Court deems just.

RESPONSE:  ST Paper denies that Plaintiff is entitled to any relief whatsoever.

## ST PAPER'S AFFIRMATIVE DEFENSES

1.      The Amended Complaint fails to state a claim upon which relief may be granted.

2.      Senior Indebtedness remains for purposes of the Subordination Agreement and, accordingly, the four Subordinated Promissory Notes Plaintiff seeks to enforce are not due.

3.      This action is barred by the Subordination Agreement, which provides that until the Senior Indebtedness is paid in full, Plaintiff may not take any action to enforce the Subordinated Promissory Notes.

4.      Upon information and belief, Plaintiff is not the actual or constructive holder of one or more of the notes it seeks to enforce in this action.

5.      Upon information and belief, Plaintiff's claim is limited or barred by its failure to mitigate damages.

6.      Plaintiff's claim may be barred by other legal and equitable defenses, including, but not limited to, unjust enrichment and accord and satisfaction.

7.      Many of the legal and factual issues raised in the Amended Complaint are barred by the doctrines of res judicata, estoppel, laches and/or the statutes of limitation.   For the last nine years, the Plaintiff, Ronald Van Den Heuvel, and related entities have pursued litigation against ST Paper, Tak Investments, Inc. and related entities in federal and state courts.  Without exception, all of those efforts have been unsuccessful, and their resolution precludes their assertion here.  *See Partners Concept Development, Inc. v. ST Paper, LLC*, Case No. 10 CV 2714 (Brown Cty., Wis. filed Sept. 28, 2010); *Tissue Technology, LLC v. ST Paper, LLC*, Case No. 10 CV 2779 (Brown Cty., Wis. filed October 6, 2010); *Tissue Technology, LLC v. Tak Investments, LLC,* Case No. 12 CV 1305 (E.D. Wis. filed Dec. 21, 2012); *Tissue Technology, LLC v. ST Paper, LLC*, Case No. 13 CV 186 (Oconto Cty., Wis. filed July 26, 2013); *Tissue*

*Technology, LLC v. ST Paper, LLC*, Case No. 14 CV 156 (Oconto Cty., Wis. filed Aug. 21, 2014); *Tissue Technology, LLC v. Tak Investments, LLC,* Case No. 14 CV 1203 (E.D. Wis. filed Sept. 30, 2014);

8.      The four Subordinated Promissory Notes Plaintiff seeks to enforce expressly incorporated the Subordination Agreement executed by Plaintiff, through which Plaintiff expressly consented to the jurisdiction of the courts of the State of New York in the County of New York or the courts of the United States District Court for the Southern District of New York.  Thus, Plaintiff has brought this action in the wrong forum.

9.      Any recovery by Plaintiff pursuant to the Subordinated Promissory Notes is offset by at least $76,493,000, exclusive of interest, as a result of Plaintiff's obligation to indemnify ST Paper pursuant to Article IX of the April 16, 2007 Second Amended and Restated Asset Purchase Agreement ("APA").  ST Paper's claim for indemnification against Plaintiff and Partners Concepts Development, Inc., Tissue Technology, LLC and Tissue Products Technology, Corp. pursuant to the APA is subject to ongoing litigation in this Court in the case styled *Tissue Technology, LLC v. ST Paper, LLC*, Case No. 14 CV 156 (Oconto Cty., Wis. filed Aug. 21, 2014).

10.      Any recovery by Plaintiff pursuant to the Subordinated Promissory Notes is also offset by at least $6,500,000, exclusive of interest, as a result of a Compromise Agreement dated March 31, 2009 entered into by Oconto Falls Tissue, Inc., Tissue Products Technology Corp., Tissue Technology, LL, Eco Fibre, Inc. and ST Paper, LLC.

11.      Any recovery by Plaintiff pursuant to the Subordinated Promissory Notes is further offset by at least $642,303.37 for amounts due and owing from Plaintiff to ST Paper, as memorialized in the Compromise Agreement dated March 31, 2009.

12.     ST Paper reserves the right to amend its affirmative defenses as it learns

information through discovery in this matter.

### REQUEST FOR RELIEF

WHEREFORE, Defendant ST Paper, LLC requests that the Amended Complaint be

dismissed and it be awarded its costs, together with all other appropriate relief.

Dated this 28th day of March, 2019.

*GODFREY & KAHN, S.C.*

*Electronically Signed By s/ Jonathan T. Smies*

    Jonathan T. Smies
    State Bar No. 1045422

Attorneys for Defendant ST Paper, LLC

<u>P.O. ADDRESS</u>:
200 South Washington Street, Suite 100
Green Bay, WI 54301-4298
Phone:  920-432-9300
Fax:  920-436-7988
jsmies@gklaw.com

20301426.1