**FILED**
**03-16-2020**
**Clerk of Courts**
**Oconto County WI**
**2017CV000104**

STATE OF WISCONSIN    :    CIRCUIT COURT    :    OCONTO COUNTY
BRANCH 2

---

OCONTO FALLS TISSUE, INC.,

          Plaintiff,

   v.

ST PAPER, LLC,

          Defendant.

Case No. 17 CV 104

Code No(s). 30303

---

ST PAPER, LLC,

          Third-Party Plaintiff,

   v.

TISSUE TECHNOLOGY, LLC,
PARTNERS CONCEPTS DEVELOPMENT,
INC., and TISSUE PRODUCTS
TECHNOLOGY CORP.,

          Third-Party Defendants.

---

## DEFENDANT AND THIRD-PARTY PLAINTIFF ST PAPER, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

---

Defendant and Third-Party Plaintiff ST Paper, LLC ("ST Paper"), by and through its attorneys, Godfrey & Kahn, S.C., submits the following memorandum of law in support of its motion for summary judgment.

### <u>INTRODUCTION</u>

Nearly 13 years ago, Ron Van Den Heuvel, through his company, Oconto Falls Tissue, Inc. ("OFTI"), sold the assets of a paper mill in Oconto Falls to ST Paper, LLC.  For much of the



last decade, Mr. Van Den Heuvel, or companies affiliated with him, have pursued Sharad Tak and his companies through a series of civil litigation matters, all unsuccessful. Although Mr. Van Den Heuvel has been twice convicted in federal court of fraud charges and remains in the custody of the Bureau of Prisons, this lawsuit represents the last case pending by companies formerly affiliated with Van Den Heuvel against ST Paper. Now is the time for the Court to put an end to this long saga of litigation by granting ST Paper summary judgment and dismissing this case.

OFTI has two claims: one for breach of contract for ST Paper's failure to pay on the four subordinated promissory notes it made in connection with the sale of the mill on April 16, 2007 (the "Seller Notes"), as well as a claim for unjust enrichment. Summary judgment is appropriate in this matter for the following reasons:

*First*, the undisputed evidence – in plain language – establishes that the four Seller Notes OFTI seeks to enforce are subject to a Subordination Agreement. The Subordination Agreement, as well as the very terms of the notes themselves, dictate that the subordinated Seller Notes are not due so long as senior debt exists. The undisputed evidence also establishes that the senior debt from the 2007 transaction remains. The fact that ST Paper refinanced the original debt in 2010 does not change this. The Subordination Agreement itself explicitly permits refinancing. Indeed, the Subordination Agreement allows ST Paper to engage in a "Permitted Refinancing." Because the senior debt remains, OFTI's claims are not ripe for resolution by this Court. Accordingly, the Court should grant ST Paper's summary judgment on OFTI's claims for breach of contract since no obligation under the Seller Notes has yet arisen.

*Second*, to the extent OFTI seeks to maintain a claim for unjust enrichment, such a claim must be dismissed, given the fact it is simultaneously maintaining a claim for breach of contract

21981997.6

against ST Paper.  A claim for unjust enrichment is only proper when the existence of a contract is in doubt.  Here, there is no dispute that ST Paper executed the four Seller Notes on April 16, 2007.  Accordingly, OFTI can have no recourse to any of the remedies afforded by a claim for unjust enrichment, and the Court should dismiss this claim.

*Third*, beyond the two above-identified reasons to grant summary judgment, to the extent the Court declines to provide such relief, it should grant ST Paper partial summary judgment with respect to three of the four Seller Notes OFTI seeks to enforce.  This Court's prior Decision and Order and OFTI's own pleadings make plain that OFTI lacks standing to enforce Seller Notes Nos. 1, 3, and 4 because it assigned or transferred these three notes to third parties.  Accordingly, at the least, the Court should grant ST Paper partial summary judgment and dismiss any claims of OFTI to enforce Seller Notes No. 1, 3, and 4.

*Fourth*, OFTI admitted in discovery that it is not in possession of the original of the April 16, 2007 Note No. 2, filed with the Amended Complaint, but only a different note pre-dating the transaction and dated April 11, 2007.  Moreover, OFTI still has failed to produce the original of the April 16, 2007 Note No. 2 after ST Paper requested an inspection of the document.  Thus, the Court should grant ST Paper partial summary judgment and dismiss OFTI's claim to enforce Seller Note No. 2.  Without possession of the original of Note No. 2, OFTI cannot enforce it.

