FILED
04-19-2021
Clerk of Courts
Oconto County WI
2017CV000104

| STATE OF WISCONSIN | : | CIRCUIT COURT BRANCH 2 | : | OCONTO COUNTY |
|---|---|---|---|---|

OCONTO FALLS TISSUE, INC.,

    Plaintiff,

v.

ST PAPER, LLC,

    Defendant.

Case No. 17 CV 104

Code No(s). 30303 (Other Contracts)

---

ST PAPER, LLC,

    Third-Party Plaintiff,

v.

TISSUE TECHNOLOGY, LLC,
PARTNERS CONCEPTS DEVELOPMENT,
INC., and TISSUE PRODUCTS
TECHNOLOGY CORP.,

    Third-Party Defendants.

---

### DEFENDANT AND THIRD-PARTY PLAINTIFF ST PAPER, LLC'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

    Defendant and Third-Party Plaintiff ST Paper, LLC ("ST Paper"), by and through its attorneys, Godfrey & Kahn, S.C., submits this reply memorandum of law in support of its motion for summary judgment.

### INTRODUCTION

    Plaintiff Oconto Falls Tissue, Inc. ("OFTI") begins its opposition brief by trying to explain why every case has been unsuccessful in a decade-long crusade by companies affiliated with Ron Van Den Heuvel against companies affiliated with Sharad Tak. It is unsurprising, of course, that

25151538.3

1



each federal and state case hinged on its own facts and applicable law. Yet, the denouement in each case is the same. For the reasons explained herein, and for the reasons stated in ST Paper's principal brief, the result in this case should be no different.

ST Paper is entitled to summary judgment on each of OFTI's claims. At the outset, OFTI concedes that it lacks standing to enforce Subordinated Promissory Note Nos. 1, 3, and 4. ST Paper is therefore entitled to summary judgment on OFTI's contract claims as to those Notes. The single Seller Note still at issue in this litigation, Seller Note No. 2, is barred by the Subordination Agreement. OFTI makes several farfetched arguments to avoid the plain and unambiguous language of the Subordination Agreement – arguments that are meritless and amount to nothing more than an attempt by OFTI to shed its subordinated creditor status.

OFTI's unjust enrichment claim fails because of the existence of valid contracts covering the subject of that claim. OFTI attempts to invent a conflict between Seller Note No. 2 and the Subordination Agreement that, it claims, knocks the contracts out and renders them invalid. No such conflict exists, and the contracts at issue in the litigation are indisputably valid. In fact, that is precisely what OFTI has argued all along. The law is clear on this point: an unjust enrichment claim cannot coexist with a breach of contract claim based on the same conduct if the contracts at issue are valid.

As a separate and independently sufficient basis for dismissal of OFTI's contract claim as to Seller Note No. 2, OFTI lacks standing to enforce it because OFTI does not possess the original. OFTI concedes this. OFTI's reliance on Section 403.309 of the Wisconsin Statutes, which governs enforcement of lost, destroyed, or stolen instruments, is misplaced because Section 403.309 is inapplicable to Seller Note No. 2 and, even were it applicable, OFTI fails to advance evidence sufficient to satisfy its burden of production under the statute.

2

25151538.3

Finally, if the Court declines to grant ST Paper full summary judgment on both of OFTI's claims, then the Court should grant partial summary judgment to ST Paper on its affirmative defense of offset pursuant to the Compromise Agreement. Notably, OFTI does not dispute that ST Paper is entitled to an offset or that the Compromise Agreement is valid and enforceable. Instead, OFTI argues that the offset amount must be equitably distributed because there are four Seller Notes held by different parties. But nothing in the Compromise Agreement entitles OFTI to such an equitable distribution. ST Paper is entitled to the offset reflected in the Compromise Agreement should this or another court determine that one or more of the Seller Notes are due and owing. If the Court declines to dismiss OFTI's claims for the reasons stated below, it should conclude that the Compromise Agreement entitles ST Paper to a total offset amount of $7,208,608.89, plus interest.

