UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x
ABILITY INSURANCE COMPANY,

                        Plaintiff.

     -against-

ST PAPER, LLC,

                       Defendant.

<u>MEMORANDUM DECISION
AND ORDER</u>

20 Civ. 3851 (GBD)

------------------------------------- x

GEORGE B. DANIELS, United States District Judge:

Plaintiff Ability Insurance Company brings this diversity action against ST Paper, LLC for breach of the contract, breach of the covenant of good faith and fair dealing, and for a declaratory judgment regarding the Parties' rights under the relevant agreements. (Complaint, ECF No. 1, at ¶ 1.) Plaintiff alleges that it is the holder in due course of a promissory note executed by Defendant in 2007, that Defendant has breached Seller Note 1 by failing to make payments under the note, and that Defendant has breached a covenant of good faith implied in a Subordination Agreement entered into by Defendant and the original holder of Seller Note 1. (*Id.* at ¶ 91.)

Before this Court is Defendant's motion for summary judgment, (ECF No. 53), and Plaintiff's cross motion for partial summary judgment, (ECF No. 61). Defendant's motion for summary judgment is GRANTED. Plaintiff's cross motion for partial summary judgment is DENIED.

### I. FACTS

Plaintiff Ability Insurance Co. is a Nebraska corporation with its principal place of business in New York. (Compl. at ¶ 7.) Defendant ST Paper LLC is a Delaware limited liability company

with its principal place of business in Wisconsin. (Compl. at ¶ 8.) In connection with the 2007 purchase of the assets of a paper mill in Wisconsin, Defendant issued four promissory notes in favor of non-party Onconto Falls Tissue, Inc ("OFTI"). (Declaration of Sharad Tak ("Tak Decl."), ECF No 55, ¶ 1.) Plaintiff claims that it has been assigned the rights under Defendant's first seller note ("Seller Note 1"). (Compl. ¶ 75.)

## A. 2007 Mill Purchase

On April 16, 2007, Defendant entered into an agreement with OFTI to purchase substantially all the assets of its paper mill in Onconto Falls Wisconsin. (Tak Decl. ¶ 3.) Defendant's purchase of the OFTI's assets was funded by a $65 million loan from a syndicate of lenders represented by Goldman Sachs Credit Partner, L.P ("GS Loan" and "GS Lenders") and $30, 589,000 in seller financing. (Tak Decl. ¶¶ 4,6.)

1. GS Loan and the Credit Agreement

In connection with the GS Loan, Defendant executed a Credit Agreement on April 16, 2007. (Credit Agreement, ECF No. 55-2.) The Credit Agreement states that GS Loan had a maturity date of the earlier of March 31, 2013 or "the date that all Term Loans shall become due and payable in full hereunder, whether by acceleration or otherwise." (*Id.* at 36.) The Credit Agreement also established an interest rate of 5% or 6% per annum. *Id.*

2. Seller Financing and the Subordination Agreement

In connection with the seller financing, Defendant executed four Subordinated Seller Notes in favor of OFTI. (Tak Decl. ¶ 6.) Seller Note 1, made in the principal amount of $8,000,000, has a maturity date of April 16, 2015, and bears an interest rate of 7.5%. (Seller Note 1, ECF No. 55-4, at 1.) Seller Note 1 is titled "Subordinated Promissory Note" and state as follows,

> THIS NOTE AND THE INDEBTEDNESS EVIDENCED
> HEREBY IS SUBORDINATE IN THE MANNER AND TO THE

2

>EXTENT SET FORTH HEREIN AND IN THE SUBORDINATION AGREEMENT, DATES AS OF APRIL 16, 2007 (THE "SUBORDINATION AGREEMENT"), BY AND AMONG ST PAPER, LLC, OCONTO FALLS TISSUE, INC. AND GOLDMAN SACHS CREDIT PARTNERS L.P., AS ADMINISTRATIVE AGENT AND COLLATERAL AGENT, TO THE SENIOR INDEBTEDNESS (AS DEFINED IN THE SUBORDINATION AGREEMNT). THE HOLDER OF THIS NOTE, BY ITS ACCEPTANCE HEREOF, SHALL BE BOUND BY THE PROVISIONS OF THE SUBORDINATION AGREEMENT.