*Finally*, the Court should award ST Paper partial summary judgment with respect to its affirmative defense relating to the Compromise Agreement entered into between OFTI and ST Paper on or about March 31, 2009.  The effect of the Compromise Agreement is to reduce any amount due and owing between the parties upon the non-occurrence of a condition, namely of OFTI paying ST Paper a certain amount on or before July 29, 2009.  Because that did not occur,

as established by OFTI's discovery responses and the Affidavit of Sharad Tak, the Compromise Agreement reduces in any amounts ST Paper owes to OFTI by $6,500,000. Thus, the Court should grant ST Paper partial summary judgment with respect to its affirmative defense and hold that ST Paper is entitled to an offset of $6,500,000, plus amounts admittedly due from OFTI to ST Paper of $642,303.37 and $66,305.52, should any amount be due in this matter pursuant to OFTI's claims.[1]

## FACTUAL BACKGROUND

### I.   Prior Litigation

ST Paper operates a paper mill in Oconto Falls, Wisconsin. (Affidavit of Sharad Tak ("Tak Aff.") ¶¶ 2, 10.) Plaintiff Oconto Falls Tissue, Inc. ("OFTI") formerly operated the mill. In 2007, ST Paper acquired the assets of the mill from OFTI and certain of its affiliated companies. (Tak Aff. ¶¶ 3, 7.) At that time, OFTI's principal owner was Ron Van Den Heuvel. ST Paper's principal is Sharad Tak.

This lawsuit is but one battle in a larger and longer litigation crusade conducted by companies affiliated with Mr. Van Den Heuvel against companies affiliated with Mr. Tak. For nearly the entirety of the last decade, OFTI and/or companies affiliated with it have pursued ST Paper, Tak Investments, Inc. and related entities, in federal and state courts. Without exception, all of those efforts have been unsuccessful. *See Partners Concept Development, Inc. v. ST Paper, LLC*, Case No. 10 CV 2714 (Brown Cty., Wis., filed Sept. 28, 2010); *Tissue Technology, LLC v.*

---

[1] In addition to these obligations of OFTI mandated by the Compromise Agreement, these amounts are also due to ST Paper as an offset pursuant to the April 16, 2007 Second Amended and Restated Asset Purchase Agreement. Paragraph 9.4 of that document states that ST Paper is entitled to a set-off against any amounts payable to OFTI, to include amounts due under the Seller Notes, of any amount claimed by ST Paper pursuant to the indemnification provision contained in Paragraph 9.1 of the same agreement. Because Paragraph 9.1 requires OFTI to indemnify ST Paper for any failure to pay or perform any liability or obligation other than certain assumed liabilities, this provides a basis for set-off in addition to the Compromise Agreement.

21981997.6

*ST Paper, LLC,* Case No. 10 CV 2715 (Brown Cty., Wis., filed Sept. 28, 2010); *Tissue Technology, LLC v. ST Paper, LLC*, Case No. 10 CV 2779 (Brown Cty., Wis., filed October 6, 2010); *Tissue Technology, LLC v. Tak Investments, LLC*, Case No. 12 CV 1305 (E.D. Wis., filed Dec. 21, 2012); *Tissue Technology, LLC v. ST Paper, LLC*, Case No. 13 CV 186 (Oconto Cty., Wis., filed July 26, 2013); *Tissue Technology, LLC v. ST Paper, LLC*, Case No. 14 CV 156 (Oconto Cty., Wis., filed Aug. 21, 2014), *rev'd*, 2018 WI App 45, 383 Wis. 2d 603, 918 N.W.2d 128 (reversing – after granting a discretionary appeal – denial of summary judgment to ST Paper, LLC), *pet. denied*, 2018 WI 111, 384 Wis. 2d 467, 922 N.W.2d 303; *Tissue Technology, LLC v. Tak Investments, LLC*, 320 F. Supp. 3d 993 (E.D. Wis. 2018), *aff'd* 910 F.3d 1001 (7th Cir. 2018).

In fact, companies affiliated with Mr. Tak hold two different judgments in their favor resulting from awards of attorneys' fees against Mr. Van Den Heuvel's companies. ST Paper holds a judgment against Tissue Technology, LLC in the amount of $34,391.00 for ST Paper's attorney's fees in *Tissue Technology, LLC v. ST Paper, LLC*, Case No. 10 CV 2715 (Brown Cty., Wis., filed Sept. 28, 2010). Tak Investments, LLC, holds a judgment against OFTI, Tissue Technology, Partners Concepts Development, Inc., and Tissue Products Technology Corp. for $181,695.50 after Tak Investments, LLC prevailed at trial and on appeal in the case of *Tissue Technology, et al. v. Tak Investments, LLC*, Case No. 14 CV 1203 (E.D. Wis., filed Sept. 30, 2014), *aff'd* 910 F.3d 1001 (7th Cir. 2018).

While Mr. Van Den Heuvel at one time directed these cases, he apparently no longer directs OFTI's litigation against ST Paper. Mr. Van Den Heuvel was convicted of fraud-related charges in two federal cases and is now serving his adjudged term of confinement of seven and a half years. *See United States v. Van Den Heuvel et al.*, Case No. 16-CR-64 (E.D. Wis., filed

April 19, 2016); *United States v. Van Den Heuvel*, Case No. 17-CR-160 (E.D. Wis., filed Sept. 19, 2017).