## ARGUMENT

**I.     OFTI Concedes Summary Judgment as to Seller Notes 1, 3, and 4.**

OFTI opens its response brief with a concession: Seller Note No. 2 is the *only* Note still at issue in this litigation. (Pl. & Third-Party Defs.' Opp'n Br., Dkt. No. 234, at 2 ("Notes 1, 3 and 4 are no longer a part of this litigation as we have learned that the items were transferred. . . . Therefore, the plaintiff seeks enforcement of note 2 . . . .").) OFTI admits that it lacks standing to enforce Notes 1, 3, and 4. Accordingly, this Court should grant ST Paper summary judgment on OFTI's contract claims (Count One) as to Seller Notes 1, 3, and 4 and dismiss them.

**II.    The Subordination Agreement Bars OFTI From Enforcing Seller Note No. 2.**

With all its eggs in one basket (Seller Note No. 2), OFTI attempts to circumvent application of the Subordination Agreement to Seller Note No. 2 by calling the agreement a nullity that is "fully performed" and "complete." (Pl. & Third-Party Defs.' Opp'n Br. at 3-4.) Yet, it is

3

undisputed that the debt administered by Goldman Sachs Credit Partners, L.P. ("Goldman Sachs") was refinanced in 2010 as a Permitted Refinancing under the Subordination Agreement and that the Senior Indebtedness remains. (Sharad Tak Aff., Dkt. No. 201 ("Tak Aff."), ¶¶ 11-17.) With the Senior Indebtedness outstanding, the Subordination Agreement precludes OFTI from enforcing payment on all or any of the Seller Notes, including Seller Note No. 2. (Subordination Agreement §§ 2.2 and 2.7(b), Dkt. # 202 at 3, 5.)

OFTI conspicuously ignores the 2010 Permitted Refinancing. In fact, OFTI impermissibly reads the refinancing language out of the contract by making the conclusory and unsupported assertion that payment of the debt originally administered by Goldman Sachs somehow renders the Subordination Agreement "complete" and unenforceable. Permitted Refinancing of the Senior Indebtedness is expressly allowed under the Subordination Agreement, and payment of Goldman Sachs does not have the special effect OFTI wishes. Indeed, the Subordination Agreement defines "Lenders" to include "after the consummation of any Permitted Refinancing . . . all of the holders . . . of the Senior Indebtedness," meaning the substitution of holders of the Senior Indebtedness through refinancing does nothing to nullify the effect of the Subordination Agreement. (Subordination Agreement § 1, Dkt. # 202 at 2.) The Senior Indebtedness has not been discharged, and OFTI remains bound by the Subordination Agreement.

Contrary to OFTI's suggestion, ST Paper is not asking this Court to "effectively cancel the note." (Pl. & Third-Party Defs.' Opp'n Br. at 4). Instead, ST Paper asks that the Subordination Agreement be enforced according to its plain terms, which precludes enforcement of Seller Note No. 2. The Subordination Agreement does not "cancel" Seller Note No. 2 but rather places conditions on its enforcement. Such subordination agreements are "not rare" and are interpreted according to their plain and unambiguous terms. *See Grice Eng'g, Inc. v. Innovations Eng'g Inc.*,

4

25151538.3

2010 WI App 145, ¶ 40, 330 Wis. 2d 99, 791 N.W.2d 405 (unpublished); *Matter of Watertown Tractor & Equip. Co.*, 92 Wis. 2d 622, 636-39, 289 N.W.2d 288 (1980) (interpreting subordination agreement according to its plain and unambiguous language). New York law also recognizes that subordination agreements are interpreted according to their plain and ordinary language. *See In re Best Prods., Co.*, 168 B.R. 35, 69 (Bankr. S.D.N.Y. 1994) ("[U]nder New York law, when a contractual subordination agreement is unambiguous, the parties' rights are governed exclusively by that agreement and the words of that agreement are given their plain, ordinary, and usual meaning.") (citations omitted); *see also Cream of Wheat Co. v. Arthur H. Crist Co.*, 119 N.E. 74, 76 (N.Y. 1918) (reading definite and unambiguous contract according to its plain terms)*; Johnson v. Colter,* 251 A.D. 697, 699 (N.Y. App. Div. 1937) ("If the contract is clear and unambiguous, the language used must be given its ordinary, usual, and normal construction. The court, through a strained or unreasonable interpretation, is not permitted to make a new agreement for the parties."). Here, the plain and unambiguous language of the Subordination Agreement requires that ST Paper be granted summary judgment on OFTI's claims as to all of the Seller Notes.