(Seller Note 1 at 1.) Seller Note 1 also states that it is "subordinated and junior in right of payment to all amounts owed to current or future holder of Senior Indebtedness." (*Id.*)

In connection with the 2007 Transaction, Defendant, OFTI, and Goldman Sachs also entered into a Subordination Agreement. (Subordination Agreement, ECF No. 55-3, at 1.) Under the terms of the Subordination Agreement, "Senior Indebtedness" is defined as all "Obligations" under the GS Loan, as well as "all obligations and liabilities incurred with respect to Permitted Refinancings...." (*Id.* at 2.) The Subordination Agreement defined "Permitted Refinancing" as "any refinancing of the Senior Indebtedness under the Loan Documents provided that the financing documentation entered into by Borrower in connection with such Permitted Refinancing constitutes Permitted Refinancing Loan Documents." (*Id.*) The agreement goes on to define "Permitted Refinancing Loan Documents" as "any financing documentation which replaces the Loan Documents and pursuant to which the Senior Indebtedness under the Loan Documents is refinanced, as such financing documentation may be amended, restated, supplemented or otherwise modified from time to time." (*Id.* at 2.)

### B. 2009 GS Debt Transfer

On or before May 22, 2009, Defendant defaulted on a loan covenant and the GS Loan was called due. (Tak Decl. ¶ 7.) Defendant and the GS Lenders entered into a Forbearance Agreement

3

and Amendment to the Credit Agreement and Security Agreement. (Tak Decl. ¶ 7.) On March 25, 2010, the GS Lenders sold the GS Loan to Macquarie Bank Limited. (*Id.* at ¶ 8.)

**C. 2010 Transaction**

In April 2010, Defendant raised new funding from a consortium of eight lenders ("CDE Lenders"). (Tak Decl. ¶ 9.) In exchange for the funds raised, totaling in $83,013,871, Defendant issued sixteen promissory notes ("CDE Lender Notes") in favor of the CDE lenders on April 30, 2010. (CDE Lender Notes, ECF No. 55-5, at 1.) The new notes have an interest rate and maturity date of either 3.07799% and April 30, 2040, or 4.33043% and April 30, 2017. (*Id.* at 1, 10.)

The new funding raised from the CDE Lenders was transferred to ST Paper Holdings, LLC. (Tak Decl. at ¶ 13.) On April 30, 2010, ST Paper Holdings entered into a Purchase and Sale Agreement for Distressed Trades with Macquarie Bank Limited, the holder of the GS Loan at the time. (*Id.* at 10.) ST Paper Holdings purchased the GS Loan for $19,508,542.08. (Plaintiff's Statement of Facts ("SMF"), ECF No. 63, at ¶ 51.) ST Paper Holdings and Macquarie also executed an Assignment Agreement, which assigned the GS Loan owed by Defendant to ST Paper Holdings. (Assignment Agreement, ECF No. 55-7, at 1.)

In connection with the purchase and sale of the GS Loan by ST Paper Holdings, on April 30, 2010, Goldman Sach's successor as administrative agent under the Credit Agreement, Wilmington Trust FSB, entered into a Second Amendment to Credit Agreement with Defendant, ST Paper Holdings, and Macquarie. (Tak Decl. ¶ 12.) Section 5.1 of the Second Amendment to Credit Agreement states that the April 16, 2007 Credit Agreement remained "in full force and effect and is hereby ratified and confirmed." (Second Amendment to Credit Agreement, ECF No. 55-8, at 4.) With respect to Defendant's obligations as borrower, Section 7 of the same document states that: "Except as otherwise provided in this Agreement, the Credit Agreement, the other Loan

Documents and the Borrower's Obligations thereunder shall remain in full force and effect, and shall not be waived, modified, superseded or otherwise affected by this Agreement." (Second Amendment to Credit Agreement at 4.) Section 9 of the Second Amendment to Credit Agreement also states that: "[t]his Agreement is a Credit Document for all purposes." (*Id.*)