Here, OFTI attempts to enforce four subordinated Seller Notes in an effort to collect more than $60 million in principal and interest. OFTI and ST Paper agree that ST Paper made four notes in connection with partial financing provided by Plaintiff in the sale of the assets of the mill on April 16, 2007. That is about all OFTI and ST Paper agree on in this litigation – and all they have ever agreed upon.

## II.     The Asset Sale with Seller Financing Through Subordinated Notes

On April 16, 2007, OFTI and affiliated companies, Tissue Products Technology Corp. and Partners Concepts Development, Inc., entered into a Second Amended and Restated Asset Purchase Agreement with ST Paper and ST Paper Holdings, LLC, transferring the assets of the Oconto Falls paper mill to ST Paper. (Tak Aff. ¶ 7, Ex. F.) Part of this transaction involved ST Paper making "Subordinated Promissory Notes" promising to pay OFTI $30,589,000 million in principal once the Senior Indebtedness has been paid.   "Note No. 1," as well as "Note No. 2" and "Note No. 3," were each in the principal amount of $8 million. (Tak Aff., Exs. B, C and D.) "Note No. 4" was in the principal amount of $6,589,000. (Tak Aff., Ex. E.)

Collectively, these subordinated notes, all made on April 16, 2007, are referred to by the parties as the "Seller Notes," as all four explicitly reference and attach a Subordination Agreement dated April 16, 2007. The Subordination Agreement was entered into by OFTI and ST Paper, with Goldman Sachs Credit Partners L.P. ("Goldman Sachs") also signing in its capacity as administrative agent for ST Paper's lenders and collateral agent for the secured parties. (Tak Aff. ¶ 5, Ex. A.)

The fact that the Seller Notes were explicitly subordinated to the Senior Indebtedness specified in the Subordination Agreement is plain not only from the fact that all four notes were titled "Subordinated Promissory Note." If that were not enough, the following conspicuously highlighted disclosure appears at the top of each of the Seller Notes:

> **THIS NOTE AND THE INDEBTEDNESS EVIDENCED HEREBY IS SUBORDINATE IN THE MANNER AND TO THE EXTENT SET FORTH HEREIN AND IN THE SUBORDINATION AGREEMENT, DATED AS OF APRIL 16, 2007 (THE "SUBORDINATION AGREEMENT"), BY AND AMONG ST PAPER, LLC, OCONTO FALLS TISSUE, INC. AND GOLDMAN SACHS CREDIT PARTNERS L.P., AS ADMINISTRATIVE AGENT AND COLLATERAL AGENT, TO THE SENIOR INDEBTEDNESS (AS DEFINED IN THE SUBORDINATION AGREEMENT). THE HOLDER OF THIS NOTE, BY ITS ACCEPTANCE HEREOF, SHALL BE BOUND BY THE PROVISIONS OF THE SUBORDINATION AGREEMENT.**

(Tak Aff., Exs. B-D.) The Subordination Agreement itself was an inducement and a condition precedent for Goldman Sachs to fund the purchase of the mill. Protected by the Subordination Agreement, Goldman Sachs agreed to lend ST Paper up to $70,000,000 (consisting of term loans in an aggregate amount of $65,000,000 and revolving loans in an aggregate amount up to $5,000,000). (Tak Aff. ¶ 4.)

## III.    ST Paper's Permitted Refinancing in 2010

On April 30, 2010, ST Paper entered into a transaction with a number of different lenders to refinance the Senior Indebtedness administered by Goldman Sachs. In this transaction, ST Paper borrowed funds from eight different entities, specifically WCDLF SUB-CDE XXIV, LLC, WCDLF SUB-CDE XXV, LLC, USBCDE SUB-CDE LX, LLC, STP/NCF SUB-CDE, LLC, STP-2 SUB-CDE, LLC, NNMF SUB-CDE X, LLC, CAPFUND CDE ONE LLC, and CAPMARK CDF SUBFUND III, LLC. (Tak Aff. ¶ 11.) ST Paper used these funds to pay in full the debt originally administered by Goldman Sachs. As a part of this refinancing

transaction, ST Paper became obligated for Senior Indebtedness through 16 promissory notes. (Tak Aff. ¶ 11, Ex. H.)  The transaction was structured as a Permitted Refinancing pursuant to the Subordination Agreement.

The Subordination Agreement specifically provides for a "Permitted Refinancing" of the Senior Indebtedness, defined as "any refinancing of the Senior Indebtedness under the Loan Documents provided that the financing documentation entered into by Borrower in connection with such Permitted Refinancing constitutes Permitted Refinancing Loan Documents."  (Tak Aff., Ex. A at 2.)  The agreement goes on to define "Permitted Refinancing Loan Documents" as "any financing documentation which replaces the Loan Documents and pursuant to which the Senior Indebtedness under the Loan Documents is refinanced, as such financing documentation may be amended, restated, supplemented or otherwise modified from time to time." (*Id.*)  The 2010 transaction, through which ST Paper obtained replacement Senior Indebtedness to refinance the senior debt originally administered by Goldman Sachs, was such a Permitted Refinancing.