OFTI next argues that, even were the Court to find that the Subordination Agreement bars enforcement of Seller Note No. 2, the Subordination Agreement "should still be deemed a nullity" because its application "makes the entire transaction nothing more than smoke and mirrors." (Pl. & Third-Party Defs.' Opp'n Br. at 4.) Just the opposite is true. Enforcing the Subordination Agreement would give effect to the bargained-for terms of the transaction. Far from being masked by smoke and mirrors, the fact that Seller Note No. 2 was – and remains – subject to the Subordination Agreement was clear from the start. In addition to being titled "Subordinated Promissory Note," each Seller Note contains the following glaring statement at the top of the first page:

5

25151538.3

> THIS NOTE AND THE INDEBTEDNESS EVIDENCED HEREBY IS SUBORDINATE IN THE MANNER AND TO THE EXTENT SET FORTH HEREIN AND IN THE SUBORDINATION AGREEMENT, DATED AS OF APRIL 16, 2007 (THE "SUBORDINATION AGREEMENT"), BY AND AMONG ST PAPER, LLC, OCONTO FALLS TISSUE, INC. AND GOLDMAN SACHS CREDIT PARTNERS L.P., AS ADMINISTRATIVE AGENT AND COLLATERAL AGENT, TO THE SENIOR INDEBTEDNESS (AS DEFINED IN THE SUBORDINATION AGREEMENT). THE HOLDER OF THIS NOTE, BY ITS ACCEPTANCE HEREOF, SHALL BE BOUND BY THE PROVISIONS OF THE SUBORDINATION AGREEMENT.

(Tak Aff., Exs. B-E.) In addition, each Seller Note expressly references and attaches the Subordination Agreement. (Id.) The subordinated status of the Seller Notes and the effect of the Subordination Agreement could be no clearer.

OFTI's main contention appears to be that enforcement of the Subordination Agreement might result in Seller Note No. 2 never being paid. But OFTI assumed the risk that it would not be paid under the Seller Notes when it knowingly and voluntarily undertook the role of a junior creditor. *See Oilgear Co. v. Hitt*, 880 F.3d 337, 339 (7th Cir. 2018) ("Of course, if [debtor] does not have (and never obtains) the money to pay the [senior creditor] and [subordinated creditor] too, then [subordinated creditor] will lose out, but *that's what it means to hold junior debt*." (emphasis added)); *In re Hemken*, 513 B.R. 344, 360 (Bankr. E.D. Wis. 2014) ("In short, by entering into the subordination agreement, [junior creditor] recognized and agreed that its rights were subordinate to the [senior creditor].").  OFTI's hindsight dissatisfaction with its junior creditor status is not a sufficient basis to invalidate the Subordination Agreement.

Nor do the Subordination Agreement's standstill clauses – which bar OFTI from receiving payment on or taking any action to collect or enforce payment on the Subordinated Seller Notes until the Senior Indebtedness is paid in full – render the Subordination Agreement invalid. (Subordination Agreement §§ 2.2 and 2.7(b), Dkt. # 202, at 3, 5.) In fact, these types of standstill clauses are regularly used in subordination agreements and are enforced by their plain language. *See Grice Eng'g, Inc.*, 2010 WI App 145, ¶¶ 27, 40-41. In cases where, as here, a subordination

6

25151538.3

agreement does not obligate the senior creditor to collect the senior indebtedness, standstill clauses remain enforceable. *Id.*, ¶ 45; (Subordination Agreement § 3(b), Dkt. # 202, at 6.) Thus, the fact that the Senior Indebtedness might not be paid in full, which is a risk that OFTI assumed, does not render the Subordination Agreement invalid.