### D. 2013 Note Assignment

OFTI assigned Seller Note 1 to non-party Stonehill Capital Group on April 16, 2007. (SMF ¶ 4.) On September 26, 2012, the Stonehill Capital Group assigned Seller Note 1 to Paper Holdco, LLC. (SMF ¶ 5.) On December 13, 2012, Paper Holdco, LLC assigned Seller Note 1 to Green Box, NA Green Bay, LLC ("Green Box"). (SMF ¶ 6.) On December 10, 2013, Green Box executed a promissory note in favor of Maple Bridge Funding, LLC ("Maple Bridge") in the amount of $7,150,000 ("Green Box Note"). (Green Box Note, ECF No. 1-3, at 1.) The transfer was executed in connection with a loan to Green Box that was funded by Ability and for which Maple Bridge was the originator ("Ability Loan"). (Declaration of Tim O'Shea ("O'Shea Decl."), ECF No. 69, at 10.) Green Box also executed an Assignment of Rights in which it assigned all its rights to Seller Note 1 to Maple Bridge. (SMF ¶¶ 8-9.) On December 11, 2013, Maple Bridge executed an allonge transferring the Green Box Note to Ability ("2013 Allonge").[1] (2013 Allonge, ECF No. 1-7, at 1.) On or around March 11, 2015, Green Box defaulted on the Ability Loan. (SMF ¶ 12.)

---

[1] Allonge, Black's Law Dictionary (9th ed. 2009) ("A slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsement when the original paper is filled with indorsements. Former UCC § 3-202 required that indorsements be made on the instrument unless there was no space – and only then could an allonge be used. Current 3-3-204(a) eliminates that requirement and provides that 'a paper affixed to the instrument is part of the instrument.' The UCC comment makes it clear than the allonge is valid even if space is available on the instrument.")

5

### E. Post 2010 Transaction Assignments

On May 2, 2017, the CDE Lenders assigned or transferred their interest in the loans made to Defendant to ST Paper Holdings and non-party WCDLF Investment Fund XXIV, LLC ("WCDLF"). (Tak Decl. ¶ 14.) On March 19, 2019, Defendant executed an Amended Consolidated promissory note in favor of WCDLF in the amount of $63,962,000. (Tak Decl. at ¶ 17.) Defendant also executed a Second Amended and Restated promissory Note in the amount of $21, 970,150. (Tak Decl. ¶ at 15, 18.)

### II. LEGAL STANDARD

Summary judgment is appropriate where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is material when it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of fact is genuine "if the evidence is such that a jury could return a verdict for the nonmoving party." *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (quoting *Anderson*, 477 U.S. at 248.)

The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists. *See Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). In turn, to defeat a motion for summary judgment, the opposing party must raise a genuine issue of material fact. *See Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002). To do so, it "must do more than simply show that there is some metaphysical doubt as to the material facts," *id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)), and it "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (*quoting Scotto v. Almenas*, 143 F.3d 105, 114

(2d Cir. 1998)). Rather, the opposing party must produce admissible evidence that supports its pleadings. *See First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289–90 (1968). In this regard, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (quoting *Anderson*, 477 U.S. at 252).

In determining whether a genuine issue of material fact exists, a court must construe the evidence in the light most favorable to the opposing party and draw all inferences in that party's favor. *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (quoting *Anderson*, 477 U.S. at 252). However, "a court must not weigh the evidence, or assess the credibility of witnesses, or resolve issues of fact." *Victory v. Pataki*, 814 F.3d 47, 59 (2d Cir. 2016) (citation and internal quotation marks omitted). Summary judgment is therefore "improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." *Marvel*, 310 F.3d at 286.