## IV.    OFTI Assigns or Transfers Three of the Four Seller Notes

On September 10, 2010, OFTI endorsed Note No. 4 to VHC, Inc., a company affiliated with Mr. Van Den Heuvel's family.  (Am. Compl., Ex. F.)  The endorsement indicated that the original note was attached to the document, and that the note was assigned and transferred to VHC, Inc. and endorsed as payable to the order of VHC, Inc.  On the same day, OFTI also endorsed Note No. 3 to VHC, Inc. (Am. Compl., Ex. F.)  The endorsement noted that the original note was in the possession of Nicolet National Bank.   Copies of these endorsements are attached as Exhibits E and F to OFTI's Amended Complaint.

As a result of an Escrow Agreement dated December 3, 2010 between Tak Investments, Inc., VHC, Inc., Spirit Construction Services, Inc., Vos Electric, Inc. and Nicolet National Bank, Tak Investments, Inc. now holds the original Note No. 3 and Note No. 4 after the two instruments were released from escrow at Nicolet National Bank. (Affidavit of Jonathan T. Smies ("Smies Aff.") ¶¶ 7, 8.)

In this Court's prior order, in its Memorandum Decision of July 29, 2019, the Court held that Note Nos. 3 and 4 were transferred outright from OFTI to VHC, Inc. (Dkt. # 110.) With respect to Note Nos. 3 and 4, the Court found that based upon the very exhibits Plaintiff attached to its Amended Complaint, which the Court found to be controlling on the question, the documents "represent an outright transfer of the Notes to VHC, Inc. without any reference to collateral." (*Id.*)

On December 11, 2013, Mr. Van Den Heuvel signed an Assignment of Rights on behalf of Green Box NA Green Bay, LLC, assigning Note No. 1 to Maple Bridge Funding, LLC. (Am. Compl., Ex. C.) The same day, Maple Bridge Funding, LLC executed an Allonge directing that payment of Note No. 1 would be to the order of Ability Insurance Company. (Am. Compl., Ex. D.) As a result of these transactions, Note No. 1 is held by Ability Insurance Company. Copies of these documents are attached as Exhibits C and D to OFTI's Amended Complaint.

**V.     OFTI Is Not In Possession of the Original April 16, 2007 Note No. 2.**

In light of the above, the only Seller Note that OFTI could conceivably possess is Note No. 2, though OFTI has yet to produce the original document. Indeed, when asked in discovery to admit that it was not in possession of the original Note No. 2, OFTI denied the request for admission but admitted it was not in possession of "the note filed with the complaint." (Smies Aff., ¶ 3, Ex. B.) OFTI based its denial on its claim to possess a different note signed after the

closing on the sale of the paper mill on April 16, 2007, which indicated Mr. Tak was signing as a

"Member" of ST Paper as opposed to its "President."   ST Paper's request for admission and

OFTI's response are as follows:

> **REQUEST FOR ADMISSION NO. 2:**  Admit that you are not in possession of the original Subordinated Promissory Note dated April 16, 2007 in the principal amount of $8,000,000.00 ("Note 2"), a copy of which was attached to the Complaint as Exhibit B.

> **RESPONSE NO. 2:** Deny. The Plaintiff is in possession of the original note but not the note filed with the complaint. The Plaintiff has learned since the complaint was filed that the parties executed the note attached to the complaint but it was signed by Sharad Tak as "President." Counsel for Mr. Tak learned of the error shortly after closing and the parties executed a substitute note signed by Sharad Tak as "Member."

(Smies Aff. ¶ 3, Ex. B.)

OFTI produced a copy of a Note No. 2, which it maintains replaced the note it attached to

the Amended Complaint, but the document itself does not support OFTI's account.  It is dated

April 11, 2007, *five days before* the closing of the sale of the mill on April 16, 2007.  April 16,

2007 was also the date upon which ST Paper executed all four Seller Notes at issue and the date

the Subordination Agreement was also executed.  Thus, OFTI's convenient attempt to swap out a

version of Note No. 2 from April 11, 2007 does not remedy the fact OFTI is admittedly not in

possession of the original Note No. 2 from the date of the closing of the transaction at issue in

this case on April 16, 2007.  Further, after ST Paper requested to inspect the original notes

executed on April 16, 2007, OFTI failed to produce for inspection Note No. 2 or any other note

executed on April 16, 2007.  (Smies Aff. ¶¶ 4-5.)  It could not produce what it does not have.

## VI.   OFTI and ST Paper Enter into a Compromise Agreement and OFTI Failed to Pay.

Separate and apart from the various documents OFTI executed transferring the Seller

Notes at issue in this matter, on March 31, 2009, OFTI, Tissue Technology, LLC, Tissue

Products Technology Corp., Eco Fibre, Inc., and ST Paper entered into a Compromise Agreement. (Tak Aff., Ex. G.) The document recites that ST Paper claimed that Mr. Van Den Heuvel's companies owed it certain receivables.[2] The Compromise Agreement states that the parties agreed that the amount owed ST Paper would be $6,500,000, and that if this amount were not paid by Mr. Van Den Heuvel's companies within 120 days, ST Paper would receive an offset in the amount of $6,500,000 on any amounts owed by ST Paper on the Seller Notes. Neither OFTI nor any of the other companies affiliated with Mr. Van Den Heuvel paid ST Paper $6,500,000 within 120 days following March 31, 2009. (Tak Aff., ¶ 9.)