In a last-ditch effort to avoid dismissal of Seller Note No. 2 based on the Subordination Agreement, OFTI argues that Seller Note No. 2 is due and payable by its own terms and that it conflicts with the Subordination Agreement. Yet Seller Note No. 2 is not, as OFTI contends, due and payable on its own terms. This suggestion wholly ignores the subordinated status of the Note and its explicit integration of the Subordination Agreement. Interpreting the Note out of its subordinated context would render the Note's subordination language and the integrated Subordination Agreement surplusage, which must be avoided. *See Herchelroth v. Mahar*, 36 Wis. 2d 140, 147-48, 153 N.W.2d 6 (1967) (courts construe contracts to give meaning to all provisions and to avoid surplusage).

OFTI's suggestion that Seller Note No. 2 and the Subordination Agreement conflict is likewise erroneous. First, this argument is vague and conclusory, and OFTI does not identify which provisions in these documents it claims conflict and explain how those provisions are not, in fact, harmonious. Second, in actual fact, these documents are entirely complementary and were drafted in sync to bring about an asset sale. Now, faced with the consequences of its subordinated status, OFTI wants to invent a conflict between Seller Note No. 2 and the Subordination Agreement that does not exist.

The harmony in these documents is unmistakable. By its plain terms, Seller Note No. 2 and the indebtedness therein is subordinate in the manner and to the extent set forth in the Subordination Agreement. (Tak Aff., Ex. C, Dkt. # 204, at 1.) The Note also states that acceptance

7

25151538.3

thereof is an agreement to be bound by the Subordination Agreement. (Id.) The Note further provides: "Payee, by its acceptance hereof, acknowledges that this Note is subordinated and junior in right of payment to all amounts owed to current *or future* holder of Senior Indebtedness . . . ." (Id. at 2.) (emphasis added). OFTI accepted and signed the Subordination Agreement. (Subordination Agreement, Dkt. # 202, at 12.) The Subordination Agreement, for its part, sets forth clear terms restricting OFTI's ability to receive payments on Subordinated Indebtedness (defined to include the Seller Notes) and to take action to collect or enforce the Seller Notes. (Subordination Agreement §§ 2.2 and 2.7(b), Dkt. # 202, at 3, 5.) No conflict exists between these documents, and the Court should reject OFTI's attempt to create one out of thin air.

The Court can also quickly dispense of OFTI's intimation that a dispute of fact exists. The terms of the Seller Notes and the Subordination Agreement are clear and unambiguous. The Court need not look further than the plain and ordinary meaning of the documents' language to ascertain the parties' intent. *Town Bank v. City Real Estate Dev., LLC*, 2010 WI 34, ¶ 33, 330 Wis. 2d 340, 793 N.W.2d 476 ("[T]he best indication of the parties' intent is the language of the contract itself . . . ."); *Huml v. Vlazny*, 2006 WI 87, ¶ 52, 293 Wis. 2d 169, 716 N.W.2d 807 ("If the contract is unambiguous, our attempt to determine the parties' intent ends with the four corners of the contract, without consideration of extrinsic evidence."). No dispute of fact exists here, and OFTI's suggestion that a dispute exists is nothing more than an attempt to avoid the effect of the Subordination Agreement.

III. **OFTI's Unjust Enrichment Claim Must Be Dismissed Because the Parties Entered Into Valid Contracts Covering the Subject of the Claim.**

OFTI's unjust enrichment claim (Count Two) cannot survive because the parties entered into valid contracts covering the subject of the claim. *See Continental Cas. Co. v. Wis. Patients Comp. Fund*, 164 Wis. 2d 110, 118, 473 N.W.2d 584 (Ct. App. 1991). OFTI does not dispute this

8

principle or that the contracts cover the subject of its equitable claim. Instead, OFTI argues that its unjust enrichment claim is viable "should the contracts involved be deemed unenforceable." (Pl. & Third-Party Defs.' Opp'n Br. at 5.) This argument fails for several reasons.