### III. PLAINTIFF HAS STANDING

Defendant argues that Plaintiff lacks standing to enforce Seller Note 1 because Plaintiff has not presented documentary evidence that it has been assigned rights under the note. (Defendant's Memorandum of Law in Support of Summary Judgment ("Def.'s Br."), ECF No. 54 at 8.) In opposition, Plaintiff argues that there is sufficient evidence in the record from which to conclude that Plaintiff is the holder in due course of Seller Note 1. (Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Pl's Opp."), ECF No. 67 at 10.) Plaintiff also argues that Defendant is judicially estopped from arguing that Plaintiff is not the holder of the note because Defendant took the opposite position in a separate litigation against OFTI relating to

enforcement of the Seller Notes.[2] (*Id.* at 7.) In addition, Plaintiff argues that its physical possession of the note is evidence that it has been assigned rights under the note. (*Id.* at 13.)

"Standing is the threshold question in every federal case, and implicates the Court's subject matter jurisdiction." *Cohan v. Movtady*, 751 F. Supp. 2d 436, 439 (E.D.N.Y. 2010). "Thus, the Court must consider standing-related issues first." *Id.*

The right to enforce Seller Note 1 was assigned to Plaintiff Ability Insurance. The record shows that Maple Bridge assigned its interest in the Green Box Note to Plaintiff through the 2013 Allonge. Also in the record is an affidavit from a principle of Maple Bridge, stating that "immediately following the closing of the [Ability Loan], Maple Bridge assigned all its rights in and to the Loan, including all collateral securing the Loan, to Ability," which was "evidenced by the [2013 Allonge]." (O'Shea Decl. at ¶ 10.) Separately, deposition testimony from Plaintiff's corporate executive states that "the note and all collateral associated with the note was assigned to Ability Insurance." (Deposition Transcript for David Charsky, ECF No 68-6, at 4:8-10.) There is sufficient evidence in the record from which to conclude that it was Ability and Maple Bridge's understanding that all interests in Green Box's collateral to the Ability Loan were transferred to Ability, and that this collateral included Seller Note 1. Consequently, the transfer of rights under Seller Note 1 through the 2013 Allonge was effective. *See Borchardt v. Wilk*, 156 Wis. 2d 420, 427, 456 N.W.2d 653, 657 (Ct. App. 1990) ("So far as reasonably practicable, a contract should be given a construction which will make it a rational business instrument and will effectuate what appears to have been the intention of the parties.")

Defendant argues that because the Allonge does not contain specific language transferring Maple Bridge's rights under Seller Note 1 to Ability, the rights under Seller Note 1 did not transfer

---

[2] *Oconto Falls Tissue, Inc. v. ST Paper, LLC*, No. 17 cv 104 (Wisconsin Circuit Court for Oconto County).

8

to Ability. (Defendant's Reply Memorandum in Support of Summary Judgment ("Def's Reply"), ECF No. 78, at 5.) However, Plaintiff has identified a written document pursuant to which the parties believed and intended to transfer Maple Bridge's rights under Seller Note 1 to Ability. Under Wisconsin law, a contract can be modified orally, even if the terms of the agreement provide that it can be modified only in writing. *S & M Rotogravure Serv., Inc. v. Baer*, 77 Wis. 2d 454, 468, 252 N.W.2d 913, 919 (1977). Accordingly, the transfer of rights to Seller Note 1 through the 2013 Allonge, was valid.

## IV. DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S BREACH OF CONTRACT CLAIM

Plaintiff claims that Defendant breached the terms of Seller Note 1 by failing to pay amounts due under the note. (Compl. ¶¶ 73-79.)

Defendant argues that it did not breach Seller Note 1 because payment is not yet due on Seller Note 1 due to the existence of Senior Indebtedness, which precludes enforcement of the note. (Def.'s Brief at 12.) Defendant also contends that the 2010 Transaction constituted a Permitted Refinancing of the GS Loan under the terms of the Subordination Agreement, and therefore the Senior Indebtedness continues to exist. (*Id.*)