## SUMMARY JUDGMENT STANDARDS

Summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories and admissions, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law." Wis. Stat. § 802.08(2); *Thompson v. Threshermen's Mut. Ins. Co.*, 172 Wis. 2d 275, 280, 493 N.W.2d 734 (Ct. App. 1992). The party opposing the motion may not rest on the allegations of the complaint and has the burden of establishing a triable issue of material fact. *D.S. v. Seitz*, 141 Wis. 2d 180, 186, 413 N.W. 2d 670 (Ct. App. 1987). To meet this burden, an adverse party must file affidavits or other supporting papers that outline specific facts showing that a genuine issue of material fact exists. *Bauer v. Murphy*, 191 Wis. 2d 517, 527 n.6, 530 N.W.2d 1 (Ct. App. 1995); *see also* Wis. Stat. § 802.08(3).

A court does not decide contested issues of fact, but rather decides whether a genuine issue of material fact exists. *Grams v. Boss*, 97 Wis. 2d 332, 338, 294 N.W.2d 473 (1980) (abrogated on other grounds). If no genuine issue of material fact exists or if reasonable

---

[2] Separate and apart from the agreement that $6,500,000 was owed from OFTI to ST Paper, the parties agreed that OFTI owed certain receivables to ST Paper in the amounts of $642,303.37 and $66,305.52.

inferences may not be drawn from the undisputed facts, the motion for summary judgment must

be granted. *State Bank of LaCrosse v. Elsen*, 128 Wis. 2d 508, 512, 383 N.W.2d 916 (1986). On

summary judgment, "the party asserting a claim on which it bears the burden of proof at trial

[must] 'make a showing sufficient to establish the existence of [all] element[s] essential to that

party's case.'" *Transportation Ins. Co., Inc. v. Hunzinger Const. Co.*, 179 Wis. 2d 281, 292, 507

N.W.2d 136 (Ct. App. 1993). The purpose of summary judgment motions is to avoid trials when

there is nothing to try. *Rollins Burdick Hunter of Wisconsin v. Hamilton*, 101 Wis. 2d 460, 470,

304 N.W.2d 752 (1981).

## ARGUMENT

**I.      OFTI's Attempt to Enforce the Seller Notes is Barred by the Subordination Agreement Given the Existence of Senior Indebtedness.**

The Seller Notes state that ST Paper's obligation to pay on the Seller Notes is

subordinated to the "Senior Indebtedness" as defined in the Subordination Agreement, which

OFTI itself signed, as follows:

> "Senior Indebtedness" shall mean the "Obligations," as such term is defined in the Credit Agreement, including all interest, fees, expenses, indemnities, in each instance, whether before or after the commencement of a Proceeding and without regard to whether or not an allowed claim, and all obligations and liabilities incurred with respect to Permitted Refinancings, together with any amendments, restatements, modifications, renewals or extensions of any thereof permitted hereunder.

(Tak Aff., Ex. A at 2.) The Subordination Agreement therefore contemplated that ST Paper

would be permitted to refinance the Obligations, which were the debts incurred by ST Paper in

connection with the lending to fund ST Paper's acquisition of the mill in 2007. "Senior

Indebtedness" includes "Permitted Refinancing." The document could not be clearer. It goes on

to define "Permitted Refinancing" broadly, as follows:

> "Permitted Refinancing" shall mean any refinancing of the Senior Indebtedness under the Loan Documents provided that the financing documentation entered into by Borrower in connection with such Permitted Refinancing constitutes Permitted Refinancing Loan Documents.

(Tak Aff., Ex. A at 2.)   The Subordination Agreement defines Permitted Refinancing Loan Documents:

> "Permitted Refinancing Loan Documents" shall mean any financing documentation which replaces the Loan Documents and pursuant to which the Senior Indebtedness under the Loan Documents is refinanced, as such financing documentation may be amended, restated, supplemented or otherwise modified from time to time.

(Tak Aff., Ex. A at 2.)

The undisputed facts establish that Senior Indebtedness remains for purposes of the Subordination Agreement, making OFTI's attempt to enforce the Seller Notes void.  The original obligations incurred in the debt administered by Goldman Sachs were refinanced in 2010 through a "Permitted Refinancing."  The debt ST Paper took on from eight different lenders in 2010 refinanced ST Paper's original debt from its acquisition of the mill to avoid a default.  (Tak Aff., ¶¶ 10, 11, 12.)