First, no conflict exists between the Seller Notes and Subordination Agreement. OFTI's invocation of unjust enrichment hinges on its unsupported claim that there is a "conflict between the language of the note and the language of the subordination agreement" and that, somehow, the conflict renders the documents unenforceable. (Id.) This argument has already been debunked, *supra* at 5. For the same reasons as stated above, the Court must reject OFTI's renewed argument. Moreover, OFTI has not cited any legal authority to support its supposition that a conflict in terms (which does not exist here) renders contracts entirely unenforceable.

Second, the validity of the contracts is undisputed. OFTI has advanced no credible argument or facts supporting the notion that the parties' contracts are invalid. In fact, as to the Seller Notes (and Seller Note No. 2 in particular), OFTI has repeatedly argued the opposite. (Id. ("[I]t is Plaintiff's position that the contracts themselves are sufficient . . . .")); (Pl. & Third-Party Defs.' Br. Supp. Mot. Partial Summ. J. at 5 ("Note #2 is valid and enforceable.")); (Am. Compl., Dkt. No. 56, ¶ 88 ("The Seller Notes contain valid and enforceable promises to pay.").) It is undisputed that ST Paper executed the Seller Notes, that OFTI now seeks to enforce Seller Note No. 2 as a valid contract, and that the parties executed the incorporated Subordination Agreement. The existence of these contracts bars OFTI's unjust enrichment claim. *See Mohns Inc. v. BMO Harris Bank Nat'l Ass'n*, 2021 WI 8, ¶ 48, 395 Wis. 2d 421, 954 N.W.2d 339 ("Just as a cat cannot be both dead and alive at the same time, a contract cannot both exist and not exist simultaneously. A contract either exists, or it doesn't. . . . Only if a contract does not exist may a party recover damages in equity.").

9

Last, even assuming for the sake of argument that no valid contracts exist (which ST Paper does not concede), OFTI's unjust enrichment claim is not viable. OFTI's basic theory of unjust enrichment rests on the risk that it may never receive payment on Seller Note No. 2. As discussed above, however, the risk of non-payment is one that OFTI voluntarily assumed as a subordinated creditor. *See In re Hemken*, 513 B.R. at 360. There is no injustice in OFTI succumbing to a risk that it knew all along could materialize. Nor is ST Paper unjustly retaining a benefit conferred upon it, as it has acknowledged that it executed the original of Seller Note No. 2 dated April 16, 2007, which still could be enforced by its holder upon ST Paper's satisfaction of the Senior Indebtedness. What would be unjust would be to allow OFTI to recover payment when it does not possess the original of Seller Note No. 2. Indeed, OFTI could very well have assigned and received value for the original of Seller Note No. 2.

Because there is no conflict between the Seller Notes and the Subordination Agreement and because the parties' contracts at issue in the matter are valid, ST Paper is entitled to summary judgment on OFTI's unjust enrichment claim. The Court need not reach the issue of whether OFTI's claim for unjust enrichment is viable given the existence of valid contracts. Even were the Court to do so, however, OFTI's equitable claim is meritless and has not been raised affirmatively in a motion such that the Court could grant OFTI relief. *See* Wis. Stat. § 802.01(2)(a).