Plaintiff does not dispute that Senior Indebtedness would preclude enforcement of the note. (Pl's Opp at 14.) Nor does Plaintiff argue that refinancing of the Senior Indebtedness is prohibited by the terms of the Subordination Agreement or the Credit Agreement. (*Id.*) Similarly, Plaintiff concedes that the Subordination Agreement does not place limitations on the parties with whom Defendant may refinance the Senior Indebtedness. (Transcript of Oral Argument dated November 3, 2021, ECF No. 86, at 33:35-34:24.) Instead, Plaintiff argues that the 2010 Transaction does not constitute 'refinancing' under the plain and ordinary meaning of the word, and therefore did not constitute a 'Permitted Refinancing.' (Pl's Opp. at 14.) Plaintiff also argues

9

that interpreting the 2010 Transaction to be a 'Permitted Financing' would be commercially unreasonable because it has the effect of delaying payment on Seller Note 1 until 2040 or later. (Pl's Opp. at 15.)

"[U]nder New York law, when a contractual subordination agreement is unambiguous, the parties' rights are governed exclusively by that agreement and the words of that agreement are given their plain, ordinary and usual meaning." *In re Best Prods. Co.*, 168 B.R. 35, 69 (S.D.N.Y. 1994). A court may not "write into a contract conditions the parties did not include by adding or excising terms under the guise of construction, nor may it construe the language in such a way as would distort the contract's apparent meaning.'" *See Macy's Inc. v. Martha Stewart Living Omnimedia, Inc.*, 127 A.D.2d 48, 54 (N.Y. App. Div. 2015). "[A]n inquiry into commercial reasonableness is only warranted where a contract is ambiguous." *Fundamental Long Term Care Holdings, LLC v. Cammeby's Funding LLC*, 20 N.Y.3d 438, 445 (Ct. App. 2013); *see also J-Bar Reinforcement, Inc. v. Crest Hill Capital, LLC*, 169 A.D.3d 499, 500 (N.Y. App. Div. 2019).

The 2010 Transaction constitutes a Permitted Refinancing under the terms of the Subordination Agreement and Credit Agreement. The Subordination Agreement permits refinancing of the GS Loan under the Credit Agreement. The Subordination Agreement imposes two limitations on a potential refinancing. First, the transaction must constitute "any refinancing." The Subordination Agreement does not define 'refinancing.' However, the Second Circuit has found that the commonly understood meaning of the word is "the prepayment of one loan with the proceeds of another." *Pechinski v. Astoria Fed. Sav. & Loan Ass'n*, 345 F.3d 78, 82 (2d Cir. 2003)(*citing* American Heritage Dictionary (4th ed.2000) (defining "refinancing" as "provid[ing] new financing […], as by discharging a mortgage with the proceeds from a new mortgage obtained at a lower interest rate"). Second, the financing documentation entered into in connection with the

10

refinancing must "constitute[] Permitted Refinancing Loan Documents." Permitted Refinancing Loan Documents are financing documentation "which replace[] the Loan Documents and pursuant to which the Senior indebtedness under the Loan Documents is refinanced." (Subordination Agreement at 2.)

Here, as part of the 2010 Transaction, Defendant incurred new debt from the CDE lenders. Defendant then transferred that debt to ST Paper Holdings, which purchased the GS Loan from Macquarie. In connection with the purchase of the GS Loan, ST Paper Holdings entered into an Assignment of Rights, where it was assigned the rights of the lender under the Credit Agreement. (Assignment of Rights at 1.) ST Paper Holding also entered into a Second Amendment to Credit Agreement, which stated that the 2007 Credit Agreement remained "in full force and effect" and that "the Credit Agreement, the other Loan Documents, and the Borrower's Obligations thereunder shall remain in full force and effect." (Second Amendment to Credit Agreement at 4.) As the 2010 Transaction consisted of a prepayment of one loan with the proceeds of another, and as it followed the requirements set out in the Subordination Agreement, the 2010 Transaction was a valid refinancing of the Senior Indebtedness. As the Senior Indebtedness still exists, payment on Seller Note 1 is not due and owing.

Plaintiff argues that the 2010 Transaction should not be considered a Permitted Refinancing because that interpretation would lead to the commercially unreasonable result that payment on Seller Note 1 is delayed until 2040 or longer. However, commercial reasonableness in not properly considered where the contract is not ambiguous, which neither party has asserted here. *Cammeby's Funding LLC*, 20 N.Y.3d at 445.