There is also no evidence in the record other than that these eight lenders assigned this debt to two entities, to which ST Paper is now indebted – all reflected in the promissory notes attached to Mr. Tak's affidavit.  (Tak Aff., ¶¶ 13-17, Exs. I and J.)  In short, ST Paper remains obligated to pay senior debt resulting from its 2010 refinancing of the 2007 debt.  Given the broad language of the Subordination Agreement concerning "Permitted Refinancing," the 2010 transaction plainly qualifies as such.  As a result, the Senior Indebtedness remains, which means the Seller Notes remain subordinated debt that cannot yet be collected.

The Court should grant ST Paper summary judgment on OFTI's contract claims to enforce the Seller Notes.  At best for the Plaintiff, these claims are not ripe given the existence of the Senior Indebtedness.

II.     **OFTI's Claim for Unjust Enrichment Fails Given the Existence of the Contracts at Issue in This Matter.**

There is no dispute about whether ST Paper made the four Seller Notes on April 16, 2007.  It did.  Since the parties entered into these contracts, which OFTI seeks to enforce, OFTI cannot proceed on its claim for unjust enrichment based on long-standing precedents from courts applying Wisconsin law.

If a contract covers the subject of a claim, unjust enrichment cannot be pursued in addition to the claim for breach of contract.  "The doctrine of unjust enrichment does not apply where the parties have entered into a contract."  *Continental Cas. Co. v. Wisconsin Patients Comp. Fund.*, 164 Wis. 2d 110, 118, 473 N.W.2d 584 (Ct. App. 1991).  By entering into a contract, "the parties have already bargained for the terms each is willing to accept, and no third person's sense of justice should upset the agreement into which they have freely entered."  *Northern Group, Inc. v. Tech 4 Kids, Inc.*, 352 F. Supp.3d 882, 887-88 (E.D. Wis. 2018) (Griesbach, C.J.).  Thus, "[u]njust enrichment is not a means for improving the terms of a valid contract."  *Id*. at 888.

Because there is no dispute that ST Paper executed the four Seller Notes on April 16, 2007, OFTI's unjust enrichment claim should be dismissed as a matter of law.

III.    **This Court's Prior Holding, OFTI's Own Pleadings and the Documents Attached Preclude OFTI from Enforcing Note Nos. 1, 3 and 4.**

OFTI is collaterally estopped from enforcing Note Nos. 3 and 4 based upon this Court's prior holding in its Memorandum Decision of July 29, 2019 that Note Nos. 3 and 4 were transferred outright from OFTI to VHC, Inc. (Dkt. # 110.)  With respect to Note Nos. 3 and 4, the Court found that based upon Exhibits E and F attached to the Amended Complaint by Plaintiff, which the Court found controlling on the question, the documents "represent an

14

outright transfer of the Notes to VHC, Inc. without any reference to collateral." (*Id.*)  The Court conclusively determined this issue for all purposes in this litigation in its July 29, 2019 Memorandum Decision.  Accordingly, issue preclusion applies, and OFTI is collaterally estopped from challenging the propriety of the Court's holding.  *See Precision Erecting, Inc. v. M & I Marshall & Ilsley Bank*, 224 Wis. 2d 288, 592 N.W.2d 5, 11 (Wis. App. 1998) (issue preclusion applies when the same issues arise in the same case).  This Court has already concluded that Seller Note Nos. 3 and 4 were transferred outright to VHC, Inc.  OFTI no longer has them and it is without standing to enforce these Notes.  Therefore, the Court should dismiss OFTI's claims for breach of contract with respect to Note Nos. 3 and 4.

While the Court did not address in its prior decision the effect of documents attached to the Complaint with respect to Note No. 1, the same analysis applies given the unambiguous assignment by OFTI to third parties of Note No. 1, supplemented by the Plaintiff's own allegations concerning the assignment as stated in its Amended Complaint.  There, OFTI alleged that it "assigned Note 1 to Defendant Maple Bridge Funding, LLC."  (Am. Compl. ¶ 16, Dkt. # 56.)  OFTI elsewhere alleged that on or about December 10, 2013, it "assigned its rights to Note No. 1 to Maple Bridge Funding, LLC as a result of a certain loan to an associated company of the Plaintiff."  (Am. Compl. ¶ 127.)  Further, in its Amended Complaint, OFTI sought to allege a claim of negligence against then-defendant Ability Insurance Company based upon Ability's failure and refusal to "sue under said Note" and Ability's failure and refusal to "assign said Note to OFTI to sue pursuant to the terms of same."  (Am. Compl. ¶ 133, Dkt. # 56.)  Further, Exhibit C to the Amended Complaint also plainly states that Seller Note No. 1 was assigned to Maple Bridge Funding, LLC on or about December 10, 2013.

Plaintiff's own allegations and the documents it attached to its own pleadings conclusively establish that it is without standing to enforce Note No. 1. Indeed, Plaintiff's own allegations state that Note No. 1 was assigned, and Plaintiff even alleged that a third party was negligent for failure to sue under the Note or assign the Note back to the Plaintiff. Under these undisputed facts, Plaintiff must not be permitted to proceed with its attempt to enforce Note No. 1. It lacks standing to do so.