**IV. OFTI's Concession That It Does Not Possess the Original Seller Note No. 2 Dated April 16, 2007 Entitles ST Paper to Summary Judgment, and Wis. Stat. § 403.309 Offers OFTI No Reprieve.**

OFTI's concession that it does not possess the original Seller Note No. 2, (Pl. & Third-Party Defs.' Opp'n Br. at 9 ("[T]he original of the Note cannot be located."), entitles ST Paper to summary judgment on OFTI's contract claim (Count One) as to Seller Note No. 2. Without the original Note, OFTI lacks standing to enforce it. *See Tissue Tech., LLC v. Tak Invs, LLC*, 320 F. Supp. 3d 993, 1003 (E.D. Wis. 2018); *see also Deutsche Bank Nat'l Tr. Co. v. Wuensch*, 2018 WI

10

25151538.3

Case 1:20-cv-03851-GBD Document 279-2 Filed 09/24/21 Page 11 of 17

35, ¶ 25, 380 Wis. 2d 727, 911 N.W.2d 1 (citing *Peacock v. Rhodes* (1781), 99 Eng. Rep. 402, 403, 2 Doug. 633, 636 (Lord Mansfield) (KB) ("I see no difference between a note indorsed blank, and one payable to bearer. They both go by delivery, and possession proves property in both cases.")).

While acknowledging that it does not possess the original Seller Note No. 2, OFTI states that "[t]wo Notes were issued as Note #2" and that "it matters not since the Notes reflect the same debt for which there can only be one recovery." (Pl. & Third-Party Defs.' Opp'n Br. at 6.) To the extent that OFTI seeks to avoid summary judgment on its contract claim as to Seller Note No. 2 by referencing a different and earlier Seller Note No. 2 dated April 11, 2007, a copy of which is attached as Exhibit C to the Affidavit of Edward Kolasinski, *see* Dkt. #178, the Court should reject this attempt as well.

Seller Note No. 2 dated April 11, 2007 is unenforceable and cannot preclude summary judgment on Seller Note No. 2 dated April 16, 2007, which is attached to the operative complaint. (Def. & Third-Party Pl.'s Opp'n Br., Dkt. No. 235, at 18-23.) Further, the "facts" OFTI offers to support its theory that the earlier April 11, 2007 Seller Note No. 2 is enforceable and intended to be the "operative" Seller Note No. 2 are inadmissible, as Mr. Kolasinski lacks personal knowledge of the events of 2007. (Tr. of Dep. of Edward Kolasinski, Dkt. # 245, at 26:3-11.); *HSBC Bank USA, Nat'l Ass'n as Tr. for Structured Asset Sec. Corp. Mgt. Pass-Through Certificate, Series 2004-SCI v. Stewart-Martin*, 2019 WI App 39, ¶ 19, 388 Wis. 2d 257, 932 N.W.2d 186 (unpublished) ("Affidavits 'made by persons who do not have personal knowledge' are insufficient to support summary judgment 'and will be disregarded.'") (citation omitted).

In a final attempt to rescue its contract claim as to Seller Note No. 2, OFTI cites Section 403.309 of the Wisconsin Statutes, which governs enforcement of lost, destroyed, or stolen

11

25151538.3

instruments. Yet Section 403.309 fails because Section 403.309 does not apply to Seller Note No. 2 and, even were the statute applicable, OFTI fails to advance sufficient evidence to satisfy its elements.

Section 403.309 is inapplicable to Seller Note No. 2 because Chapter 403 of the Wisconsin Statutes "applies to negotiable instruments." Wis. Stat. § 403.102(1). Section 403.309, on which OFTI relies, allows a person not in possession of an "instrument" to enforce it under certain conditions. Sections 403.103(2)(m) and 403.104(2) define "instrument" as "a negotiable instrument." The term "negotiable instrument" is defined in § 403.104(1) as "an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if all of [the criteria in § 403.104(1)] apply." Section 403.106(1) provides:

> (a) Except as otherwise provided in this section, for the purposes of s. 403.104(1), a promise or order is unconditional unless it states any of the following:
>     1. An express condition to payment.
>     2. That the promise or order is subject to or governed by another writing.
>     3. That rights or obligations with respect to the promise or order are stated in another writing.
> (b) A reference to another writing does not of itself make the promise or order conditional.