Accordingly, Defendant is entitled to summary judgment dismissing Plaintiff's claim for breach of contract with respect to Seller Note 1.

## V. DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING CLAIM

Plaintiff contends that Defendant breached the implied duty of good faith and fair dealing that it owed OFTI by structuring the CDE Loans in a manner to avoid repayment of Seller Note 1. (Compl. at ¶¶ 86, 88, 91.)

Defendant argues that it is entitled to summary judgment on Plaintiff's claim for breach of the covenant of good faith and fair dealing because the express terms of the Subordination Agreement allowed for the 2010 Transaction, and Plaintiff's claim impermissibly seeks to impose obligations on Defendant beyond what it negotiated with Plaintiff's predecessor, OFTI. (Def.'s Brief. at 15.)

Plaintiff argues that even if the 2010 transaction did not breach the terms of the Subordination Agreement, Defendant breached the covenant by exercising its rights under the Subordination Agreement in a way that eliminated Defendant's obligation to pay Seller Note 1, and deprived Ability of the benefit of the bargain made by OFTI. (Pl's Opp. at 17.)

Under New York law, "[t]he covenant of good faith and fair dealing is implicit in all contracts; it encompasses 'any promises which a reasonable person in the position of the promisee would be justified in understanding were included,' and it prohibits either party from acting in a manner 'which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" *In re Navidea Biopharmaceuticals Litig.*, No. 19-CV-1578 (VEC), 2019 WL 7187111, at *6 (S.D.N.Y. Dec. 26, 2019). However, the covenant is "not implicated merely because a party acts in its own interests in a way that may incidentally lessen the other party's anticipated fruits from the contract." *Id.* More importantly, the covenant cannot "be used to create independent obligations beyond those agreed upon and stated in the express language of the contract." *Id.*; *see also In Touch Concepts, Inc. v. Cellco P'Ship*, 788 F.3d 98, 102 (2d Cir.

2015) ("[T]he implied covenant of good faith and fair dealing cannot be used to impose an obligation that is inconsistent with express contractual terms"); *JN Contemporary Art LLC v. Phillips Auctioneers LLC*, 507 F. Supp. 3d 490, 505 (S.D.N.Y. 2020) ("It cannot be a breach of the implied covenant of good faith and fair dealing to do what a contract explicitly authorizes a party to do.")

Defendant's structuring of the 2010 Transaction did not breach the Subordination Agreement's covenant of good faith and fair dealing. First, the 2010 Transaction did not breach the express terms of the Subordination Agreement. (*Supra* VI.) Nor has Plaintiff identified any implied term in the Subordination Agreement that Defendant's 2010 Transaction breached. Therefore, Defendant's conduct in structuring the 2010 Transaction, which was contemplated and expressly permitted by the Subordination Agreement, did not breach the implied covenant of good faith and fair dealing. *JN Contemporary Art LLC v. Phillips Auctioneers LLC*, 507 F. Supp. 3d 490, 505 (S.D.N.Y. 2020).

Plaintiff argues that Defendant's conduct deprived it of the benefit of its bargain, namely payment under Seller Note 1. (Pl.'s Memorandum of Law in Support of Summary Judgment ("Pl's Brief"), ECF No. 17, at 18.) However, Plaintiff has not presented any support in the contract language for a limitation on Defendant's ability to refinance. Nor has Plaintiff presented any evidence that OFTI bargained for such a right. *Cellco P'Ship*, 788 F.3d at 102.

Accordingly, Defendant is entitled to summary judgment dismissing Plaintiff's claim for breach of covenant of good faith and fair dealing.

## VI. CONCLUSION

Defendant's motion for summary judgment dismissing Plaintiff's claims, (ECF No. 53), is GRANTED. Plaintiff's cross-motion for summary judgment, (ECF No. 61), is DENIED. The Clerk of Court is directed to close the motions accordingly.

Dated: New York, New York
       March 29, 2022

SO ORDERED.

*George B. Daniels*
GEORGE B. DANIELS
United States District Judge