This Court's prior decision and the Plaintiff's own allegations and documents submitted with its Amended Complaint establish as a matter of law that Plaintiff cannot enforce Note Nos. 1, 3 and 4 against ST Paper. Accordingly, ST Paper is entitled to summary judgment with respect to Plaintiff's claims for enforcement of the Seller Notes, at least with respect to Notes Nos. 1, 3 and 4.

**IV.    OFTI's Admission that it Does Not Possess the Original of the April 16, 2007 Note No. 2 Attached to the Amended Complaint and Its Failure to Produce the Original Note No. 2 Entitle ST Paper to Summary Judgment.**

OFTI's principal, Mr. Van Den Heuvel, habitually assigned promissory notes made in favor of his companies to his many creditors and those of his companies. As outlined above, it is undisputed that three of the four Seller Notes are in the hands of third parties. Two of the other notes are in the possession of Tak Investments, Inc., a company affiliated with ST Paper, as detailed above.

One of the recurring issues in lawsuits by this Plaintiff and three other companies affiliated with Mr. Van Den Heuvel was whether a party seeking to enforce a promissory note must be in possession of the note in order to do so. That case was resolved by a federal bench trial in the Eastern District of Wisconsin. *Tissue Technology, LLC v. Tak Investments, LLC*, Case No. 14 CV 1203 (E.D. Wis. filed Sept. 30, 2014). Judge Griesbach found multiple bases to

dismiss the claims in that case to enforce a different suite of promissory notes, including the fact

that the plaintiffs could not enforce notes they did not possess.  In its decision, the district court

observed:

> In order to enforce an instrument such as a promissory note, a person must be "the
> holder of the instrument, a nonholder in possession of the instrument who has
> rights of a holder, or a person not in possession of the instrument who is entitled
> to enforce the instrument under s. 403.309 [relating to lost, destroyed, or stolen
> instruments] or 403.418(4) [relating to payment by mistake]." Wis. Stat. §
> 403.301. A "holder" of a negotiable instrument is "[t]he person in possession of a
> negotiable instrument that is payable either to bearer or to an identified person
> that is the person in possession." Wis. Stat. § 401.201(2)(km). Because the Notes
> were transferred to Van Den Heuvel's creditors, TPTC, the payee, is not a holder
> and has no right to enforce them. Wis. Stat. § 403.301. Nor do any of the other
> Plaintiffs. Only the creditors to whom the Notes were transferred as security for
> Van Den Heuvel's debts have standing to enforce them. Wis. Stat. § 403.204(3);
> *see also Curtis v. Mohr*, 18 Wis. 615, 618–19 (1864) ("We suppose the law to be
> perfectly well settled that where a person takes a negotiable promissory note
> before maturity in the usual course of business, even as collateral security, and
> makes advances at the time upon the credit of such note, he is considered by all
> the authorities as a bona fide holder for value, within the rule for the protection of
> commercial paper. The indorsement and delivery of the note, under such
> circumstances, transfer to the holder the title to the instrument, and give him an
> original and paramount right of action upon it against the previous parties, so that
> he is not affected by the equities existing between them.").

*Tissue Technology, LLC, et al. v.  Tak Investments, LLC*, 320 F. Supp.3d 993, 1003 (E.D. Wis.

2018).  Since the Plaintiffs did not possess any of the notes at issue in that litigation, they lacked

standing to enforce them given the plain language of Wisconsin statutes governing the

enforcement of promissory notes.  The Seventh Circuit affirmed the decision of the district court.

*Tissue Technology, LLC v. Tak Investments, LLC*, 910 F.3d 1001 (7th Cir. 2018).

The same principles apply in this case.  Without possession of any of the four Seller

Notes, OFTI is in no position to enforce them.  The Court's prior holding and OFTI's allegations

and documents filed with its Amended Complaint preclude OFTI form enforcing Note No. 1,

Note No. 3 and Note No. 4.  Further, OFTI's failure to produce the original of Note No. 2

precludes it from enforcing that instrument against ST Paper.  To reiterate, when asked in discovery to admit that it was not in possession of the original Note No. 2, OFTI denied the request but admitted it was not in possession of "the note filed with the complaint." (Smies Aff., Ex. B.)  OFTI based its denial on its claim to possess a different note OFTI claimed Mr. Tak signed after the closing on the sale of the paper mill on April 16, 2007, which indicated he was signing as a "Member" of ST Paper as opposed to its "President."   ST Paper's request for admission and OFTI's response are as follows:

> **REQUEST FOR ADMISSION NO. 2:**  Admit that you are not in possession of the original Subordinated Promissory Note dated April 16, 2007 in the principal amount of $8,000,000.00 ("Note 2"), a copy of which was attached to the Complaint as Exhibit B.

> **RESPONSE NO. 2:** Deny. The Plaintiff is in possession of the original note but not the note filed with the complaint. The Plaintiff has learned since the complaint was filed that the parties executed the note attached to the complaint but it was signed by Sharad Tak as "President." Counsel for Mr. Tak learned of the error shortly after closing and the parties executed a substitute note signed by Sharad Tak as "Member."