For Seller Note No. 2 to qualify as a "negotiable instrument" subject to Section 403.309, it cannot state any of the three enumerated items in Section 403.106(1)(a).

Seller Note No. 2 states *all* of the above conditions. The Note states that "Payee, by its acceptance hereof, acknowledges that this Note is subordinated and junior in right of payment to all amounts owed to current or future holder of Senior Indebtedness . . . ." (Tak Aff., Ex. C, Dkt. # 204, at 2.) This statement contains an express condition to payment; that is, OFTI's right to payment is junior. That Seller Note No. 2 contains a statement that it is subject to or governed by another writing is plain. "**THIS NOTE AND THE INDEBTEDNESS EVIDENCED HEREBY**

12

25151538.3

**IS SUBORDINATE IN THE MANNER AND TO THE EXTENT SET FORTH HEREIN AND IN THE SUBORDINATION AGREEMENT . . . ."** (Id. at 1.) The Note further states: **"THE HOLDER OF THIS NOTE, BY ITS ACCEPTANCE HEREOF, SHALL BE BOUND BY THE PROVISIONS OF THE SUBORDINATION AGREEMENT."** (Id.) These statements make clear that the Note is subject to the provisions in the Subordination Agreement. The two bold statements cited above also satisfy Section 403.106(1)(a)3 because they establish that OFTI's rights and obligations with respect to the Note are stated in the Subordination Agreement. Because Seller Note No. 2 contains each of the statements provided in Section 403.106(1)(a) – and is, therefore, not unconditional – it is not a negotiable instrument subject to Section 403.309.

Even were Section 403.309 to apply to Seller Note No. 2, OFTI fails to meet its statutory evidentiary burden.

> (1) A person not in possession of an instrument is entitled to enforce the instrument if all of the following apply:
>     (a) The person was in possession of the instrument and entitled to enforce it when loss of possession occurred.
>     (b) The loss of possession was not the result of a transfer by the person or a lawful seizure.
>     (c) The person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.
>
> (2) A person seeking enforcement of an instrument under sub. (1) shall prove the terms of the instrument and the person's right to enforce the instrument. If that proof is made, s. 403.308 applies to the case as if the person seeking enforcement had produced the instrument. The court may not enter judgment in favor of the person seeking enforcement unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument. Adequate protection may be provided by any reasonable means.

13

Wis. Stat. § 403.309. OFTI offers no evidence to show that the criteria in subsection (1) are satisfied. OFTI has not submitted affidavits or other evidence proving that it was in possession of the original Seller Note No. 2 dated April 16, 2007 when "loss" of possession occurred, that the "loss" of possession was not the result of a transfer or a lawful seizure, and that OFTI cannot reasonably obtain possession of the original Seller Note No. 2 because its whereabouts are unknown. Nor has OFTI submitted evidence to prove its right to enforce the copy of Seller Note No. 2.

Without evidence to satisfy its burden of proof as to subsections (1) and (2) of Section 403.309, OFTI's attempt to enforce a copy of Seller Note No. 2 fails, and ST Paper is entitled to summary judgment on OFTI's contract claim. It goes without saying that OFTI's counsel's conclusory statement that "[t]his Court must accept Plaintiff's proposition that it properly holds the Note" because "[n]o demands have been made by any other party and the original of the Note cannot be located" is insufficient evidence – it is not even evidence – for purposes of summary judgment. *Grice En'g, Inc.*, 2010 WI App 145, ¶ 40 ("An attorney's argument is not a proper submission for purposes of summary judgment.").

25151538.3

V.  **ST Paper Is Entitled to At Least Partial Summary Judgment on Its Affirmative Defense to be Credited $6,500,000, Plus Amounts of $642,303.37 and $66,305.52 That OFTI Admits it Owes, Pursuant to the Compromise Agreement.**

If the Court declines to grant ST Paper full summary judgment on all of OFTI's claims, then the Court should grant ST Paper partial summary judgment on its affirmative defense for monetary offset pursuant to the parties' March 31, 2009 Compromise Agreement. The credit due to ST Paper is $6,500,000, plus additional amounts of $642,303.37 and $66,305.52 that OFTI admits it owes. (Tak Aff., Ex. G, Dkt. #210.) Importantly, OFTI does not dispute that ST Paper is entitled to an offset or that the Compromise Agreement is valid and enforceable. Instead, OFTI asks the Court to sit in equity and to hold a hearing to determine how to apply the offset given that there are four Seller Notes.