(Smies Aff., Ex. B.)

OFTI produced a copy of the Note No. 2 it maintains replaced the note it attached to the Amended Complaint, but the document itself does not support OFTI's account.  It is dated April 11, 2007, *five days before* the closing of the sale of the mill on April 16, 2007.  April 16, 2007 was also the date upon which ST Paper executed the only Seller Notes at issue in this matter and the date the Subordination Agreement was also executed.  Thus, OFTI's convenient attempt to swap a pre-dated version of Note No. 2 from April 11, 2007 does not remedy the fact OFTI is admittedly not in possession of the original Note No. 2 from the date of the closing on April 16, 2007.  Further, after ST Paper requested to inspect the original notes executed on

April 16, 2007, OFTI failed to produce for inspection Note No. 2 or any other note executed on April 16, 2007.  (Smies Aff. ¶¶ 4-5.)

Since the undisputed evidence establishes that OFTI fails to possess the original of the April 16, 2007 Note No. 2 it seeks to enforce in its Amended Complaint, the Court should grant ST Paper summary judgment on OFTI's claim to enforce Note No. 2.

**V.      The Amount to be Credited to ST Paper Pursuant to the Compromise Agreement is $6,500,000, in Addition to the Amounts of $642,303.37 and $66,305.52, which OFTI Admitted it Owed ST Paper.**

To the extent the Court declines to grant summary judgment in full to ST Paper on both of OFTI's claims, the Court should enter partial summary judgment in ST Paper's favor on its affirmative defense, pursuant to the March 31, 2009 Compromise Agreement between ST Paper, OFTI and other companies affiliated with Mr. Van Den Heuvel.  The terms of the Compromise Agreement are clear, and ST Paper's entitlement to the offset specified in the Compromise Agreement is undoubted.

The Compromise Agreement recites the fact that ST Paper made the four Subordinated Promissory Notes (the Seller Notes) on April 16, 2007 in favor of OFTI.  The Compromise Agreement goes on to state that there were certain claims made by ST Paper against OFTI and related companies concerning receivables owed to ST Paper by those companies.  The parties agreed that, with the exception of the total due on certain receivables from OFTI to ST Paper in the amounts of $642,303.37 and $66,305.52, the amount due as a receivable to ST Paper from OFTI and other companies affiliated with Mr. Van Den Heuvel would be $6,500,000.

OFTI and its related companies agreed that if this amount of $6,500,000 was not repaid to ST Paper within 120 days from the effective date of the Compromise Agreement, ST Paper

19

would enjoy an offset in the amount of $6,500,000 against any amounts owed by ST Paper on the Seller Notes.

The undisputed evidence before the Court establishes the existence and enforceability of this Compromise Agreement and the fact that ST Paper was never paid the $6,500,000 required under the Compromise Agreement, whether within 120 days or otherwise.  Accordingly, to the extent the Court does not dismiss OFTI's claims in this matter, the Court should grant ST Paper partial summary judgment with respect to its affirmative defense pursuant to the Compromise Agreement.  ST Paper is entitled to an offset in the amount of $6,500,000 and the other receivables due as specified in the agreement in the amounts of $642,303.37 and $66,305.52 as of the date of the Compromise Agreement.

## **CONCLUSION**

The Court should grant ST Paper summary judgment dismissing OFTI's contract claim seeking to enforce the four Seller Notes.  Senior Indebtedness remains, which precludes OFTI from enforcing the subordinated Seller Notes.  The Court should also grant ST Paper summary judgment on OFTI's unjust enrichment claim since the existence of the contracts OFTI seeks to enforce is not in doubt.  Summary judgment is also appropriate on all OFTI's contract claims for all four of the Seller Notes for the following reasons: (1) this Court has previously held that OFTI is without standing to enforce Note Nos. 3 and 4; (2) OFTI's own allegations and the documents it attached to its Amended Complaint establish it transferred Note No. 1 to a third party; and (3) OFTI's admitted lack of possession of and failure to produce Note No. 2 precludes it from seeking to enforce that instrument.  Finally, in the event the Court does not grant summary judgment to ST Paper and dismiss OFTI's claims, it should grant ST Paper summary

judgment with respect to ST Paper's affirmative defense entitling it to an offset pursuant to the Compromise Agreement entered into between OFTI and ST Paper.

      Dated this 16th day of March, 2020.

                          GODFREY & KAHN, S.C.


                          By: *Electronically signed by Jonathan T. Smies*
                              Jonathan T. Smies
                              State Bar No. 1045422

                          *Attorneys for Defendant/Third-Party Plaintiff*
                          *ST Paper, LLC*

P.O. ADDRESS:
200 South Washington Street, Suite 100
Green Bay, WI 54301-4298
Phone:  920-432-9300
Fax:  920-436-7988
jsmies@gklaw.com

21981997.6