As a threshold matter, ST Paper is entitled to an offset in the amounts of $642,303.37 and $66,305.52 (totaling $708,608.89) regardless of the Court's acknowledgement of the $6,500,000 amount. These amounts were explicitly excluded from the $6,500,000 receivable amount and from the Compromise Agreement, and OFTI does not dispute that it owes at least these amounts. Accordingly, even before reaching the issue of the $6,500,000 amount, the Court should grant partial summary judgment to ST Paper on its affirmative defense of offset in the amount of $708,608.89.

Turning to OFTI's request, the Court need not sit in equity or hold a hearing. The Court can decide this matter entirely on the record before it. Contrary to OFTI's contention that "there are necessary parties who must be considered," (Pl. & Third-Party Defs.' Opp'n Br., Dkt. # 234, at 10), the only parties necessary to resolve the offset defense as it relates to the Seller Note OFTI is attempting to enforce are in suit.

It would make no sense for the Court to attempt to equitably distribute the $6,500,000 offset amount among four Seller Notes when none of the other purported Note holders are before

15

25151538.3

the Court. In other words, for purposes of the Compromise Agreement, it does not matter whether OFTI attempts to enforce one or all the Notes. What matters is that OFTI agreed to offset the amount due on any of the Note(s) by a specified amount. That OFTI voluntarily transferred or assigned one or more of the Notes to non-signatories does not somehow reduce its offset obligation with respect to the Seller Note OFTI itself attempts to enforce.

OFTI is the only party claiming to hold Seller Note No. 2 and is a signatory to the Compromise Agreement and the Court can adjudicate the offset issue through basic principles of contract interpretation. OFTI does not dispute the terms or validity of the Compromise Agreement. Therefore, pursuant to the Compromise Agreement, ST Paper is entitled to an offset in the amount of $6,500,000 in addition to the $708,608.89 offset amount that OFTI admits it owes. Accordingly, ST Paper is entitled to partial summary judgment on its affirmative defense for offset in the total amount of $7,208,608.89, plus interest.

Finally, OFTI's reference to debtor-creditor priorities and its argument that some Notes have been redeemed – such that offsets have been applied – can be easily dismissed. The offset is simple to apply and does not implicate claim priority principles. The reduction would be applied pre-judgment and then reflected in any final judgment amount. As to the argument that Notes have been redeemed, that is not so. There is no evidence they have. OFTI cannot reduce or transfer its offset obligation simply by transferring or assigning the Notes.

## **CONCLUSION**

For the foregoing reasons, as well as those stated in ST Paper's principal brief in support of its motion for summary judgment, the Court should grant ST Paper's motion for summary judgment and dismiss OFTI's contract and unjust enrichment claims (Counts One and Two of the Amended Complaint). If this Court declines to grant ST Paper summary judgment on both of

16

25151538.3

OFTI's claims, the Court should grant ST Paper partial summary judgment on its affirmative defense of offset pursuant to the Compromise Agreement in the amount of $7,208,608.89, plus interest.

Dated this 19th day of April, 2021.

                                    GODFREY & KAHN, S.C.

                                    By: *Electronically signed by Jonathan T. Smies*
                                            Jonathan T. Smies
                                            State Bar No. 1045422

                                  *Attorneys for Defendant/Third-Party Plaintiff*
                                  *ST Paper, LLC*

P.O. ADDRESS:
200 South Washington Street, Suite 100
Green Bay, WI 54301-4298
Phone: 920-432-9300
Fax: 920-436-7988
jsmies@gklaw.com